# EXHIBIT 9

Circuit Court for  Prince George's County
<u>City or County</u>
## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

**DIRECTIONS:**
      *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).*
***A copy must be included for each defendant to be served.***
      *Defendant: You must file an Information Report as required by Rule 2-323(h).*
***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.***

FORM FILED BY: ☒ PLAINTIFF  ☐ DEFENDANT    CASE NUMBER _____
                                                        (Clerk to insert)
CASE NAME: Madison Mechanical OS Corp., et al.   vs.  Twin City Fire Insurance Co., et al.
                     Plaintiff                                          Defendant

JURY DEMAND: ☒ Yes ☐ No   Anticipated length of trial: _____ hours or _____ days
RELATED CASE PENDING? ☐ Yes ☒ No  If yes, Case #(s), if known: _____

Special Requirements?  ☐ Interpreter (Please attach Form CC-DC 41)
                   ☐ ADA accommodation (Please attach Form CC-DC 49)

| NATURE OF ACTION (CHECK ONE BOX) | | DAMAGES/RELIEF | |
|---|---|---|---|
| **TORTS** | **LABOR** | **A. TORTS** | |
| ☐ Motor Tort | ☐ Workers' Comp. | **Actual Damages** | |
| ☐ Premises Liability | ☐ Wrongful Discharge | ☐ Under $7,500 | ☐ Medical Bills |
| ☐ Assault & Battery | ☐ EEO | ☐ $7,500 - $50,000 | $ _____ |
| ☐ Product Liability | ☐ Other _____ | ☐ $50,000 - $100,000 | ☐ Property Damages |
| ☑ Professional Malpractice | **CONTRACTS** | ☒ Over $100,000 | $ _____ |
| ☐ Wrongful Death | ☑ Insurance | | ☐ Wage Loss |
| ☐ Business & Commercial | ☐ Confessed Judgment | | $ _____ |
| ☐ Libel & Slander | ☐ Other _____ | | |
| ☐ False Arrest/Imprisonment | **REAL PROPERTY** | **B. CONTRACTS** | **C. NONMONETARY** |
| ☐ Nuisance | ☐ Judicial Sale | ☐ Under $10,000 | ☑ Declaratory Judgment |
| ☐ Toxic Torts | ☐ Condemnation | ☐ $10,000 - $20,000 | ☐ Injunction |
| ☐ Fraud | ☐ Landlord Tenant | ☒ Over $20,0000 | ☐ Other _____ |
| ☐ Malicious Prosecution | ☐ Other _____ | | |
| ☐ Lead Paint | **OTHER** | | |
| ☐ Asbestos | ☐ Civil Rights | | |
| ☐ Other _____ | ☐ Environmental | | |
| | ☐ ADA | | |
| | ☐ Other | | |

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION
Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
A. Mediation ☑ Yes ☐ No        C. Settlement Conference ☑ Yes ☐ No
B. Arbitration ☐ Yes ☐ No       D. Neutral Evaluation ☐ Yes ☐ No

### TRACK REQUEST
*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*
***THIS CASE WILL THEN BE TRACKED ACCORDINGLY.***
      ☐ 1/2 day of trial or less      ☐ 3 days of trial time
      ☐ 1 day of trial time        ☑ More than 3 days of trial time
      ☐ 2 days of trial time

**PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND COMPLEX SCIENCE AND/OR MEDICAL CASE MANAGEMENT PROGRAM (ASTAR), AS WELL AS ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, PRINCE GEORGE'S COUNTY, OR BALTIMORE COUNTY.**

Date 7/29/18         Signature *Danielle M. Nadian*

CC/DCM 002 (Rev. 2/2010)        Page 1 of 3

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-205 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐
**Expedited**
Trial within 7 months
of Filing

☐
**Standard**
Trial within 18 months
of Filing

☐ EMERGENCY RELIEF REQUESTED _____

| | |
|---|---|
| Signature | Date |

## COMPLEX SCIENCE AND/OR MEDICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO AN ASTAR RESOURCE JUDGE under Md. Rule 16-202. Please check the applicable box below and attach a duplicate copy of your complaint.*

☐ Expedited - Trial within 7 months of Filing          ☐ Standard - Trial within 18 months of Filing

**IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, PRINCE GEORGE'S COUNTY, OR BALTIMORE COUNTY PLEASE FILL OUT THE APPROPRIATE BOX BELOW.**

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

☐ Expedited          Trial 60 to 120 days from notice. Non-jury matters.

☐ Standard-Short          Trial 210 days.

☐ Standard          Trial 360 days.

☐ Lead Paint          Fill in: Birth Date of youngest plaintiff _____ .

☐ Asbestos          Events and deadlines set by individual judge.

☐ Protracted Cases          Complex cases designated by the Administrative Judge.

### CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

To assist the Court in determining the appropriate Track for this case, check one of the boxes below. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.

☐ Liability is not conceded, but is not seriously in dispute.

☑ Liability is seriously in dispute.

## CIRCUIT COURT FOR BALTIMORE COUNTY

☐ Expedited
(Trial Date-90 days)

Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus.

☐ Standard
(Trial Date-240 days)

Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases.

☐ Extended Standard
(Trial Date-345 days)

Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency.

☐ Complex
(Trial Date-450 days)

Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases.

MADISON MECHANICAL OS CORP    *
5621 Old Frederick Rd., Ste 1
Catonsville, MD 21228,    *    IN THE

MADISON MECHANICAL, INC.    *    CIRCUIT COURT FOR
5621 Old Frederick Rd., Ste 1
Catonsville, MD 21228,    *    PRINCE GEORGE'S COUNTY

Glenn A. Haslam    *
12154 Mt. Albert Rd.
Ellicott City, MD 21042,    *    CIVIL ACTION NO. _____

And    *

Gary J. Garofalo    *
2818 Hunt Valley Dr.
Glenwood, MD 21738,    *

     Plaintiffs,    *

v.    *

TWIN CITY FIRE INSURANCE CO.    *
One College Park
Indianapolis, IN 46268-0930,    *

Serve: RESIDENT AGENT    *
     Maryland Insurance Commissioner
     200 St. Paul Place, Suite 2700    *
     Baltimore, Maryland 21202,
   *

ALLIANT INSURANCE SERVICES, INC.    *
9901 Business Parkway, Suite B
Lanham, MD 20706    *

Serve: RESIDENT AGENT    *
     CSC-Lawyers Incorporating
     Services Company
     7 St. Paul Street, Suite 820    *
     Baltimore, MD 21202
   *

WILLIAM FRANEY    *
3 South Acton Place
Annapolis, MD 21401    *

     Defendants.

## COMPLAINT
### (Declaratory Judgment, Breach of Contract, and Negligence)

Plaintiffs Madison Mechanical OS Corp., Madison Mechanical, Inc., Glenn A. Haslam, and Gary J. Garofalo, by their attorneys Gary R. Jones, Danielle M. Vranian, and Baxter, Baker, Sidle Conn & Jones, P.A., hereby sues Defendants Twin City Fire Insurance Co., Alliant Insurance Services, Inc. and William Franey and, in support thereof, states as follows:

### The Parties

1.   At all times relevant to this case, the parties were as follows.

2.   Plaintiff Madison Mechanical OS Corp. ("OS Corp.") is a plumbing and mechanical contracting company incorporated in Maryland, with its principal place of business in Catonsville, Maryland.

3.   Plaintiff Madison Mechanical, Inc. ("MMI") was a plumbing and mechanical contracting company incorporated in Maryland until its dissolution on December 21, 2015, and the wholly owned subsidiary of OS Corp, with its principal place of business in Catonsville, Maryland.

4.   Plaintiff Glenn Haslam is a resident of the State of Maryland who resides at 12154 Mt. Albert Road, Ellicott City, Maryland 21042.  He is a principal shareholder in both OS Corp and MMI, and he is the sole director of each corporation.

5.   Plaintiff Gary Garofalo is a resident of the State of Maryland who resides at 2818 Hunt Valley Drive, Glenwood, Maryland 21738.  He is a shareholder in both OS Corp and MMI.

6.   Defendant Twin City Fire Insurance Co. ("Twin City") is a stock insurance company member of The Hartford, incorporated in Indiana and with its principal place of business located in Indianapolis, Indiana.

2

7.   Defendant Alliant Insurance Services, Inc. is an entity incorporated in Delaware with a local Maryland office in Prince George's County located at 9901 Business Parkway, Suite B, Lanham, Maryland 20706, and it its corporate headquarters is located at 1301 Dove Street, Suite 200, Newport Beach, CA 92660.

8.   Defendant William Franey is a resident of the State of Maryland who resides at 3 South Acton Place, Annapolis, Maryland. He is an independent insurance broker, licensed in Maryland and a vice president of Defendant Alliant.

**Jurisdiction and Venue**

9.   This Court has jurisdiction over this matter pursuant to the Courts and Judicial Proceedings Article of the Maryland Code, Sections 6-102 and 6-103(b).

10.  Venue is proper pursuant to the Courts and Judicial Proceedings Article of the Maryland Code, Section 6-201(b).

**Factual Allegations**

*Franey/Alliant's Special Relationship with Plaintiffs*

11.  Plaintiffs Haslam and Garofalo have been in the construction industry for many years. Prior to the formation of OS Corp., Haslam worked as a subcontractor on many Harkins' projects and subsequently came to know Garofalo quite well.  Garofalo holds an executive position at Harkins.

12.  Defendant Franey has maintained a long standing and close relationship with Garofalo and Haslam since at least 1993, acting as Plaintiffs' insurance advisor and broker as well as holding a position on Harkins' board of directors.  Not only did Franey provide all of Harkins' and its principals' insurance services, he was Harkins' sole surety bonding agent,

3

involved in bonding its construction contracts where a surety bond was required. Through his Harkins contacts, Franey came to know Haslam and Garofalo quite well.

13. In 2007, Haslam, Garofalo, and others purchased a plumbing and mechanical contracting company, MMI, from its original owner who also owned an interest in Harkins. MMI was focused primarily on the installation of plumbing fixtures in large-scale residential projects, such as apartment complexes and condominium communities. To be eligible to bid on these types of projects, MMI needed, in addition to the standard types of insurances covering its operations, the ability to obtain the requisite surety bonding.

14. As Franey had been advising Harkins and its principals on insurance and bonding needs for many years, Haslam and Garofalo turned to him to provide these services to MMI. In the years that followed, Franey and/or his insurance agency, Alliant, were MMI and OS Corp.'s exclusive insurance and bonding advisor and provider, helping Haslam and Garofalo choose, manage and administer MMI's insurance and bonding needs, acting as MMI's bonding agent.

15. The relationship forged between Franey and Alliant, on the one hand, and Plaintiffs, on the other, was of great importance to MMI's stability and success, because in addition to providing advice and counsel on insurance and bonding matters, Franey, still a member of the Harkins board of directors, also began advising Plaintiffs on MMI's operational and financial matters. As a result, Plaintiffs came to look upon Franey as a trusted advisor, developing over time into a special relationship of trust.

16. With respect to insurance matters relevant to this suit, over the years, Franey, and subsequently Patricia Biederman, a broker employed by Franey's insurance agency, Alliant, would guide Plaintiffs through the renewal process for their various business insurances, including directors' and officers' liability and employment practices liability insurance. Franey

and Biederman worked closely with Plaintiffs to ensure these renewals were completed accurately and timely.

17.  Over the course of this decades long insurance relationship, Plaintiffs occasionally needed to report claims against them that implicated their insurance coverage including numerous claims related to their work in the construction industry.  On such occasions, Alliant, through Franey and subsequently Biederman, guided Plaintiffs in reporting those claims.  The process established by this course of dealing was that Plaintiffs reported claims to the relevant insurer through Alliant.  Plaintiffs would inform Franey or one of his associates, including but not limited to Biederman, of the claim.  Franey or the person receiving the report would then inform the relevant insurer of the claim.

### *Alliant's Involvement in 2015*

18.  Franey's and Alliant's relationship with Plaintiffs became even closer when MMI began experiencing financial difficulties.  From approximately 2007 through 2012, MMI was a profitable and successful company.  Beginning in approximately 2013, it began experiencing financial difficulties when a cascade of unexpected events resulted in a large and unexpected increase in costs that caused MMI to lose money.  By 2014, increased costs and demands on finite resources caused a shortage of capital necessary to finance the day-to-day operations of MMI.  The shortage of capital also had a negative impact on MMI's ability to meet bonding requirements.

19.  The shareholders of OS Corp. needed a plan to address the cash shortage, infuse new capital into the business through shareholder capital contributions, and provide a means by which they could reduce the ongoing costs.

20.  Throughout this difficult time, Franey was in constant contact with the shareholders, advising them of, among other things, changes with their bonding requirements and how best to ensure they maintained their ability to get future bonding.  Each time a capital contribution was made to address the cash shortfall, Franey was informed.  In addition, Franey actively considered investing in MMI and performed financial due diligence of the Company including review of MMI and OS Corp.'s financial documents and records.

21.  More than just advising the shareholders of OS Corp., Mr. Franey took an active interest in OS Corp. and MMI, its finances, and its future.

### *Biederman's Role*

22.  Along with Franey, Biederman maintained an active and important role in advising Plaintiffs, including playing a key role in helping Plaintiffs obtain new insurance coverage and renewing existing coverage.

23.  At the time of renewal each year, Biederman was responsible for sending the appropriate paperwork to Plaintiffs, ensuring that it was accurately and timely completed, and submitting the paperwork to the insurer, which in 2015 was Defendant Twin City, to effectuate the renewal.

24.  On or about May 1, 2015, Biederman, acting on behalf of MMI, obtained Policy Number 42 KB 0256935-15 from Defendant Twin City (the "2015 Policy").  The 2015 Policy covered MMI for, among other things, directors' and officers' liability insurance and employment practices liability insurance.

25.  To satisfy the need for new capital investment, MMI and its principals attracted a new investor, Richard Arnold.  As Arnold was unwilling to take on the liabilities of MMI, a new entity, Madison Mechanical Contracting, LLC. ("MMCLLC"), was formed on August 20, 2015

to handle new contracts for the business effective January 1, 2016. Franey was informed by Plaintiffs of the creation of MMCLLC and told that coverage would need to be obtained for the new entity by January 1, 2016.

26. On December 29, 2015, Biederman prepared an application to add MMCLLC to MMI's 2015 Policy as a related entity. Biederman sent the application, in draft form, partially filled out, to Haslam to complete. Biederman then assisted Haslam and his employees in completing the application and, completed some of the application herself. To the extent any questions were asked about how to answer the questions, Ms. Biederman answered those questions and assisted Haslam at all stages of this process.

27. In an around that same time frame of December 29, 2015, Haslam returned the completed application (the "December 2015 Application") to Biederman, a copy of which is attached hereto as **Exhibit 1**. In response to a section titled "Prior Knowledge," the December 2015 Application stated, in relevant part, as follows:

3. **PRIOR KNOWLEDGE**

   a) Answer the following question if any coverage currently purchased has a "date coverage first purchased" that falls within 36 months of the date that this application is executed:

   With respect to each coverage currently purchased, did any Applicant or any natural person for whom insurance is intended have any knowledge or information, as of the "date coverage first purchased," of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim? ☐ Yes ☑ No

   If "YES," provide full details (attach a separate sheet if necessary).

   IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTED, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE WAS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.

   b. The following question must be answered if the Applicants are requesting higher limits than current limits, including requesting coverage which is not currently purchased.

   Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim? ☐ Yes ☑ No

   If "YES," provide full details (attach a separate sheet if necessary).

7

28.  At the time Biederman received the December 2015 Application with the foregoing statement, Alliant, Franey and Biederman were aware of a November 11, 2015 letter to MMI from an attorney representing Robert Buczkowski, a shareholder of OS Corp. and, until the November 18, 2015 termination of his employment, CFO of MMI.  In the letter, Buczkowski alleged that Haslam and Garofalo were improperly transferring business belonging to MMI to their new entity, MMCLLC, thus depriving MMI of income.  The letter demanded that MMCLLC cease and desist upon threat of legal action (the "November 2015 Claim Letter").  A copy of the November 2015 Claim Letter is attached hereto as **Exhibit 2.**  Consistent with Plaintiffs' course of dealing and course of performance with Defendants Franey and Alliant, when the November 2015 Claim Letter was received, Plaintiffs reported the claim to Franey and Alliant as they had with all other insurance claims over the years.

29.  Defendants were also aware that Buczkowski, on whose behalf the November 2015 Claim Letter was sent, had been terminated as MMI's CFO for cause in November 2015 and, in addition to disputing the alleged transfer of business from MMI to MMCLLC, was also disputing the basis for his termination and threatening legal action for wrongful termination.

30.  Despite knowledge of the November 2015 Claim Letter and knowledge of the termination of the former employee of MMI, and the duty to Plaintiffs to review the application for accuracy and correct known errors, Biederman and Franey submitted this application to Twin City without correcting the Prior Knowledge statement.  Indeed, Biederman failed even to inquire of Plaintiffs why this question was even answered, as the directions in the questionnaire form clearly state it need not be answered under the circumstances of adding an entity to the policy when no increased limits of liability are requested.  By failing to correct the misunderstanding by sending Plaintiffs a new form to leave the answer blank, or otherwise correcting the statement,

8

Defendants failed to submit an accurate application on behalf of Plaintiffs to Twin City, in breach of their obligation to do so.

31.   Defendants' breach did not end with the December 2015 Application.  In April of 2016, when Plaintiffs' 2015 Policy was up for renewal, Defendants were again called upon the handle the renewal transaction and the questionnaire.  On or about April 14, 2016, Biederman prepared a draft application of renewal for OS Corp. and MMCLLC for the time of May 1, 2016 through April 30, 2017 and sent it to Plaintiffs to complete.  Just as was the case for the December 2015 Application, Biederman assisted Plaintiffs in completing the application and, upon information and belief, completed some of it herself.  To the extent any questions were asked about how to answer the questions, Ms. Biederman answered those questions and assisted Plaintiffs at all stages of this process.  For example, the renewal application was completed by Biederman and an employee of MMCLLC and then signed by Haslam.  Biederman was aware that the box on the renewal application was checked indicating that the insured had no knowledge of any potential claims.  Biederman advised that since this was a renewal application they were not required to answer that question.  *See* **Exhibit 3,** Timeline of Events prepared by Biederman. Nevertheless, Biederman submitted the renewal application to the insurer with that box checked off.

32.   In and around the same timeframe of April 14, 2016, Plaintiffs returned the completed renewal application ("Renewal Application") to Biederman, a copy of which is attached hereto as **Exhibit 4.**  As was the case with the December 2015 Application, the Renewal Application contained a Prior Knowledge section providing as follows:

**3. PRIOR KNOWLEDGE**

The following question must be answered if the Applicants are requesting higher limits at renewal.

Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim? ☐Yes ☑No
If "YES," provide full details (attach a separate sheet if necessary).

33.   Despite knowledge of the November 2015 Claim Letter and her duty to Plaintiffs to review the Renewal Application for accuracy, Biederman submitted the Renewal Application to Twin City uncorrected.  As was the case in December 2015, Biederman once again failed to inquire of Plaintiffs as to why they had answered this question as it too, like the December 2015 Application, did not apply.  In breach of her duties to Plaintiffs, she failed to correct this misunderstanding and she failed to submit an accurate application on behalf of Plaintiffs to Twin City as was her duty to Plaintiffs.

***Insurance Policy Provisions***

34.   On May 1, 2015, Defendant Twin City, issued 2015 Policy to MMI and OS Corp. *See* Policy Number 42 KB 0256935-15, attached hereto as **Exhibit 5**.

35.   In relevant part, the 2015 Policy provides $2 million in coverage for Directors, Officers and Entity Liability claims as well as Employment Practices Liability Insurance.  Exhibit 5 at Item 5, pg. 2.  The 2015 Policy defines a "Claim" as an insured person claim, entity claim, or derivative demand.  *Id.* at Directors, Officers and Entity Liability Coverage Part, II, Definitions.  The 2015 Policy also provides $2 Million in Employment Practices Liability coverage for any "Employment Practice Claim" as that term is defined in the 2015 Policy.  *Id.* at Employment Practices Liability Coverage Part, II, Definitions.

10

*Litigation Giving Rise to the Claim at Issue*

36. As stated above, Robert Buczkowski, on whose behalf the November 2015 Claim Letter was sent, was a shareholder of OS Corp. and employed by MMI as its CFO until the termination of his employment on November 18, 2015.

37. Following that termination, Buczkowski retained counsel who issued a derivative demand letter on May 10, 2016, and then filed suit on May 27, 2016 (the "Buczkowski Suit").[1] In response to the Buczkowski Suit and the May 10, 2016 derivative demand, Plaintiffs filed a claim with Twin Cities for Directors and Officers Liability coverage and Employment Practices Liability coverage. The 2015 Policy clearly had coverage for investigation and disposition of the derivative demand and derivative action that was made in May of 2016.

38. The 2015 Policy included an endorsement excluding Directors and Officers coverage "in connection with any **Claim** brought or maintained by or on behalf of any owner of 10% or more of the outstanding securities of an **Insured Entity**, either directly or beneficially." Exhibit 5 at Endorsement No. 2. At all times relevant hereto, Buczkowski held only 7.774% of OS Corp.'s stock.

*The Timeline of Litigation and Insurance Renewals*

39. As noted above, on November 11, 2015, Buczkowski's counsel sent the November 2015 Claim Letter to Plaintiffs demanding that MMCLLC cease and desist from taking business from MMI. *See* Exhibit 2. Specifically, the letter stated that:

> If it is your plan to divert the contracts and corporate opportunity of Madison Mechanical, please consider this letter putting you on notice of the potential litigation liability of such actions both on a corporate and personal level. Please cease and

---

[1] Mr. Buczkowski hired new counsel to issue the May 10, 2016 derivative demand. The counsel who issued the November 2015 Claim letter was Robert Scarlett. Mr. Buczkowski's counsel throughout the subsequent litigation which forms the basis of this complaint was Timothy Maloney.

desist any such action to divert any corporate opportunity that Madison Mechanical must either yourselves or Madison Mechanical Contracting, LLC without the consent of my firm's client, Robert Buczkowski."

*See Id.*

40. One week later, on November 18, 2015, Buczkowski's employment was terminated for cause. *See* November 18, 2015 letter from G. Haslam, attached hereto as **Exhibit 6**.

41. At some point during this November/December of 2015 timeframe, as was consistent with their course of dealing and course of performance, Plaintiffs informed Alliant through Franey, Biederman, and/ or another Alliant employee of the November 2015 Claim Letter and the termination of employment of Buczkowski. As noted above, all past claims brought against Plaintiffs were reported to Alliant this way, with Alliant then reporting the claims directly to the insurer.

42. As noted above, Plaintiffs began preparing for MMCLLC to begin work at the start of 2016 by among other things, turning to Aliant and Biederman for assistance with the December 2015 Application adding MMCLLC to the 2015 Policy. Consequently, Twin City Fire Insurance Co. ("Twin City") issued an endorsement effective January 1, 2016 adding MMCLLC to OS Corp.'s 2015 Policy. Initially Plaintiffs applied to have MMCLLC covered under an insurance policy separate from the one covering MMI/OS Corp. However, the Hartford concluded that it would "add Madison Mechanical Contracting, LLC to the Madison Mechanical [.] Inc. policy at no additional premium. In essence, we are insuring the same company business practices for both entities and see this as an eventual name change with some minor shareholder change." *See* January 11, 2016 emails from Nancy Huder, attached hereto as **Exhibit 7**.

43. MMCLLC began operating on January 1, 2016.

44. As Buczkowski had been fired for cause on November 18, 2015, his shares in the entity were by operation of Maryland law reduced to zero, thus eliminating his standing to assert any shareholder-based claims.

45. As noted above, Plaintiffs completed the Renewal Application questionnaire for Twin City on April 14, 2016.   Included in the application was an attachment that listed Buczkowski's previous ownership interest in OS Corp. at 13% and his current ownership percentage in OS Corp. at zero. The policy was renewed, effective May 1, 2016, and Plaintiffs were advised by Alliant and by the terms of the Renewal Application that, since this was a renewal application, Plaintiffs were not required to answer the question as to whether Plaintiffs had prior knowledge of any potential claim.  Similarly, on the December 29, 2015 questionnaire, Plaintiffs were advised by their broker Alliant, through Biederman and Franey, that the coverage being requested was in the name of Madison Mechanical Contracting, LLC only; therefore, there was no requirement to respond to the prior knowledge questions on the application as the coverage being added was for an entirely new entity.

46. On May 10, 2016, Plaintiffs received a shareholder derivative demand letter from Buczkowski, demanding that the Corporation initiate a shareholder derivative action. *See* May 10, 2016 letter from R. Buczkowski, attached hereto as **Exhibit 8**.  On May 11, 2016, counsel for Plaintiffs responded to that demand by saying that the request for derivative action was considered by the Board of Directors of MMI and OS Corp. and that the derivative demand was denied. *See* May 11, 2016 letter from D. Sidle, attached hereto as **Exhibit 9**

47. Mr. Buczkowski filed suit on May 27, 2016 against Plaintiffs and others Suit was served on Plaintiffs on June 29, 2016.

### *Notice to Twin City of the Litigation*

48.  Although Plaintiffs had already reported Buczkowski's November 2015 Claim Letter to Alliant, as noted above, counsel for Plaintiffs also reported the claim directly to The Hartford and Twin City with a Notice of Claim letter including with the notice a copy of the complaint, the answer filed by Plaintiffs and the counterclaim filed by Plaintiffs. *See* July 28, 2016 letter from G. Jones to The Hartford, attached hereto as **Exhibit 10**.

49.  Accordingly, even if Alliant failed to perform its duty to inform The Hartford and Twin City of the November 2015 Claim Letter in November 2015, no actual prejudice was visited upon the insurers, The Hartford and Twin City, by the passing nine months, as the Buczkowski lawsuit had just been initiated and answered and no discovery had taken place.

50.  Despite counsel's best efforts during the ensuing months, The Hartford did not respond to the Notice of the Claim until October 18, 2016 when Twin City issued a coverage letter stating that it would provide a defense for the case under a reservation of rights. *See* October 18, 2016 letter from M. Knox, attached hereto as **Exhibit 11**.  Between November 1, 2016 and November 2, 2016, counsel for Plaintiffs along with Mr. Knox of The Hartford and a representative from the Maryland Insurance Administration had several telephone conferences and written correspondences wherein Mr. Knox stated that all fees would be reimbursed to Plaintiffs from the date that Plaintiffs reported the suit to The Hartford on July 29, 2016 and that all defense costs and expenses would be paid on this matter.  On November 2, 2016, The Maryland Insurance Administration wrote to counsel for Plaintiffs and copied Ms. Robin Najduch of Twin City confirming the telephone conversations of November 1, 2016 where The Hartford agreed to not only provide a defense to Plaintiffs under the terms of its policy, but also to reimburse its insureds for what it had already spent in defense costs starting on the date the

claim was reported to The Hartford. *See* November 2, 2016 letter from Andrew Beatty, attached hereto as **Exhibit 12**. The letter went on to state that the Maryland Insurance Administration was dismissing the complaint accordingly. *Id.*

51. In reliance on these promises made by The Hartford, the Maryland Insurance Administration complaint was withdrawn by Plaintiffs on November 2, 2016. On November 4, 2016, counsel for Plaintiffs went to New York City to meet with a representative from The Hartford. During this meeting, the same assurances were made that all defense costs would be paid, and fees reimbursed to Plaintiffs going back to the date the suit was reported.

52. On April 19, 2017, The Hartford issued its denial letter denying coverage for all claims made by Buczkowski. *See* April 19, 2018 letter from M. Knox to G. Jones, attached hereto as **Exhibit 13**.

### *Issues with Coverage*

53. In its most recent communications with Plaintiffs, The Hartford has raised the endorsement excluding coverage for suits by shareholders owning ten *per cent* of OS Corp. as potential grounds for denying coverage in addition to the November 11, 2015 claim letter.

54. As noted above, MMI's financial difficulties during the latter part of 2014 and the beginning of 2015, resulted in a call for capital contributions among the owners of OS Corp. commensurate with each shareholders' percentage of ownership. If any shareholder did not contribute his equitable share, his ownership interest would be diluted pursuant to Maryland law *See* MD. CODE ANN., CORPS & ASS'N §§2-201(c), 2-203.[2] Accordingly, the contributions were to appear as follows:

---

[2] The infusion of additional capital results in the issuance of additional stock in the company by operation of Maryland law. There is no restriction under the bylaws or articles of incorporation for OS Corp. regarding stock issuance. As such, the Board of OS Corp. had plenary power to

| Owner | Percentage of Ownership | Required Contribution |
|---|---|---|
| Haslam | 54% | $1,178,071 |
| Garofalo | 13% | $283,609 |
| Buczkowski | 13% | $283,609 |
| Kraemer | 10% | $218,160 |
| Lombardo | 10% | $218,160 |

55. Although all shareholders agreed to these capital contributions, Mr. Buczkowski failed to contribute his full share. The contributions were made as follows:

| Owner | Percentage of Ownership after Capital Contributions | Actual Contribution |
|---|---|---|
| Haslam | 57.25% | $1,178,071 |
| Garofalo | 13.78% | $283,609 |
| Buczkowski | 7.774% | $143,000 |
| Kraemer | 10.59% | $218,160 |
| Lombardo | 10.59% | $218,160 |

56. Per the figures shown on this chart, Buczkowski's contributions amounted to 7.774% of the total.

57. Nonetheless, Buczkowski made the claim in his Complaint against Plaintiffs in the state court litigation that he is and was a 13% shareholder in OS Corp. ignoring that as of April 1, 2015, his shares in OS Corp were diluted to 7.774%. Moreover, On January 14, 2016,

_____

issue additional stock. *See* MD. CODE ANN., CORPS & ASS'N §§2-201(c), 2-203. The consideration for that stock issuance was the aggregate capital contributions made by the shareholders.

16

Plaintiffs exercised their option under the Shareholder Agreement to purchase all of Mr. Buczkowski's outstanding stock. As of the exercise of that option, Mr. Buczkowski ceased to be a shareholder in OS Corp. altogether. *See* January 14, 2016 letter from D. Sidle to R. Scarlett, attached hereto as **Exhibit 14**.

58. Despite the foregoing facts, which were provided to The Hartford, Defendant Twin City still relies upon this Endorsement as viable grounds to exclude coverage for this suit.

59. Moreover, Buczkowski now admits under oath that his failure to contribute his equitable portion of capital resulted in Haslam diluting his ownership interest to 7.774% effective as of April 1, 2015. Affidavit of Robert Buczkowski, attached hereto as **Exhibit 12**.

60. On May 24, 2018, the Buczkowski Suit settled. The amount of the settlement coupled with the costs to defend the case to date total $1.615 million.

61. In sum, the 2015 Policy clearly covers the claims made by Buczkowski, as it is a claim made policy and the claim was first made in the November 2015 Claim Letter received by Plaintiffs sometime in late November 2015. At that time, Buczkowski was no longer a 13% shareholder in OS Corp., his interest having been diluted to 7.774% by his failure to fully answer the capital call. The 2015 Policy provides coverage for derivative claims and the November 11, 2015 claim letter clearly threatens both "corporate and personal" action. *See* Exhibit 2. Twin City was not prejudiced by receiving notice of this claim on July 28, 2016 as the complaint was only recently filed and answered and no discovery had been conducted.

## COUNT I
(Declaratory Judgment – Twin City)

62. Plaintiffs adopt and incorporate the allegations contained in preceding paragraphs as though fully restated herein.

63. Policy Number 42 KB 0256935-15 between Twin City and Plaintiffs OS Corp. and MMI requires Twin City to cover certain claims against MMI's directors, officers and managers, as well as certain employment practice claims. *See* Exhibit 5.

64. MMI's directors and officer, Glenn Haslam, were sued by Robert Buczkowski in which claimed numerous derivative actions, usurpation of corporate opportunity, improper termination of employment, and oppression of a minority shareholder.

65. Despite the foregoing facts supporting coverage for Buczkowski's claims, Twin City has failed and/or refused to do so.

66. Therefore, an actual controversy or a practicable issue exists between the parties, within the jurisdiction of this Court and involving the rights and liabilities of the parties under contracts, which controversy may be determined by a judgment of this Court.

WHEREFORE, Plaintiffs respectfully request that this court declare

a. Twin City must provide a defense to Plaintiffs for the claims brought by Mr. Buczkowski in Case Number 03-C-16-005782 under its 2015 Policy of insurance with Plaintiffs, Policy Number 42 KB 0256935-15;

b. Twin City must reimburse Plaintiffs for all costs incurred since the date the claim was reported to Twin City;

c. Twin City must reimburse Plaintiffs for the costs of the settlement reached in this matter, the details of which are subject to a confidentiality agreement; and

d. An award of plaintiffs' costs, interest, and reasonable attorneys' fees for the cost of this litigation.

## COUNT II
(Breach of Contract – Twin City)

67. Plaintiffs adopt and incorporate the allegations contained in the preceding paragraphs as though fully restated herein.

68. Twin City entered into an insurance policy contract, Policy Number 42 KB 0256935-15, with Plaintiffs that requires it to provide coverage for certain claims brought against

18

managers, directors and officers of OS Corp. and/or MMI as well as for certain claims concerning employment practices.

69.   Defendant has a duty to defend Plaintiffs in the underlying state court litigation as a potentiality of coverage exists and Plaintiffs have provided Defendant with substantial evidence illustrating that potentiality.

70.   Despite this, Twin City has breached the insurance contract by failing to provide coverage or a defense for claims and indemnity for any judgment rendered against Plaintiffs in the underlying State Court action which arise under the 2015 Policy.

71.   Plaintiffs have been damaged by Twin City's breaches of the insurance policy contract.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor against Defendant Twin City Fire Insurance Co. in an amount to be proven as well as interest, costs, and reasonable attorneys' fees. in addition to the costs and fees incurred as a result of having to file this suit.

## COUNT III
(Negligence – Franey and Alliant)

72.   Plaintiffs adopt and incorporate the allegations contained in the preceding paragraphs as though fully restated herein.

73.   Defendants Franey and Alliant, acting individually or through their actual and/or apparent agents, servants and/or employees (including but not limited to Mr. Franey and Ms. Biederman) owed a duty to Plaintiffs to exercise reasonable care in handling all of Plaintiffs' insurance matters.

74.   Defendants Franey and Alliant, acting individually or through their actual and/or apparent agents, servants and/or employees (including but not limited to Franey and Biederman)

breached their duty of care to Plaintiffs and deviated from the applicable standards of care of a reasonable insurance broker, and were otherwise negligent, careless, and reckless, in their handling of Plaintiffs' insurance applications, reporting of claims, and advice to Plaintiffs by failing to properly review Plaintiffs applications and renewals and properly advising Plaintiffs as well as failing to properly report the November 2015 Claim Letter to Twin City as it had done for all other claims in the preceding years.

75. As a direct and proximate cause of the foregoing breach by Defendants Franey and Alliant, acting through their respective actual and/or apparent agents, servants and/or employees (including but not limited to Franey and Biederman) Plaintiffs' unnecessary and incorrect answer to Question 3 in the December 2015 Application and the Renewal Application caused Twin City to deny coverage to Plaintiffs for this claim.

76. Had Franey and Alliant followed the appropriate standards expected of an insurance broker, Plaintiffs' December 2015 Application and Renewal Application would have been appropriately completed and the November 2015 letter would have been timely reported to Twin City.

77. Alternatively, had Franey and/or Alliant followed the appropriate standards expected of an insurance broker, they would have promptly reported the November 2015 Claim Letter to Twin City when they received or learned of it in late November or Early December of 2015, thus avoiding the grounds for Twin City to deny coverage when the claims in that letter matured into a lawsuit nine months later.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor against Defendants Mr. Franey and Alliant in an amount to be proven as well as interest, costs,

and reasonable attorneys' fees, in addition to the costs and fees incurred as a result of having to file this suit.

## COUNT IV
### (Breach of Contract – Franey and Alliant)

78. Plaintiffs adopt and incorporate the allegations contained in the preceding paragraphs as though fully restated herein.

79. Franey and Alliant entered into an oral agreement with Plaintiffs that required Franey and Alliant to provide certain insurance services and products to Plaintiffs including directors' and officers' liability insurance and employment practices liability insurance in exchange for commissions.

80. Franey and Alliant breached the oral agreement with Plaintiffs by knowing the ownership interest structure and still selling insurance policies which contained no viable coverage for their ownership structure as the policies all contained an endorsement which prohibited coverage for any owner over a 10% interest.

81. As a direct and proximate result of the breach by Franey and Alliance, Plaintiffs were damaged.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor against Franey and Alliant in an amount to be proven as well as interests, costs, and reasonable attorneys' fees.

## Count V
### (Special Relationship – Breach of Fiduciary Duty – Franey and Alliant)

82. Plaintiffs adopt and incorporate the allegations contained in the preceding paragraphs as though fully restated herein.

21

83.  Defendants Franey and Alliant, through Franey, had, at all times relevant to this case, a special relationship with Plaintiffs based on trust and owed a fiduciary duty to Plaintiffs to act in their best interest.

84.  Defendants, Franey and Alliant's special relationship was based on decades of working with Plaintiffs both on their corporate and individual insurance needs, serving as the surety bond agent for Plaintiffs for both Harkins and the Madison entities, being on Harkins Board of Directors and by Franey being relied upon for financial advice, management advice and advice from the standpoint of being Plaintiffs' insurance professional.

85.  Plaintiffs relied upon the special relationship with Franey and Alliant to their detriment.

86.  Franey and Alliant breached their fiduciary duty to Plaintiffs and breached the special relationship.

87.  As a direct and proximate result of the foregoing breach by Franey and Alliance, Plaintiffs were damaged.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor against Defendants Franey and Alliant in an amount to be proven, as well as interests, costs, and reasonable attorney's fees.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted,

Gary R. Jones
grj@bbsclaw.com

Danielle M. Vranian
dmv@bbsclaw.com
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 East Baltimore Street, Suite 2100
Baltimore, Maryland 21202
(410) 230-3800 (voice)
(410) 230-3801 (facsimile)
*Attorneys for Plaintiffs*

# EXHIBIT 1



THE
HARTFORD

Name of Insurance Company to which application is made

# Private Company Application
# HFP *Pronto*ˢᴹ Application

**NOTICE:** LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

---

**1.  GENERAL INFORMATION**

a)  Name of Applicant Company:

Madison Mechanical Contracting LLC
(Together with any subsidiaries for whom this policy is intended, hereinafter, "Applicant(s).")

b)  Address: 5621 Old Frederick Rd Ste 1

Catonsville, MD 21228

c)  Nature of Business and NAIC or SIC Code: NAIC: 238220 SIC: 1711

15,000,000

This is a new operation effective 1/1/2016 - Mechanical and HVAC Contractor - Projected revenue is $12,000,000

d)  Applicant Company is a:

☐  Privately-owned company          ☐ * Governmental or public entity

☐ * Non-profit organization (subject to IRS 501(c))          ☐ * Publicly-traded company

☒ * Trust, General/Limited Partnership, or Other          *\* Please note this application will only be accepted for a privately-owned company*

---

**2.  COVERAGE REQUESTED**

Proposed Effective Date: <u>1/01/2016</u>

Please check the boxes below with an "X" to indicate which coverage is being requested. If you are not requesting a type of coverage, please leave the entire row blank. If a coverage requested is not currently purchased, a dollar amount of "$0" will be assigned to current limits.

| Coverage Requested | Limits Requested | Currently Purchased | Date Coverage First Purchased | Current Limits |
|---|---|---|---|---|
| [X] Directors, Officers & Entity Liability Coverage Part | $ | [ ] Yes [X] No | | $ |
| [X] Employment Practices Liability | $ | [ ] Yes [X] No | | $ |
| [X] Fiduciary Liability | $ | [ ] Yes [X] No | | $ |
| [X] Crime | $ | [ ] Yes [X] No | | $ |

3. **PRIOR KNOWLEDGE**

   a) Answer the following question if any coverage currently purchased has a "date coverage first purchased" that falls within 36 months of the date that this application is executed:

      With respect to each coverage currently purchased, did any Applicant or any natural person for whom insurance is intended have any knowledge or information, as of the "date coverage first purchased," of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise or could have given rise to a claim?

                                                                      [ ] Yes [X] No

      If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTED, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE WAS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.

   b. The following question must be answered if the Applicants are requesting higher limits than current limits, including requesting coverage which is not currently purchased.

      Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?

                                                                    [ ] Yes [X] No

If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION,

NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED. HOWEVER, THIS EXCLUSION SHALL APPLY UNDER A SPECIFIC COVERAGE PART ONLY TO THE EXTENT THAT THE "LIMITS REQUESTED" ARE HIGHER THAN THE "CURRENT LIMTS" PURCHASED FOR THAT COVERAGE PART.

4.  **APPLICANT INFORMATION**

   a)  Total revenues as of most recent fiscal year end: $1,000

   b)  Total number of employees currently: 26

   If the response is "YES" to any question below, full details will be required.

   c)  Is an Applicant a subsidiary of a non-U.S. Corporation?  ☐ Yes  ☒ No

   d)  Has an Applicant experienced, within the past 24 months, any of the following events?:

      i.   Merger, acquisition, sale of any assets or similar transaction?  ☐ Yes  ☒ No

      ii.  Any financial restructuring, reorganization or filing for bankruptcy?  ☐ Yes  ☒ No

      iii. Any downsizing, layoffs, reduction in force, plant or office closings?  ☐ Yes  ☒ No

   e)  Does an Applicant anticipate any of the preceding events within the next 12 months?  ☐ Yes  ☒ No

   f)  Is an Applicant a Federal or other Governmental Contractor?  ☐ Yes  ☒ No

5.  **EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** (Complete Only if Requesting this Coverage)

   a)  Please list the following information based on the Applicants' current facts as of today:

| | | Currently |
|---|---|---|
| i. | Non-Union Full-Time US Employees | ~~26~~ 29 |
| ii. | Non-Union Part-Time US Employees | 1 |
| iii. | Independent Contractors | 0 |
| iv. | Union Employees | 0 |
| v. | Foreign-Based Employees | 0 |
| vi. | TOTAL EMPLOYEES and CONTRACTORS | ~~28~~ 30 |
| | *(line vi. should be the sum of lines i.-v.)* | |

   vii. Of the total number of employees/contractors listed above, please indicate how many are located in:   Currently

California      <u>0</u>

New Jersey      <u>0</u>

b) Please list the percentage of employees within the following compensation bands (including any bonus and commissions):

$50,000 or less        $100,000 or more

c) Is an employee handbook distributed to all employees?     ☑Yes ☐No

If the response is "NO," do the Applicants have written procedures in place regarding:

    i.   Sexual Harassment        ☑Yes ☐No

    ii.   Discrimination        ☑Yes ☐No

d) Do the Applicants have a stand-alone Human Resources department?     ☐Yes ☒No

e) Do the Applicants employ any outside employment risk management services?     ☐Yes ☒No

f) Has an Applicant experienced any complaints, charges or hearings involving employment practices?     ☐Yes ☒No

If the response is "YES", was it:

    i.   Any Civil complaint as respects employment practices, including any Class or Multi-Claimant Action?     ☐Yes ☐No

    ii.   Any Federal, State or Local Government agency as respects employment practices?     ☐Yes ☐No

If the response is "YES" to i. or ii. above, full details will be required.

---

**6. FIDUCIARY LIABILITY COVERAGE PART** (Complete Only if Requesting this Coverage)

If the response is "YES" to any question below, full details will be required.

a) Do any plans not conform to ERISA?     ☐Yes ☒No

b) Has an Applicant, any plan, or plan fiduciary:

    i.   been investigated by the DOL, IRS or any other regulatory agency in the past 2 years?     ☐Yes ☒No

    ii.   had any other litigation against any Plan or Plan Fiduciary?     ☐Yes ☒No

c) Does any plan hold or provide the option to invest in the securities of an Applicant, including as part of an Employee Stock Ownership Plan (ESOP)?     ☐Yes ☒No

    d) Does an Applicant anticipate any reduction in benefits in the coming 12 months?    ☐ Yes ☒ No

    e) Is any plan a Defined Benefit Plan?    ☐ Yes ☒ No

    f) What are the total assets held in your benefit plans?    $

---

**7. CRIME COVERAGE PART** (Complete Only if Requesting this Coverage)

    a) Total Number of Locations: 1

    b) Has an Applicant discovered or sustained a crime or fidelity loss within the last 36 months? If the response is "YES," full details will be required.    ☐ Yes ☒ No

If the response is "NO" to any of the remaining questions, full details will be required.

    c) Are all of the Applicants' locations in the United States?    ☒ Yes ☐ No

    d) Do the Applicants conduct any type of background checks on potential employees?    ☐ Yes ☒ No

    e) Do the Applicants prohibit any employee (other than the owner) who reconciles bank statements from also:

        i. Signing checks    ☐ Yes ☒ No

        ii. Handling bank deposits    ☐ Yes ☒ No

        iii. Making withdrawals    ☐ Yes ☒ No

        iv. Having access to check signing machines or signature plates?    ☐ N/A ☐ Yes ☒ No

        v. If any response is "NO", and an employee has the ability to reconcile bank accounts and also sign checks, handle deposits, make withdrawals or has access to check signing machines/signature plates, is there any other person not involved in that process that reviews bank reconciliations for accuracy and validity (at a minimum quarterly)?    ☒ Yes ☐ No

    f) Is an authorized vendor list utilized to assist in detecting payments to fictitious suppliers?    ☒ Yes ☐ No

    g) Is the responsibility for authorizing vendors, approving invoices and processing payments segregated amongst different individuals?    ☒ Yes ☐ No

    h) Is the authority to initiate and approve a wire transfer separated amongst different employees?    ☐ N/A ☐ Yes ☒ No

        • If the response is "NO", are wire transfers reconciled by a person not involved in initiating and/or approving the wire transfer?    ☒ Yes ☐ No

    i) If Theft of Clients' Property Off Premises extension is requested, will an Applicant or its employees have access to any client's money, securities, banking systems, purchasing systems, payroll systems, accounting systems and/or wire transfer systems?    ☒ N/A ☐ Yes ☐ No

8.  **DIRECTORS, OFFICERS & ENTITY LIABILITY COVERAGE PART** (Complete Only if Requesting this Coverage)

a)  Financial Information: Please provide the following based on the Applicants' most recent fiscal year end and the year prior. Please use "( )" or "-" to indicate negative figures.

Most Recent Fiscal Year End

_____
(Month/Year)

| Balance Sheet | | | Profit & Loss or Income Statement | | |
|---|---|---|---|---|---|
| Current Assets | | $ | Total Revenues | | $1,000 |
| Goodwill | | $ | Net income after taxes | | $ |
| Total Assets | | $ | Interest Expense | | $ |
| Current Liabilities | | $ | Earnings before Interest & Taxes | | $ |
| Long Term Debt | | $ | | | |
| Total Liabilities | | $ | | | |
| Retained Earnings | | $ | Statement of Cash Flows | | |
| Shareholder Equity | | $ | Cash Flow from Operations | | $ |

b)  Is the Applicant taxed as a Subchapter S Corporation under the Internal Revenue Code?  ☑ Yes  ☐ No

c)  How many total individuals/entities own shares in the Applicant?  5

d)  What is the total number of outstanding shares in the Applicant?  100

e)  What is the total number of outstanding shares in the Applicant held directly or beneficially by directors, officers or equivalents?  68

f)  Is there multiple generation family ownership of the Applicant (including individuals or trusts that own shares in the Applicant)?  ☐ Yes  ☑ No

g)  Is there ownership or financial-support of the Applicant by any private equity, venture capital, or other type of investment firm?  MMVTA LLC  ☑ Yes  ☐ No

h)  Within the past 12 months, has an Applicant completed any public or private offering of securities (including, but not limited to, IPO, Secondary Exchanges, or Crowd Funding/ Crowd Financing)?  ☐ Yes  ☑ No

i)  Is an Applicant currently anticipating any public or private offering of securities (including but not limited to IPO, Secondary Exchanges, or Crowd Funding/Crowd Financing)?  ☐ Yes  ☑ No

j)  Is an Applicant currently in breach or violation of any debt covenant or loan agreement or any other material contractual obligation?  ☐ Yes  ☑ No

k)  Within the past 12 months, has an Applicant been in breach or violation of any debt covenant or loan agreement or any other material contractual obligation?  ☐ Yes  ☑ No

© 2014, The Hartford

l)  Has an Applicant, or any natural person for whom this insurance is intended, been involved in:

    i.   Any antitrust, copyright or patent litigation?    ☐ Yes  ☑ No

    ii.  Any civil or criminal action or administrative proceeding alleging a violation of any federal or state security law or regulation?    ☐ Yes  ☑ No

    iii. Any representative actions, class actions or derivative suits?    ☐ Yes  ☑ No

    iv. Any other litigation?    ☐ Yes  ☑ No

m)  Year of Incorporation:  *2015*

---

## 9.  LOSS HISTORY (RENEWAL APPLICANTS OF THE HARTFORD NEED NOT ANSWER THIS QUESTION).

If "YES" to any of the questions below, full details will be required.

With respect to the Applicants and any natural person for whom this insurance is intended:

a)  Have there been any actual or potential lawsuits or claims that may fall within the scope of the coverage requested?    ☐ Yes  ☑ No

b)  Has any insurer cancelled or refused to renew any Directors and Officers, Employment Practices, Fiduciary, Crime, Kidnap Ransom or similar insurance within the past 36 months?    ☐ Yes  ☑ No

    **\* MISSOURI APPLICANTS NEED NOT REPLY.**

Applicable to Liability Coverage Parts Only:

c)  Are there any pending claims or demands against an Applicant or any natural person for whom this insurance is intended that may fall within the scope of coverage afforded by any previously or currently purchased insurance policy?    ☐ Yes  ☑ No

d)  Has an Applicant or any natural person for whom this insurance is intended given notice under the provisions of any other previously or currently purchased insurance policy of any facts or circumstances which may give rise to a claim against any of them?    ☐ Yes  ☑ No

REGARDING THESE QUESTIONS C & D, IT IS AGREED THAT IF ANY SUCH CLAIMS, DEMANDS OR NOTICES EXIST, ANY CLAIM BASED UPON, ARISING FROM OR IN ANY WAY RELATED TO SUCH MATTERS SHALL BE EXCLUDED FROM THE INSURANCE BEING APPLIED FOR. THE INFORMATION PROVIDED IN THIS APPLICATION IS FOR UNDERWRITING PURPOSES ONLY AND DOES NOT CONSTITUTE NOTICE TO THE COMPANY OF A CLAIM OR POTENTIAL CLAIM UNDER ANY POLICY. IF YOU INTEND TO NOTICE A CLAIM OR POTENTIAL CLAIM FOR POSSIBLE COVERAGE, PLEASE COMPLY WITH THE NOTICE OF CLAIM CONDITIONS/PROVISIONS FOUOND IN YOUR POLICY.

### FRAUD WARNING STATEMENTS

**ALABAMA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

**ARKANSAS APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**DISTRICT OF COLUMBIA APPLICANTS:** IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

**FLORIDA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**HAWAII APPLICANTS:** FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH.

**KANSAS APPLICANTS:** A " FRAUDULENT INSURANCE ACT " MEANS AN ACT COMMITTED BY ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO.

**KENTUCKY APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**LOUISIANA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**MAINE APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**MARYLAND APPLICANTS:** ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NEW JERSEY APPLICANTS: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NEW MEXICO APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

OHIO APPLICANTS: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

OKLAHOMA APPLICANTS: WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

OREGON APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD AN INSURER: (1) BY SUBMITTING AN APPLICATION OR; (2) FILING A CLAIM CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT MAY BE VIOLATING STATE LAW.

PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

PUERTO RICO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY PRESENTS FALSE INFORMATION IN AN INSURANCE APPLICATION, OR PRESENTS, HELPS, OR CAUSES THE PRESENTATION OF A FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS OR ANY OTHER BENEFIT, OR PRESENTS MORE THAN ONE CLAIM FOR THE SAME DAMAGE OR LOSS, SHALL INCUR A FELONY AND, UPON CONVICTION, SHALL BE SANCTIONED FOR EACH VIOLATION WITH THE PENALTY OF A FINE OF NOT LESS THAN FIVE THOUSAND (5,000) DOLLARS AND NOT MORE THAN TEN THOUSAND (10,000) DOLLARS, OR A FIXED TERM OF IMPRISONMENT FOR THREE (3) YEARS, OR BOTH PENALTIES. IF AGGRAVATED CIRCUMSTANCES PREVAIL, THE FIXED ESTABLISHED IMPRISONMENT MAY BE INCREASED TO A MAXIMUM OF FIVE (5) YEARS; IF EXTENUATING CIRCUMSTANCES PREVAIL, IT MAY BE REDUCED TO A MINIMUM OF TWO (2) YEARS.

RHODE ISLAND APPLICANTS: "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

TENNESSEE APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

VIRGINIA APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

VERMONT APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.

WASHINGTON APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS."

WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT TO PRISON.

NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTHORIZED OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENTS TO BIND THE INSURANCE. THE "EFFECTIVE DATE" IS THE DATE THE COVERAGE IS BOUND OR THE FIRST DAY OF THE CURRENT POLICY PERIOD, WHICHEVER IS LATER. SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND IT WILL BE ATTACHED TO AND BECOME A PART OF THE POLICY. ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF. THIS APPLICATION MUST BE SIGNED BY THE CHAIRMAN OF THE BOARD, CHIEF EXECUTIVE OFFICER, CHIEF FINANCIAL OFFICER OR THE PRESIDENT OF THE COMPANY.

SIGNATURE: _____   Glenn A. Haslam

TITLE: President     DATE: 12/29/15

**THIS PAGE CONTAINS STATE SPECIFIC LANGUAGE OR REQUIREMENT FOR APPLICANTS RESIDING IN THE FOLLOWING STATES: Florida, Iowa, Maine and New Hampshire**

**Applicable to Maine applicants only**

THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTHORIZED OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS. THE "EFFECTIVE DATE" IS THE DATE THE COVERAGE IS BOUND OR THE FIRST DAY OF THE CURRENT POLICY PERIOD, WHICHEVER IS LATER. SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND IT WILL BE ATTACHED TO AND BECOME A PART OF THE POLICY. ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF. THIS APPLICATION MUST BE SIGNED BY THE CHAIRMAN OF THE BOARD, CHIEF EXECUTIVE OFFICER, CHIEF FINANCIAL OFFICER OR THE PRESIDENT OF THE COMPANY.

SIGNATURE: _____

TITLE: _____   DATE: _____

Required applicants in Florida, Iowa & New Hampshire

Name of Broker: _____   Broker License #. _____
                                            *(Required: FLORIDA only)*

Print Name: _____   Name of Agency _____

Address _____

Date: _____        Broker Signature

_____
                                  *(Required: NEW HAMSPHIRE only)*

PLEASE SUBMIT THIS PROPOSAL AND APPROPRIATE MATERIALS TO:

(Enter the address and phone number of the local The Hartford office.)

# EXHIBIT 2

# SCARLETT, CROLL & MYERS, P.A.

ATTORNEYS AT LAW
SUITE 600
201 NORTH CHARLES STREET
BALTIMORE, MARYLAND 21201-4110

(410) 468-3100
TELEFAX (410) 332-4026

ROBERT B. SCARLETT*
ANDREW M. CROLL
MICHAEL S. MYERS

RScarlett@ScarlettCroll.com

VIRGINA OFFICE:
515 KING STREET
SUITE 400
ALEXANDRIA, VIRGINIA 22314

* ALSO ADMITTED IN D.C.

November 11, 2015

**VIA FEDERAL EXPRESS**

Mr. Glenn A. Haslam
12154 Mt. Albert Road
Ellicott City, MD 21042

Mr. Gary Garofalo
2818 Hunt Valley Drive
Glenwood, MD 21738

Mr. Richard Lombardo
3194 Danmark Drive
West Friendship, MD 21794

Mr. Lawrence Kraemer
c/o Harkins Builders, Inc.
2201 Warwick Way
Marriottsville, MD 21104

Mr. Richard G. Arnold
2929 Excelsior Springs Court
Ellicott City, MD 21042

Re:   Robert J. Buczkowski and Madison Mechanical, Inc.

Gentlemen:

The undersigned represents Robert Buczkowski with respect to his interests in Madison Mechanical OS Corp., which owns directly, or indirectly Madison Mechanical, Inc. and Madison Contracting, LLC.  It is my understanding the ownership of Madison Mechanical OS Corp. ("Madison Mechanical") is as follows:

{00162128.DOCX.1}

Mr. Glenn A. Haslam
Mr. Gary Garofalo
Mr. Richard Lombardo
Mr. Lawrence Kraemer
Mr. Richard G. Arnold
November 11, 2015
Page 2

| | | |
|---|---|---|
| Glenn A. Haslam | - | 54% |
| Gary Garofalo | - | 13% |
| Richard Lombardo | - | 10% |
| Lawrence Kraemer | - | 10% |
| Robert Buczkowski | - | 13% |

Is also my understanding from my client that Madison Mechanical is currently operating and has assets, primarily being accounts receivables, trucks other fixed assets. In addition to these assets, Madison Mechanical also has work in progress.

It has come to my client's attention that a new limited liability company was formed on August 20, 2015 known as Madison Mechanical Contracting, LLC. The ownership of this company is divided among the following:

> Glenn A. Haslam
> Gary Garofalo
> Richard Lombardo
> Lawrence Kraemer
> Richard G. Arnold

It appears to my client that the purpose of Madison Mechanical Contracting, LLC is to divert the business and client base of Madison Mechanical for the benefit of Madison Mechanical Contracting, LLC and to the detriment of Madison Mechanical. If that is true, please consider this letter notice that such action could be considered legally improper in that such a diversion is a diversion of business opportunity directly and financially harming my firm's client. On initial review, such actions, if true, could lead to a cause of action for breach of fiduciary duty, interference with a contractual relationship, interference with an economic relationship, civil conspiracy and other potential causes of action. I am especially suspicious that this diversion of corporate opportunity and contracts is an objective of Madison Mechanical Contracting, LLC simply by the fact that the name of Madison Mechanical and Madison Mechanical Contracting, LLC are so similar.

If it is your plan to divert the contracts and corporate opportunity of Madison Mechanical, please consider this letter putting you on notice of the potential litigation liability of such actions both on a corporate and personal level. Please cease and desist any such action to divert any corporate opportunity that Madison Mechanical has to either yourselves or Madison Mechanical Contracting, LLC without the consent of my firm's client, Robert Buczkowski.

{00162128.DOCX.1}

Mr. Glenn A. Haslam
Mr. Gary Garofalo
Mr. Richard Lombardo
Mr. Lawrence Kraemer
Mr. Richard G. Arnold
November 11, 2015
Page 3

My client has made it clear to me that he does not want to enter into civil litigation, given his long-standing relationship with each of you. He would prefer to sit down and try to work out any potential differences while at the same time preserving his thirteen percent (13%) interest in Madison Mechanical. I would suggest that each of you take this letter to your respective attorneys so they can advise you as to the law on this matter and then call me so we can schedule a convenient date and time to further discuss the issues set forth in this letter. Once again, I must emphasize that my client would rather discuss these matters with each of you and try to resolve the differences between the parties in an amicable fashion.

Please either contact me or have your counsel contact me within thirty (30) days from the date of this letter to avoid potential legal action.

I will look forward to working with each of you.

Very truly yours,

SCARLETT, CROLL & MYERS, P.A.

Robert B. Scarlett

RBS/akr

cc: Robert Buczkowski (via email)

{00162128.DOCX.1}

# EXHIBIT 3

| Date | Claim Timeline | Comments |
|---|---|---|
| 4/6/2015 | Policy Term 5/1/2015 – 5/1/2016 | App completed and signed by R Buczkowki. No reference to claim, his ownership interest showing at 13% |
| 12/29/2015 | Proposed policy term for MMCLLC 1/1/2016 - 2017 | App Completed and signed by G Haslam with Brant's assistance. In the name of Madison Mechanical Contracting LLC only. No reference to prior claims or incidents for this new operation; R Buczkowski not part of the ownership structure. |
| 4/14/2016 | Policy Term 5/1/2016 – 5/1/2017 | App completed and signed by G Haslam with Brant's help. Box was checked on this application indicating that they had no knowledge of any potential claim. Since this was a renewal application they were not required to answer this question. The new ownership structure for Madison OS was declared. |
| 7/14– 7/19/2016 | BBSCLAW requests & PB provides copies of 16-17 policies | |
| 8/1/2016 | G Jones advises B Franey that BBSCLAW has put Hartford on Notice of claim/Buczkowski Suit. Email identified suit documents that were not attached to email<br>• Complaint that files was served in June<br>• Counterclaim/Countersuit filed against Buczkowski in Late July | |
| 8/2/2016 | Documents sent by BBCLAW to B Franey at Glen's request to G Jones. Defendant Madison Mechanical Contracting LLC Madison OS and others<br>• Complaint & Writ of Summons | Reference to 11/11/2015 letter is made in one of the documents (Counterclaim?) |

| Date | Claim Timeline | Comments |
|---|---|---|
| | • Answer & Affirmative Defenses of Defendants<br>• Counterclaim | |
| | Letter to MD Insurance Dept?? | |
| 10/4/2016 | Letter from MD Ins Department requesting files | |
| 10/25/2016 | Copy of Hartford's 10/18/16 Reservation of Rights to Madison received by B Franey from M Knox, adjuster by email | 1st Hartford request for a copy of the 11/11/15 Letter |
| 12/20/2016-2/8/2017 | Email exchange between G Jones & M Knox re outstanding legal defense payments to Madison's Expert and Hartford's need to be able to separate claim between covered and uncovered items. Glenn is cc'd | |
| 2/8/2017 | Part of email trail noted above. Email from Michael Knox specifically requests among other things a copy of the 11/11/15 letter | 2nd Hartford request for a copy of the 11/11/15 Letter |
| 2/27/2017 | Part of email trail noted above. Email from G Jones to M Knox with a cc to Glenn provides requested documents including 11/11/2015 letter. | Hartford receives copy of 11/11/15 letter among other documents |
| 2/27/2017 | Glenn forwards documents and email trail to B Franey w/cc G Garofalo. | Aillant receives copy of 11/11/15 letter. |
| 3/2/2017 | Part of email trail between Hartford and G Jones. M Knox, Hartford confirms receipt of Documents. Cc to Glenn | |
| 4/19/2017 | Hartford Claim Denial | |
| 2/28/2018 | Motions for Summary Judgment both sides still pending per M Knox | |

# EXHIBIT 4



THE HARTFORD

Twin City Fire Insurance Co

Name of Insurance Company to which application is made

# PRIVATE COMPANY RENEWAL APPLICATION

NOTICE: LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

## 1. GENERAL INFORMATION

a) Name of Applicant Company: Madison Mechanical Contracting LLC, Madison Mechanical Inc. Madison Mechanical OS Q
(Together with any subsidiaries for whom this policy is intended, hereinafter, "Applicant(s).")

b) Address: 5621 Old Frederick Rd Ste 1; Catonsville, Md  21228

## 2. COVERAGE RENEWING

a) Are the Applicants requesting to renew coverage as-expiring?  ☑Yes ☐No
If "YES," please proceed directly to section 4.
If "NO," please complete the rest of this section and section 3 before proceeding to section 4.

b) Are the Applicant requesting higher limits at renewal for any coverage renewing?  ☐Yes ☑No
Please check the boxes below with an "X" to indicate which coverage is being renewed. If you are not renewing a type of coverage, please leave the rest of the row blank.

| Coverage Renewing | Higher Limit Requested | Limits Requested | Current Limits |
|---|---|---|---|
| Directors, Officers & Entity Liability<br>☐Yes ☐No | ☐Yes ☐No | | |
| Employment Practices Liability<br>☐Yes ☐No | ☐Yes ☐No | | |
| Fiduciary Liability<br>☐Yes ☐No | ☐Yes ☐No | | |
| Crime<br>☐Yes ☐No | ☐Yes ☐No | | |
| Kidnap & Ransom/Extortion<br>☐Yes ☐No | ☐Yes ☐No | | |

This application is not used to request a Coverage Part not currently purchased. If you would like to purchase a Coverage Part for the first time, please request a new business application.

3.  **PRIOR KNOWLEDGE**

The following question must be answered if the Applicants are requesting higher limits at renewal.

Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?  ☐Yes ☑No
If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.  HOWEVER, THIS EXCLUSION SHALL APPLY UNDER A SPECIFIC COVERAGE PART ONLY TO THE EXTENT THAT THE "LIMITS REQUESTED" ARE HIGHER THAN THE "CURRENT LIMTS" PURCHASED FOR THAT COVERAGE PART.

4.  **APPLICANT INFORMATION**

a)  Total number of employees currently:  26

| Please provide the following based on the Applicants' most recent fiscal year end ("FYE") and the year prior. Please indicate negative figurers using "( )" or "-" | Most Recent FYE (Month/Year) 12/2015 (MADISON MECHANICAL, INC. & FANNIE DORSEY ROAD LLC) |
|---|---|
| Current Assets | $2,986,886 |
| Goodwill | |
| Total Assets | $2,986,886 |
| Current Liabilities | $3,872,261 |
| Long Term Debt | $2,713,699 |
| Total Liabilities | $6,585,961 |
| Retained Earnings | ($3,599,275) |
| Shareholder Equity | 200 |
| Total Revenues | $12,391,721 |
| Net income after taxes | ($254,164) |
| Interest Expense | 296,474 |
| Cash flow from Operations | |

If the response is "YES" to any question below, please provide full details (attach separate sheet if necessary).
b)  Has an Applicant experienced, within the past 12 months, any of the following events:

i.   Merger, acquisition, sale of any assets or other similar transaction?  ☑Yes ☐No
ii.  Any financial restructuring, reorganization or filing for bankruptcy?  ☑Yes ☐No    SEE
iii. Any downsizing, layoffs, reduction in force, plant or office closings?  ☑Yes ☐No    ATTACHED SHEET

Does an Applicant anticipate any of the preceding events within the next 12 months?  ☑Yes ☐No

c)  Is an Applicant a Federal or other Governmental Contractor?  ☐Yes ☑No

**5. DIRECTORS, OFFICERS & ENTITY LIABILITY COVERAGE PART** (Complete Only if Renewing this Coverage)

*(SEE ATTACHED SHEET) ⋆*

a) How many total individuals/entities own shares in the Applicant listed in 1(a) above? _____

b) What is the total number of outstanding shares in the Applicant listed in 1(a) above? _____

c) What is the total number of shares referenced in question (b) above held directly or beneficially by directors, officers or equivalents? _____

| For all classes of stock or other ownership of the Applicant listed in 1(a) above, list all shareholders over 5% (*attach additional sheet if required*) | Percentage Held | Is she/he currently a Director or Officer? |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

If the response is "YES" to any question below, please provide full details (attach separate sheet if necessary).

d) Within the past 12 months, has there been any change in an Applicants' ownership?  ☐Yes ☐No

e) Within the past 12 months, has an Applicant been in breach or violation of any debt covenant or loan agreement or any other material contractual obligation?  ☐Yes ☑No

f) Are the Applicants currently anticipating any public or private offering of securities (including, but not limited to, IPO, Secondary Exchanges, or Crowd Funding/Crowd Financing)?  ☐Yes ☑No

**PLEASE PROVIDE THE FOLLOWING INFORMATION:**

Most recent audited Financial Statement and CPA opinion

**6. EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** (Complete Only if Renewing this Coverage)

a) Please list the following information based on the Applicants' current facts as of today:

|   | | Currently |
|---|---|---|
| i. | Non-Union Full Time US Employees | 25 |
| ii. | Non-Union Part Time US Employees | 1 |
| iii. | Independent Contractors | |
| iv. | Union Employees | |
| v. | Foreign Based Employees | |
| vi. | TOTAL EMPLOYEES and CONTRACTORS *(line vi should be the sum of lines i-v.)* | 126 |

vii. Of the total number of employees/contractors listed above, please indicate how many are located in:

|   | Currently |
|---|---|
| California | 0 |
| New Jersey | 0 |

b) Please also list the following:

|   | | Within Last 12 months: | Within Last 24 months: |
|---|---|---|---|
| i. | Involuntary Terminations: | | 6 |
| ii. | Layoffs: | 7 | 17 |

- Was severance available to all affected?  ☐N/A ☐Yes ☑No
- Did all severance recipients sign a release?  ☐N/A ☐Yes ☑No

If "NO" to either question, please provide full details (attach a separate sheet if necessary).

c) Do the Applicants have written procedures in place regarding:
    i. Sexual Harassment ☑Yes ☐No
    ii. Discrimination ☑Yes ☐No

d) Within the past 12 months, has an Applicant updated or modified its employment practices handbook, or human resources policies, procedures, or department? ☐Yes ☑No

---

**7. FIDUCIARY LIABILITY COVERAGE PART (Complete Only if Renewing this Coverage)**

    a) For each plan to be covered, please list the following:

| PLAN NAME | PLAN TYPE* | # OF PARTICIPANTS | PLAN ASSETS (CURRENT YEAR) | PLAN STATUS** |
|---|---|---|---|---|
| MADISON MECHANICAL CONTRACTING LLC 401K/PROFIT SHARING | DC | 67 | $4,027,750.74 | ACTIVE |
| | | | | |
| | | | | |

\* Plan Type: Defined Benefit (DB), Defined Contribution (DC), Welfare (W), Employee Stock Ownership (ESOP) or Other (O).
\*\* Plan Status: Active (A), Merged (M), Terminated (T) or Frozen (F).

If the response is "YES" to any question below, please provide full details (attach separate sheet if necessary).

b) Are any plans not in compliance with ERISA or plan agreements? ☐Yes ☑No

c) Within the past 12 months has there been any reduction in benefits, including the merging, termination or creation of any plan(s)? ☐Yes ☑No

d) Does an Applicant anticipate any reduction in benefits in the coming 12 months including the merging, termination or creation of any plan(s)?? ☐Yes ☑No

---

**8. CRIME COVERAGE PART (Complete Only if Renewing this Coverage)**

a) Are all of the Applicants' locations in the United States? ☑Yes ☐No

b) Do the Applicants prohibit any employee (other than the owner) who reconciles bank statements from also:
    i. Signing checks ☐Yes ☑No
    ii. Handling bank deposits ☐Yes ☑No
    iii. Making withdrawals ☐Yes ☑No

If "NO" to any of the questions above, please provide full details (attach separate sheet if necessary).
THIS POLICY ISN'T ENFORCED BECAUSE OF A LIMITED STAFF. CHECKS OVER A CERTAIN DOLLAR AMOUNT REQUIRES TWO SIGNATURES

c) Have there been any changes to the Applicants' system of internal controls in the past 12 months? ☐Yes ☑No

---

**9. KIDNAP AND RANSOM/EXTORTION COVERAGE PART (Complete Only if Requesting this Coverage)**

a) Please complete the following regarding the Applicants for each foreign (non-U.S.) location:
   (If none, leave this space blank.)

| Country, city, and description of operations | # of Employees |
|---|---|
| | |
| | |
| | |

b) Please complete the following regarding travel to foreign countries:
   (If none, leave this space blank.)

| Country and city(ies) | Number of Trips Per Year | Average length of stay | # of Employees |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

c) If an Applicant has foreign locations or travel, describe security precautions on a separate sheet.

**California Notice:** The Hartford may charge a fee if this bond or policy is cancelled before the end of its term. The fee can range between 5% to 100% of the pro rata unearned premium. Please refer to the terms and conditions stated in the policy or bond. This notice does not apply to cancellations initiated by The Hartford.

## FRAUD WARNING STATEMENTS

**ALABAMA:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

**ARKANSAS APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**DISTRICT OF COLUMBIA APPLICANTS:** IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT."

**FLORIDA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**HAWAII APPLICANTS:** FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH.

**KANSAS APPLICANTS:** A " FRAUDULENT INSURANCE ACT " MEANS AN ACT COMMITTED BY ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO.

**KENTUCKY APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION

CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

LOUISIANA APPLICANTS:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

MAINE APPLICANTS:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

MARYLAND APPLICANTS: EFFECTIVE JANUARY 1, 2013, ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NEW JERSEY APPLICANTS:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NEW MEXICO APPLICANTS:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

OHIO APPLICANTS:  ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

OKLAHOMA APPLICANTS:  WARNING:  ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

OREGON APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD AN INSURER: (1) BY SUBMITTING AN APPLICATION OR; (2) FILING A CLAIM CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT MAY BE VIOLATING STATE LAW.

PENNSYLVANIA APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

PUERTO RICO APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY PRESENTS FALSE INFORMATION IN AN INSURANCE APPLICATION, OR PRESENTS, HELPS, OR CAUSES THE PRESENTATION OF A FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS OR ANY OTHER BENEFIT, OR PRESENTS MORE THAN ONE CLAIM FOR THE SAME DAMAGE OR LOSS, SHALL INCUR A FELONY AND, UPON CONVICTION, SHALL BE SANCTIONED FOR EACH VIOLATION WITH THE PENALTY OF A FINE OF NOT LESS THAN FIVE THOUSAND (5,000) DOLLARS AND NOT MORE THAN TEN THOUSAND (10,000) DOLLARS, OR A FIXED TERM OF IMPRISONMENT FOR THREE (3) YEARS, OR BOTH PENALTIES.  IF AGGRAVATED CIRCUMSTANCES PREVAIL, THE FIXED ESTABLISHED IMPRISONMENT MAY BE INCREASED TO A MAXIMUM OF FIVE (5) YEARS; IF EXTENUATING CIRCUMSTANCES PREVAIL, IT MAY BE REDUCED TO A MINIMUM OF TWO (2) YEARS.

RHODE ISLAND APPLICANTS: "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR  BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**TENNESSEE APPLICANTS:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**VIRGINIA APPLICANTS:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**VERMONT APPLICANTS:    ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.**

**WASHINGTON APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS."**

**WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

**NEW YORK APPLICANTS:    ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."**

THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE.  THE UNDERSIGNED AUTHORIZED OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENTS TO BIND THE INSURANCE.  THE "EFFECTIVE DATE" IS THE DATE THE COVERAGE IS BOUND OR THE FIRST DAY OF THE CURRENT POLICY PERIOD, WHICHEVER IS LATER.  SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND IT WILL BE ATTACHED TO AND BECOME A PART OF THE POLICY.  ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.  THIS APPLICATION MUST BE SIGNED BY THE CHAIRMAN OF THE BOARD, CHIEF EXECUTIVE OFFICER, CHIEF FINANCIAL OFFICER OR THE PRESIDENT OF THE COMPANY.

SIGNATURE _____

TITLE: ___PRESIDENT_____    DATE _4/14/16_____

PLEASE SUBMIT THIS PROPOSAL AND APPROPRIATE MATERIALS TO:

(Enter the address and phone number of the local The Hartford office.)

Required applicants in Florida, Iowa & New Hampshire

NAME OF BROKER_____    BROKER LICENSE NO_____

ADDRESS _____

BROKER SIGNATURE _(Required: New Hampshire only)_____

THE HARTFORD
PRIVATE COMPANY RENEWAL APPLICATION

*SECTION 4: APPLICANT INFORMATION*

**MADISON MECHANICAL INC. & OS CORP**

b.  Has the Applicant experienced, within the past 12 months, any of the following events:

      i.   Merger, acquisition, sale of any assets or other similar transactions?     Yes

         The land and building owned by Fannie Dorsey Road, LLC  was sold in December 2015.
         Fannie Dorsey Road, LLC is under the corporate structure of Madison Mechanical OS Corp.
         In 2016, Madison Mechanical, Inc. sold its remaining vehicles and trailers to Madison Mechanical Contracting, LLC.
         Within the current year all remaining assets of Madison Mechanical, Inc. will be sold to the new LLC.

      ii.   Any financial restructuring, reorganization or filing for bankruptcy?     Yes

         The Corporate Loan that Madison Mechanical, Inc. had with BB&T was refinanced by Howard Bank in 2015.
         A significant portion of this loan was paid down when the land and building were sold. Monthly payments are
         currently being made and the loan will be paid off by the end of 2016.

         In 2016, there will be no new contracts signed by Madison Mechanical, Inc. All new contracts will be under
         Madison Mechanical Contracting, LLC. All current work in process by Madison Mechanical, Inc. should be
         completed by October 2016.

      iii.   Any downsizing, layoffs, reduction in force, plant or office closing?     Yes

         Madison Mechanical, Inc. continued to downsize during 2015. On 1/1/16 the remaining employees
         became employees of Madison Mechanical Contracting, LLC.

Does Applicant anticipate any of the preceding events within the next 12 months?     Yes

         Madison Mechanical, Inc. and Madison Mechanical OS Corp will be completely dissolved by the end of 2016 and all activity
         will be soley under the new LLC in 2017. Currently work is being performed by both companies simultaneously.

**THE HARTFORD**
**PRIVATE COMPANY RENEWAL APPLICATION**

*SECTION 5: DIRECTORS, OFFICERS & ENTITY LIABILITY COVERAGE*

**MADISON MECHANICAL INC. & OS CORP**

a. How many total individuals/entities own shares?                                    4

b. What is the total number of outstanding shares?                              200

c. What is the total number of shares held directly or beneficially by directors , officers or equivalents?                    124

| Owners | Previous Ownership % | Current Ownership % | Director/ Officer |
|---|---|---|---|
| Glenn Haslam | 54.00% | 62.07% | Yes |
| Robert Buczkowski | 13.00% | 0.00% | N/A |
| Larry Kraemer | 10.00% | 11.49% | No |
| Richard Lombardo | 10.00% | 11.49% | No |
| Gary Garofalo | 13.00% | 14.94% | No |
| Total | 100% | 100% | |

d. Within the past 12 months, has there been a change in Applicants' ownership?                    Yes

e. Within the past 12 months, has an Applicant been in breach or violation of any debt covenant or loan
   agreement or any other material contractual obligation?                    No

f. Are the Applicants currently anticipating any public or private offering of securities?                    No

**MADISON MECHANICAL CONTRACTING LLC**

a. How many total individuals/entities own shares (or have an ownership percentage) ?                    3

b. What is the total number of outstanding shares?                              0

c. What is the total number of shares held directly or beneficially by directors , officers or equivalents?                    0

| Owners | Current Ownership % | Director/ Officer |
|---|---|---|
| Glenn Haslam | 34.00% | Yes |
| Richard Arnold | 34.00% | NO |
| MMINV, LLC | 32.00% | No |
| Total | 100% | |

d. Within the past 12 months, has there been a change in Applicants' ownership?                    No          (Started 1/1/16)

e. Within the past 12 months, has an Applicant been in breach or violation of any debt covenant or loan
   agreement or any other material contractual obligation?                    No

f. Are the Applicants currently anticipating any public or private offering of securities?                    No

# EXHIBIT 5

# IMPORTANT NOTICE
## (Privately Held)

As a Hartford insured, you now have free and exclusive access to a service designed to help you better protect your company from employment-related litigation. Go to our website, www.hartfordhelp.com and register your company today.

**Your registration Code is: HFP2-07**

This site provides you with timely information on employment litigation trends, laws and best practices. As a Hartford EPL policyholder, you have access to enhanced services such as:

- Online Sexual Harassment training for your employees
- Anti-Discrimination training
- Training designed to help you to comply with California AB 1825
- Sample policies and procedures

We hope you take advantage of these valuable services offered free of charge exclusively to Hartford Employment Practices Liability customers.

Thank you for choosing The Hartford.



HR 00 H094 00 0307                         © 2007, The Hartford                         Page 1 of 1

42 KB 0256935-15     5/01/15

TWIN CITY FIRE INSURANCE CO.
INDIANAPOLIS, IN 46268-0930

a stock insurance company, herein
called the Insurer





# PRIVATE CHOICE ENCORE!! POLICY

## DECLARATIONS

**Policy Number:** 42 KB 0256935-15

**NOTICE: THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN, COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND PAYMENT OF DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY. NOTICE OF A CLAIM MUST BE GIVEN TO THE INSURER AS SOON AS PRACTICABLE AFTER A NOTICE MANAGER BECOMES AWARE OF SUCH CLAIM, BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE TERMINATION OF THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1: Named Entity and Address:**

MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.
1539 FANNIE DORSEY ROAD
SYKESVILLE, MD 21784

**ITEM 2: Producer's Name and Address:**

80713
FRANEY MUHA ALLIANT INS SVCS I
9901 BUSINESS PARKWAY SUITE B
LANHAM, MD 20706

**ITEM 3: Policy Period:**

    **(A)**  Inception Date:   5/01/15

    **(B)**  Expiration Date:   5/01/16
          12:01 a.m. local time at the address shown in ITEM 1

**ITEM 4: Premium:**   $14,561



**ITEM 5:**   **Liability Coverage Part Elections:**

Only those **Liability Coverage Parts** and Coverage Features that are designated with an "X" are included under this Policy

[ X ]   "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" $ __2,000,000__

[ ]   "Defense Outside the Limit of Liability (50%) for the following coverage parts:

  [ ]   Directors, Officers and Entity Liability Coverage Part

  [ ]   Employment Practices Liability Coverage Part

  [ ]   Fiduciary Liability Coverage Part
  [ ]   Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability

If both the :"Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" and the "Defense Outside the Limit of Liability (50%)" options are selected, the maximum aggregate defense outside the limits paid by the Insurer shall be equal to 50% of the "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**".

| COVERAGE PART | AGGREGATE LIMIT OF LIABILITY | RETENTION | PRIOR OR PENDING DATE | COVERAGE FEATURES |
|---|---|---|---|---|
| [X] Directors, Officers and Entity Liability | $ __2,000,000__ | Insured Person Liability $ 0<br><br>Corporate Reimbursement $ __10,000__ | __05/01/09__ | [X] **Entity Liability Coverage**<br>Retention:<br>$ __10,000__<br>Prior or Pending Date: __05/01/09__ |
| [X] Employment Practices Liability | $ __2,000,000__ | $ __15,000__ | __05/01/09__ | [X] **Third Party Liability Coverage**<br>Sublimit of Liability:<br>$ __2,000,000__<br>Retention:<br>$ __15,000__<br>Prior or Pending Date: __05/01/09__ |
| [X] Fiduciary Liability | $ __2,000,000__ | $ __0__ | __05/01/09__ | [X] **Settlement Program Coverage**<br>Retention:<br>$ 0<br>Prior or Pending Date: __05/01/09__<br><br>[X] HIPAA Sub-Limit of Liability:<br>$ __25,000__ |
| [ ] Miscellaneous Professional Liability | $ __NOT COVERED__ | $ __NOT COVERED__ | __NOT COVERED__ | [ ] Per Claim Limit of Liability $ NOT COVERED<br><br>[ ] Retroactive Date:<br>NOT COVERED |

**ITEM 6:**      **Non-Liability Coverage Part Elections:**

Only those **Non-Liability Coverage Parts** that are designated with an "X" are included under this Policy

| COVERAGE PART | LIMIT(S) OF INSURANCE | RETENTION |
|---|---|---|
|  Crime | See Crime Coverage Part Dec. Page, Form No. PE00H11702 0507 | See Crime Coverage Part Dec. Page, Form No. PE00H11702 0507 |
| ☐ Kidnap and Ransom/Extortion | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No. NOT COVERED | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No. NOT COVERED |

**ITEM 7:**      **Extended Reporting Period:**

**(A)** Duration:      12 MONTHS

**(B)** Premium*:      100%

* Premium for the Extended Reporting Period elected shall be the indicated percentage of the sum of the annual premium specified for all **Liability Coverage Parts,** plus the annualized amounts of any additional premiums charged during the Policy Period. The Extended Reporting Period is not available for the **Non-Liability Coverage Parts.**

**ITEM 8:**      **Endorsements:**

This Policy includes the following endorsements at issuance:

SEE FORM GU207 (SCHEDULE OF FORMS AND ENDORSEMENTS)

**ITEM 9:**      **Address For Notices to Insurer:**

**For Claims other than Kidnap and Ransom/Extortion:**

The Hartford
Claims Department
Hartford Financial Products
277 Park Ave., 15 th Floor
New York, New York 10172

**For all notices other than Claims:**

The Hartford
Product Services
Hartford Financial Products
277 Park Ave., 15 th Floor
New York, New York 10172

For Kidnap and Ransom/Extortion Claims see Kidnap and Ransom/Extortion Coverage Part Declarations.

This Policy shall not be valid unless countersigned by the Insurer's duly authorized representative.

Date of Issue:      05/01/15

Countersigned by: _Thomas C. Tucker_
                                    **Authorized Representative**

PE 00 H002 03 0507                        © 2007, The Hartford                        Page 3 of 3



THE
HARTFORD

# PRIVATE CHOICE ENCORE®!! POLICY
## CRIME COVERAGE PART
## DECLARATIONS

In return for the payment of the premium, and subject to all the terms of this **Non-Liability Coverage Part**, we agree with you to provide the insurance stated in this **Non-Liability Coverage Part**.

**ITEM:**

**1.  Coverages, Limits of Insurance and Retentions:**
Insuring Agreements, Limits of Insurance and Retention Amounts shown below are subject to all of the terms of this **Non-Liability Coverage Part** that apply.

| Insuring Agreements Forming Part of This Non-Liability Coverage Part | Limit(s) of Insurance | Retention Amount(s) |
|---|---|---|
| 1.  Employee Theft | $  500,000 | $  5,000 |
| 2.  Depositors Forgery or Alteration | $  500,000 | $  5,000 |
| 3.  Inside The Premises - *Money, Securities and Other Property* | $  25,000 | $  1,000 |
| 4.  Outside The Premises - *Money, Securities and Other Property* | $  25,000 | $  1,000 |
| 5.  Computer and Funds Transfer Fraud | $  500,000 | $  5,000 |
| 6.  Money Orders and Counterfeit Currency | $  50,000 | $  0 |

**2.  Cancellation of Prior Insurance:**  By acceptance of this **Non-Liability Coverage Part** you give us notice canceling prior policies or bonds numbered 42 KB 0256935-14           .  The cancellation(s) is effective at the time this **Non-Liability Coverage** Part becomes effective.

**3.  Form Numbers of Endorsements Forming Part of This Non-Liability Coverage Part When Issued:**
SEE FORM GU207 (SCHEDULE OF FORMS AND ENDORSEMENTS)



# ENDORSEMENT

GU 207
(6-78)

This endorsement, effective on     5/01/15                                        at 12:01 A.M. standard time, forms a part of

Policy No.   42 KB 0256935-15          of the              TWIN CITY FIRE INSURANCE CO.

Issued to    MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

André A. Napoli, President

### SCHEDULE OF FORMS AND ENDORSEMENTS

|    |             |       |                                                                                |
|----|-------------|-------|--------------------------------------------------------------------------------|
|    | RN00N02600  | 5/93  | IN WITNESS PAGE                                                                 |
|    | PE00H55500  | 5/07  | PRIVATE CHOICE ENCORE!! POLICY                                                  |
|    | PE00H01302  | 5/07  | DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART                          |
|    | PE00H01401  | 5/07  | EMPLOYMENT PRACTICES LIABILITY COVERAGE PART                                    |
|    | PE00H01503  | 6/08  | FIDUCIARY LIABILITY COVERAGE PART                                               |
|    | PE00H11802  | 5/07  | CRIME COVERAGE PART                                                             |
| 1  | HG00H06801  | 2/12  | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM                                  |
| 2  | PE00H01101  | 5/07  | PERCENTAGE SHAREHOLDER EXCLUSION (DIRECTORS, OFFICERS AND ENTITY LIABILITY)     |
| 3  | PE00H07402  | 6/08  | ADD SUBSIDARY ENDORSEMENT                                                       |
| 4  | PE00H18601  | 5/07  | AMENDED DECLARATIONS - SPLIT PRIOR OR PENDING DATE FOR EMPLOYMENT PRACTICES LIABILITY |
| 5  | PE00H18701  | 5/07  | AMENDED DECLARATIONS SPLIT PRIOR OR PENDING DATE FOR DIRECTORS,OFFICERS AND ENTITY |
| 6  | PE00H18801  | 5/07  | AMENDED DECLARATIONS - SPLIT PRIOR OR PENDING DATE FOR FIDUCIARY LIABILITY      |
| 7  | PE00H27601  | 5/07  | STATE AMENDATORY INCONSISTENCY ENDORSEMENT                                      |
| 8  | PE00H62900  | 7/09  | EMPLOYEE DATA PRIVACY LIABILITY ENDORSEMENT (EMPLOYMENT PRACTICES LIABILITY)    |
| 9  | PE00H68500  | 1/11  | WORKPLACE BULLYING COVERAGE                                                     |
| 10 | PE19H00401  | 10/11 | MARYLAND AMENDATORY ENDORSEMENT                                                 |

Ed. Date (04/02)
GU 207 (6-78)

## ENDORSEMENT

GU 207
(6-78)

This endorsement, effective on   5/01/15                at 12:01 A.M. standard time, forms a part of

Policy No.   42 KB 0256935-15        of the            TWIN CITY FIRE INSURANCE CO.

Issued to   MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

André A. Napoli, President

SCHEDULE OF FORMS AND ENDORSEMENTS

| 11 | PE00H70900 | 12/14 | DECEPTION FRAUD ENDORSEMENT     (CRIME COVERAGE PART) |
| 12 | PE00H71000 | 12/14 | INCLUDE COVERAGE FOR VIRTUAL   CURRENCY - SUBLIMITED (CRIME COVERAGE PART) |
| 13 | HG00H00901 | 7/08 | AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT |
| 14 | PE00H08801 | 5/07 | NUCLEAR LIABILITY EXCLUSION |
| 15 | HR19H00304 | 8/09 | MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT |
|    | HG00H05602 | 2/12 | CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM |
|    | HR00H09300 | 2/07 | PRODUCER COMPENSATION NOTICE |

Ed. Date (04/02)
GU 207 (6-78)

# PRIVATE CHOICE ENCORE®!! POLICY

**NOTICE: THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN, COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND PAYMENT OF DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY. NOTICE OF A CLAIM MUST BE GIVEN TO THE INSURER AS SOON AS PRACTICABLE AFTER A NOTICE MANAGER BECOMES AWARE OF SUCH CLAIM, BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE TERMINATION OF THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

## COMMON TERMS AND CONDITIONS

**I.      TERMS AND CONDITIONS**

**(A)** All Coverage Parts included in this Policy are subject to the following Common Terms and Conditions. If any provision in these Common Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**(B)** Except as otherwise provided by specific reference to other Coverage Parts, the terms and conditions of each Coverage Part shall apply only to such Coverage Part.

**II.     COMMON DEFINITIONS**

The following terms, whether used in the singular or plural, shall have the meanings specified below:

**(A)** **"Affiliate"** means any insurance company controlling, controlled by or under common control with the Insurer.

**(B)** **"Application"** means: the application for this Policy, including any materials or information submitted therewith or made available to the Insurer during the underwriting process, which application shall be on file with the Insurer; or the application for any policy in an uninterrupted series of policies issued by the Insurer or any insurance company controlling, controlled by or under common control with the Insurer of which this Policy is a renewal or replacement. Such **Application** shall be deemed a part of this Policy and attached hereto.

**(C)** **"Claim"** shall have the meaning specified for such term in each Coverage Part.

**(D)** **"Controlled Partnership"** means a limited partnership in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the limited partnership interest and an **Insured Entity** is the sole general partner.

**(E)** **"Debtor in Possession"** means a "debtor in possession" as such term is defined in Chapter 11 of the United States Bankruptcy Code as well as any equivalent status under any similar law.

**(F)** **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred in the investigation, defense or appeal of a **Claim**. **Defense Costs** shall include the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds. **Defense Costs** shall not include salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds**.

**(G)** **"Domestic Partner"** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

**(H)** **"Employee"** means any natural person while such person was or is a(n):

PE 00 H555 00 0507                          © 2007, The Hartford                          Page 1 of 10
   42 KB 0256935-15    5/01/15

**(1)** employee of an **Insured Entity** including any part time, seasonal, temporary, leased, or loaned employee; or



**(2)** volunteer with an **Insured Entity**.

However, this definition of **Employee** shall hereby expressly not apply for purposes of the **Non-Liability Coverage Parts**.

**(I)** "ERISA" means the Employee Retirement Income Security Act of 1974.

**(J)** "**Financial Insolvency**" means the status of an **Insured Entity** as a result of:

**(1)** the appointment of any conservator, liquidator, receiver, rehabilitator, trustee, or similar official to control, supervise, manage or liquidate such **Insured Entity**; or

**(2)** such **Insured Entity** becoming a **Debtor in Possession**.

**(K)** "**Insured Entity**" means:

**(1)** the **Named Entity**; or

**(2)** any **Subsidiary**.

**Insured Entity** shall include any such entity as a **Debtor in Possession**.

**Insured Entity** shall also include any such entity in its capacity as a general partner of a **Controlled Partnership**.

**(L)** "**Insured Person**" shall have the meaning specified for such term in each Coverage Part.

**(M)** "**Insureds**" shall have the meaning specified for such term in each Coverage Part.

**(N)** "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

**(O)** "**Liability Coverage Part**" means the Directors, Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Coverage Parts, if included in ITEM 5 of the Declarations.

**(P)** "**Loss**" shall have the meaning specified for such term in each Coverage Part.

**(Q)** "**Manager**" means any natural person while such person was or is a(n):

**(1)** duly elected or appointed director, officer, member of the board of managers or management committee member of an **Insured Entity**;

**(2)** **Employee** in his/her capacity as legal counsel to an **Insured Entity**; or

**(3)** executive of an **Insured Entity** created outside the United States of America to the extent that such executive holds a position equivalent to those described in (1) or (2).

However, this definition of **Manager** shall hereby expressly not apply for the purposes of the Kidnap and Ransom/Extortion Coverage Part.

**(R)** "**Named Entity**" means the entity named in ITEM 1 of the Declarations.



**(S)**  **"Non-Liability Coverage Part"** means the Crime and Kidnap and Ransom/Extortion Coverage Parts in ITEM 6 of the Declarations.

**(T)**  **"Notice Managers"** means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel or risk manager of an **Insured Entity**.

**(U)**  **"Policy Period"** means the period from the Inception Date to the Expiration Date set forth in ITEM 3 of the Declarations or any earlier cancellation date.

**(V)**  **"Pollutants"** means any solid, liquid, gaseous or thermal irritant, nuisance or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil product, radiation, asbestos or asbestos-containing product, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. **Pollutants** also means any substance located anywhere in the world identified on a list of hazardous substances issued by any federal agency (including, nonexclusively, the Environmental Protection Agency) or any state, county, municipality or locality or counterpart thereof, or any foreign equivalent thereof.

**(W)**  **"Subsidiary"** means any:

  **(1)**  corporation in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

  **(2)**  limited liability company in which and so long as the **Named Entity** owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managers;

  **(3)**  a **Controlled Partnership**;

  **(4)**  corporation operated as a joint venture in which and so long as the **Named Entity** owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Named Entity** solely controls the management and operation of such corporation; or

  **(5)**  foundation, charitable trust or political action committee in which and so long as such entity or organization is controlled by the **Named Entity** or any **Subsidiary** as defined (1) through (4) above.

  However, this definition of **Subsidiary** shall hereby expressly not apply for purposes of the Miscellaneous Professional Liability Coverage Part.

**(X)**  **"Wrongful Act"** shall have the meaning specified for such term in each Coverage Part.

## III.  COVERAGE EXTENSIONS

**(A)  Spousal/Domestic Partner Liability Coverage**

Coverage shall apply to the lawful spouse or **Domestic Partner** of an **Insured Person** for a **Claim** made against such spouse or **Domestic Partner**, provided that:

  **(1)**  such **Claim** arises solely out of:

    **(a)**  such person's status as the spouse or **Domestic Partner** of an **Insured Person;** or

    **(b)**  such spouse or **Domestic Partner's** ownership of property sought as recovery for a **Wrongful Act;**

  **(2)**  the **Insured Person** is named in such **Claim** together with the spouse or **Domestic Partner;** and

  **(3)**  coverage of the spouse or **Domestic Partner** shall be on the same terms and conditions, including any applicable Retention, as apply to coverage of the **Insured Person** for such **Claim**.

PE 00 H555 00 0507                                      © 2007, The Hartford                                      Page 3 of 10
    42 KB 0256935-15     5/01/15

No coverage shall apply to any **Claim** for a **Wrongful Act** of such spouse or **Domestic Partner**.



**(B)  Estates and Legal Representatives**

In the event of the death, incapacity or bankruptcy of an **Insured Person,** any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** shall be deemed to be a **Claim** made against such **Insured Person**. No coverage shall apply to any **Claim** for a **Wrongful Act** of such estate, heirs, legal representatives or assigns.

## IV.  LIMIT OF LIABILITY

Solely with respect to all **Liability Coverage Parts:**

**(A)**  The Limit of Liability for each Coverage Part in ITEM 5 of the Declarations shall be the maximum aggregate amount that the Insurer shall pay under such Coverage Part for all **Loss** from all **Claims** covered under such Coverage Part.

**(B)**  Notwithstanding the above, if a Combined Aggregate Limit of Liability For All Coverage Parts is included in ITEM 5 of the Declarations, then:

**(1)**  such single Limit of Liability shall be the maximum aggregate amount that the Insurer shall pay for all **Loss** from all **Claims** covered under all included Coverage Parts combined; and

**(2)**  any amount specified as a Limit of Liability for any individual Coverage Part in ITEM 5 of the Declarations shall be subject to, part of, and not in addition to, the amount stated as the Combined Aggregate Limit of Liability For All Coverage Parts.

If any Limit of Liability is exhausted, the premium for this Policy shall be deemed fully earned.

## V.  DEFENSE COSTS

Solely with respect to all **Liability Coverage Parts:**

**(A)**  **Defense Costs** shall be part of, and not in addition to, each applicable Limit of Liability. Payment of **Defense Costs** by the Insurer shall reduce each Limit of Liability.

**(B)**  Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then payment of **Defense Costs** shall be in addition to any applicable Limit of Liability, provided that:

**(1)**  if a Limit of Liability is specified for any individual Coverage Part in ITEM 5 of the Declarations, then the maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under such Coverage Part shall be 50% of such Limit of Liability; provided, however, that if the Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability option is selected, the amount the Insurer shall pay for all **Defense Costs** from all **Claims** covered under the Fiduciary Liability Coverage Part shall be 100% of such Limit of Liability;

**(2)**  if a Combined Aggregate Limit of Liability For All Coverage Parts is included in ITEM 5 of the Declarations, then:

**(a)**  the single maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under all included Coverage Parts combined shall be 50% of such Limit of Liability; and

**(b)**  any amount of **Defense Costs** available for any individual Coverage Part shall be subject to, part of, and not in addition to, the single maximum amount of **Defense Costs** available for all included Coverage Parts combined specified in (a) above; and

**(3)** if the amount available for **Defense Costs** in (1) or (2) above is exhausted by the payment of **Defense Costs**, then **Defense Costs** shall be paid by the Insurer out of any remaining applicable Limit of Liability until the exhaustion of the applicable Limit of Liability.



## VI. RETENTION

Solely with respect to all **Liability Coverage Parts:**

**(A)** The Insurer shall pay **Loss** in excess of the Retention applicable to each **Claim** as specified in ITEM 5 of the Declarations.

**(B)** All Retentions shall be borne by the **Insureds** at their own risk; they shall not be insured.

**(C)** Any **Defense Costs** incurred by the Insurer shall apply to the Retention. The **Insureds** shall reimburse the Insurer upon request for any amounts paid regarding a **Claim** that are within the applicable Retention for such **Claim.**

**(D)** If a **Claim** is covered under more than one Coverage Part, the applicable Retention for each Coverage Part shall be applied separately to such **Claim**, provided that the maximum Retention applied to such **Claim** shall not exceed the highest of such applicable Retentions.

**(E)** No Retention shall apply to **Loss** incurred by any **Insured Person** that an **Insured Entity** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Insolvency.**

**(F)** If an **Insured Entity** is permitted or required by common or statutory law to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, and does not do so other than because of **Financial Insolvency**, then such **Insured Entity** and the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the Retention that would have applied if such indemnification had been made.

**(G)** If a **Subsidiary** is unable to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, because of **Financial Insolvency**, then the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the applicable Retention that would have applied if such indemnification had been made.

## VII. DEFENSE AND SETTLEMENT

Solely with respect to those **Liability Coverage Parts** other than the Miscellaneous Professional Liability Coverage Part:

**(A)** The Insurer shall have the right and duty to defend any **Claim** for which the **Insureds** give notice to the Insurer, even if such **Claim** is groundless, false or fraudulent. The Insurer may make any investigation it deems appropriate.

**(B)** The Insurer's duty to defend any **Claim** shall cease upon exhaustion of any applicable Limit of Liability.

Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer's duty to defend any **Claim** shall cease upon exhaustion of the maximum aggregate amount of **Defense Costs** available under Section V. DEFENSE COSTS, and any applicable Limit of Liability.

**(C)** The **Insureds** shall not admit nor assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** regarding any **Claim** without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, settlement, stipulation, or **Defense Costs** to which it has not consented.

**(D)** The Insurer may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the Insurer deems reasonable.

**(E)** Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer may settle any **Claim** for a monetary amount that the Insurer deems reasonable and the consent of the **Insureds** shall not be required to settle a **Claim**.

**(F)** The **Insureds** shall give to the Insurer all information and cooperation as the Insurer may reasonably request.

## VIII. NOTICE OF CLAIM

Solely with respect to all **Liability Coverage Parts**:

**(A)** As a condition precedent to coverage under this Policy, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than sixty (60) calendar days after the termination of the **Policy Period**, or any Extended Reporting Period as described in Section IX. Such notice shall specify the Coverage Part under which notice is being given.

**(B)** If, during the **Policy Period**, the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period** on the date that the Insurer receives the above notice.

## IX.  EXTENDED REPORTING PERIOD

Solely with respect to all **Liability Coverage Parts**:

**(A)** If any **Liability Coverage Part** is cancelled or non-renewed for any reason other than non-payment of premium, the **Insureds** shall have the right to elect an extension of time to report **Claims** under such **Liability Coverage Part** (the "Extended Reporting Period").

**(B)** To elect the Extended Reporting Period, the **Insureds** shall send a written notice of election of the Extended Reporting Period to the Insurer together with the premium therefor. The right to elect the Extended Reporting Period shall end unless the Insurer receives such notice and premium within sixty (60) days of cancellation or non-renewal. There shall be no right to elect the Extended Reporting Period after such time.

**(C)** The premium for the Extended Reporting Period shall be that percentage specified in ITEM 7 of the Declarations of the sum of the original annual premium plus the annualized amount of any additional premium charged by the Insurer during the **Policy Period**. Such premium shall be deemed fully earned at the inception of the Extended Reporting Period.

**(D)** The Extended Reporting Period shall be for the duration specified in ITEM 7 of the Declarations following the end of the **Policy Period**.

**(E)** Coverage during the Extended Reporting Period shall apply to **Claims** made for **Wrongful Acts** occurring prior to the earlier of the end of the **Policy Period** or the time of any transaction described in Section XIV. CHANGES IN EXPOSURE, (B) Takeover of Named Entity. No coverage shall apply for any **Wrongful Act** occurring after such time.

**(F)** There is no separate or additional Limit of Liability for any Extended Reporting Period.

## X.   INTERRELATIONSHIP OF CLAIMS

Solely with respect to all **Liability Coverage Parts**:

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

**(A)** any of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period;**

**(B)** notice of any **Wrongful Act** described above was given to the Insurer under this Policy pursuant to Section VIII. NOTICE OF CLAIM (B); or

**(C)** notice of any **Wrongful Act** described above was given under any prior insurance policy.

## XI. ALLOCATION

Solely with respect to all **Liability Coverage Parts** other than the Miscellaneous Professional Liability Coverage Part:

Where **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

**(A)** 100% of **Defense Costs** shall be allocated to covered **Loss**; and

**(B)** **Loss** other than **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based upon the relative legal exposure of all parties to such matters.

## XII. OTHER INSURANCE

If **Loss** arising from any **Claim** is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## XIII. CANCELLATION

**(A)** The Insurer may cancel this Policy for non-payment of premium by sending not less than 10 days notice to the **Named Entity**. This Policy may not otherwise be cancelled by the Insurer.

**(B)** Except as provided in Section XIV. CHANGES IN EXPOSURE, (B) Takeover of Named Entity, the **Insureds** may cancel this Policy by sending written notice of cancellation to the Insurer. Such notice shall be effective upon receipt by the Insurer unless a later cancellation time is specified therein.

**(C)** If the Insurer cancels this Policy, unearned premium shall be calculated on a pro rata basis. If the **Insureds** cancel this Policy, unearned premium shall be calculated at the Insurer's customary short rates. Payment of any unearned premium shall not be a condition precedent to the effectiveness of a cancellation. The Insurer shall make payment of any unearned premium as soon as practicable.

## XIV. CHANGES IN EXPOSURE

Solely with respect to all **Liability Coverage Parts:**

**(A) Mergers and New Subsidiaries**

If, before or during the **Policy Period**, any **Insured Entity**:

**(1)** merges with another entity such that the **Insured Entity** is the surviving entity; or

**(2)** acquires or creates a **Subsidiary**,

     42 KB 0256935-15    5/01/15
© 2007, The Hartford



then such merged, acquired or created entity and its subsidiaries, managers, directors, officers, and employees shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for a **Wrongful Act** occurring after such merger, acquisition or creation. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before such merger, acquisition or creation, or for any **Interrelated Wrongful Acts** thereto.

If the fair value of the assets of any newly merged, acquired or created entity exceed 25% of the total assets of the **Named Entity** as reflected in its most recent consolidated audited financial statements prior to such merger, acquisition or creation, the **Insureds** shall give the Insurer full details of the transaction in writing as soon as practicable and the Insurer shall be entitled to impose such additional terms, conditions, and premium as the Insurer, in its absolute discretion, chooses. There shall be no coverage under the **Liability Coverage Parts** for any newly merged, acquired or created entity or any of its subsidiaries, managers, directors, officers, or employees unless the **Insureds** comply with the terms of this provision.

**(B) Takeover of Named Entity**

If, during the **Policy Period**:

**(1)** the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

**(2)** more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

then coverage shall continue under the **Liability Coverage Parts**, but only for a **Wrongful Act** occurring before any such transaction. No coverage shall be available for any **Wrongful Act** occurring after such transaction. Upon such transaction, this Policy shall not be cancelled and the entire premium for this Policy shall be deemed fully earned.



The **Insureds** shall give the Insurer written notice of such transaction as soon as practicable, but not later than ninety (90) days after the effective date of such transaction.

**(C) Loss of Subsidiary Status**

If, before or during the **Policy Period**, any entity ceases to be a **Subsidiary**, then coverage shall be available under the **Liability Coverage Parts** for such **Subsidiary** and its **Insured Persons**, but only for a **Wrongful Act** of such **Insureds** occurring before such transaction. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after such transaction.

## XV. SUBROGATION

The Insurer shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** by the Insurer under this Policy. The **Insureds** shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable the Insurer to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the Insurer's position or any potential or actual rights of recovery.

## XVI. APPLICATION

**(A)** The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

**(B)** If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:



(1) For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any **Insureds** who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

    (a) knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

    (b) knowledge possessed by any chief executive officer, general counsel, or chief financial officer of the **Named Entity**, or anyone signing the **Application**, shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

(2) For the purpose of determining coverage under the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for:

    (a) any **Insured Persons,** under Insuring Agreement (A), who knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**, provided, however, that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**. This shall be the Insurer's sole remedy under this Insuring Agreement (A). Under no circumstances shall the Insurer be entitled to rescind this Insuring Agreement (A).

    (b) an **Insured Entity**, under Insuring Agreement (B), to the extent it indemnifies any **Insured Person** referenced in subparagraph (2)(a), above, and

    (c) an **Insured Entity**, under Insuring Agreements (C) and (D), if any chief executive officer, general counsel, or chief financial officer of the **Named Entity**, or anyone signing the **Application,** knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**.

## XVII.    ACTION AGAINST THE INSURER

Solely with respect to all **Liability Coverage Parts:**

(A) No action shall be taken against the Insurer unless there shall have been full compliance with all the terms and conditions of this Policy.

(B) No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** nor shall the Insurer be impleaded by the **Insureds** in any such **Claim**.

Solely with respect to the **Crime Coverage Part**:

(A) No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and

(B) No legal action shall be taken against the Insurer involving loss until ninety (90) days after the **Insured** has filed proof of loss with us; and

(C) No legal action shall be taken against the Insurer involving loss unless such action is brought within two (2) years from the date that the **Insured** discovers such loss.

Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:

No suit, action or proceeding for recovery of any claim under this Policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within twenty-four (24) months after a claim for actual loss or expenses has been reported to the Insurer by the **Insured**.

## XVIII.    ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer without its consent as specified in a written endorsement issued by the Insurer to form a part of this Policy.

## XIX. BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any **Insureds** shall not relieve the Insurer of any of its obligations under this Policy.

## XX. AUTHORIZATION OF NAMED ENTITY

The **Named Entity** shall act on behalf of all **Insureds** with respect to all matters under this Policy, including, without limitation, giving and receiving of notices regarding **Claims**, cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Policy.

## XXI. CHANGES

This Policy shall not be changed or modified except in a written endorsement issued by the Insurer to form a part of this Policy.

## XXII. ENTIRE AGREEMENT

This Policy, including the Declarations, Common Terms and Conditions, included Coverage Part(s), **Application** and any written endorsements attached hereto, constitute the entire agreement between the **Insureds** and the Insurer relating to this insurance.

## XXIII. NOTICES

(A) All notices to the **Insureds** shall be sent to the **Named Entity** at the address specified in ITEM 1 of the Declarations.

(B) All notices to the Insurer shall be sent to the address specified in ITEM 9 of the Declarations. Any such notice shall be effective upon receipt by the Insurer at such address.

## XXIV. HEADINGS

The headings of the various sections of this Policy are intended for reference only and shall not be part of the terms and conditions of coverage.

## XXV. REFERENCES TO LAWS

(A) Wherever this Policy mentions any law, including, without limitation, any statute, Act or Code of the United States of America, such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

(B) Wherever this Policy mentions any law or laws, including, without limitation, any statute, Act or Code of the United States of America, and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes as well as common law.

## XXVI. COVERAGE TERRITORY

Coverage under this Policy applies worldwide.



© 2007, The Hartford



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

### TWIN CITY FIRE INSURANCE COMPANY
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Lisa Levin, Secretary

Douglas Elliot, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN

42 KB 0256935-15    5/01/15

# DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART

## I. INSURING AGREEMENTS

### (A) Insured Person Liability

The Insurer shall pay **Loss** on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** that an **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

### (B) Corporate Reimbursement

The Insurer shall pay **Loss** on behalf of an **Insured Entity** that such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**.

### (C) Entity Liability (Elective)

If Entity Liability Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from an **Entity Claim** first made against such **Insured Entity** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Entity**.

This Insuring Agreement shall be subject to the Entity Liability Coverage Retention and Prior or Pending Date in Item 5 of the Declarations.

### (D) Derivative Demands

The Insurer shall pay **Investigation Costs** on behalf of an **Insured Entity** that such **Insured Entity** incurs resulting from a **Derivative Demand** first made during the **Policy Period** or Extended Reporting Period, if applicable.

This Insuring Agreement shall be subject to a Sublimit of Liability of $250,000. Such Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**. No Retention shall apply to this Insuring Agreement.

## II. DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

### (A) "Claim" means any:

**(1)** **Insured Person Claim**;

**(2)** **Entity Claim**; or

**(3)** **Derivative Demand**.

### (B) "Derivative Action" means any civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** made on behalf of, or in the name or the right of, an **Insured Entity** by any security holders of such **Insured Entity**, in their capacity as such, if such proceeding is made without the assistance, participation or solicitation of any **Manager**.

**(C)** **"Derivative Demand"** means any written demand by any security holders of an **Insured Entity**, in their capacity as such, upon the board of directors or managers of such **Insured Entity** to bring a civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** if such demand is made without the assistance, participation or solicitation of any **Manager**. A **Derivative Demand** shall be deemed commenced by the receipt of such demand.

**(D)** **"Entity Claim"** means any:

  **(1)** written demand for monetary damages or other civil relief commenced by the receipt of such demand;

  **(2)** civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

  **(3)** criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Entity**.

**"Entity Claim"** also means a written request to an **Insured Entity** to toll or waive a statute of limitations regarding a potential **Entity Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

**(E)** **"Insured Person"** means any:

  **(1)** **Manager**; or

  **(2)** **Employee**.

**(F)** **"Insured Person Claim"** means any:

  **(1)** written demand for monetary damages or other civil relief commenced by the receipt of such demand;

  **(2)** civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

  **(3)** criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Person**.

**"Insured Person Claim"** also means a formal civil, criminal, administrative, or regulatory investigation commenced by the service upon or other receipt by an **Insured Person** of a written notice from an investigating authority specifically identifying such **Insured Person** as a target individual against whom formal charges may be commenced.

**"Insured Person Claim"** also means a written request to an **Insured Person** to toll or waive a statute of limitations regarding a potential **Insured Person Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

**(G)** **"Insured(s)"** means any:

  **(1)** **Insured Entity**; or

  **(2)** **Insured Person**.

**(H)** **"Investigation Costs"** means reasonable and necessary expenses incurred in the investigation and evaluation of a **Derivative Demand** by an **Insured Entity**, including its board of directors, board of managers, or any

committee thereof, provided that **Investigation Costs** shall not include salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds.**

(I)   "**Loss**" means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part,** including **Defense Costs,** compensatory damages, settlement amounts, pre- and post-judgment interest, costs awarded pursuant to judgments, and, regarding Insuring Agreement (D), **Investigation Costs.**

**Loss** also includes punitive and exemplary damages, and the multiple portion of any multiplied damage award.

However, **Loss** shall not include:

(1)   taxes, fines or penalties imposed by law;

(2)   non-monetary relief;

(3)   any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

(J)   "**Outside Capacity**" means service by an **Insured Person** as a director, officer, trustee, regent, governor or equivalent executive of an **Outside Entity** with the knowledge and consent of or at the request of an **Insured Entity.**

(K)   "**Outside Entity**" means any:

(1)   not-for-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986,

(2)   entity organized for a religious or charitable purpose under any not-for-profit statute, or

(3)   entity listed as an **Outside Entity** in a written endorsement issued by the Insurer to form a part of this Policy,

that is not an **Insured Entity.**

(L)   "**Sarbanes-Oxley Whistle-blowing**" means the lawful act of a **Manager,** in which such **Manager** provides information, causes information to be provided, or otherwise assists in an investigation regarding any conduct which the **Manager** reasonably believes constitutes a violation:

(1)   of any rule or regulation of the Securities and Exchange Commission, or

(2)   any provision of Federal, state or foreign law relating to fraud against shareholders,

when the information or assistance is provided to, or the investigation is conducted by:

(a)   a Federal, state or foreign regulatory or law enforcement agency;

(b)   any Member of Congress or any committee of Congress; or

(c)   a person with supervisory authority over the **Manager** (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

(M)   "**Wrongful Act**" means any actual or alleged:

(1)   error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by an **Insured Person** in their capacity as such or in their **Outside Capacity,** or, with regard to Insuring Agreement (C) an **Insured Entity;** or

(2)   matter claimed against an **Insured Person,** solely by reason of their serving in such capacity, including service in an **Outside Capacity.**

### COVERAGE EXTENSION FOR OUTSIDE DIRECTORSHIP LIABILITY

Subject to the terms and conditions of this Policy and **Liability Coverage Part,** coverage is afforded for **Loss** resulting from any **Insured Person Claim** against an **Insured Person** for a **Wrongful Act** in an **Outside Capacity.** Such coverage shall be specifically excess of any indemnity and insurance available from or provided by the **Outside Entity.** Payment by the Insurer or any **Affiliate** under any other insurance policy as a result of such **Claim** shall reduce, by the amount of such payment, the Insurer's Limit of Liability available under this Policy for such **Claim.**

## IV.   EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The Insurer shall not pay **Loss:**

(A)   for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

(B)   in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in Item 5 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

(C)   in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, situation or **Wrongful Act** that, before the Inception Date in Item 3 of the Declarations, was the subject of any notice given under any other directors and officers, management liability, or similar insurance policy;

(D)   in connection with any **Claim** based upon, arising from, or in any way related to any:

(1)   actual or alleged discharge, dispersal, release, or escape of **Pollutants,** or any threat of such discharge, dispersal, release or escape; or

(2)   direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants;**

(E)   in connection with any **Claim** based upon, arising from, or in any way related to any:

(1)   claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, improper payroll deductions, improper employee classification, failure to maintain accurate time records, failure to grant meal and rest periods, or social security benefits; or

(2)   actual or alleged violation of the Fair Labor Standards Act, Equal Pay Act, Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, or any similar law;

(F)   in connection with any **Claim** based upon, arising from, or in any way related to the rendering of, or failure to render, any professional services for others, including, without limitation, services performed by the **Insureds** for or on behalf of a customer or client;

Exclusions (D), (E) and (F) above shall not apply to the portion of **Loss** directly resulting from: (i) a civil proceeding brought by a security holder of an **Insured Entity,** in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager;** or (ii) a **Derivative Action** or a **Derivative Demand.**

(G)   in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged violation of **ERISA** or any similar law;

**(H)** in connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:



    **(1)** a civil proceeding by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**;

    **(2)** a **Derivative Action** or a **Derivative Demand**;

    **(Sarbanes-Oxley Whistle-blowing** alone shall not be deemed solicitation, assistance or participation for purposes of paragraphs (1) and (2) above.)

    **(3)** an **Insured Person Claim** by or on behalf of an **Employee** who is not a past or present **Manager** if such **Claim** is made without the assistance, participation or solicitation of any **Manager**;

    **(4)** an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**;

    **(5)** a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least three years prior to such **Claim** being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the three years prior to such **Claim** being made;

    **(6)** a civil proceeding by or on behalf of an **Insured Person** for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

    **(7)** an **Insured Person Claim** brought and maintained in a jurisdiction outside the United States of America, Canada, Australia or any other common law country (including territories thereof) by a **Manager** due to a pleading requirement of such jurisdiction; or

    **(8)** a civil proceeding by any bankruptcy trustee, examiner, receiver, liquidator or rehabilitator (or any assignee thereof).

**(I)** of an **Insured Person** based upon, arising from, or in any way related to such **Insured Person's** service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of any entity other than an **Insured Entity** even if such service is at the direction or request of such **Insured Entity**, provided that this exclusion shall not apply to coverage afforded under Section III. of this **Liability Coverage Part** for a **Claim** for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity;**

**(J)** in connection with any **Claim** by or on behalf of any **Outside Entity** upon which an **Insured Person** is serving or has served in an **Outside Capacity**, or any past or present director, officer, trustee, regent, governor or equivalent executive of such **Outside Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:

    **(1)** a derivative action made on behalf of an **Outside Entity** by any persons who are not:

        **(a)** **Insured Persons**; or

        **(b)** directors, officers, trustees, regents, governors or equivalent executives of the **Outside Entity**,

    and who make such **Claim** without the solicitation, assistance or participation of any such persons; or

    **(2)** a civil proceeding brought and maintained by any:

        **(a)** **Insured Persons**; or

        **(b)** directors, officers, trustees, regents, governors or equivalent executives of an **Outside Entity**,

for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

**(K)** in connection with any **Claim** based upon, arising from, or in any way related to any public listing or offering of securities of an **Insured Entity** or the purchase or sale of such securities subsequent to such public listing or offering; provided that this exclusion shall not apply to that portion of **Loss** directly resulting from:

    **(1)** a **Wrongful Act** in any private placement of an **Insured Entity's** securities exempted from the registration requirements of the Securities Act of 1933; or

    **(2)** a civil proceeding brought and maintained by any security holders of an **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of such **Insured Entity**;

**(L)** of an **Insured,** based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled if a judgment or other final adjudication establishes that such a gain did occur; or

**(M)** of an **Insured,** based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** under Insuring Agreement (C), if elected, if a past or present chief executive officer, chief financial officer or general counsel of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (L) and (M) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

## V.   EXCLUSIONS APPLICABLE TO INSURING AGREEMENT (C)

**(A)** The Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

    **(1)** liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

    **(2)** employment-related **Wrongful Act;**

    **(3)** discrimination or sexual harassment;

    **(4)** false arrest or imprisonment, abuse of process, malicious prosecution, defamation (including libel and slander), invasion of privacy, trespass, nuisance or wrongful entry or eviction, assault, battery or loss of consortium;

    **(5)** price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities; provided, however, this exclusion shall not apply to **Defense Costs** incurred to defend such allegations up to a maximum of the lesser of (i) the remaining amount of the applicable limit of liability listed on the Declarations or (ii) $1,000,000;

    In the event that the Defense Outside the Limit of Liability option in Item 5 of the Declarations is selected, **Defense Costs** for all such **Claims** shall be limited to the lesser of (i) the remaining **Defense Costs** available pursuant to Section V.(B) of the COMMON TERMS AND CONDITIONS of this Policy or (ii) $1,000,000.

    **(6)** infringement, dilution or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark, trade secrets, or other intellectual property; provided, however that this exclusion shall not apply to the portion of **Loss** directly resulting from:





    **(a)** a civil proceeding brought and maintained by a security holder(s) of an **Insured Entity,** in their capacity as such;

    **(b)** a **Derivative Action** or a **Derivative Demand**; or

**(B)** The Insurer shall not pay **Loss** under Insuring Agreement (C) for any **Claim** based upon, arising from, or in any way related to the actual or alleged payment by an **Insured Entity** of inadequate consideration in connection with an **Insured Entity's** purchase of securities issued by any **Insured Entity;** provided, however, that this exclusion shall not apply to the portion of **Loss** representing **Defense Costs** incurred to defend such allegations.

## VI. ADDITIONAL LIMIT OF LIABILITY FOR CLAIMS AGAINST MANAGERS

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, an additional Limit of Liability of $500,000 shall be available for **Loss** resulting from **Insured Person Claims** against **Managers**, provided that:

**(A)** such **Claims** are covered under Insuring Agreement (A);

**(B)** such additional Limit of Liability shall be excess of all other insurance available to pay **Loss** for such **Claims**, including, without limitation, this Policy and insurance written specifically as excess over this Policy, which such insurance must be exhausted prior to this additional Limit of Liability becoming available to pay **Loss**; and

**(C)** such additional Limit of Liability shall be available for the second covered **Claim** made during the **Policy Period** and all subsequent **Claims**. This Limit of Liability shall not be provided for the first **Claim** made for which coverage is provided under this Policy. The first **Claim** made for which coverage is provided under this Policy shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer for such **Claim**.

The additional Limit of Liability described above shall be the maximum aggregate amount that the Insurer shall pay for all **Loss** from all **Claims** covered under this provision.

## VII. SECURITIES OFFERINGS

If any public offering of an **Insured Entity's** securities occurs during the **Policy Period** that is not exempt from registration under the Securities Act of 1933, the Insurer shall furnish the **Insureds** with a quote for insurance coverage of such offering, provided that:

**(A)** at least 30 days prior to the effective date of such offering, the **Insureds** shall give the Insurer written notice of such offering together with all information requested by the Insurer;

**(B)** such quote shall be on such terms and conditions, including any additional premium, as the Insurer, in its absolute discretion, chooses;

**(C)** any coverage provided shall be on such forms as are in use by the Insurer for public companies at the time of such offering; and

**(D)** if the **Insureds** choose to cancel this Policy to accept a coverage form offered in such quote, unearned premium for this Policy shall be calculated on a pro rata basis.

## VIII. ORDER OF LOSS PAYMENTS

**(A)** If **Loss** is incurred that is acknowledged by the Insurer to be covered under this **Liability Coverage Part** except that such **Loss** exceeds the remaining available Limit of Liability for this **Liability Coverage Part**, the Insurer shall first pay **Loss** covered under Insuring Agreement (A) prior to paying **Loss** under any other Insuring Agreements.





**(B)** If **Loss** is incurred that is acknowledged by the Insurer to be covered under any Insuring Agreement other than (A), the **Named Entity** shall have the right to direct the Insurer to delay payment of such **Loss** until such time as the **Named Entity** specifies. Any such direction by the **Named Entity** to delay or make payment of **Loss** shall be by written notice to the Insurer. Any such delayed payment of **Loss** shall be available to the Insurer to pay **Loss** covered under Insuring Agreement (A). Any payment of **Loss** under Insuring Agreement (A) out of funds withheld by the Insurer pursuant to this provision shall terminate the Insurer's liability to make a delayed payment of **Loss** under any Insuring Agreement other than (A) by the amount of the payment under Insuring Agreement (A). No interest shall be due regarding any delayed payment of **Loss**. Nothing in this provision shall increase the Insurer's Limit of Liability applicable to this **Liability Coverage Part**.

## IX.   RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)**   final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)**   complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

**I.   INSURING AGREEMENTS**



**(A)   Employment Practices Liability**

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the **Insureds**.

**(B)   Third Party Liability (Elective)**

If Third Party Liability Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Third Party Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Third Party Wrongful Act** by the **Insureds**.

This Insuring Agreement shall be subject to the Third Party Liability Coverage Sublimit of Liability, Retention, and Prior or Pending Date in Item 5 of the Declarations.  Such Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement.  Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**.

**II.   DEFINITIONS**

The following terms, whether used in the singular or plural, shall have the meanings specified below:

**(A)   "Benefits"** means perquisites, fringe benefits, deferred compensation and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award).



**(B)   "Claim"** means any:

**(1)   Employment Practices Claim**; or

**(2)   Third Party Claim**.

**(C)   "Employment Practices Claim"** means any:

**(1)**   written demand for monetary damages or other civil relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

**(2)**   civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

**(3)**   formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an **Employee**, an applicant for employment with an **Insured Entity**, or an **Independent Contractor**.

**"Employment Practices Claim"** also means an audit conducted by the United States of America Office of Federal Contract Compliance Programs commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief.

**"Employment Practices Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Employment Practices Claim** as described above.  Such **Claim** shall be commenced by the receipt of such request.



  © 2007, The Hartford

However, **"Employment Practices Claim"** shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

**(D)** **"Employment Practices Wrongful Act"** means a **Wrongful Act** involving any:



   **(1)** wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

   **(2)** sexual or other workplace harassment, including quid pro quo and hostile work environment;

   **(3)** employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

   **(4)** **Retaliation**;

   **(5)** breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

   **(6)** violation of the Family and Medical Leave Act.

   **Employment Practices Wrongful Act** shall also mean the following, but only when alleged in addition to or as part of any **Employment Practices Wrongful Act** described above:

      **(i)** employment-related wrongful infliction of emotional distress;

      **(ii)** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

      **(iii)** negligent retention, supervision, hiring or training; or

      **(iv)** employment-related: invasion of privacy, defamation, or misrepresentation.

**(E)** **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to an **Independent Contractor Agreement.**

**(F)** **"Independent Contractor Agreement"** means any express contract or agreement between an **Independent Contractor** and an **Insured Entity** specifying the terms of the **Insured Entity's** engagement of such **Independent Contractor.**

**(G)** **"Insured Person"** means any:

   **(1)** **Employee**;

   **(2)** **Manager**; or

   **(3)** regarding Insuring Agreement (A), an **Independent Contractor** provided that within 30 days of an **Employment Practices Claim** having been made against such **Independent Contractor** that the **Insured Entity** agrees in writing to indemnify such **Independent Contractor** for any **Loss** arising out of such **Claim**.

**(H)** **"Insureds"** means any:

   **(1)** **Insured Entity**; or

   **(2)** **Insured Person.**

(I)  "**Loss**" means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including **Defense Costs**, compensatory damages, including front pay and back pay, settlement amounts, pre- and post-judgment interest, and costs awarded pursuant to judgments.

**Loss** also includes punitive and exemplary damages, the multiple portion of any multiplied damage award, and liquidated damages under the Age Discrimination in Employment Act.

However, **Loss** shall not include:

(1)  taxes, fines or penalties imposed by law;

(2)  non-monetary relief;

(3)  **Benefits;**

(4)  future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim**;

(5)  **Stock Benefits;**

(6)  costs associated with providing any accommodations required by the Americans with Disabilities Act or any similar law;

(7)  any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

(J)  "**Retaliation**" means adverse treatment of an **Employee** or **Independent Contractor** based upon such person:

(1)  exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, **ERISA**, or the Americans with Disabilities Act;

(2)  refusing to violate any law;

(3)  assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any **Insured**;

(4)  disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency; or

(5)  filing any "whistle blower" claim against any **Insured** under the federal False Claims Act, the Sarbanes-Oxley Act of 2002, or any similar law.

(K)  "**Stock Benefits**" means any offering, plan or agreement between an **Insured Entity** and any **Employee** that grants stock, stock options or stock appreciation rights in the **Insured Entity** to such person, including, without limitation, restricted stock or any other stock grant. **Stock Benefits** shall not include employee stock ownership plans or employee stock purchase plans.

(L)  "**Third Party**" means any natural person who is a customer, vendor, service provider or other business invitee of an **Insured Entity. Third Party** shall not include **Employees**.

(M)  "**Third Party Claim**" means any:

(1)  written demand for monetary damages or other civil relief commenced by the receipt of such demand;

(2)  civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

**(3)** formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of a **Third Party**.

**"Third Party Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Third Party Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

**(N)** **"Third Party Wrongful Act"** means a **Wrongful Act** involving any:

**(1)** discrimination against a **Third Party** based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state or local law; or

**(2)** sexual harassment against a **Third Party**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature.

**(O)** **"Wrongful Act"** means any actual or alleged:

**(1)** error, misstatement, misleading statement, act, omission, neglect or breach of duty; or

**(2)** matter claimed against an **Insured Person** solely by reason of their serving in such capacity.

## III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss**:

**(1)** for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for injury to or destruction of any tangible property including loss of use or diminution of value thereof;

**(2)** for any actual or alleged **Wrongful Act** by **Insured Persons** of any **Subsidiary** in their capacities as such, or by any **Subsidiary**, if such **Wrongful Act** actually or allegedly occurred when such entity was not a **Subsidiary**;

**(3)** in connection with any **Claim** based upon, arising from, or in any way related to any:

**(a)** prior or pending demand, suit, or proceeding against any **Insured** as of; or

**(b)** audit initiated by the Office of Federal Contract Compliance Programs before

the applicable Prior or Pending Date in Item 5 of the Declarations, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit;

**(4)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, or situation that, before the inception date in Item 3 of the Declarations, was the subject of any notice given under any other employment practices liability policy, management liability policy or other insurance policy which insures **Wrongful Acts** covered under this Policy;

**(5)** in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed by an **Insured** under any contract or agreement; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract or agreement;

**(6)** for breach of any **Independent Contractor Agreement**; or

**(7)** for a lockout, strike, picket line, hiring of replacement workers or similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

**(B)**    The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to:



   **(1)**    any claims for actual or alleged unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, improper payroll deductions, improper employee classification, failure to maintain accurate time records, failure to grant meal and rest periods, or social security benefits; or

   **(2)**    any actual or alleged violation of the Fair Labor Standards Act (except for Equal Pay Act), Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, **ERISA**, or any similar law;

   Provided that this exclusion (B) shall not apply to that portion of **Loss** that represents a specific amount the **Insureds** become legally obligated to pay solely for a **Wrongful Act** of **Retaliation.**

**(C)**    The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract; provided, however, that this exclusion shall not apply to the portion of **Loss** representing **Defense Costs** incurred to defend against such liability.

## IV.   EXCLUSIONS APPLICABLE TO INSURING AGREEMENT (B)

Solely with respect to Insuring Agreement (B), the Insurer shall not pay **Loss** in connection with any **Third Party Claim** based upon, arising from or in any way related to any price discrimination or violation of any anti-trust law or any similar law designed to protect competition or prevent unfair trade practices.

## V.   OTHER INSURANCE



**(A)**    The coverage provided under this Policy for any **Employment Practices Claim** shall be primary.

**(B)**    Notwithstanding the above, the coverage provided under this Policy for any **Employment Practices Claim** made against a temporary, leased or loaned **Employee** or an **Independent Contractor** shall be excess of the amount of any deductible, retention and limits of liability under any other policy or policies applicable to such **Claim**, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## VI.   CHANGES IN EXPOSURE

**(A)**    This section shall supplement, and not replace, Common Terms and Conditions Section XIV. Changes in Exposure.

**(B)**    In addition to the asset percentage size limit for automatic coverage of any newly merged or acquired entity specified in Common Terms and Conditions Section XIV. Changes in Exposure (A), if the number of employees of a newly merged or acquired entity exceeds 25% of the number of employees of all **Insured Entities** combined prior to such merger or acquisition, the **Insureds** shall give the Insurer full details of the transaction in writing as soon as practicable and the Insurer shall be entitled to impose such additional terms, conditions, and premium as the Insurer, in its absolute discretion, chooses. There shall be no coverage for any newly merged or acquired entity or any of its subsidiaries, managers, directors, officers, or employees unless the **Insureds** comply with the terms of this provision.

## VII.   RETENTION WAIVER

Regarding a **Claim** that is a class action civil proceeding, no Retention shall apply to **Defense Costs** incurred in connection with such **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)** final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)** complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.



## VIII.   COORDINATION OF COVERAGE

If this **Liability Coverage Part** and either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part are included under this Policy, and a **Claim** is covered under this **Liability Coverage Part** and any such other **Liability Coverage Part**, **Loss** shall be first covered and paid under this **Liability Coverage Part**.

If notice of a **Claim** has been given under either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part and a determination is made by the Insurer that such **Claim** would be covered under this **Liability Coverage Part** if notice had been given under this **Liability Coverage Part**, then the **Insureds** shall be deemed to have given notice of such **Claim** under this **Liability Coverage Part** at the same time that notice was given under such other **Liability Coverage Part**.



# FIDUCIARY LIABILITY COVERAGE PART

## I.  INSURING AGREEMENTS

**(A)  Fiduciary Liability**

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Fiduciary Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds** or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible.

**(B)  Settlement Programs (Elective)**

If Settlement Program Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Settlement Fees** on behalf of the **Insureds** resulting from a **Settlement Program** for which a **Settlement Program Notice** is received by the Insurer during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds.**

This Insuring Agreement shall be subject to a Sublimit of Liability of $100,000. Such Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part.** This Insuring Agreement shall also be subject to the Settlement Program Coverage Retention and Prior or Pending Date in Item 5 of the Declarations.

## II.  DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

**(A)  "Claim"** means any:

**(1)  Fiduciary Claim**; or

**(2)  Settlement Program Notice**.

**(B)  "Employee Stock Ownership Plan"** means any **Insured Plan** that invests more than 10% of its assets in securities of **Insured Entities.**

**(C)  "Fiduciary Claim"** means any:

**(1)**  written demand for monetary damages or other civil relief commenced by the receipt of such demand;

**(2)**  civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

**(3)**  criminal proceeding commenced by the return of an indictment; or

**(4)**  formal administrative or regulatory proceeding commenced by the filing or service of a notice of charges, formal investigative order or similar document, including an investigation by the Department of Labor or Pension Benefit Guaranty Corporation.

**"Fiduciary Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Fiduciary Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

**(D)  "Insured Person"** means any:

**(1)  Manager**;

    **(2)  Employee**; or



    **(3)**  past or present natural person trustee of an **Insured Plan** while in such person's capacity as a trustee, which shall also include the functional equivalent of a trustee while serving in such a position outside of the United States of America.

  **(E)  "Insured Plan"** means any past, present, or future:

    **(1)**  employee welfare benefit plan or employee pension benefit plan, as defined in **ERISA**, sponsored solely by an **Insured Entity**, or jointly by an **Insured Entity** and a labor organization, for the benefit of **Employees** only;

    **(2)**  employee benefit plan, including an excess benefit plan, not subject to Title 1 of **ERISA**, sponsored solely by an **Insured Entity** for the benefit of **Employees** only;

    **(3)**  government-mandated insurance program for unemployment, social security or disability benefits for **Employees** other than workers compensation; or

    **(4)**  any other plan, fund, or program specifically included as an **Insured Plan** in a written endorsement issued by the Insurer to form a part of this Policy.

  Notwithstanding the above, an **Insured Plan** shall not include any:

    **i.  Employee Stock Ownership Plan**; or

    **ii.**  any multi-employer plan.

  **(F)  "Insured(s)"** means any:

    **(1)  Insured Entity;**

    **(2)  Insured Person;** or

    **(3)  Insured Plan.**

  **(G)  "Loss"** means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including **Defense Costs**, compensatory damages, settlement amounts, pre- and post-judgment interest, and costs awarded pursuant to judgments.

  **Loss** also includes punitive and exemplary damages and the multiple portion of any multiplied damage award where insurable by law.

  However, **Loss** shall not include:

    **(1)**  taxes, fines or penalties imposed by law; provided, however, the foregoing shall not apply to:

      **(a)  Settlement Fees,** provided that Settlement Program Coverage is elected;

      **(b)**  civil penalties of up to 5% imposed upon the **Insureds** pursuant to **ERISA** Section 502(i) or up to 20% imposed pursuant to **ERISA** Section 502(l); or

      **(c)**  civil penalties imposed upon the **Insureds** under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Coverage for such civil penalties referred to in this subparagraph (G)(1)(c) is conditioned upon the following: (i) payment of such **Loss** shall be subject to the sub-limit of liability specified in Item 5 of the Declarations and (ii) such sub-limit of liability shall be part of, and not in addition to, the Aggregate Limit of Liability for this **Liability Coverage Part** shown on the Declarations;

**(2)** non-monetary relief; and

**(3)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

**(H)** **"Settlement Fees"** mean any fees, penalties or sanctions imposed by law under a **Settlement Program** that any **Insureds** become legally obligated to pay as a result of a **Wrongful Act**. **Settlement Fees** shall not include costs of corrections, other than fees or penalties.

**(I)** **"Settlement Program"** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States of America Internal Revenue Service or any other governmental body that is entered into by an **Insured Entity**.

**(J)** **"Settlement Program Notice"** means a prior written notice to the Insurer by any **Insured Entity** of its intent to enter into a **Settlement Program** that includes a detailed description of the **Wrongful Act** for which notice will be given under the **Settlement Program**.

**(K)** **"Wrongful Act"** means any actual or alleged:

**(1)** error, misstatement, misleading statement, act, omission, neglect or breach of duty constituting a violation of any responsibilities, obligations or duties imposed upon fiduciaries of an **Insured Plan** by ERISA or any similar law;

**(2)** breach of the responsibilities, obligations or duties imposed upon an **Insured** by HIPAA in connection with an **Insured Plan**;

**(3)** error, misstatement, misleading statement, act, omission, neglect or breach of duty in counseling, providing interpretations, handling records, or effecting enrollment, termination or cancellation of **Employees**, participants, or beneficiaries under an **Insured Plan**; or

**(4)** matter claimed against an **Insured** solely due to such **Insured** acting in the capacity of a fiduciary of an **Insured Plan**.

## III.   EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss**:

**(1)** for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

**(2)** in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in Item 5 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(3)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance or situation that, before the Inception Date in Item 3 of the Declarations, was the subject of any notice given under any other insurance policy;

**(4)** in connection with any **Claim** based upon, arising from, or in any way related to any:

**(a)** discharge, dispersal, release, or escape of **Pollutants**, or any threat of such discharge, dispersal, release or escape; or

**(b)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

   © 2008, The Hartford


42 KB 0256935-15    5/01/15

**(5)** in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed under any contract or agreement, provided that this exclusion shall not apply to liability:

    **(a)** that would have been incurred in the absence of such contract or agreement; or

    **(b)** assumed under any agreement or declaration of trust under which any **Insured Plan** was established;

**(6)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(a)** claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or failure to grant meal and rest periods; or

    **(b)** actual or alleged violation of the Fair Labor Standards Act, Equal Pay Act, Worker Adjustment and Retraining Notification Act, or any rule or regulation promulgated thereunder, or similar federal, state, local or common laws, rules or regulations;

**(7)** of an **Insured** based upon, arising from, or in any way related to the gaining, in fact, of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled; or

**(8)** of an **Insured** based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** if a past or present chief executive officer, chief financial officer or general counsel of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (7) and (8) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

**(B)** Other than that portion of **Loss** that represents **Defense Costs** incurred to defend the following allegations or demands, the Insurer shall not pay **Loss** for any **Claim**:

    **(1)** for the actual or alleged failure to pay benefits pursuant to any **Insured Plan**, provided that this exclusion shall not apply to the extent that recovery of such benefits is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**;

    **(2)** based upon, arising from, or in any way related to the actual or alleged failure to fund, or collect contributions owed to, an **Insured Plan**; or

    **(3)** for return or reversion of any contributions or assets to an **Insured Entity** from an **Insured Plan**.

## IV. WAIVER OF RECOURSE

The Insurer shall have no right of recourse against any **Insureds** for any payment of **Loss** made by the Insurer under this **Liability Coverage Part** because of a **Wrongful Act** by such **Insureds** if the premium for this Policy was paid for by other than an **Insured Person**.

## V. CHANGES IN EXPOSURE

**(A)** This Section shall supplement, and not replace, Common Terms and Conditions Section XIV. Changes in Exposure.

**(B)** The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (A) Mergers and New Subsidiaries shall also apply to any employee benefit plan of any newly merged or acquired entity and to any trustee of such plan to the extent that such plan and trustee would otherwise qualify as **Insureds** under this Policy. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before the merger or acquisition of the entity or for any **Interrelated Wrongful Acts** thereto.


42 KB 0256935-15     5/01/15

**(C)** The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (C) Loss of Subsidiary Status shall also apply to any **Insured Plan** of a former **Subsidiary** and any trustee of such plan. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after an entity ceases to be a **Subsidiary**.

 **TERMINATED PLAN COVERAGE**

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, coverage shall be afforded for **Loss** resulting from any **Claim** against the **Insureds** for a **Wrongful Act** involving any **Insured Plan** terminated by an **Insured Entity**, including post-termination **Wrongful Acts**.

## VII.  RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)**  final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)**  complete and final settlement with prejudice,

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

# CRIME COVERAGE PART

## I.   INSURING AGREEMENTS

Coverage for the **Insureds'** loss is provided under the following Insuring Agreements for which there is a Limit of Insurance shown in the Declarations.

### (A)  INSURING AGREEMENT 1. - EMPLOYEE THEFT

The Insurer will pay for loss of or damage to **Money**, **Securities** and **Other Property** that results directly from **Theft** by an **Employee**, whether or not identifiable, while acting alone or in collusion with other persons.

### (B)  INSURING AGREEMENT 2. - DEPOSITORS FORGERY OR ALTERATION

**(1)**   The Insurer will pay for loss resulting directly from **Forgery** or alteration of checks, drafts,promissory notes, or similar written promises, orders or directions to pay a sum certain in **Money** that are:

**(a)**   made or drawn upon an **Insured**; or

**(b)**   made or drawn by one acting as an **Insured's** agent and drawn on an **Insured's** account or that are purported to have been so made or drawn.

**(2)**   The Insurer will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**(3)**   If an **Insured** is sued for refusing to pay any instrument in B.1. above, on the basis that it has been forged or altered and the **Insured** has the Insurer's written consent to defend against that suit, the Insurer will pay for any reasonable legal expenses that **Insured** incurs and pays in such defense. The amount that the Insurer will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement. If a Retention Amount applies to this Insuring Agreement, the Insurer will also apply it to the amount of legal expenses incurred in this Insuring Agreement.

**(4)**   The **Insured** must include with its proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss and describing both sides of said instrument.

### (C)  INSURING AGREEMENT 3. – INSIDE THE PREMISES - *Money, Securities and Other Property*

**(1)**   The Insurer will pay for loss of **Money** and **Securities** inside the **Premises** or **Banking Premises** resulting directly from **Theft**, disappearance or destruction.

**(2)**   The Insurer will pay for loss of or damage to **Other Property**:

**(a)**   inside the **Premises** resulting directly from an actual or attempted **Robbery** of a **Custodian**; or

**(b)**   inside the **Premises** in a safe or vault resulting directly from an actual or attempted **Safe Burglary**.

**(3)**   The Insurer will pay for loss from damage to the **Premises** or its exterior resulting from an actual or attempted:

**(a)**   **Theft** of **Money** or **Securities**; or

**(b)**   **Robbery** or **Safe Burglary** of **Other Property;**

if an **Insured** is the owner of the **Premises** or is liable for damage to it.





(4) The Insurer will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft** or unlawful entry into those containers.



**(D) INSURING AGREEMENT 4. – OUTSIDE THE PREMISES -** *Money, Securities and Other Property*

(1) The Insurer will pay for loss of **Money** and **Securities** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from **Theft**, disappearance or destruction.

(2) The Insurer will pay for loss of or damage to **Other Property** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from an actual or attempted **Robbery**.

**(E) INSURING AGREEMENT 5. – COMPUTER AND FUNDS TRANSFER FRAUD**

The Insurer will pay for loss of and loss from damage to **Money, Securities** and **Other Property** following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises:**

(1) to a person (other than a **Messenger**) outside those **Premises**; or

(2) to a place outside those **Premises**.

And, the Insurer will pay for loss of **Money** or **Securities** through **Funds Transfer Fraud** resulting directly from **Fraudulent Transfer Instructions** communicated to a **Financial Institution** and instructing such institution to pay, deliver, or transfer **Money** or **Securities** from an **Insured's Transfer Account**.

**(F) INSURING AGREEMENT 6. – MONEY ORDERS AND COUNTERFEIT CURRENCY**

The Insurer will pay for loss resulting directly from an **Insured's** having accepted in good faith and in the regular course of business, in exchange for merchandise, **Money** or services:

(1) money orders issued by any post office, express company or bank in the United States of America or Canada that are not paid upon presentation; and

(2) **Counterfeit** currency of the United States of America, Canada, or any other country in which an **Insured** maintains physical premises.

Unless otherwise shown in the Declarations for this **Non-Liability Coverage Part**, the Limit of Insurance under this insuring agreement is $50,000. There is no retention applying to loss covered under this agreement unless otherwise shown in the Declarations for this **Non-Liability Coverage Part**.

**II.   LIMIT OF INSURANCE**

The most that the Insurer will pay for loss in any one **Occurrence** is the applicable Limit of Insurance shown in the Declarations.

**III.   RETENTION**

The Insurer will not pay for loss in any one **Occurrence** unless the amount of the loss exceeds the Retention Amount shown in the Declarations. The Insurer will then pay the amount of loss in excess of the Retention Amount, up to the Limit of Insurance. In the event that more than one Retention Amount could apply to the same loss, only the highest Retention Amount will be applied.

**IV.   DEFINITIONS**

**(A)** **"Banking Premises"** means the interior portion of that part of any building occupied by a banking institution or similar safe depository.

42 KB 0256935-15    5/01/15

(B)  **"Counterfeit"** means an imitation of an actual valid original that is intended to deceive and to be taken as an original.

(C)  **"Custodian"** means an **Insured**, or any of the **Insureds'** partners, or members or any **Employee** while having the care and custody of property inside the **Premises**, excluding any person while acting as a **Watchperson** or janitor.

(D)  **"Employee"** means:

   **(1)**  a natural person:

   **(a)**  while in any **Insured's** service or for 60 days after termination of such service; and

   **(b)**  whom the **Insured** compensates directly by salary, wages, commissions; and

   **(c)**  whom the **Insured** has the right to direct and control while performing services for it;

   **(2)**  a natural person who is:

   **(a)**  a trustee, officer, employee, administrator or manager of any **Employee Benefit Plan(s)** insured under this **Non-Liability Coverage Part**; or

   **(b)**  an **Insured's** director or trustee while that person is handling **Money** or **Securities** or **Other Property** of **Employee Benefit Plan(s)** insured under this **Non-Liability Coverage Part**;

   **(3)**  a natural person who is a director or trustee of an **Insured** while performing acts coming within the scope of the usual duties of an **Employee** or while acting as a member of any of an **Insured's** elected or appointed committees to perform on an **Insured's** behalf, as distinguished from general directorial acts;

   **(4)**  a natural person who is furnished temporarily to an **Insured** by a temporary employment service firm to substitute for a permanent **Employee** as defined in sub-paragraph (1) above, who is on leave, or to meet seasonal or short-term work load conditions and who such **Insured** has the right to direct and control while performing services for such **Insured**; provided, however, such persons are excluded while having care and custody of property outside the **Premises**.

   **(5)**  a natural person who is leased to an **Insured** under a written agreement between such **Insured** and a labor leasing firm, to perform duties related to the conduct of such **Insured's** business;

   **(6)**  a natural person who is a former **Employee** while retained as a consultant for an **Insured**;

   **(7)**  a natural person who is a non-compensated officer of an **Insured**;

   **(8)**  a natural person who is a volunteer of an **Insured** who is not compensated, other than one who is a fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee**;

   **(9)**  a natural person who is a former employee, director, partner, member or trustee of an **Insured** retained as a consultant while performing services for the **Insured**;

   **(10)**  a natural person who is a guest student or intern of an **Insured** while pursuing studies or duties with the guidance or direction of such **Insured**; or

   **(11)**  a natural person who is an **Insured's** partner or limited liability member, but the Insurer will not pay for loss caused by any partner or limited liability member, unless the amount of the loss exceeds the sum of:

   **(a)**  any amounts an **Insured** owes that partner or limited liability member; and

   **(b)**  the value of that partner's partnership interest, or that limited liability member's ownership interest determined by the closing of the **Insured's** organization's books on the date of discovery of the loss by the **Insured's** organization by anyone not in collusion with the person causing the loss, and

(c) any applicable Retention Amount; then the Insurer will pay the amount of loss excess of that sum, up to the Limit of Insurance applicable to Insuring Agreement 1.



However, **Employee** does not mean any agent, broker, factor, commission merchant, consignee, or representative of the same general character, nor any independent contractor (other than those specified in (6) and (9) above).

(E) **"Employee Benefit Plan(s)"** means any welfare or pension plan(s) as defined in **ERISA** and which is sponsored by one or more of the **Insureds**.

(F) **"Financial Institution"** means a bank, savings bank, savings and loan association or similar thrift institution, a stockbroker, mutual fund, liquid assets fund, or similar investment institution in which an **Insured** maintains a **Transfer Account**.

(G) **"Forgery"** means the signing of the name of another person or organization with intent to deceive; provided, however, that it does not mean a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity, for any reason.

(H) "**Fraudulent Transfer Instructions**" means:

(1) fraudulent electronic, telegraphic, facsimile, cable, teletype or telephone instructions to a **Financial Institution** to debit a **Transfer Account** and to pay, transfer or deliver **Money** or **Securities** from such account and which instructions purport to have been authorized by an **Insured** but which have been fraudulently transmitted by another; or

(2) fraudulent written instructions to a **Financial Institution** to debit a **Transfer Account** and to pay, transfer or deliver **Money** or **Securities** from such account through an electronic funds transfer system at specified times or under specified conditions and which instructions purport to have been duly authorized by an **Insured** but which have been fraudulently issued, forged or altered by another.



(I) **"Funds Transfer Fraud"** means **Theft** of **Money** or **Securities** from any of the **Insureds' Transfer Accounts** at a **Financial Institution** and occurring through **Fraudulent Transfer Instructions** communicated to such **Financial Institution**.

(J) **"Insured(s)"** shall mean any **Insured Entity**.

(K) **"Investigative Expenses"** means reasonable expenses incurred and paid by an **Insured** in establishing the existence and amount of any direct loss covered under an Insuring Agreement within this **Non-Liability Coverage Part**. The reasonableness of such expenses shall be determined by the Insurer and shall not include any **Insured's** internal corporate obligations such as **Employee** wages or any other internal costs.

(L) **"Messenger"** means an **Insured**, any of the **Insured's** partners or members or any **Employee** while having care and custody of property outside the **Premises**.

(M) **"Money"** means currency, coins and bank notes in current use and having a face value; and travelers checks, register checks and money orders held for sale to the general public.

(N) **"Occurrence"** means

(1) as respects the Employee Theft Insuring Agreement, all loss caused by, or involving, one or more **Employees**, whether the result of a single act or a series of acts.

(2) as respects the Forgery or Alteration Insuring Agreement, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

(3) as respects all other Insuring Agreements, an act or series of related acts involving one or more persons; or an act or event or a series of related acts or events not involving any person.

(O) **"Other Property"** or property means any tangible property other than **Money** or **Securities** that has intrinsic value but does not include any property excluded under this **Non-Liability Coverage Part**. **Other Property** does not include trade secrets, proprietary information, confidential information or any copyrights, patents, trademarks, proprietary manufacturing or processing procedures, or secret or confidential information, including but not limited to credit card numbers, bank account numbers or any similar information.

(P) **"Premises"** means the interior of that portion of any building that an **Insured** occupies in conducting its business.

(Q) **"Robbery"** means the unlawful taking of property from the care and custody of a person, by one who has caused or threatened to cause that person bodily harm or committed an obviously unlawful act witnessed by that person, to the deprivation of an **Insured**.

(R) **"Safe Burglary"** means the unlawful taking of property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior, or, the taking of a safe or vault from inside the **Premises**.

(S) **"Securities"** means negotiable or non-negotiable instruments or contracts representing either **Money** or property and includes tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use and evidences of debt issued in connection with credit or charge cards, which cards are not issued by an **Insured**. However, **securities** do not include **Money**.

(T) **"Theft"** means the unlawful taking of **Money**, **Securities** or **Other Property** to the deprivation of an **Insured**.

(U) **"Transfer Account"** means an account maintained by an **Insured** at a **Financial Institution** from which the **Insured** or its authorized representative may cause the payment, transfer or delivery of **Money** or **Securities** by any means described in the **Fraudulent Transfer Instructions** definition.

(V) **"Watchperson"** means any person whom an **Insured** retains specifically to have the care and custody of property inside the **Premises** and who has no other duties.

## EXCLUSIONS *(Applying To All Insuring Agreements Unless Otherwise Specified)*

**This Coverage Part Does Not Apply To And The Insurer Will Not Pay For:**

(A) **Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

(B) **Acts Committed By The Insured's Partners**

Loss resulting from **Theft**, or **Forgery** committed by any partner of an **Insured** whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would otherwise be covered under INSURING AGREEMENTS 1 or 2, this exclusion shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Insured**, on the day immediately preceding the date of discovery, multiplied by such **Insured's** total assets as reflected in such **Insured's** most recent audited financial statements;

(C) **Acts of Employees, Managers, Directors or Trustees**

Loss resulting from **Theft** or any other dishonest or criminal act committed by any of the **Insureds' Employees**, managers, directors or trustees whether acting alone or in collusion with other persons or while performing services for any **Insured** or otherwise, except when covered under Insuring Agreement 1.

(D) **Employee Cancelled Under Prior Insurance**

Loss caused by any of any **Insured's Employees** or by any **Employee** of any **Insured's** predecessor in interest, for whom similar prior insurance has been cancelled and not reinstated since the last cancellation.

PE 00 H118 02 0507                    © 2007, The Hartford                    Page 5 of 13

**(E)  Exchanges or Purchases**

Loss resulting from the giving or surrendering of **Money**, **Securities** or **Other Property** in any exchange or purchase.

**(F)  Fire**

Loss from damage to the premises resulting from fire, however caused, except for loss of or damage to **Money** or **Securities** and loss from damage to a safe or vault under Insuring Agreement 3.

**(G)  Governmental Action**

Loss resulting from seizure or destruction of **Money**, **Securities** or **Other Property** by order of governmental authority.

**(H)  Indirect Loss**

Loss that is an indirect result of any act or **Occurrence** covered by this **Non-Liability Coverage Part** including but not limited to loss resulting from:

**(1)**  any **Insured's** inability to realize income that it would have realized had there been no loss of or damage to **Money**, **Securities** or **Other Property**.

**(2)**  payment of damages of any type for which any **Insured** is legally liable; provided, however, that the Insurer will pay compensatory damages arising directly from a loss covered under this **Non-Liability Coverage Part**.

**(3)**  payment of costs, fees or other expenses any **Insured** incurs in establishing either the existence of or the amount of loss under this **Non-Liability Coverage Part**, provided, however, that:

**(a)**  the Insurer will reimburse the **Insured** for **Investigative Expenses** up to $5,000 (Five Thousand Dollars) it incurs per **Occurrence** subject to the Insurer's determination that such **Investigative Expenses** were reasonable and incurred in establishing either the existence or amount of such loss covered under this **Non-Liability Coverage Part**; and

**(b)**  the amount of direct covered loss exceeds the Retention Amount for the applicable Insuring Agreement.

Such reimbursement is part of, and not in addition to, the Limit of Insurance for the applicable Insuring Agreement.

**(I)  Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon

**(1)**  an inventory computation; or

**(2)**  a profit and loss computation.

However, where the **Insured** establishes wholly apart from such inventory computations that it has sustained a loss covered under this **Non-Liability Coverage Part**, then the **Insured** may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed.

**J)  Legal Expenses**

Expenses related to any legal action; provided however that this shall not apply to expenses covered under Insuring Agreement 2 that meet the following conditions precedent: The **Insured** shall immediately notify the Insurer of any claim or suit generating such expenses and shall not settle such claim or suit, or incur any related costs or expenses, without the Insurer's prior written authorization, nor shall the **Insured** admit liability in any

42 KB 0256935-15    5/01/15

such claim or suit. The Insurer shall have no duty to defend any such claim or suit, but shall have the right to investigate, negotiate or settle any such claim or suit or to take over the conduct of the defense thereof. Moreover, if, in the Insurer's discretion, the Insurer advances payments for such suit, the Insurer may require a written undertaking, on its terms and conditions, guaranteeing the repayment of any expenses it pays that are determined to be not covered hereunder.

**(K)   Money Operated Devices**

Loss of **Money** contained in any money operated device unless a continuous recording instrument in the device records the amount of any **Money** deposited in it.

**(L)   Motor Vehicles or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers, or semi-trailers or equipment or accessories attached to them. This exclusion shall apply only to Insuring Agreement 4.

**(M)   Nuclear**

Loss resulting directly or indirectly from:

**(1)**   discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

**(2)**   direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation

**(N)   Risks Inherent in Insurance Operations**

Loss resulting directly or indirectly from contractual or extra contractual liability sustained by any **Insured** in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

**(O)   Trading Losses**

Loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Other Property**, whether in any **Insured's** name or in a genuine or fictitious account.

**(P)   Transfer or Surrender of Property**

Loss of or damage to **Money**, **Securities** or **Other Property** after it has been transferred or surrendered to a person or place outside the **Premises** or **Banking Premises**

**(1)**   on the basis of unauthorized instructions, unless covered under Insuring Agreement 5.; or

**(2)**   as a result of a threat to do bodily harm to any person; or

**(3)**   as a result of a threat to do damage to any property.

But this Exclusion does not apply under Insuring Agreement 4. to loss of **Money**, **Securities** and **Other Property** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** if the **Insured**:

**(a)**   had no knowledge of any threat at the time that the conveyance began; or

**(b)**   had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**(Q)   Vandalism**

Loss from damages to the **Premises** or to the exterior of any safe, vault, cash box, cash drawer or cash register by vandalism or mischief.

42 KB 0256935-15      5/01/15

**(R)  Voluntary Parting of Title To or Possession of Property**



Loss resulting from any **Insured**, or anyone acting on its express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property. This exclusion shall apply only to Insuring Agreements 3. and 4.

**(S)  War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion, or revolution, or any related act or incident.

**(T)  Warehouse Receipts Losses**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

## VI.  GENERAL CONDITIONS

**(A)  ARMORED MOTOR VEHICLE COMPANIES**

Under Insuring Agreement 4. the Insurer will pay only for the amount of loss the **Insured** cannot recover:

**(1)**  under its contract with the armored motor vehicle company; and

**(2)**  from any insurance or indemnity carried by or for the benefit of customers of the armored motor vehicle company, or from the armored motor vehicle company.

**(B)  CANCELLATION AS TO ANY EMPLOYEE**

Insuring Agreement 1. is cancelled as to any **Employee**:

**(1)**  immediately upon discovery by a member of the Risk Management Department or any officer, manager, or supervisor of an **Insured's** not in collusion with the **Employee** of **Theft** or any dishonest act in excess of $1,000 committed by the **Employee** whether before or after becoming employed by the **Insured**; or

**(2)**  on the date specified in a notice mailed to an **Insured**. The date will be at least 30 days after the date of the mailing. The mailing of notice to the **Insured** at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**(C)  CONCEALMENT, MISREPRESENTATION OR FRAUD**

This **Non-Liability Coverage Part** is void in any case of fraud by any **Insured** as it relates to this **Non-Liability Coverage Part** at any time. It is also void if any **Insured** at any time intentionally conceals or misrepresents a material fact, whether in the **Application** or otherwise, concerning:

**(1)**  this **Non-Liability Coverage Part**;

**(2)**  the property covered under this **Non-Liability Coverage Part**;

**(3)**  any **Insured's** interest in the property covered under this **Non-Liability Coverage Part**; or

**(4)**  a loss under this **Non-Liability Coverage Part**.

**(D)  CONSOLIDATION OR MERGER**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become **Employees** or an **Insured** acquires the use and control of any additional **Premises**:

**(1)** an **Insured** must give us written notice within 90 days after the effective date of such consolidation or merger, or purchase or acquisition of assets or liabilities, and obtain the Insurer's written consent to extend this insurance to such additional **Employees** or **Premises**. The Insurer may condition its consent upon payment of an additional premium; but there shall only be a premium charge if such merger or acquisition results in a 15%, or greater, increase in the number of **Employees**, assets or revenues acquired through the merger or acquisition.

**(2)** For the first 90 days after the effective date of such consolidation or merger, or purchase or acquisition of assets or liabilities, any insurance afforded for **Employees** or **Premises** also applies to these additional **Employees** or **Premises** for acts committed within this 90-day period.

**(E) DISCOVERY**

**(1)** The Insurer will **pay** for loss which an **Insured** sustains through acts or events committed or occurring at any time and which are discovered by the **Insured** during the **Policy Period** or during the period provided in General Condition G. DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS.

**(2)** Discovery of loss occurs when a member of the Risk Management Department or any officer, manager, or supervisor of an **Insured's** first becomes aware of facts which would cause a reasonable person to assume that a loss covered by this **Non-Liability Coverage Part** has been, or may be incurred even though the exact amount or details of the loss may not then be known.

**(3)** Discovery also occurs when an **Insured** receives notice of an actual or potential claim against it alleging facts, which if true, would constitute a covered loss under this policy.

**(4)** No coverage will be available under this **Non-Liability Coverage Part** for any loss of which an **Insured** was aware prior to the inception date of this **Non-Liability Coverage Part**.

**(F) DISCOVERY SUPERSEDING LOSS SUSTAINED COVERAGE – LIABILITY FOR PRIOR LOSSES**

**(1)** If this **Non-Liability Coverage Part** has replaced similar prior insurance written by a company other than the Insurer, and such other insurance provided a period of time to discover loss occurring prior to the termination or cancellation of that coverage, and a loss is discovered within the period provided by prior insurance to discover losses, the Insurer will not pay for such loss unless the amount exceeds the Limit of Insurance under said prior Policy. The Insurer will then only pay the **Insured** for any excess loss subject to the Insuring Agreements, Exclusions and General Conditions of this **Non-Liability Coverage Part**.

**(2)** Any payment that the Insurer makes to an **Insured** under this insurance shall not exceed the difference between the amount of insurance under the **Insured's** prior Policy and the Limit of Insurance shown in the Declarations and the Insurer will not apply its Retention Amount to any excess loss payment.

**(G) DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS**

The Insurer will pay for loss that an **Insured** sustained prior to the effective date of termination or cancellation of this **Non-Liability Coverage Part**, which is discovered by the **Insured**:

**(1)** no later than 60 days from the date of the termination, cancellation or non-renewal; and

**(2)** as respects any **Employee Benefit Plan(s)**, no later than 1 year from the date of that termination, cancellation or non-renewal.

However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by the **Insured** to replace, in whole or in part, the insurance afforded by this **Non-Liability Coverage Part**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(H) DUTIES IN THE EVENT OF LOSS**





After a member of the Risk Management Department or an officer, manager or supervisor of an **Insured's** discovers a loss or a situation which may result in a loss of or damage to **Money**, **Securities** or **Other Property**, the Risk Management Department member or officer, manager or supervisor must:

   **(1)** notify the Insurer as soon as possible but no later than 90 days after discovery of loss;

   **(2)** submit to an examination under oath at the Insurer's request and give it a signed statement;

   **(3)** give the Insurer a detailed, sworn proof of loss within 120 days;

   **(4)** cooperate with the Insurer in the investigation and settlement of any claim; and

   **(5)** with respect to Insuring Agreements 3. and 4., notify the police if an **Insured** has reason to believe that its loss involves a violation of the law.

**(I)  EMPLOYEE BENEFIT PLANS PROVISION**

   **(1)** The Insurer will pay for loss of or damage to **Money**, **Securities** or **Other Property** of any **Employee Benefit Plan(s)** sponsored exclusively by any **Insured** resulting directly from **Theft** by an **Employee**. The Limit of Insurance applicable to any **Employee Benefit Plan** shall equal the lesser of ten percent (10%) of the **Employee Benefit Plan** assets as of the beginning of such **Employee Benefit Plan** fiscal year or five hundred thousand dollars ($500,000). Such Limit shall be part of and not in addition to the Limit of Insurance for Employee Theft stated on the Declarations.

   **(2)** Any payments the Insurer makes to an **Insured** for loss sustained by any **Employee Benefit Plan** will be held by that **Insured** for the use and benefit of the **Employee Benefit Plan** sustaining the loss.

   **(3)** If two or more **Employee Benefit Plans** are insured under this **Non-Liability Coverage Part**, any payment which the Insurer makes for loss sustained by two or more **Employee Benefit Plans**, or of commingled funds or **Other Property** of two or more **Employee Benefit Plans**, which arises out of one **Occurrence**, is to be shared by each **Employee Benefit Plan** sustaining loss in the proportion that the Limit of Insurance required for each **Employee Benefit Plan** bears to the total of those limits.

   **(4)** The Retention Amount which applies to the Employee Theft Insuring Agreement shall not apply to loss sustained by any **Employee Benefit Plans** subject to **ERISA** and which plan is covered under this insurance.

**(J)  JOINT INSURED**

   **(1)** The **Named Entity** will act for itself and for every other **Insured** for all purposes of this **Non-Liability Coverage Part**.

   **(2)** If any **Insured**, partner, member or officer of an **Insured** has knowledge of any information relevant to this **Non-Liability Coverage Part**, that knowledge is considered to be knowledge of every **Insured**.

   **(3)** An **Employee** of any **Insured** is considered to be an **Employee** of every **Insured**.

   **(4)** If this **Non-Liability Coverage Part** or any of its Insuring Agreements is cancelled, terminated or non-renewed as to any **Insured**, loss sustained by that **Insured** is covered only if discovered by the **Insured** during the period of time provided in General Condition G. DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS. This extended period to discover loss also terminates in accordance with paragraph 2 of that condition.

   **(5)** The Insurer will not pay a greater amount for loss sustained by more than one **Insured** than the Insurer would pay if all of the loss had been sustained by one **Insured**.

**(K)  OWNERSHIP OF PROPERTY; INTERESTS COVERED**



42 KB 0256935-15     5/01/15

**(1)** The property covered under this **Non-Liability Coverage Part** is limited to **Money, Securities** or **Other Property:**

    **(a)** that an **Insured** owns or leases; or

    **(b)** owned by an **Insured's** client and which the **Insured** holds on its **Premises** or which is in the custody of one acting as the **Insured's Messenger** and while such **Money, Securities** or **Other Property** is in transit; or

    **(c)** for which an **Insured** is legally liable excepting loss of client **Money, Securities** or **Other Property** occurring on such client's premises.

**(2)** However, this **Non-Liability Coverage Part** is for the **Insureds'** benefit alone and no other person or organization has any rights or benefits. Any claim for a loss of client **Money, Securities** or **Other Property** occurring on an **Insured's Premises** or while in transit in the custody of a **Messenger** may only be made by an **Insured** in its proof of loss.

## (L) VALUATION

**(1)** Subject to the applicable Limit of Insurance, the Insurer will pay for:

    **(a)** loss of **Money** but only up to and including its face value. The Insurer may, at its option, pay for a loss of **Money** issued by any country other than the United States of America in either the face value in the **Money** issued in that country, or, in the United States of America dollar equivalent determined by the rate of exchange as stated in the *Wall Street Journal* on the day that the loss occurred.

    **(b)** loss of **Securities** but only up to and including their value as stated in the *Wall Street Journal* at the close of business on the day that the loss was discovered. However, the Insurer may, at its option, 1) pay the value of such **Securities,** 2) replace them in kind in which event an **Insured** must assign to the Insurer all its rights, title and interest in and to those **Securities** or 3) pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities.** However, the Insurer will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of

        **i.** the value of the **Securities** as stated in the *Wall Street Journal* at the close of the business on the day the loss was discovered; or

        **ii.** the Limit of Insurance.

    **(c)** loss of or damage to **Other Property** or loss from damage to the **Premises** or its exterior for the replacement cost of the property without deduction for depreciation, subject to 2. below. However, the Insurer will not pay for more than the lesser of:

        **i.** the Limit of Insurance applicable to the lost or damaged property; or

        **ii.** the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

        **iii.** the amount that any **Insured** actually spends that is necessary to repair or replace the lost or damaged property.

**(2)** The Insurer will not pay on a replacement cost basis for any loss or damage:

    **(a)** until the lost or damaged property is actually repaired or replaced; and

    **(b)** unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

    If the lost or damaged property is not repaired or replaced, the Insurer will pay based on actual cash value.

(3)   The Insurer may, at its option, pay for loss of or damage to property other than **Money** in the **Money** of the country in which the loss occurred; or in the United States of America dollar equivalent of the **Money** of the country where the loss occurred determined by the rate of exchange on the day the loss was discovered. Any property that the Insurer pays for or replaces becomes its property.



(4)   Loss of or loss from damage to any books or records of account or other records, tapes, disks, or electronic media used by an **Insured** in the business but only if such books, records, tapes or disks are actually reproduced and then only for not more than the blank books, pages, tapes and disks or other materials plus the cost of labor for the actual transcription or copying of data which an **Insured** shall furnish to reproduce such books, records, tapes or disks.

## (M) RECORDS

The **Insured** must keep records of all property covered under this **Non-Liability Coverage Part** so that the Insurer can verify the amount of any loss.

## (N) RECOVERIES

(1)   Any recoveries made before the resolution of all or any part of a claim under this policy shall be distributed/applied in the following order of priority:

    (a)   to the party (either the **Insured** or Insurer) to reimburse it for the reasonable and necessary costs of obtaining the recovery; and then

    (b)   to the **Insured** to reduce the amount of covered loss.

(2)   Any recoveries made after the resolution of all or any part of a claim under this policy shall be distributed/applied in the following order of priority:

    (a)   to reimburse the party (either the **Insured** or Insurer) for the reasonable and necessary costs of obtaining the recovery; and then

    (b)   to the **Insured**, until reimbursed for any excess covered loss sustained that exceeds the Limit of Insurance and the Retention Amount, if any; and then

    (c)   to the Insurer, until reimbursed for the amount paid; and then

    (d)   to the **Insured**, until reimbursed for that part of the loss equal to the Retention Amount, if any; and then

    (e)   to the **Insured** for any loss not covered.

(3)   Recoveries do not include any recovery:

    (a)   from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    (b)   of original securities after duplicates of them have been issued.

## (O) Takeover of Named Entity

(1)   the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

(2)   all, or substantially all of the assets of the **Named Entity** are acquired by another person or entity, group of persons or entities, or persons and entities acting in concert such that the **Named Entity** is not the surviving entity; or

**(3)** more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,



then coverage under this **Non-Liability Coverage Part** shall immediately terminate as of the date of such transaction and any incident occurring upon or after such date shall not be covered hereunder.

ENDORSEMENT NO:    1

This endorsement, effective 12:01 am,      5/01/15                                    forms part
of policy number    42 KB 0256935-15

issued to:          MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                 TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under all lines of insurance in this policy subject to the Terrorism Risk Insurance Act.

### A. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to "certified acts of terrorism" that exceed the applicable insurer deductible. However, if aggregate insured losses under the Terrorism Risk Insurance Act, as amended (TRIA), exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of such losses that exceeds $100 billion.  The United States government has not charged any premium for their participation in covering terrorism losses.

### B. Cap On Certified Terrorism Losses

A "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under TRIA. The criteria contained in TRIA, for a "certified act of terrorism" include the following:

1.   The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.   The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA, exceeds $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses  may be reduced on a pro rata  basis in accordance with procedures established by the Treasury,, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible.  In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

### C. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omissions of a terrorism exclusion, or inclusion of coverage for terrorism, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion or the War And Military Action Exclusion.

All other terms and conditions remain unchanged.

ENDORSEMENT NO:   2

This endorsement, effective 12:01 am,     5/01/15                                    forms part
of policy number     42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:               TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERCENTAGE SHAREHOLDER EXCLUSION

## (DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

**DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART**, section **IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS** is amended to add:

- in connection with any **Claim** brought or maintained by or on behalf of any owner of  10 ......% or more of the outstanding securities of an **Insured Entity**, either directly or beneficially.

All other terms and conditions remain unchanged.

David Zwiener, President

This endorsement, effective 12:01 am,    5/01/15        forms part
of policy number    42 KB 0256935-15

issued to:       MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:       TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADD SUBSIDIARY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

**COMMON TERMS AND CONDITIONS**, section **II. COMMON DEFINITIONS, (W) "Subsidiary"**, is amended by the addition of the following:

    **Subsidiary** also means:

    MADISON CONTRACTING, LLC


All other terms and conditions remain unchanged.

David Zwiener, President

ENDORSEMENT NO:    4

forms part

This endorsement, effective 12:01 am,        5/01/15
of policy number        42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE

## FOR EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!I POLICY**

**Declarations, Item 5: Liability Coverage Part Elections**, is amended as follows:

I.    **PRIOR OR PENDING DATE** for the **COVERAGE PART** Employment Practices Liability, is deleted and replaced with the following:

**PRIOR OR PENDING DATES**

**Employment Practices Liability**

Prior or Pending Date shall be: _____5/01/09_____, solely with respect to the first $ _1,000,000_ of the Aggregate Limit of Liability under this **Liability Coverage Part**.

Prior or Pending Date shall be: _____5/01/11_____, solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_1,000,000_ in excess of the first $_1,000,000_.

Prior or Pending Date shall be: _____0/00/00_____, solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____.

II.    The Prior or Pending Date stated in **COVERAGE FEATURES** for the Third Party Liability Coverage of the **Employment Practices Liability Coverage Part**, is hereby deleted and replaced with the following:

Third Party Liability Coverage

Prior or Pending Date shall be: _____5/01/09_____, solely with respect to the first $ _1,000,000_ of the Sublimit of Liability under this elected Coverage Feature.

Prior or Pending Date shall be: _____5/01/11_____, solely with respect to the portion of the Sublimit of Liability of this elected Coverage Feature that is $_1,000,000_ in excess of the first $_1,000,000_.

Prior or Pending Date shall be: _____0/00/00_____, solely with respect to the portion of the Sublimit of Liability of this elected Coverage Feature that is $_____ in excess of the first $_____.

All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H186 01 0507        © 2007, The Hartford        Page 1 of 1

ENDORSEMENT NO:   5

forms part

This endorsement, effective 12:01 am,       5/01/15
of policy number       42 KB 0256935-15

issued to:       MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:       TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE
## FOR DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!! POLICY**

Declarations, **Item 5: Liability Coverage Part Elections**, is amended as follows:

I.   **PRIOR OR PENDING DATE** for the **COVERAGE PART Directors, Officers and Entity Liability**, is deleted and replaced with the following:

**PRIOR OR PENDING DATES**

**Directors, Officers and Entity Liability**

Prior or Pending Date shall be: ___5/01/09_____ , solely with respect to the first $_1,000,000_____ of the Aggregate Limit of Liability under this **Liability Coverage Part**.

Prior or Pending Date shall be: ___5/01/11_____ , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_1,000,000_____ in excess of the first $_1,000,000____ .

Prior or Pending Date shall be: ___0/00/00_____ , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____ .

II.   The Prior or Pending Date stated in **COVERAGE FEATURES** for the Entity Liability Coverage (if elected) of the **Directors, Officers and Entity Liability Coverage Part,** is hereby deleted and replaced with the following:

Entity Liability Coverage

Prior or Pending Date shall be: ___5/01/09_____ , solely with respect to the first $_1,000,000_____ of the Aggregate Limit of Liability of this **Liability Coverage Part**.

Prior or Pending Date shall be: ___5/01/11_____ , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_1,000,000_____ in excess of the first $_1,000,000____ .

Prior or Pending Date shall be: ___0/00/00_____ , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____ .

All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H187 01 0507                    © 2007, The Hartford                    Page 1 of 1

ENDORSEMENT NO:    6

forms part

This endorsement, effective 12:01 am,   5/01/15
of policy number    42 KB 0256935-15

issued to:       MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:           TWIN CITY FIRE INSURANCE CO.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE

## FOR FIDUCIARY LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!! POLICY**

**DECLARATIONS, ITEM 5: Liability Coverage Part Elections**, is amended as follows:

I.      **PRIOR OR PENDING DATE** for the **Fiduciary Liability Coverage Part** is deleted and replaced with the following:

**PRIOR OR PENDING DATES**

**Fiduciary Liability**

Prior or Pending Date shall be:    5/01/09  , solely with respect to the first $ 1,000,000           of the Aggregate Limit of Liability under this **Liability Coverage Part**.

Prior or Pending Date shall be:    5/01/11  , solely with respect to the  portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $ 1,000,000          in excess of the first $ 1,000,000      .

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $                  in excess of the first $                  .

The Prior or Pending Date stated in **COVERAGE FEATURES** for the Settlement Program Coverage (if elected) of the **Fiduciary Liability Coverage Part** is hereby deleted and replaced with the following:

Settlement Program Coverage Prior or Pending Dates:

Prior or Pending Date shall be:    5/01/09  , solely with respect to the first $ 100,000           of the Aggregate Limit of Liability of this **Liability Coverage Part**.

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $                  in excess of the first $                  .

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $                  in excess of the first $                  .

All other terms and conditions remain unchanged.

David Zwiener, President

ENDORSEMENT NO:      7

This endorsement, effective 12:01 am,      5/01/15                                  forms part
of policy number      42 KB 0256935-15

issued to:          MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                 TWIN CITY FIRE INSURANCE CO.



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### STATE AMENDATORY INCONSISTENCY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

**COMMON TERMS AND CONDITIONS** are amended by the addition of the following:

- **STATE AMENDATORY INCONSISTENCY**

  In the event that there is an inconsistency between (i) the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Policy) and (ii) any other term or condition of this Policy, it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of (i) or (ii) that are more favorable to the **Insured**.

All other terms and conditions remain unchanged.



David Zwiener, President

ENDORSEMENT NO:   8

**This endorsement, effective 12:01 am,**     5/01/15                           forms part
**of policy number**     42 KB 0256935-15

**issued to:**          MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**               TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE DATA PRIVACY LIABILITY ENDORSEMENT

## (EMPLOYMENT PRACTICES LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE!! POLICY**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** section **II. DEFINITIONS,** is amended as follows:

I.   Definition **(D) "Employment Practices Wrongful Act,"** sub-paragraph **(iv)** is deleted and replaced with the following:

   **(iv)**  employment-related:  defamation, misrepresentation or invasion privacy including any **Employee Data Privacy Wrongful Act.**

II.  The following definitions are added:

   •   **"Employee Data Privacy Wrongful Act"** means either:

      **(1)**  The failure to prevent any unauthorized access to or use of, data containing **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity.**

      **(2)**  The failure to notify any **Employee** or applicant for employment with the **Insured Entity,** of any actual or potential unauthorized access to or use of **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity,** if such notice was required by state or federal regulation or statute.

   •   **"Private Employment Information"** means any information regarding an **Employee** or applicant for employment with the **Insured Entity,** which is collected or stored by an **Insured** for the purposes of establishing, maintaining or terminating an employment relationship.

All other terms and conditions remain unchanged.

*Neal Wohl*

Neal S  Wohn, President & COO

© 2009, The Hartford                          Page 1 of 1

**ENDORSEMENT NO:**   9

This endorsement, effective 12:01 am,      5/01/15                                                   forms part
of policy number      42 KB 0256935-15

issued to:           MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                  TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WORKPLACE BULLYING COVERAGE

## (EMPLOYMENT PRACTICES LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!I POLICY**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** section **II., DEFINITIONS, (D) "Employment Practices Wrongful Act,"** is amended to include any actual or alleged bullying in the workplace.

All other terms and conditions remain unchanged.

_Juan Andrade, President & COO_



685 00 0111                          © 2011, The Hartford                          Page 1 of 1

ENDORSEMENT NO:    10

This endorsement, effective 12:01 am,          5/01/15                                              forms part
of policy number      42 KB 0256935-15

issued to:          MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                 TWIN CITY FIRE INSURANCE CO.


# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MARYLAND AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®II POLICY**

I.    **DECLARATIONS, ITEM 7. EXTENDED REPORTING PERIOD**, is deleted and replaced by the following:

ITEM 7: **Extended Reporting Period:**

**Option 1**

**(A)** Duration: Unlimited

**(B)** Premium*: 750%
or
**Option 2**

**(A)** Duration:   12 months

**(B)** Premium*: 100%

*     Premium for the Extended Reporting Period elected shall be the indicated percentage of the sum of
      the annual premium specified for all **Liability Coverage Parts** plus the annualized amounts of any
      additional premiums charged during the Policy Period. The Extended Reporting Period is not
      available for the **Non-Liability Coverage Parts**.

II.   **COMMON TERMS AND CONDITIONS**, Section **IX. EXTENDED REPORTING PERIOD**, paragraph (A), is
      amended to include the following:

The **Insured** will have multiple Extended Reporting Period options. One option will be for an unlimited Extended
Reporting Period.

III.  **COMMON TERMS AND CONDITIONS**, section **XVII. ACTION AGAINST THE INSURER** , solely with respect to the
      **Crime Coverage Part** and the **Kidnap And Ransom/Extortion Coverage Part** is deleted and replaced by the
      following:

XVII.    **ACTION AGAINST THE INSURER**

Solely with respect to the **Crime Coverage Part**:



PE 19 H004 01 1011                              © 2011, The Hartford                                Page 1 of 2

ENDORSEMENT NO:   10

**(A)** No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and

**(B)** No legal action shall be taken against the Insurer involving loss until 90 days after the **Insured** has filed proof of loss with us; and

**(C)** No legal action shall be taken against the Insurer involving loss unless such action is brought within 3 years from the date of the accrual thereof.

Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:

No suit, action or proceeding for recovery of any claim under this policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within 3 years from the date of the accrual thereof.

All other terms and conditions remain unchanged.

André A. Napoli, President



ENDORSEMENT NO:  11

This endorsement, effective 12:01 am,     5/01/15                                forms part
of policy number     42 KB 0256935-15

issued to:          MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                 TWIN CITY FIRE INSURANCE CO.


# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## DECEPTION FRAUD ENDORSEMENT
### (CRIME COVERAGE PART)


This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

The **Crime Coverage Part** is amended as follows:

I.   Section **I. INSURING AGREEMENTS**, is amended by the addition of the following:

**DECEPTION FRAUD**

The Insurer will pay for loss of **Money** or **Securities** resulting from **Deception Fraud**, subject to the Limit of Insurance and Retention stated in the SCHEDULE below.

**Deception Fraud SCHEDULE**

| **Limit of Insurance** | **$15,000** | **Retention** | **$5,000** |

The above Limit of Insurance and Retention apply per **Occurrence**.



II.  Section **IV. DEFINITIONS**, is amended by the addition of the following:

- **Deception Fraud** means the intentional misleading of a person to induce the **Insured** to part with **Money** or **Securities** by someone pretending to be an **Employee**, owner of the **Insured** or one of the following business relations:

  **(1)** A **Vendor**;

  **(2)** A **Customer**;

  **(3)** A **Custodian**; or

  **(4)** A **Messenger**.

- **Customer** means a natural person or entity for whom the **Insured** provides goods or services.

- **Vendor** means a business entity that sells goods or services to the **Insured**.

III. Section **V. EXCLUSIONS**, is amended in the following manner:

  **(1)** Exclusion **(B)** is deleted and replaced with the following:

Loss resulting from **Theft, Deception Fraud** or **Forgery** committed by any partner of an **Insured** whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would otherwise be covered under INSURING AGREEMENTS 1 or 2, this exclusion shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage



ownership of such **Insured**, on the day immediately preceding the date of discovery, multiplied by such **Insured's** total assets as reflected in such **Insured's** most recent audited financial statements.

**(2)** Exclusion (C) is deleted and replaced with the following:

Loss resulting from **Theft, Deception Fraud** or any other dishonest or criminal act committed by any of the **Insureds' Employees**, managers, directors or trustees whether acting alone or in collusion with other persons or while performing services for any **Insured** or otherwise, except when covered under Insuring Agreement 1.

**(3)** Exclusion **(E)** is amended to include the following:

This exclusion shall not apply to the Deception Fraud Insuring Agreement

**(4)** The following exclusions are added:

- Loss or damage resulting directly or indirectly from **Deception Fraud.** This exclusion shall not apply to the Deception Fraud Insuring Agreement.

- Loss or damage:

  **(1)** resulting from **Theft** by an **Employee;**

  **(2)** resulting from **Forgery** or alteration of:

    **(a)** checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **Money**; or

    **(b)** written instruments required in conjunction with any credit, debit or charge card;

  **(3)** directly related to the use of any computer to fraudulently cause a transfer of **Money** or **Securities** from inside the **Premises** or **Banking Premises;**

  **(4)** resulting from **Funds Transfer Fraud;**

  **(5)** resulting from the **Insureds** having accepted in good faith and in the regular course of business, in exchange for merchandise, **Money** or services:

    **(a)** money orders issued by any post office, express company or bank in any country that are not paid upon presentation; or

    **(b) Counterfeit** paper currency of any country;

  **(6)** resulting from any investments in **Securities** or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

  **(7)** resulting from the failure, malfunction, inadequacy or illegitimacy of any product or service, including in the advertisement or labelling thereof;

  **(8)** resulting from the failure of any party to perform, in whole or in part, under a contract;

  **(9)** resulting from gambling, game of chance, lottery or similar game; and

  **(10)** resulting from any party's use or acceptance of any credit card, debit or similar instrument, whether or not genuine.

  This exclusion shall apply only to the Deception Fraud Insuring Agreement.

- Loss of or damage to **Other Property.** This exclusion shall apply only to the Deception Fraud Insuring Agreement.

- Loss of **Money** or **Securities:**

  **(1)** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company; or

  **(2)** inside the **Premises** or **Banking Premises** resulting directly from disappearance or destruction.

  This exclusion shall apply only to the Deception Fraud Insuring Agreement.



ENDORSEMENT NO:    11

All other terms and conditions remain unchanged.

André A. Napoli, President

ENDORSEMENT NO:   12

**This endorsement, effective 12:01 am,**     5/01/15                                forms part
**of policy number**     42 KB 0256935-15

**issued to:**        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**             TWIN CITY FIRE INSURANCE CO.


# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INCLUDE COVERAGE FOR VIRTUAL CURRENCY - SUBLIMITED

## (CRIME COVERAGE PART)

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

The **Crime Coverage Part** is amended as follows:

I.     Section **II. LIMIT OF INSURANCE,** is amended by the addition of the following:

   Any coverage for loss of **Virtual Currency** under this Policy is subject to a sublimit of $15,000 per **Occurrence**, which sublimit is part of and not in addition to any other applicable Limit of Insurance under this Policy.

II.     Section **III. RETENTION,** is amended by the addition of the following:

   The foregoing notwithstanding, any coverage for loss of **Virtual Currency** under this Policy is subject to a Retention Amount of $5,000 per **Occurrence**.

III.     Section **IV. DEFINITIONS, (M) Money** is amended by the addition of the following:

   **Money** shall also include **Virtual Currency**.

IV.     Section **IV. DEFINITIONS,** is amended by the addition of the following:

   • "**Virtual Currency**" means a virtual or digital representation of value that is not issued by a central bank or a public authority, but may be accepted as a means of payment and can be transferred, stored or traded electronically, whether or not it is recognized as, or exchangeable for, legal tender.

V.     Section **VI., GENERAL CONDITIONS, (L), VALUATION,** is amended by the addition of the following:

   • The foregoing notwithstanding, in the event of loss of **Virtual Currency** covered under this Policy, the Insurer may, at its option:

   **(1)** tender the value of the **Virtual Currency** in actual currency of the country in which the loss was sustained, or in the United States of America dollar equivalent, by taking the weighted average of the values of **Virtual Currency** in such actual currency as posted on the three largest relevant **Virtual Currency** exchanges, based on the volume of **Virtual Currency** exchanged, as of 12:00 PM EST on the day the loss is discovered; or

PE 00 H710 00 1014                    © 2014, The Hartford                    Page 1 of 2

ENDORSEMENT NO:    12

(2)  replace the quantity of **Virtual Currency** of such loss.

All other terms and conditions remain unchanged.

André A. Napoli, President

ENDORSEMENT NO:   13

This endorsement, effective 12:01 am,      5/01/15                      forms part
of policy number        42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:          TWIN CITY FIRE INSURANCE CO.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT

I.   **Notice of Claim or Wrongful Act**

    A.   A notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

        *Via mail:*                The Hartford

                                      Claims Department

                                        Hartford Financial Products

                                      277 Park Avenue, 15th Floor

                                      New York, New York 10172

                                            or

        *Via email:*            HFPClaims@thehartford.com

                                          or

        *Via Facsimile:*        (917) 464-6000

    B.   Where it is stated in the policy or declarations page that a notice of any **Claim** or **Wrongful Act** shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115, it shall be deleted and replaced with the following:

    Notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

        *Via mail:*                 The Hartford

                                          Claims Department

                                        Hartford Financial Products

                                      277 Park Avenue, 15th Floor

                                      New York, New York 10172

                                        or

        *Via email:*            HFPClaims@thehartford.com

                                        or

    *Via Facsimile:* (917) 464-6000

II.   **All Other Notices**

    A.   All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

                                        The Hartford

                                        Product Services

                                        Hartford Financial Products

                                      277 Park Avenue, 15th Floor

                                      New York, New York 10172

HG 00 H009 01 0708                      © 2008, The Hartford                      Page 1 of 2

B.   With the exception of notice of a **Claim** or **Wrongful Act**, where it is stated in the policy or declarations page that a notice shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted and replaced with the following:

All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

The Hartford

Product Services

Hartford Financial Products

277 Park Avenue, 15th Floor

New York, New York 10172

All other terms and conditions remain unchanged.

Juan Andrade, President & COO

ENDORSEMENT NO:   14

**This endorsement, effective 12:01 am,**    5/01/15                          forms part
**of policy number**    42 KB 0256935-15

**issued to:**        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**               TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

If purchased:

I.   **DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART**, section IV. **EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS**, is amended to add:

   - in connection with any **Claim** based upon, arising from, or in any way related to any:

      1.  discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

      2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;

      provided that this exclusion shall not apply to any **Derivative Action** otherwise covered under Insuring Agreement (A).

II.  **FIDUCIARY LIABILITY COVERAGE PART**, section III. **EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS, (A)**, and **MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE PART**, section IV. **EXCLUSIONS**, are amended to add:

   - in connection with any **Claim** based upon, arising from, or in any way related to any:

      1.  discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

      2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;


All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H088 01 0507                        © 2007, The Hartford                        Page 1 of 1

ENDORSEMENT NO:   15

This endorsement, effective 12:01 am,      5/01/15                                    forms part
of policy number      42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:               TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

I.   The Cancellation provision of this Policy is deleted and replaced by the following:

NOTICE OF CANCELLATION

A.   The **Insured** shown in the Declarations may cancel this Policy by mailing advance written Notice of Cancellation to the **Insurer** stating when thereafter such cancellation shall be effective.

B.   The **Insurer** may only cancel this policy for nonpayment of premium. The **Insurer** may cancel this policy by mailing to the **Insured** written Notice of Cancellation at least ten (10) days before the effective date of cancellation.

C.   The **Insurer** will mail its notice to the **Insured's** last mailing address known to the **Insurer**. Notice of Cancellation will state the specific reasons for cancellation.

D.   Notice of Cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

E.   If this Policy shall be cancelled by the **Insured**, the **Insurer** shall retain the customary short rate proportion, which is ninety (90) percent of the pro-rata premium hereon, except as otherwise provided in this Policy. If the **Insurer** cancels this Policy, the **Insurer** shall retain the pro rata proportion of the premium hereon. However, if this Policy is financed by a premium finance company and the **Insurer** or the premium finance company or the **Insured** cancels the Policy, the refund of any gross unearned premiums will be computed pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner. The cancellation will be effective even if we have not made or offered a refund.

F.   A certificate of mailing will be proof of mailing and sufficient proof of notice.

II.  The following provision is added:

NOTICE OF NONRENEWAL

A.   If the **Insurer** decides not to renew this Policy, it will mail or deliver to the **Insured** shown in the Declarations written Notice of the Nonrenewal not less than forty-five (45) days before the expiration date or anniversary date of this Policy.

B.   A certificate of mailing will be proof of mailing and sufficient proof of notice.

**ENDORSEMENT NO:**      1 5

All other terms and conditions remain unchanged.

Juan Andrade, President & COO



**Named Insured:**   MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**Policy Number:**   42 KB 0256935-15

**Effective Date:**   5/01/15

**Insurer:**   TWIN CITY FIRE INSURANCE CO.

## TERRORISM RISK INSURANCE ACT

## CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM

We previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make "certified acts of terrorism" coverage available in the policies we offer.

The terrorism coverage as defined by the Act does not apply to Crime or Miscellaneous Professional Liability coverage parts, if any or all of those coverage parts are elected under this policy.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism. The criteria contained in TRIA for "certified act of terrorism" include the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for 85% of that portion of  insured losses attributable to certified acts of terrorism that exceeds the applicable insurer deductible. However, if aggregate insured losses under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall  not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the  Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

At that time we advised you that you will not be required to pay a premium for "certified acts of terrorism" coverage at this time. As a result of our notification, you have accepted "certified acts of terrorism" coverage. If, upon renewal of your policy, a premium is going to be charged for "certified acts of terrorism" coverage, we will provide you with notification of what that premium will be.

   © 2012, The Hartford
Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Producer Compensation Notice**



You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

# EXHIBIT 6

November 18, 2015

Mr. Robert Buczkowski
804 Winchester Drive
Westminster, MD 21157


Dear Mr. Buczkowski,

For the reasons that have been discussed with you on numerous occasions, you were previously advised that your employment with Madison Mechanical, Inc. (the Company) was being terminated for cause. Although the projected date of termination was originally expected to be November 25, 2015, the Company has decided to accelerate the date of your termination, and your employment is hereby terminated for cause, effective immediately. Despite having no obligation to do so, the Company will continue to pay you your regular pay, less applicable taxes and withholdings, through the originally scheduled termination date of November 25, 2015.

As you are aware, in order to ease your transition, the Company previously offered to pay you severance. It is the understanding of the Company that you have rejected that offer. Accordingly, unless otherwise agreed, all wages and benefits will cease subsequent to November 25, 2015. Additional information regarding continuation of benefits will be provided under separate cover.

Please immediately return all Company property, including the laptop that was provided to you by the Company as well as all Company materials and documentation. You may retain your company issued cell phones, but service for all phones in your possession will be discontinued and your phones will be removed from the Company's service plan. Please certify that you have not retained any copies, electronic or otherwise, of the Company's confidential and proprietary information. As you are aware, your duty to maintain confidentiality of the Company's non-public, confidential and proprietary information continues beyond the date of your termination.

We will continue to work towards resolution of any outstanding issues through our respective legal representatives.

Sincerely,



Glenn Haslam
President
Madison Mechanical, Inc.

# EXHIBIT 7

**From:** Huder, Nancy (Financial Products) [mailto:nancy.huder@thehartford.com]
**Sent:** Monday, January 11, 2016 10:38 AM
**To:** Bill Franey, Sr.; Pat Biederman
**Subject:** RE: Madison Mechanical

Great. I will have that issued now effective 1/1.

Thanks,
Nancy

**NANCY P. HUDER, CPCU**
Executive Underwriter
Hartford Financial Products – D&O, EPL, Fiduciary, Crime, K&R

The Hartford Financial Services Group, Inc.
5285 Shawnee Road | Suite 600
Alexandria, Virginia 22312
W: 703-642-4739
F: 855-227-0685

www.hfpinsurance.com
www.hfpinsurance.com/pronto - Online quoting for D&O, EPL, Fiduciary, and Crime for accounts < 100 employees and < $25M in revenue

---

**From:** Bill Franey, Sr. [mailto:wfraney@alliant.com]
**Sent:** Monday, January 11, 2016 10:20 AM
**To:** Huder, Nancy (Financial Products); Pat Biederman
**Subject:** RE: Madison Mechanical

Nancy, that will be fine. Thanks Bill

**William G. Franey**
Executive Vice President
Commercial and Corporate Group
Alliant Americas

9901 Business Parkway
Ste. B
Lanham, MD 20706

D   301 306 3066
O   301 459 0055
C   410 980 9903
F   301 459 9521
www.alliant.com

CA License No. 0C36861



Alliant Americas is a division of Alliant Insurance Services, Inc.

---

**From:** Huder, Nancy (Financial Products) [mailto:nancy.huder@thehartford.com]
**Sent:** Monday, January 11, 2016 9:50 AM
**To:** Bill Franey, Sr.; Pat Biederman
**Subject:** RE: Madison Mechanical

Hi Bill and Pat,

Thanks again for the additional information. I know your intent was to have a separate policy for this new entity, however, we can agree to add Madison Mechanical Contracting LLC to the Madison Mechanical Inc policy at no additional premium. In essence we are insuring the same company business practices for both entities and see this as

2

an eventual name change with some minor shareholder change. Please let me know if we should proceed with the endorsement to add Madison Mechanical Contracting to the current policy.

Thanks,
Nancy

NANCY P. HUDER, CPCU
Executive Underwriter
Hartford Financial Products – D&O, EPL, Fiduciary, Crime, K&R

The Hartford Financial Services Group, Inc.
5285 Shawnee Road | Suite 600
Alexandria, Virginia 22312
W: 703-642-4739
F: 855-227-0685

www.hfpinsurance.com
www.hfpinsurance.com/pronto - Online quoting for D&O, EPL, Fiduciary, and Crime for accounts < 100 employees and < $25M in revenue

THE
HAR

Busine
Emplo
Auto
Home

**From:** Bill Franey, Sr. [mailto:wfraney@alliant.com]
**Sent:** Thursday, January 07, 2016 9:13 AM
**To:** Huder, Nancy (Financial Products); Pat Biederman
**Subject:** RE: Madison Mechanical

Please scroll down.

**William G. Franey**
Executive Vice President
Commercial and Corporate Group
Alliant Americas

9901 Business Parkway
Ste. B
Lanham, MD  20706

D   301 306 3066
O   301 459 0055
C   410 980 9903
F   301 459 9521
www.alliant.com

CA License No. 0C36861



Alliant Americas is a division of Alliant Insurance Services, Inc.

**From:** Huder, Nancy (Financial Products) [mailto:nancy.huder@thehartford.com]
**Sent:** Thursday, January 07, 2016 9:05 AM
**To:** Pat Biederman
**Cc:** Bill Franey, Sr.
**Subject:** RE: Madison Mechanical

Hi Pat,

3

After some further discussions here, I wanted to get back to you and be upfront that it is very unusual for a carrier to write two policies for basically the same business entity / business operations (I realize there are two separate companies and some slightly different ownership), but the operations appear to be the same and transferring between companies. There could potentially be two claims under two policies for the same event, which increases the exposure. With that being said, we would like to request the following additional information <u>from the insured</u> in order to determine if we can quote the new entity. Please forward their responses.

- What is the reason behind creating a totally new entity (Madison Mechanical Contracting LLC)? It appears there will be a change in ownership, but it is rare to see a completely new company set up. Please provide as much details as possible. THE NEW INVESTOR WANTED A NEW CLEAN COMPANY TO PUT HIS MONEY INTO. SECONDLY, ANY JOBS THAT WERE OPEN AT 12/31/15 STAY IN THE OLD MADISON AND PROFITS WOULD BE DISTRIBUTED TO THOSE SHAREHOLDERS.
- When do you anticipate that Madison Mechanical Inc will be completely shut down? Hopefully by 12/31/16.

Thanks,
Nancy

NANCY P. HUDER, CPCU
Executive Underwriter
Hartford Financial Products – D&O, EPL, Fiduciary, Crime, K&R

The Hartford Financial Services Group, Inc.
5285 Shawnee Road | Suite 600
Alexandria, Virginia 22312
W: 703-642-4739
M: 646-823-1388
F: 855-227-0685

www.hfpinsurance.com
www.hfpinsurance.com/pronto - Online quoting for D&O, EPL, Fiduciary, and Crime for accounts < 100 employees and < $25M in revenue

THE
HAR

Busine
Emplo
Auto
Home

**From:** Pat Biederman [mailto:pbiederman@alliant.com]
**Sent:** Wednesday, January 06, 2016 2:47 PM
**To:** Huder, Nancy (Financial Products)
**Cc:** Bill Franey, Sr.
**Subject:** RE: Madison Mechanical

Hello Nancy

Here is the opening balance sheet that the insured provided today. Hope this works.

Pat

**Pat Biederman CPCU, ARM**
Senior Vice President
Commercial & Corporate Group
Alliant Americas

D   301 306 3054
O   301 459 0055
www.alliant.com

CA License No. 0C36861



Alliant Americas is a division of Alliant Insurance Services, Inc.

**From:** Huder, Nancy (Financial Products) [mailto:nancy.huder@thehartford.com]
**Sent:** Tuesday, January 05, 2016 5:07 PM
**To:** Pat Biederman
**Cc:** Bill Franey, Sr.
**Subject:** RE: Madison Mechanical

Hi Pat,

Thanks for the info. I discussed more with my manager, but at a minimum we believe the insured should at least be able to provide some type of a pro-forma balance sheet. The employees have been with the new company for 5 days ... where is their salary coming from? Where are they getting the money to buy the assets from Madison Mechanical Inc? Debt? Equity?

Thanks,
Nancy

> NANCY P. HUDER, CPCU
> Executive Underwriter
> Hartford Financial Products – D&O, EPL, Fiduciary, Crime, K&R
>
> The Hartford Financial Services Group, Inc.
> 5285 Shawnee Road | Suite 600
> Alexandria, Virginia 22312
> W: 703-642-4739
> M: 646-823-1388
> F: 855-227-0685
>
> www.hfpinsurance.com
> www.hfpinsurance.com/pronto - Online quoting for D&O, EPL, Fiduciary, and Crime for accounts < 100 employees and < $25M in revenue

THE
HAR

Busine
Emplo
Auto
Home

**From:** Pat Biederman [mailto:pbiederman@alliant.com]
**Sent:** Tuesday, January 05, 2016 2:48 PM
**To:** Huder, Nancy (Financial Products)
**Cc:** Bill Franey, Sr.
**Subject:** FW: Madison Mechanical

Hello Nancy

Per our discussion today, here is the ownership of Madison Mechanical Contracting LLC:
34%   Richard Arnold
34%   Glen Haslam
32%   MMINVLLC
　　　Richard Lombardo (10% of total)
　　　Gary Garofalo (12% of total)
　　　Lawrence Kraemer, Jr. (10% of total)

I have attached an Organization chart of the new company and outlined the experience below:

**Madison Mechanical Contracting LLC**
**Key Personnel**

| Employee | Title | Years Experience |
|---|---|---|
| Glenn Haslam | Owner/President | 35 Years Experience |
| Rick Arnold | Owner | |
| Brant Geiman | Accounting Manager | 21 Years Accounting Experience |
| Brian Robinson | Project Manager | 38 Years Experience |
| Jeremy Haslam | Project Manager | 14 years Experience |
| Mike Laughon | Manager of Small Jobs Division | |
| Glenn Pasquinelli | Foreman | 30 Years Experience |
| Frank Haiss | Foreman | 27 Years Experience |
| Aaron Percival | Foreman | 20 Years Experience |
| Craig Rutzebeck | Foreman | 17 Years Experience |
| Steve Collins | Foreman | 21 Years Experience |

As we discussed,

- Madison Mechanical Contracting LLC employees are for the most part former employees of Madison Mechanical Inc.

- There will be a transfer of assets from the Madison Mechanical Inc 401k to the new Madison Mechanical Contracting LLC sponsored 401K. The asset values are in excess of $4 million.

- You indicated that you will be able to quote the crime. Just to confirm checks over $10,000 will require two signatures. If there, are any additional recommendation we would be happy to communicate them.

- As for balance Sheet there is nothing beyond what I have provided above. At some point, there will be assets as they purchase company vehicles and office equipment and supplies and other equipment from Madison Mechanical Inc and others, but that has not yet happened.

- You indicated that since there was no change in ownership of greater than 50%, we have not triggered any special policy notice requirements under the current Madison Mechanical Inc policy with the Hartford, 42KBO256935. Actually, there is no change in the ownership of the Madison Mechanical Inc. All changes are reflected in the new company. Understanding now what is happening here please let me know if you view this differently. We can re-evaluate Madison Inc coverage when it renews on 5/1/2016.

- We would like new coverage to be effective 1/1/2016 since that was when employees were brought over.

6

Please let me know if there is anything else that we can provide.

Thanks for expediting your quote.


Pat


**Pat Biederman CPCU, ARM**
Senior Vice President
Commercial & Corporate Group
Alliant Americas

D   301 306 3054
O   301 459 0055
www.alliant.com

CA License No. 0C36861



Alliant Americas is a division of Alliant Insurance Services, Inc.

---

**From:** Huder, Nancy (Financial Products) [mailto:nancy.huder@thehartford.com]
**Sent:** Tuesday, January 05, 2016 11:19 AM
**To:** Pat Biederman
**Subject:** RE: Madison Mechanical

Hi Pat,

Amy and I have been working on this.  In addition, please provide the following info:

- Current balance sheet
- I'm still a little confused on the ownership.  Can you please provide a complete list of shareholders, including % owned, and if they are a Director or Officer?  It sounds like there are 6 shareholders(?): Richard Lombardo, Gary Garofalo and Lawrence Kreamer, Jr, Glen Haslem, Richard Arnold and the LLC Entity (not Private Equity or Venture Capital)?

In regard to the crime, their responses are not ideal, but since they answered yes to questions 7.e.v and 7.h (the follow up question), so I should be able to proceed.

Thanks,
Nancy

---

NANCY P. HUDER, CPCU
Executive Underwriter
Hartford Financial Products – D&O, EPL, Fiduciary, Crime, K&R

THE
HAR

The Hartford Financial Services Group, Inc.                                         Busine
5285 Shawnee Road | Suite 600                                                       Emplo
Alexandria, Virginia 22312                                                          Auto
W  703-642-4739                                                                     Home

M. 646-823-1388
F. 855-227-0685

www.hfpinsurance.com
www.hfpinsurance.com/pronto - Online quoting for D&O, EPL, Fiduciary, and Crime for accounts < 100 employees and < $25M in revenue

**From:** Hotaling, Amy (Financial Products)
**Sent:** Monday, January 04, 2016 3:20 PM
**To:** Huder, Nancy (Financial Products)
**Subject:** FW: Madison Mechanical


**From:** Pat Biederman [mailto:pbiederman@alliant.com]
**Sent:** Monday, January 04, 2016 3:15 PM
**To:** Hotaling, Amy (Financial Products)
**Cc:** Bill Franey, Sr.
**Subject:** RE: Madison Mechanical

Happy New Year!

Hope you enjoyed your holidays.  I did, but and am glad that all of the activity associated with the holiday season is now a pleasant memory.  It is exhausting.

I need to circle back around on this one and hopefully get something put together quickly.

I have attached a copy of the 12/28/2015 pro forma with projections for the 2016 year.  Since this is essentially a new/start-up company, there are no audited financials.  While they have similar ownership they are not assuming/purchasing any liabilities from Madison Inc. They will purchase a couple of autos and some contents and equipment, but that transaction has not yet taken place, but the value is not terribly significant.   They have engaged Reznik to act as the accounting firm for this new operation.

I do not believe that they are not a venture capital backed entity.  MMVTA LLC, which should be MMINVLLC, is actually the entity formed by three of the LLC members, all from Harkins Builders Inc. - Richard Lombardo, Gary Garofalo and Lawrence Kreamer, Jr.  All three were previously listed as individual members.  There then are three LLC members/stock holders Glen Haslem, Richard Arnold and the LLC Entity.

On the crime, we need to work through this.  They will do what is needed to make you comfortable that the proper controls are in place.  Just as they are starting up most of the arrangements are still in formation.  Let us know how you would like us to proceed.

Thanks

Pat

**Pat Biederman CPCU, ARM**
Senior Vice President
Commercial & Corporate Group
Alliant Americas

D   301 306 3054
O   301 459 0055
www.alliant.com

CA License No. 0C36861

8



Alliant Americas is a division of Alliant Insurance Services, Inc.

**From:** Hotaling, Amy (Financial Products) [mailto:Amy.Hotaling@thehartford.com]
**Sent:** Wednesday, December 30, 2015 2:43 PM
**To:** Pat Biederman
**Subject:** RE: Madison Mechanical

Hi Pat,

We need to clarify the type of entity. Is it a start-up or being spun out of another entity? Please confirm if this is a venture capital backed entity. I know you indicated the owners are very experienced. For D&O we would need to see some type of financials.

The crime controls surrounding the check reconciliation are not adequate – I don't think we will be in a position to offer crime coverage.

Amy

**AMY HOTALING**
Executive Underwriter
Hartford Financial Products

The Hartford Financial Services Group, Inc.
5285 Shawnee Road | Suite 600
Alexandria, VA 22312
W 703-642-4750
amy.hotaling@thehartford.com

**From:** Pat Biederman [mailto:pbiederman@alliant.com]
**Sent:** Wednesday, December 30, 2015 1:57 PM
**To:** Hotaling, Amy (Financial Products)
**Subject:** RE: Madison Mechanical

I will check on that. Are there any other questions so I can go back to them once. I am assuming that it would not quote the D&O, because there are no financials since this is a new company. Not quite sure how that works.

Give me a call so we can chat after you complete your review.

Thanks

Pat

**Pat Biederman CPCU, ARM**
Senior Vice President
Commercial & Corporate Group
Alliant Americas

D   301 306 3054
O   301 459 0055

www.alliant.com

CA License No. 0C36861



Alliant Americas is a division of Alliant Insurance Services, Inc.

**From:** Hotaling, Amy (Financial Products) [mailto:Amy.Hotaling@thehartford.com]
**Sent:** Wednesday, December 30, 2015 1:50 PM
**To:** Pat Biederman
**Subject:** Madison Mechanical

Hi Pat,

I see this did get kicked out of pronto primarily based on the application indicating ownership by a private equity, venture capital or other investment firm. Question 8g. Will you confirm? This may be an underwriting concern.

Thanks,
Amy

AMY HOTALING
Executive Underwriter
Hartford Financial Products

THE
HARTFORD



The Hartford Financial Services Group, Inc.
5285 Shawnee Road | Suite 600
Alexandria, VA 22312
W: 703-642-4750
amy.hotaling@thehartford.com

Business Insurance
Employee Benefits
Auto
Home



Named one of the World's Most Ethical Companies
for the 7th time by the Ethisphere Institute.

www.thehartford.com
www.facebook.com/thehartford
www.twitter.com/thehartford

*************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*************************************************************

This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail and all attachments to it are for the sole use of the intended recipients and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This e-mail may also contain information which is confidential or which is protected from disclosure by privilege. Any unauthorized use, disclosure or distribution of this e-mail and its attachments is prohibited. If you are not the intended recipient, let us know by reply e-mail and then erase and destroy all electronic or other copies of this message.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email and its attachments are for the exclusive use of the intended recipients, and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This email may also contain information that is confidential, or otherwise protected from disclosure by contract or law. Any unauthorized use, disclosure, or distribution of this email and its attachments is prohibited. If you are not the intended recipient, let us know by reply email and then destroy all electronic and physical copies of this message and attachments. Nothing in this email or its attachments is intended to be legal, financial, or tax advice, and recipients are advised to consult with their appropriate advisors regarding any legal, financial, or tax implications.

# EXHIBIT 8

Robert Buczkowski
804 Winchester Drive
Westminster, Maryland

Glenn A. Haslam                          May 10, 2016
12154 Mt. Albert Road
Ellicott City, MD 21042

Madison Mechanical OS Corp.              VIA – EMAIL, US MAIL
c/o Glenn A. Haslam
1539 Fannie Dorsey Road
Sykesville, MD 21784

Madison Mechanical OS Corp.
c/o Glenn A. Haslam
5621 Old Frederick Road
Catonsville, MD 21228

      Re:    Shareholder Demand and Request to Inspect Corporate Records

Dear Mr. Haslam:

      I am writing to you in my capacity as a minority shareholder of Madison Mechanical OS Corp. This letter constitutes a demand for Board action to recover damages suffered by the corporation and to prevent further financial harm to the corporation, and a request to inspect books and records of account of the corporation.

      On or about August 20, 2015, you, Richard Arnold, Gary Garofalo, Richard Lombardo, and Lawrence Kraemer formed Madison Mechanical Contracting, LLC. Within months of its formation, Madison Mechanical Contracting, LLC took over ongoing projects that were previously being performed by Madison Mechanical, Inc.—a wholly-owned subsidiary of Madison Mechanical OS Corp.—and began performing the projects for the benefit of Madison Mechanical Contracting, LLC and its members. Madison Mechanical Contracting, LLC assumed ongoing projects under subcontracts that were entered into by Madison Mechanical, Inc. Upon information and belief, Madison Mechanical Contracting, LLC is using the trade name, Madison Mechanical, Inc. Madison Mechanical Contracting, LLC misappropriated the name, goodwill, assets, trade secrets, and accounts receivable of Madison Mechanical, Inc.

      In addition, you, Mr. Garofalo, Mr. Lombardo, and Mr. Kraemer—all of whom are shareholders of Madison Mechanical OS Corp.—have diverted corporate opportunities for new projects from Madison Mechanical, Inc. and Madison Mechanical OS Corp. to Madison Mechanical Contracting, LLC. You, Mr. Garofalo, Mr. Lombardo, and Mr. Kraemer used knowledge and information obtained through your positions as shareholders, officers, directors, and/or employees of Madison Mechanical OS Corp. to compete with Madison Mechanical OS

Corp. and to divert corporate opportunities from Madison Mechanical OS Corp. for the benefit of Madison Mechanical Contracting, LLC and its members.

You wrongfully and unlawfully dissolved Madison Mechanical, Inc., without properly informing the shareholders of Madison Mechanical OS Corp. or the creditors of Madison Mechanical, Inc. You did this in order to facilitate the above-referenced misappropriation of the

name, goodwill, assets, records, trade secrets, and accounts receivable of Madison Mechanical, Inc. for the benefit of Madison Mechanical Contracting, LLC and its members.

Furthermore, you purported to terminate my employment for Madison Mechanical OS Corp., allegedly for cause, despite the fact that there was no cause for my termination. You did this for the improper purpose of attempting to force me to transfer my shares to the corporation. In furtherance of this effort, your lawyer demanded that I transfer my stock back to the corporation for no consideration.

These actions by you, Mr. Garofalo, Mr. Lombardo, and Mr. Kraemer constitute breaches of your fiduciary duties to the corporation and myself.

The above-described actions are unlawful, have caused monetary and non-monetary harm to Madison Mechanical OS Corp., and give rise to causes of action for (i) oppression of minority shareholder, (ii) breach of fiduciary duty, (iii) tortious interference with economic relations, (iv) unjust enrichment, (v) unfair competition (misappropriation of trade secrets), and (vi) constructive trust, and possibly others. As a shareholder of Madison Mechanical OS Corp., I request that the corporation file suit against you, Mr. Garofalo, Mr. Lombardo, Mr. Kraemer, Mr. Arnold, and Madison Mechanical Contracting, LLC, to recover damages and prevent further harm to the corporation.

This letter shall constitute a demand that the Board of Directors of Madison Mechanical OS Corp. vote to institute legal action against you, Mr. Garofalo, Mr. Lombardo, Mr. Kraemer, Mr. Arnold, and Madison Mechanical Contracting, LLC. Should the Board fail to do so within 15 days of the date of this letter, I intend to bring a derivative action on behalf of Madison Mechanical OS Corp. against you, Mr. Garofalo, Mr. Lombardo, Mr. Kraemer, Mr. Arnold, and Madison Mechanical Contracting, LLC.

In addition, as a 13% shareholder of Madison Mechanical OS Corp., I request that, within 20 days of the date of this letter, the corporation provide copies of or access to the following records:

- All books, records, and other documents related to Madison Mechanical, Inc. from December 13, 2007 to the present. This request includes the following: all financial records relating to the company, including accounts receivable, accounts payable, ledgers, copies of invoices, profit & loss statements, loan balances, liability statements, documents concerning any loans, or other document reflecting company finances; all documents regarding distributions, loans, loan repayments, reimbursements of any kind, costs and expenses (including invoices), or capital contributions; all information regarding the state of the business and financial

condition of the company; all other information regarding the affairs of the company; and all federal, state, or local income tax returns of the company;

- In regard to Madison Mechanical, Inc., the articles of incorporation, articles of organization, operating agreement, stockholders' agreement, and all amendments to the aforementioned documents; the minutes of all meetings of the board of directors; the minutes of all meetings of the shareholders; and all corporate resolutions;

- 

- All books, records, and other documents related to Madison Mechanical OS Corp. from December 13, 2007 to the present. This request includes the following: all financial records relating to the company, including accounts receivable, accounts payable, ledgers, copies of invoices, profit & loss statements, loan balances, liability statements, documents concerning any loans, or other document reflecting company finances; all documents regarding distributions, loans, loan repayments, reimbursements of any kind, costs and expenses (including invoices), or capital contributions; all information regarding the state of the business and financial condition of the company; and all federal, state, or local income tax returns of the company;

- In regard to Madison Mechanical OS Corp., the articles of incorporation, articles of organization, operating agreement, stockholders' agreement, and all amendments to the aforementioned documents; the minutes of all meetings of the board of directors; the minutes of all meetings of the shareholders; and all corporate resolutions;

Sincerely,

*Robert Buczkowski*

Robert Buczkowski.

cc:   Gary Garofalo
      Lawrence Kraemer
      Richard Lombardo

# EXHIBIT 9

# Baxter, Baker, Sidle, Conn & Jones, P.A.

Attorneys at Law

120 E. Baltimore Street, Suite 2100

Baltimore, Maryland 21202-1643

Daryl J. Sidle

Direct Line (410) 385-8077

e-mail: djs@bbsclaw.com

Telephone (410) 230-3800

Facsimile (410) 230-3801

May 11, 2016

**VIA CERTIFIED MAIL**

**RETURN RECEIPT REQUESTED**

Robert J. Buczkowski

804 Winchester Drive

Westminster, Maryland 21157-5735

  Re: Letter dated May 10, 2016

Dear Mr. Buczkowski:

  I am writing in response to the captioned letter you addressed to Mr. Haslam and Madison Mechanical OS Corp.

  Your request to inspect the books and records of Madison Mechanical OS Corp. (the "Corporation") is denied. Under Maryland law, only current stockholders of a corporation have inspection rights. It is the position of the Corporation that you are no longer a stockholder of the Corporation.

  As you are well aware, your employment with the Corporation terminated on November 24, 2015. Pursuant to the terms of the Corporation's Stockholders Agreement of which you are a party (the "Agreement"), upon the termination of your employment you were obligated to sell your stock pursuant to the Agreement.

  By letter dated January 14, 2016, a copy of which is enclosed, I notified your counsel, Mr. Scarlett, of your obligation to sell your stock and explained that pursuant to the terms of the Agreement the purchase price for the stock was $0. I requested at that point that Mr. Scarlett secure your endorsement of your stock certificate and forward it to me to consummate the stock purchase. <u>Your failure to cooperate with that request in no way changes the fact that you have ceased to be a stockholder in the Corporation.</u> As a result, you have no statutory inspection rights.

  Your allegations of diversion of corporate opportunities are also unfounded. Regardless of when Madison Mechanical Contracting, LLC (the "LLC") was formed, no business was done by that entity until after the dissolution of the Corporation's wholly-owned operating subsidiary

S

Robert J. Buczkowski
May 11. 2016
Page 2

(the "Subsidiary"). Again, contrary to your allegations, the Subsidiary was dissolved because it was no longer expedient to conduct business within it. Once that entity was dissolved, there were no business opportunities to divert.

As a wholly-owned subsidiary of the Corporation, it is the stockholder of the subsidiary and the subsidiary's Board of Directors that determine whether it will continue to conduct business in the ordinary course or dissolve. This does not require the approval of the Corporation's shareholders, nor does it require them to be informed of that fact. In fact, all of your allegations concerning the terms and conditions of the Subsidiary's dissolution are misplaced. Since you were not a stockholder of the Corporation when those actions occurred, you have no standing to complain about them.

Again, contrary to the statements contained in your letter, your employment was not "purported" to be terminated. It was in fact terminated. Whether your employment was terminated with or without cause is irrelevant. You were an at-will employee whose employment could be terminated at any time for any reason, or for no reason.

Your request to inspect books and records of the subsidiary has no basis in Maryland corporate law, since you were never a shareholder of the Subsidiary.

Your demand that the Board of the Corporation institute legal action against Messrs. Haslam, Garafolo, Lombardo, Kraemer, Arnold and the LLC has been considered by the Corporation's Board and rejected as baseless. The Board also believes that there is no rightful basis on which you may bring a derivative action, since you are no longer a shareholder of the Corporation. Under Maryland law, it is clear that to bring a derivative action on behalf of the Corporation you must hold stock in the Corporation "continuously from the time of the wrong through the end of the litigation" (James J. Hank, Jr. Maryland Corporation Law §7.21).

I am sending this letter to you since it was you, and not your counsel, Mr. Scarlett, who signed the letter to which I respond. Mr. Scarlett will receive a copy of this letter and may inform me if all future communications on this matter should be addressed to him.

Sincerely,

Daryl J. Sidle

DJS:dar
Enclosure
cc:    Robert B. Scarlett, Esq. (without enclosure)

# Baxter, Baker, Sidle, Conn & Jones, P.A.
### Attorneys at Law
120 E. Baltimore Street, Suite 2100
Baltimore, Maryland 21202-1643

Daryl J. Sidle
Direct Line (410) 385-8077
e-mail: djs@bbsclaw.com

Telephone (410) 230-3800
Facsimile (410) 230-3801

January 14, 2016

Robert B. Scarlett
Scarlett, Croll & Myers, P.A.
201 North Charles Street, Suite 600
Baltimore, MD 21201-4100

      Re:   Robert J. Buczkowski

Dear Mr. Scarlett:

      I write to you as counsel for Madison Mechanical OS Corp. ("Madison"). As you are aware, your client, Robert J. Buczkowski's employment with Madison terminated on November 24, 2015. Accordingly, pursuant to the Madison Stockholders Agreement, of which your client is a party, Mr. Buczkowski is now obligated to sell his stock in Madison.

      I understand that your client has been furnished with the independently prepared financial statements for Madison's year ending December 31, 2014. The December 31, 2014, consolidated balance sheet for Madison reflects a negative book value of approximately $3 million. Pursuant to the Stockholders Agreement, that negative book value forms the foundation for the purchase price of your client's stock. The negative number will be increased by the taxes imposed on your client's distributable share of taxable income for the portion of calendar year 2015 in which he was employed. While that number is not yet available to us, it is our belief that Madison's taxable income for calendar year 2015 will be less than the negative book value as of the end of 2014.

      Accordingly, pursuant to the Stockholders Agreement, the purchase price for your client's capital stock in Madison is currently calculated to be $0. If the independently prepared income statement for 2015 reveals income in excess of the negative December 31, 2014 book value, an appropriate portion of the excess will be remitted to your client as additional purchase price. Please have your client endorse his stock certificate in blank and forward it to me to consummate the stock purchase.

      On a related note, it is our understanding that Madison is indebted to your client in the amount of approximately $150,000, plus accrued interest, pursuant to a promissory note from Madison payable to the order of your client, dated October 17, 2014. In addition, however, your client is indebted to Madison in the amount of approximately $140,609, which represents his

Robert B. Scarlett
Scarlett, Croll & Myers, P.A.
January 14, 2016
Page 2

delinquent capital contributions.  We propose to set-off the amount due from your client against the amount due to your client and pay the excess to him.

Finally, I want to address certain allegations contained in your letter dated November 11, 2015, concerning alleged diversion of Madison's business opportunities.  At the time of your letter, no business had been diverted from Madison to any affiliate.  In late December, 2015, Madison Mechanical, Inc., the wholly-owned subsidiary of Madison Mechanical OS Corp., entered into a voluntary dissolution.   At this point, Madison Mechanical (the operating subsidiary) exists solely for the purpose of winding up its existing business and consummating the orderly liquidation and distribution of its net assets (if any).  It is not accepting any new business.

Please do not hesitate to contact me if you should have any questions in connection with this matter.

Very truly yours,

Daryl J. Sidle

DJS:dar

cc:    Glenn Haslam

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**Baxter, Baker, Sidle, Conn & Jones, P.A.**
**Attention: Daryl J. Sidle**
**120 East Baltimore Street, Suite 2100**
**Baltimore, MD  21202**

5/11/16   Mad. Mechanical

**SENDER:** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert J. Buczkowski
804 Winchester Drive
Westminster, Maryland  21157-5735

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Sarah Buczkowski        5-13-16

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)     7007 2680 0000 7312 7143

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EXHIBIT 10



Baxter, Baker, Sidle, Conn & Jones, P.A.
Attorneys at Law

July 28, 2016

***FEDERAL EXPRESS***

The Hartford
Claims Department
277 Park Avenue, 15th Floor
New York, NY 10172

      Re:   NOTICE OF CLAIM
             MADISON MECHANICAL, INC.
             Policy No. 42 KB 0256935-16
             <u>Our File No. 22004-002</u>

Dear Sir:

    I represent Madison Mechanical, Inc., Madison Mechanical OS Corp., Madison Mechanical Contracting LLC, Glenn A. Haslam, Gary Garofalo, Richard Lombardo, Richard G. Arnold and Lawrence Kraemer in litigation brought by Robert Buczkowski in the Circuit Court for Baltimore County, Case No. 03-C-16-005782.

    I am enclosing copies of the following documents:

1. Letter from Robert Buczkowski dated May 10, 2016 making shareholder demand and request to inspect corporate records;

2. Complaint filed in the Circuit Court for Baltimore County on May 27, 2016, Case No. 03-C-16-005782. Also enclosed are the Summons issued by the Court on June 3, 2016, which were served on Defendants on June 29, 2016;

3. Date-stamped copy of Answer and Affirmative Defenses of Defendants filed on June 27, 2016; and

4. Date-stamped copy of the Counterclaim with copies of all exhibits filed on June 27, 2016.

The Hartford
July 28, 2016
Page 2

_____

Upon review of the current Directors, Officers, and Entity liability coverage policy, we believe there is coverage for this suit. At the time suit was filed, Mr. Buczkowski was no longer a shareholder. Furthermore, prior to his termination, Mr. Buczkowski's ownership interest in Madison Mechanical, Inc. was diluted to 7% pursuant to the Shareholder Agreement (*See,* Counterclaim at paragraph 9 and attached exhibits).

After a review of the policy, it was noted that Endorsement No. 4 – percentage shareholder exclusion – was added on the current policy and not contained in previous years' policies. However, for the reasons articulated above, the Endorsement is not applicable to the Complaint or Counterclaim.

Please review the attached documents and the applicable Policy No. 42 KB 0256935-16 and advise The Hartford's coverage position.

Our clients reserve all rights under the Policy including duty of defense to the enclosed litigation, as well as the duty to indemnify, both for the complaint filed on May 27, as well as the Counterclaim filed on July 27, 2016.

Sincerely,

*Gary R. Jones*

Gary R. Jones

GRJ/mjr
Enclosures
cc:    Glenn A. Haslam, Madison Mechanical

# EXHIBIT 11



Michael S. Knox, JD, RPlU
Commercial D&O
Hartford Financial Products

October 18, 2016

**By email only:** grj@BBSCLaw.com

Gary R. Jones, Esq.
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 E. Baltimore Street
Suite 2100
Baltimore, MD 21202-1643

| | |
|---|---|
| **Insured:** | Madison Mechanical, Inc. |
| **Insurer:** | Twin City Fire Insurance Company |
| **Coverage:** | Private Choice Ovation |
| **Policy No.:** | 42 KB 0256935-16 |
| **Policy Period:** | 5/1/16 – 5/1/17 |
| **Matter:** | Robert Buczkowski |
| **Our File No.:** | 16413079 |

Dear Mr. Jones,

Hartford Financial Products is responsible for the handling of claims reported under the above-referenced Policy (the "Policy") on behalf of Twin City Fire Insurance Company ("Twin City" or the "Insurer"). In our email correspondence dated August 11, 2016 we previously acknowledged receipt of and generally reserved Twin City's rights with respect to your submission of a copy of the complaint filed in an action captioned <u>Robert Buczkowski v. Madison Mechanical Contracting, LLC</u>, Circuit Court for Baltimore County, Maryland, Case No. 03-C-16-005782.

This confirms that Twin City will provide a defense of the lawsuit for the covered entities and persons, as described below, subject to its reservation of rights. By commenting on coverage herein, we do not mean to suggest that the allegations in the complaint—which are completely unsubstantiated—have any merit.

**Background**

According to the complaint, Madison Mechanical, Inc. is a construction subcontractor formed in 1993. Robert Buczkowski, the plaintiff, became its CFO in 2002. He was allegedly told by

Gary R. Jones, Esq.
October 18, 2016
Page 2

defendant Glenn Haslam, the CEO, that he would receive a 20% ownership interest and 10% of the profits when Haslam exercised his right to purchase the company from the founder.

In December 2007, Buczkowski, Haslam, and three other partners formed a new entity called Madison Mechanical OS Corp.  The purpose of this company was to purchase all the stock of Madison Mechanical, Inc. and operate Madison Mechanical, Inc. as a wholly-owned subsidiary. The shares of Madison Mechanical OS Corp. were owned as follows:

| | |
|---|---|
| Glenn Haslam: | 54% |
| Gary Garofalo: | 13% |
| Robert Buczkowski: | 13% |
| Richard Lombardo: | 10% |
| Lawrence Kraemer: | 10% |

The company was profitable from 2007 to 2012.  Then the company took on six large projects simultaneously.  The projects were allegedly incorrectly bid, insufficiently staffed, and mismanaged.  As a result, Madison Mechanical, Inc. allegedly incurred severe financial difficulties in 2013-2015.  The complaint further alleges that, unbeknownst to Buczkowski, in August 2015 the other shareholders of Madison Mechanical OS Corp., along with defendant Richard Arnold, formed a new entity called Madison Mechanical Contracting, LLC, which consisted of the following members:

| | |
|---|---|
| Richard Arnold: | 34% |
| Glenn Haslam: | 34% |
| Gary Garofalo: | 12% |
| Richard Lombardo: | 10% |
| Lawrence Kraemer: | 10% |

The alleged purpose of this new company was to take business and corporate opportunities from Madison Mechanical, Inc. and Madison Mechanical OS Corp.  On November 11, 2015, Buczkowski demanded, through counsel, that the members of the new company cease their diversion of business and corporate opportunities from Madison Mechanical, Inc. and Madison Mechanical OS Corp.

On November 18, 2015, Buczkowski was terminated from the company, effective November 24, 2015.  He was given a letter of termination on Madison Mechanical, Inc. letterhead, even though he was actually employed by Madison Mechanical OS Corp.  The letterhead stated that he was being terminated for cause, but the cause was not identified and Buczkowski alleges there was no valid cause and Haslam admitted as much to him.  Instead, Buczkowski alleges, the termination was an attempt to force a transfer of his stock in Madison Mechanical OS Corp.

Gary R. Jones, Esq.
October 18, 2016
Page 3

On January 14, 2016, counsel for Madison Mechanical OS Corp. demanded that Buczkowski sell his shares back to the company based on the book value in 2014, which was negative, so the purchase price would be $0. Buczkowski refused to sell his shares.

Unbeknownst to Buczkowski, according to the Complaint, on December 21, 2015, the defendants allegedly dissolved Madison Mechanical, Inc. without holding a meeting of the stockholders of Madison Mechanical OS Corp. Thereafter, the defendants allegedly diverted corporate opportunities from Madison Mechanical, Inc. and Madison Mechanical OS Corp. to Madison Mechanical Contracting, LLC, including projects that were previously being performed by Madison Mechanical, Inc., as well as several contracts that had been negotiated under Madison Mechanical, Inc.'s name, and began performing the projects for the benefit of Madison Mechanical Contracting, LLC. All Madison Mechanical, Inc. employees became employed by Madison Mechanical Contracting, LLC. Plaintiff alleges that Madison Mechanical Contracting LLC misappropriated the name, goodwill, records, trade secrets, assets, and accounts receivable of Madison Mechanical, Inc. for no consideration.

Plaintiff alleges the following causes of action:

- Count 1 – Declaratory Judgment (against Madison Mechanical OS Corp., Glenn Haslam, Gary Garofalo, Richard Lombardo, and Lawrence Kraemer)

- Count 2 – Breach of Contract (against Madison Mechanical OS Corp., Haslam, Garofalo, Lombardo, and Kraemer)

- Count 3 – Oppression of Minority Shareholder (against Haslam, Garofalo, Lombardo, and Kraemer)

- Count 4 – Oppression of Minority Shareholder (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, and Kraemer)

- Count 5 – Breach of Fiduciary Duty (against Haslam, Garofalo, Lombardo, and Kraemer)

- Count 6 – Breach of Fiduciary Duty (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, and Kraemer)

- Count 7 – Tortious Interference with Economic Relations (against Haslam, Garofalo, Lombardo, Kraemer, Richard Arnold, and Madison Mechanical Contracting, LLC)

- Count 8 – Tortious Interference with Economic Relations (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

Gary R. Jones, Esq.
October 18, 2016
Page 4

- Count 9 – Unjust Enrichment (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

- Count 10 – Unjust Enrichment (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

- Count 11 – Unfair Competition – Misappropriation of Trade Secrets (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

- Count 12 – Unfair Competition – Misappropriation of Trade Secrets (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

- Count 13 – Constructive Trust (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

- Count 14 – Constructive Trust (Derivative Action on Behalf of Madison Mechanical OS Corp.) (against Haslam, Garofalo, Lombardo, Kraemer, Arnold, and Madison Mechanical Contracting, LLC)

With respect to damages and other relief, plaintiff demands: (a) a declaratory judgment from the court that he remains an employee and shareholder of Madison Mechanical OS Corp. along with injunctive relief ordering defendants to take all actions necessary to recognize his continued employment and ownership of shares; (b) compensatory damages; (c) a full accounting of all financial dealings and transactions of Madison Mechanical OS Corp. and Madison Mechanical, Inc. from December 13, 2007 to the present; (d) an injunction prohibiting defendants from using the assets or usurping the corporate opportunities of Madison Mechanical OS Corp. or Madison Mechanical, Inc.; (e) that the court charge a constructive trust upon defendants for assets they wrongfully acquired from Madison Mechanical OS Corp. and Madison Mechanical, Inc.; and (f) attorney's fees, costs, and expenses as provided in the Stockholders Agreement and available at law.

**The Policy**

Madison Mechanical, Inc. is the **Named Entity** under the Policy. Madison Mechanical OS Corp. and Madison Mechanical Contracting LLC were named as **Subsidiaries** in Endorsement No. 2. Endorsement No. 18 deleted Endorsement No. 2 and replaced it with Endorsement No. 19, which provides that the definition of **Subsidiary** is amended by the addition of the following:

- Madison Contracting, LLC
- Madison Mechanical Contracting, LLC
- Madison Mechanical OS Corp.

Gary R. Jones, Esq.
October 18, 2016
Page 5

The **Policy Period** is 5/1/16 – 5/1/17.  The combined aggregate limit of liability for all **Liability Coverage Parts** is $2,000,000.  There is a $10,000 retention under the Directors, Officer and Entity Liability coverage part (the "D&O coverage part") for Entity Liability Coverage and Corporate Reimbursement of **Insured Persons**.  There is a $15,000 retention under the Employment Practices Liability coverage part (the "EPL coverage part").

## Coverage Analysis

The Policy has four coverage parts.  The lawsuit is being analyzed for coverage under the D&O and EPL coverage parts, which are the only ones with potential applicability here.  If coverage is being sought under any other part, please advise me immediately.

Madison Mechanical OS Corp., and Madison Mechanical Contracting LLC are **Insured Entities** under the Policy pursuant to Endorsement No. 19 (Madison Mechanical, Inc., the **Named Entity** under the Policy, is also an **Insured Entity**, but it is not a defendant in the lawsuit).

You advised me on October 13 that:

> Richard Lombardo and Lawrence Kraemer are shareholders in all three entities (MMI, OS Corp., and MMCLLC).  Their membership shares in MMCLLC are held in a voting trust.

> Rick Arnold is a Managing Member, Manager, resident agent, and holds Class A membership shares in MMCLLC.  He has no affiliation with MMI and OS Corp.

> Glenn Haslam is an officer (president), director, general manager, and shareholder of both MMI and OS Corp.  He is also a Managing Member, Manager, and holds class A membership shares in MMCLLC.

> Gary Garofalo was a Manager along with being a financial and business consultant and Officer (corporate secretary) and shareholder in both MMI and OS Corp.  He also holds membership shares in MMCLLC through a voting trust.

Rick Arnold therefore qualifies as an **Insured Person** because he is a **Manager** of Madison Mechanical Contracting, LLC.  Glenn Haslam qualifies as an **Insured Person** because he is a **Manager** of Madison Mechanical, Inc., Madison Mechanical OS Corp., and Madison Mechanical Contracting, LLC.  Gary Garofalo qualifies as an **Insured Person** because he is a **Manager** of Madison Mechanical, Inc. and Madison Mechanical OS Corp.

However, Richard Lombardo and Lawrence Kraemer do not qualify as **Insured Persons**, because they are not **Managers** or **Employees** of the **Insured Entities.**  Shareholders do not qualify as **Insured Persons**.  Twin City will not provide a defense for Lombardo and Kraemer.

Gary R. Jones, Esq.
October 18, 2016
Page 6

*D&O and EPL coverage parts*

Madison Mechanical Contracting LLC submitted a Private Company Application dated 12/29/15 indicating that Madison Mechanical Contracting is a new operation effective 1/1/16 with projected revenue of $15m.  The application had the following questions and answers with respect to prior knowledge:

3.  **PRIOR KNOWLEDGE**

a) Answer the following question if any coverage currently purchased has a "date coverage first purchased" that falls within 36 months of the date that this application is executed:

With respect to each coverage currently purchased, did any Applicant or any natural person for whom insurance is intended have any knowledge or information, as of the "date coverage first purchased," of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to or could have given rise to a claim?

☐ Yes   ☑ No

If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTED, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE WAS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.

b. The following question must be answered if the Applicants are requesting higher limits than current limits, including requesting coverage which is not currently purchased.

Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?

☐ Yes   ☑ No

If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION,

NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED. HOWEVER, THIS EXCLUSION SHALL APPLY UNDER A SPECIFIC COVERAGE PART ONLY TO THE EXTENT THAT THE "LIMITS REQUESTED" ARE HIGHER THAN THE "CURRENT LIMITS" PURCHASED FOR THAT COVERAGE PART.

Gary R. Jones, Esq.
October 18, 2016
Page 7

The application had the following questions and answers with respect to loss history:

9.  **LOSS HISTORY (RENEWAL APPLICANTS OF THE HARTFORD NEED NOT ANSWER THIS QUESTION).**

If "YES" to any of the questions below, full details will be required.

With respect to the Applicants and any natural person for whom this insurance is intended:

a)  Have there been any actual or potential lawsuits or claims that may fall within the scope of the coverage requested?  ☐ Yes  ☑ No

b)  Has any insurer cancelled or refused to renew any Directors and Officers, Employment Practices, Fiduciary, Crime, Kidnap Ransom or similar insurance within the past 36 months?  ☐ Yes  ☑ No

   • **MISSOURI APPLICANTS NEED NOT REPLY.**

Applicable to Liability Coverage Parts Only:

c)  Are there any pending claims or demands against an Applicant or any natural person for whom this insurance is intended that may fall within the scope of coverage afforded by any previously or currently purchased insurance policy?  ☐ Yes  ☑ No

d)  Has an Applicant or any natural person for whom this insurance is intended given notice under the provisions of any other previously or currently purchased insurance policy of any facts or circumstances which may give rise to a claim against any of them?  ☐ Yes  ☑ No

REGARDING THESE QUESTIONS C & D, IT IS AGREED THAT IF ANY SUCH CLAIMS, DEMANDS OR NOTICES EXIST, ANY CLAIM BASED UPON, ARISING FROM OR IN ANY WAY RELATED TO SUCH MATTERS SHALL BE EXCLUDED FROM THE INSURANCE BEING APPLIED FOR. THE INFORMATION PROVIDED IN THIS APPLICATION IS FOR UNDERWRITING PURPOSES ONLY AND DOES NOT CONSTITUTE NOTICE TO THE COMPANY OF A CLAIM OR POTENTIAL CLAIM UNDER ANY POLICY. IF YOU INTEND TO NOTICE A CLAIM OR POTENTIAL CLAIM FOR POSSIBLE COVERAGE, PLEASE COMPLY WITH THE NOTICE OF CLAIM CONDITIONS/PROVISIONS FOUDND IN YOUR POLICY.

A Private Company Renewal Application was then submitted for Madison Mechanical Contracting, LLC, Madison Mechanical Inc, and Madison Mechanical OS Corp. This application was dated 4/14/15, just prior to the renewal on 5/1/16. It contained the following question and answer with respect to prior knowledge:

Gary R. Jones, Esq.
October 18, 2016
Page 8

**3.  PRIOR KNOWLEDGE**

The following question must be answered if the Applicants are requesting higher limits at renewal.

Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?                                                                                       ☐ Yes ☒ No
If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.  HOWEVER, THIS EXCLUSION SHALL APPLY UNDER A SPECIFIC COVERAGE PART ONLY TO THE EXTENT THAT THE "LIMITS REQUESTED" ARE HIGHER THAN THE "CURRENT LIMITS" PURCHASED FOR THAT COVERAGE PART.

With respect to these questions and answers on prior knowledge and loss history, please send us the November 11, 2015 correspondence from Buczkowski wherein he allegedly demanded, through counsel, that the members of the new company cease their alleged diversion of business and corporate opportunities from Madison Mechanical, Inc. and Madison Mechanical OS Corp. Please also send us all other correspondence among Buczkowski, the **Insured Entities**, and the **Insured Persons** with respect to this matter prior to the filing of the lawsuit, including the January 14, 2016 letter whereby counsel for Madison Mechanical OS Corp. demanded that Buczkowski sell his shares back to the company based on the book value in 2014, and Buczkowski's response to that letter.

Twin City reserves its rights with respect to the applications, including its rights to disclaim coverage for any prior claims or any claim based upon, arising from, or in any way related to any error, misstatement, misleading statement, act, omission, neglect or breach of duty of which there was knowledge or information at the time any application was signed.

Section XVI of the common terms and conditions provides as follows:

Gary R. Jones, Esq.
October 18, 2016
Page 9

XVI.  **APPLICATION**

(A) The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

(B) If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:

(1) For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any **Insureds** who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

(a) knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**, and

(b) knowledge possessed by any chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the **Named Entity**, or anyone signing the **Application**, shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

(2) For the purpose of determining coverage under the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for:

(a) any **Insured Persons**, under Insuring Agreement (A), who knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**, provided, however, that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**. This shall be the Insurer's sole remedy under this Insuring Agreement (A). Under no circumstances shall the Insurer be entitled to rescind this Insuring Agreement (A).

(b) an **Insured Entity**, under Insuring Agreement (B), to the extent it indemnifies any **Insured Person** referenced in subparagraph (2)(a), above, and

(c) an **Insured Entity**, under Insuring Agreements (C) and (D), if any chief executive officer, general counsel, chief financial officer or any position equivalent to the foregoing of the **Named Entity**, or anyone signing the **Application**, knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**

Twin City reserves its rights under this section while we investigate whether the **Application** contained intentional misrepresentations or misrepresentations that materially affected the acceptance of the risk by the Insurer.

*D&O coverage part*

Endorsement No. 4 ("Percentage Shareholder Exclusion") adds the following exclusion to the Section IV ("Exclusions Applicable to All Insuring Agreements") in the D&O part:

The Insurer shall not pay **Loss**:

- in connection with any **Claim** brought or maintained by or on behalf of any owner of 10% or more of the outstanding securities of an **Insured Entity**, either directly or beneficially

Buczkowski alleges that he owns 13% of the outstanding shares of Madison Mechanical OS Corp.  If that is true, his **Claim** is barred from coverage under the D&O part by this endorsement.  You have advised me that at the time suit was filed, Buczkowski was no longer a 10% shareholder because his interest was, by then, diluted below the 10% threshold when he

Gary R. Jones, Esq.
October 18, 2016
Page 10

failed to make a required capital contribution.  More specifically, you have provided me a copy of the counterclaim filed by the defendants against Buczkowski, which alleges in Paragraph 9 that, pursuant to the shareholder's agreement, Buczkowski's equity position was diluted to 7% when he contributed only $143,000 in capital to the company when his required contribution was $283,609.  Could you point me to the relevant language in the shareholder's agreement that leads to this dilution as a result of failing to make the capital contribution?  In addition, please provide me any additional documentation that establishes the correct amount of shares owned by Buczkowski at the time the suit was filed.  For example, you indicate in your letter to Twin City dated July 28, 2016 that, by the time the suit was filed, Buczkowski was no longer a shareholder. I understand from our subsequent discussions that it is the Insured's position that plaintiff automatically ceased to be a shareholder due to his termination.  Please promptly provide to us any documents or other information that you may have to demonstrate this relinquishment of shares by operation of his termination.  While our investigation of this issue continues, Twin City reserves all rights under Endorsement No. 4.

Under the D&O part, the lawsuit is both an **Insured Person Claim** (with respect to Arnold, Haslam, and Garofalo) and an **Entity Claim** (with respect to Madison Mechanical OS Corp. and Madison Mechanical Contracting LLC).  These **Claims** trigger Exclusion IV(H) (the "Insured v. Insured Exclusion"), which provides that the Insurer shall not pay **Loss**:

(H) in connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:

    (1) a civil proceeding by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**; or

    (2) a **Derivative Action** or a **Derivative Demand**;

    Note: **Sarbanes-Oxley Whistle-blowing** alone shall not be deemed solicitation, assistance or participation for purposes of paragraphs (1) and (2) above.

    (3) an **Insured Person Claim** by or on behalf of an **Employee** who is not a past or present **Manager** if such **Claim** is made without the assistance, participation or solicitation of any **Manager**;

    (4) an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**;

    (5) a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least one year prior to such **Claim** being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the one year prior to such **Claim** being made;

    (6) a civil proceeding by or on behalf of an **Insured Person** for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

    (7) an **Insured Person Claim** brought and maintained in a jurisdiction outside the United States of America, Canada, Australia or any other common law country (including territories thereof) by a **Manager** due to a pleading requirement of such jurisdiction; or

    (8) a civil proceeding by any bankruptcy trustee, examiner, receiver, liquidator, creditor(s) committee of the **Insured Entity** or rehabilitator (or any assignee thereof) after such bankruptcy trustee, examiner, receiver, liquidator or rehabilitator has been appointed;

Gary R. Jones, Esq.
October 18, 2016
Page 11

The Exclusion bars coverage for the **Entity Claim**, and none of the exceptions apply. However, the potential **Insured Person Claim** falls within the fourth exception to the Exclusion, which applies to "an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**." Plaintiff is a **Manager**, and he is alleging wrongful termination. Subject to our ongoing coverage investigation and reservation of rights, Twin City will provide a defense for the **Insured Person Claim** against Arnold, Haslam, and Garofalo.

Coverage for the **Entity Claim** against Madison Mechanical OS Corp. under the D&O part is also barred by Exclusion V(A)(1), which provides that the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon arising from, or in any way related to any actual or alleged:

> (1) liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

Count 2 of the complaint alleges that **Entity Claim** against Madison Mechanical OS Corp. is based upon arising from, and related to actual or alleged liability under a contract or agreement, namely, the Stockholders Agreement dated December 31, 2007 among Madison Mechanical OS Corp., Buczkowski, Haslam, Garofalo, Lombardo, and Kraemer. The complaint alleges that Haslam's effort to terminate Buczkowski "for cause" on November 18, 2015 was an attempt to force a transfer of his stock in Madison Mechanical OS Corp., in violation of the Stockholders Agreement.

Plaintiff alleges he was wrongfully terminated and asks the court to reinstate his employment. Exclusion V(A)(2) provides that the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon arising from, or in any way related to any actual or alleged:

> (2) employment-related **Wrongful Act**;

Because Buczkowski does allege employment-related **Wrongful Acts** against entity defendants Madison Mechanical OS Corp. and Madison Mechanical Contracting, LLC, coverage for these **Insured Entities** is barred by Exclusion V(A)(2) and Twin City reserves its rights accordingly.

Counts 11 and 12 allege unfair competition and misappropriation of trade secrets. Exclusion V(A)(6) and V(A)(7) provide that the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon arising from, or in any way related to any actual or alleged:

Gary R. Jones, Esq.
October 18, 2016
Page 12

(6) infringement, dilution or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark, trade secrets, or other intellectual property; provided, however that this exclusion shall not apply to the portion of **Loss** directly resulting from:

    (a) a civil proceeding brought and maintained by a security holder(s) of an **Insured Entity**, in their capacity as such; or

    (b) a **Derivative Action** or a **Derivative Demand**; or

(7) unfair trade practices or any violation of the Federal Trade Commission Act or any similar law.

Twin City reserves its rights under these exclusions.

### *EPL coverage part*

Under the EPL part, the suit is an **Employment Practices Claim** with respect to Madison Mechanical OS Corp., Haslam, and Garofolo.  Count 1 seeks a declaration from the court with respect to these defendants that plaintiff was wrongfully terminated and must be reinstated. Twin City will provide a defense for this **Claim** as well with respect to these defendants.

However, there does not appear to be coverage under either coverage part with respect to Madison Mechanical Contracting LLC because there is no **Employment Practices Claim** alleged against this entity.  Twin City will not provide a defense or indemnity to this entity.

Because both the EPL part and the D&O part are, in part, triggered, please note that the Section VIII ("Coordination of Coverage") in the EPL part provides that **Loss** shall be first covered and paid under the EPL part:

**VIII.   COORDINATION OF COVERAGE**

If this **Liability Coverage Part** and either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part are included under this Policy, and a **Claim** is covered under this **Liability Coverage Part** and any such other **Liability Coverage Part**, **Loss** shall be first covered and paid under this **Liability Coverage Part**.

If notice of a **Claim** has been given under either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part and a determination is made by the Insurer that such **Claim** would be covered under this **Liability Coverage Part** if notice had been given under this **Liability Coverage Part**, then the **Insureds** shall be deemed to have given notice of such **Claim** under this **Liability Coverage Part** at the same time that notice was given under such other **Liability Coverage Part**.

### *Other coverage issues*

There are at least two additional coverage issues:

First, Counts 9 and 10 of the complaint seek recovery for unjust enrichment.  Recovery for unjust enrichment—otherwise known as restitution and disgorgement—does not constitute covered **Loss** or **Damages**, and is generally uninsurable.

Gary R. Jones, Esq.
October 18, 2016
Page 13

Second, in addition to the claim for unjust enrichment, the complaint also includes cause of action for breach of fiduciary duty and minority shareholder oppression. Although we understand that the plaintiff has provided no evidence of this alleged misconduct to date, the allegations implicate two additional exclusions under the D&O coverage part. Exclusions (IV)(L) and (IV)(M), as modified by Endorsement No. 6, provide that the Insurer shall not pay **Loss**:

(L) of an **Insured**, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such **Insured** is not legally entitled if a judgment or other non-appealable final adjudication in the underlying action establishes that such a gain did occur; or

(M) of an **Insured**, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other non-appealable final adjudication in the underlying action establishes such an act, omission or violation, provided, however, that this exclusion shall only apply to **Insured Entities** under Insuring Agreement (C), if elected, if a past or present chief executive officer, chief financial officer, general counsel or any position equivalent to the foregoing of the **Named Entity** committed such an act, omission or willful violation.

Twin City reserves its rights on these two issues. Please note that Exclusions (IV)(L) and (IV)(M) both require a final adjudication before they apply.

## Conclusion

Please send us the following information as soon as possible:

- The November 11, 2015 correspondence from Buczkowski wherein he demanded, through counsel, that the members of the new company cease their diversion of business and corporate opportunities from Madison Mechanical, Inc. and Madison Mechanical OS Corp.

- All other correspondence among Buczkowski, the Insured Entities, and the Insured Persons with respect to this matter prior to the filing of the lawsuit, including the January 14, 2016 letter whereby counsel for Madison Mechanical OS Corp. demanded that Buczkowski sell his shares back to the company based on the book value in 2014, and Buczkowski's response to that letter.

- Could you point me to the relevant language in the shareholder's agreement that leads to the dilution of Buczkowski's shareholdings as a result of failing to make the capital contribution?

- Any additional documentation that establishes the correct amount of shares owned by Buczkowski at the time the suit was filed. For example, you indicate in your letter to Twin City dated July 28, 2016 that, by the time the suit was filed, Buczkowski was no longer a shareholder at all. I understand from our subsequent discussions that it is the Insured's position that plaintiff automatically ceased to be a shareholder due to his

# EXHIBIT 12



LARRY HOGAN
Governor

BOYD K. RUTHERFORD
Lt. Governor

**MARYLAND**
**INSURANCE**
**ADMINISTRATION**

AL REDMER, JR.
Commissioner

NANCY GRODIN
Deputy Commissioner

200 St. Paul Place, Suite 2700, Baltimore, Maryland 21202
Phone: 410-468-2340   Fax: 410-468-2307
1-800-492-6116   TTY: 1-800-735-2258
www.insurance.maryland.gov

November 2, 2016

Gary R. Jones, Esquire
Baxter, Baker, Sidle, Conn & Jones, P. A.
120 East Baltimore Street, Suite 2100
Baltimore, Maryland  21202-1643

RE:   MIA File Number: 240095-P-2016-AWB-C
        Company: Twin City Fire Insurance Company
        Claim: 16413079

Dear Mr. Jones:

Thank you for notifying the Maryland Insurance Administration ("Insurance Administration") as to your concerns regarding the actions of Twin City Fire Insurance Company ("Hartford").  As you are aware, your complaint to the Insurance Administration arises out of a lawsuit filed against your client, Madison Mechanical, Inc. ("MMI").  Specifically, you raise concerns regarding Hartford's failure to determine whether a defense and indemnification is owed to your client.

This letter will confirm our telephone conversation of November 1, 2016 where you indicated that Hartford agreed to provide a defense to MMI under the terms of its policy and that you have no further complaints.

As it appears this matter has been resolved, the Insurance Administration is closing its file. However, if I am mistaken and other areas of your dispute remain, please advise me of them in *writing as soon as possible.*

Again, we thank you for bringing this matter to our attention.  It has been a pleasure to be of service to you.

Sincerely,

Andrew Beatty
Insurance Investigator
410.468.2359

RECEIVED NOV 0 4 2016

cc:    Ms. Robin Najduch
       Twin City Fire Insurance Company
       200 Hopemeadow Street B3 W-4
       Simsbury, Connecticut  06089

# EXHIBIT 13



Michael S. Knox, JD Ylu
Commercial D&O
Hartford Financial Products

April 19, 2017

**By email only:** grj@BBSCLaw.com

Gary R. Jones, Esq.
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 E. Baltimore Street
Suite 2100
Baltimore, MD 21202-1643

| | |
|---|---|
| **Insured:** | Madison Mechanical, Inc. |
| **Insurer:** | Twin City Fire Insurance Company |
| **Coverage:** | Private Choice Ovation |
| **Policy No.:** | 42 KB 0256935-15 |
| | 42 KB 0256935-16 |
| **Policy Period:** | 5/1/15 – 5/1/16 |
| | 5/1/16 – 5/1/17 |
| **Matter:** | Robert Buczkowski |
| **Our File No.:** | 16413079 |

Dear Mr. Jones,

This will supplement our coverage letter of October 18, 2016, which is incorporated herein by reference. In that letter, as you know, Twin City Fire Insurance Company ("Twin City") analyzed potential coverage in response to the submission by Madison Mechanical, Inc. ("Madison") of a lawsuit captioned <u>Robert Buczkowski v. Madison Mechanical Contracting, LLC</u>, in the Circuit Court for Baltimore County, Maryland (Case No. 03-C-16-005782)(the "Action"). Subject to its reservation of rights, Twin City agreed to provide a defense of the Action for the **Insured Entit[ies]**[1] and **Insured Persons**. Twin City also requested a copy of a demand letter dated November 11, 2015 from Robert Buczkowski, the claimant, in which he alleged (through counsel) that the members of Madison Mechanical Contracting ("MMC") were wrongfully diverting business and corporate opportunities from Madison Mechanical, Inc. ("Madison Mechanical") and Madison Mechanical OS ("Madison OS") Corp. and demanded that the members cease this allegedly wrongful conduct (the "November 11, 2015 Demand Letter").

The November 11 Demand Letter was not provided to us until February 27, 2017. We take this opportunity to update our October 18 letter based upon the November 11, 2015 Demand Letter.

---

[1] Bolded and capitalized terms herein are defined in the Policy.

277 Park Avenue, 16th Floor
New York, NY 10172
Telephone: 212 277-0650
Facsimile: 212 464-4657

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 2

In the letter, Buczkowski (through counsel) alleges that the ownership of Madison OS
Corporation is as follows:

| | | |
|---|---|---|
| Glenn A. Haslam | - | 54% |
| Gary Garofalo | - | 13% |
| Richard Lombardo | - | 10% |
| Lawrence Kraemer | - | 10% |
| Robert Buczkowski | - | 13% |

Buczkowski also alleges that MMC is a new limited liability company that was formed on
August 20, 2015 with ownership divided among the following persons:

Glenn A. Haslam
Gary Garofalo
Richard Lombardo
Lawrence Kraemer
Richard G. Arnold

In the November 11, 2015 Demand Letter, Buczkowski alleges that the purpose of MMC is to
divert the business and client base of Madison Mechanical to MMC. He demands that any such
diversion cease and desist and threatens to file litigation unless a settlement is reached that
preserves his 13% interest in Madison Mechanical.

The November 11 Demand Letter constitutes a **Claim** under the Policy, and it was first made
during the 2015 Policy (effective from 5/1/15 – 5/1/16), *not* the 2016 Policy (effective 5/1/16 –
5/1/17). Accordingly, because it now is clear that Buczkowski's **Claim** was not first made
during the 2016 Policy Period, Twin City denies coverage, both for the Demand Letter and the
ensuing and interrelated Action, under the 2016 Policy. (As you know from our prior
correspondence, we were previously handling this matter under the 2016 Policy based on the
service date of Buczkowski's Action).

While no coverage is available for the **Claim** under the 2016 Policy, on behalf of our **Insureds**,
Twin City takes this opportunity to consider the potential for coverage under the Twin City
Policy that was in effect when the November 11, 2015 Demand Letter was received: the 2015
Policy.

**The Policies**

*2015 Policy*

"Madison Mechanical, Inc. Madison Mechanical OS Corp." is the **Named Entity** under the 2015
Policy. The **Policy Period** is 5/1/15 – 5/1/16. The combined aggregate limit of liability for all
**Liability Coverage Parts** is $2,000,000. There is a $10,000 retention under the Directors,

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 3

Officer and Entity Liability coverage part (the "D&O coverage part") for Entity Liability
Coverage and Corporate Reimbursement of **Insured Persons**. There is a $15,000 retention
under the Employment Practices Liability coverage part (the "EPL coverage part").
Endorsement No. 3 added Madison Contracting, LLC as a **Subsidiary**. Endorsement No. 16
added Madison Mechanical Contracting, LLC as a **Subsidiary**, effective on 1/1/16.

### *2016 Policy*

Madison Mechanical, Inc. is the **Named Entity** under the 2016 Policy. The **Policy Period** is
5/1/16 – 5/1/17. Madison Mechanical OS Corp. and Madison Mechanical Contracting LLC were
named as **Subsidiaries** in Endorsement No. 2. Endorsement No. 18 deleted Endorsement No. 2
and replaced it with Endorsement No. 19, which provides that the definition of **Subsidiary** is
amended by the addition of the following:

- Madison Contracting, LLC
- Madison Mechanical Contracting, LLC
- Madison Mechanical OS Corp.

The combined aggregate limit of liability for all **Liability Coverage Parts** is $2,000,000. There
is a $10,000 retention under the D&O coverage part for Entity Liability Coverage and Corporate
Reimbursement of **Insured Persons**. There is a $15,000 retention under the EPL coverage part.

### **Coverage Analysis**

As noted above, the November 11, 2015 Demand Letter from Buczkowski is a **Claim** under the
Policy, and it was made during the 2015 Policy (effective from 5/1/15 – 5/1/16). Section X of
the terms and conditions of that Policy ("Interrelationship of Claims") provides in relevant part
as follow:

> All **Claims** based upon, arising from or in any way related to the same **Wrongful Act or Interrelated Wrongful
> Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:
>
> **(A)** any of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**;

Our letter of October 18, 2016 discussed in some detail the lawsuit captioned <u>Robert
Buczkowski v. Madison Mechanical Contracting, LLC</u>, in the Circuit Court for Baltimore
County, Maryland (Case No. 03-C-16-005782). The lawsuit and the November 11, 2015
Demand Letter from Buczkowski are based upon, arising from, and related to the same
**Wrongful Act or Interrelated Wrongful Acts**, namely, the alleged diversion of corporate
opportunities from Madison Mechanical to MMC and the oppression of Buczkowski as a
minority shareholder in Madison Mechanical. Therefore they are deemed to be a single **Claim**
first made on the earliest date that any of such **Claims** was first made, which was November 11,
2015, the date of the Buczkowski Demand Letter.

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 4

*Prior Knowledge or Information*

Madison Mechanical Contracting LLC submitted a Private Company Application to Twin City dated 12/29/15 indicating that Madison Mechanical Contracting was a new operation effective 1/1/16 with projected revenue of $15m as a Mechanical and HVAC Contractor.  The application had the following questions and answers with respect to prior knowledge:

**3.   PRIOR KNOWLEDGE**

a) Answer the following question if any coverage currently purchased has a "date coverage first purchased" that falls within 36 months of the date that this application is executed:

With respect to each coverage currently purchased, did any Applicant or any natural person for whom insurance is intended have any knowledge or information, as of the "date coverage first purchased," of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to or could have given rise to a claim?

☐ Yes   ☑ No

If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTED, ANY CLAIM BASED ON ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE WAS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED.

b) The following question must be answered if the Applicants are requesting higher limits than current limits, including requesting coverage which is not currently purchased.

Does an Applicant or any natural person for whom insurance is intended have any knowledge or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a claim?

☐ Yes   ☑ No

If "YES," provide full details (attach a separate sheet if necessary).

IT IS AGREED THAT IF ANY SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION,

HR 00 H102 00 1114                    © 2014, The Hartford                    Page 2 of 11

NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE REQUESTED. HOWEVER, THIS EXCLUSION SHALL APPLY UNDER A SPECIFIC COVERAGE PART ONLY TO THE EXTENT THAT THE "LIMITS REQUESTED" ARE HIGHER THAN THE "CURRENT LIMITS" PURCHASED FOR THAT COVERAGE PART.

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 5

The application had the following questions and answers with respect to loss history:

9.  **LOSS HISTORY (RENEWAL APPLICANTS OF THE HARTFORD NEED NOT ANSWER THIS QUESTION).**

If "YES" to any of the questions below, full details will be required.

With respect to the Applicants and any natural person for whom this insurance is intended:

a)  Have there been any actual or potential lawsuits or claims that may fall within the scope of the coverage requested?   ☐ Yes   ☒ No

b)  Has any insurer cancelled or refused to renew any Directors and Officers, Employment Practices, Fiduciary, Crime, Kidnap Ransom or similar insurance within the past 36 months?   ☐ Yes   ☒ No

   \* **MISSOURI APPLICANTS NEED NOT REPLY.**

Applicable to Liability Coverage Parts Only:

c)  Are there any pending claims or demands against an Applicant or any natural person for whom this insurance is intended that may fall within the scope of coverage afforded by any previously or currently purchased insurance policy?   ☐ Yes   ☒ No

d)  Has an Applicant or any natural person for whom this insurance is intended given notice under the provisions of any other previously or currently purchased insurance policy of any facts or circumstances which may give rise to a claim against any of them?   ☐ Yes   ☒ No

REGARDING THESE QUESTIONS C & D, IT IS AGREED THAT IF ANY SUCH CLAIMS, DEMANDS OR NOTICES EXIST, ANY CLAIM BASED UPON, ARISING FROM OR IN ANY WAY RELATED TO SUCH MATTERS SHALL BE EXCLUDED FROM THE INSURANCE BEING APPLIED FOR. THE INFORMATION PROVIDED IN THIS APPLICATION IS FOR UNDERWRITING PURPOSES ONLY AND DOES NOT CONSTITUTE NOTICE TO THE COMPANY OF A CLAIM OR POTENTIAL CLAIM UNDER ANY POLICY. IF YOU INTEND TO NOTICE A CLAIM OR POTENTIAL CLAIM FOR POSSIBLE COVERAGE, PLEASE COMPLY WITH THE NOTICE OF CLAIM CONDITIONS/PROVISIONS FOUOND IN YOUR POLICY

Based on these representations in the **Application**, Twin City agreed to its **Insureds'** request to add Madison Mechanical Contracting to the 2015 Policy effective on 1/1/16 pursuant to Endorsement No. 16.

The answers to question 3 (seeking information regarding the **Insureds'** "Prior Knowledge") and question 9 (seeking information regarding the **Insureds'** "Loss History") on the **Application** were not accurate. Indeed, based upon the November 11, 2015 Demand Letter recently provided to Twin City in response to its October 18, 2016 request, it is clear that the Applicants did have knowledge or information of an alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that not only could give rise to a claim, but had already given rise to a claim; namely, the November 11, 2015 Demand Letter from Buczkowski that alleged the wrongful diversion of assets that later became the subject of the Action. Because such knowledge or information existed, any claim—including the November 11, 2015 Demand Letter and the lawsuit captioned Robert Buczkowski v. Madison Mechanical Contracting, LLC, in the Circuit Court for Baltimore County, Maryland— are excluded from coverage under the 2015 Policy. Such demand letter demonstrates that the Action is based on, arises from, and/or is

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 6

related to such error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter of which there was knowledge or information and shall be excluded from the coverage based on the warranty exclusions included in both questions 3 and 9 of the **Application**.

In addition, Section XVI of the common terms and conditions in both Policies provides as follows with respect to the **Application**:

### XVI. APPLICATION

(A) The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

(B) If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:

  (1) For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any **Insureds** who knew, on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

    (a) knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**, and

    (b) knowledge possessed by any chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the **Named Entity** or anyone signing the **Application**, shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

  (2) For the purpose of determining coverage under the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for:

    (a) any **Insured Persons**, under Insuring Agreement (A), who knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**, provided, however, that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**. This shall be the Insurer's sole remedy under this Insuring Agreement (A). Under no circumstances shall the Insurer be entitled to rescind this Insuring Agreement (A).

    (b) an **Insured Entity**, under Insuring Agreement (B), to the extent it indemnifies any **Insured Person** referenced in subparagraph (2)(a), above, and

    (c) an **Insured Entity**, under Insuring Agreements (C) and (D), if any chief executive officer, general counsel, chief financial officer or any position equivalent to the foregoing of the **Named Entity**, or anyone signing the **Application**, knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**.

In light of the allegations raised by Buczkowski in the November 11, 2015 Demand Letter, it appears that the **Application** contained inaccurate representations that, at a minimum, materially affected the acceptance of the risk by the Insurer – by illustration and not limitation, Twin City's agreement to add coverage for MMC, the new company that claimant had already alleged was created in order to divert corporate opportunities -- no coverage shall be afforded for (a) any **Insured Person** who knew as of the Inception Date of the Policy the facts that were so misrepresented; (b) an **Insured Entity**, to the extent it indemnifies any **Insured Person** referenced in Paragraph (a); and (c) an **Insured Entity**, if any chief executive officer, general counsel, chief financial officer or any position equivalent to the foregoing of the **Named Entity**,

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 7

or anyone signing the **Application**, knew as of the Inception Date of the Policy the facts that
were so misrepresented in the **Application**.

### *Late Notice*

The 2015 Policy requires that timely notice of a **Claim** be given to Twin City. Section VIII of
the common terms and conditions provides as follows:

**VIII. NOTICE OF CLAIM**

Solely with respect to all **Liability Coverage Parts:**

(A)  As a condition precedent to coverage under this Policy, the **Insureds** shall give the Insurer written notice of any
**Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than
sixty (60) calendar days after the termination of the **Policy Period**, or any Extended Reporting Period as
described in Section IX. Such notice shall specify the Coverage Part under which notice is being given.

(B)  If, during the **Policy Period**, the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected
to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy
Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the
identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential
claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim**
subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy
Period** on the date that the Insurer receives the above notice.

Twin City was only provided notice of the November 11, 2015 Demand Letter by Buczkowski
on February 27, 2017, and only in response to our request for this correspondence. Such notice
is plainly not "as soon as practicable" nor "within sixty (60) calendar days after the termination
of the Policy Period ...." Therefore, the **Insureds** failed to satisfy a condition precedent to
coverage under the 2015 Policy during which this **Claim** was first made. Twin City has been
prejudiced by the failure of the **Insureds** to provide timely notice, and also denies coverage on
this alternative basis.

### *Percentage Shareholder Exclusion*

Endorsement No. 2 ("Percentage Shareholder Exclusion") of the 2015 Policy adds the following
exclusion to Section IV ("Exclusions Applicable to All Insuring Agreements") in the D&O part:

The Insurer shall not pay **Loss**:

•  in connection with any **Claim** brought or maintained by or on behalf of any owner of 10% or more of the outstanding
securities of an **Insured Entity**, either directly or beneficially

The **Application** for the 2015 Policy, which was signed by the CFO of Madison Mechanical
(apparently Buczkowski) on 4/6/15 and submitted to Twin City, states at Question 5 that
Buczkowski owns 13% of the stock in Madison Mechanical:

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 8

**5. DIRECTORS, OFFICERS & ENTITY LIABILITY COVERAGE PART (Complete Only If Renewing this Coverage)**

a) How many total individuals/entities own shares in the Applicant listed in 1(a) above? 5

b) What is the total number of outstanding shares in the Applicant listed in 1(a) above? 200

c) What is the total number of shares referenced in question (b) above held directly or beneficially by directors, officers or equivalents? 194

| For all classes of stock or other ownership of the Applicant listed in 1(a) above, list all shareholders over 5% *(attach additional sheet if required)* | Percentage Held | Is she/he currently a Director or Officer? |
|---|---|---|
| Glenn Haslam | 54 | yes |
| Robert Buczkowski | 13 | yes |
| Larry Kraemer | 10 | no |
| Richard Lombardo | 10 | no |
| Gary Garofalo | 13 | no |
| | | |

In his letter of November 11 and in his lawsuit, Buczkowski similarly alleges that he owns 13% of the outstanding shares of Madison Mechanical OS Corp.  If that is true, his **Claim** is barred from coverage under the D&O part by Endorsement No. 2.

You have advised me that at the time suit was filed, Buczkowski was no longer a 10% shareholder because his interest was, by then, diluted below the 10% threshold when he failed to make a required capital contribution.  More specifically, you have provided me a copy of the counterclaim filed by the defendants against Buczkowski, which alleges in Paragraph 9 that, pursuant to the shareholders' agreement, Buczkowski's equity position was diluted to 7% when he contributed only $143,000 in capital to the company at the time that his required contribution was $283,609.  Twin City reserves all rights under Endorsement No. 2.

### *Additional Coverage Issues*

Under the D&O part of the 2015 Policy, and were coverage not otherwise excluded on the basis of the Warranty Exclusions and Notice condition precedent discussed above, the November 11, 2015 Demand Letter and the Action would qualify as both an **Insured Person Claim** (with respect to Haslam, and Garofalo) and an **Entity Claim** (with respect to Madison Mechanical OS Corp. and Madison Mechanical Contracting LLC).  These **Claims** trigger Exclusion IV(H) (the "Insured v. Insured Exclusion"), which provides that the Insurer shall not pay **Loss**:

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 9

(H) in connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from

    (1) a civil proceeding by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**, or

    (2) a **Derivative Action** or a **Derivative Demand**;

    Note  **Sarbanes-Oxley Whistle-blowing** alone shall not be deemed solicitation, assistance or participation for purposes of paragraphs (1) and (2) above

    (3) an **Insured Person Claim** by or on behalf of an **Employee** who is not a past or present **Manager** if such **Claim** is made without the assistance, participation or solicitation of any **Manager**;

    (4) an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**;

    (5) a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least one year prior to such **Claim** being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the one year prior to such **Claim** being made;

    (6) a civil proceeding by or on behalf of an **Insured Person** for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

    (7) an **Insured Person Claim** brought and maintained in a jurisdiction outside the United States of America, Canada, Australia or any other common law country (including territories thereof) by a **Manager** due to a pleading requirement of such jurisdiction, or

    (8) a civil proceeding by any bankruptcy trustee, examiner, receiver, liquidator, creditor(s) committee of the **Insured Entity** or rehabilitator (or any assignee thereof) after such bankruptcy trustee, examiner, receiver, liquidator or rehabilitator has been appointed;

The "IvI" Exclusion bars coverage for the **Entity Claim** in its entirety under the D&O part, and none of the exceptions apply. However, the potential **Insured Person Claim** may fall within the fourth exception to the Exclusion, which applies to "an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**." Plaintiff is a former **Manager**, and he alleges wrongful termination in the lawsuit, although there is no cause of action for wrongful termination.

Coverage for the **Entity Claim** against Madison Mechanical OS Corp. under the D&O part is also barred by Exclusion V(A)(1), which provides that the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon arising from, or in any way related to any actual or alleged:

    (1) liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

Count 2 of the complaint alleges that **Entity Claim** against Madison Mechanical OS Corp. is based upon arising from, and related to actual or alleged liability under a contract or agreement, namely, the Stockholders Agreement dated December 31, 2007 among Madison Mechanical OS Corp., Buczkowski, Haslam, Garofalo, Lombardo, and Kraemer. The complaint alleges that

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 10

Haslam's effort to terminate Buczkowski "for cause" on November 18, 2015 was an attempt to
force a transfer of his stock in Madison Mechanical OS Corp., in violation of the Stockholders
Agreement.

Plaintiff alleges he was wrongfully terminated and asks the court to reinstate his employment.
Exclusion V(A)(2) provides that the Insurer shall not pay **Loss** under Insuring Agreement (C) in
connection with any **Claim** based upon arising from, or in any way related to any actual or
alleged:

> (2) employment-related **Wrongful Act**.

Because Buczkowski alleges employment-related **Wrongful Acts** against entity defendants
Madison Mechanical OS Corp. and Madison Mechanical Contracting, LLC, coverage for these
**Insured Entities** is barred by Exclusion V(A)(2) and Twin City reserves its rights accordingly.

Counts 11 and 12 of the complaint allege unfair competition and misappropriation of trade
secrets. Exclusions V(A)(6) and V(A)(7) provide that the Insurer shall not pay **Loss** under
Insuring Agreement (C) in connection with any **Claim** based upon arising from, or in any way
related to any actual or alleged:

> (6) infringement, dilution or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark,
> trade secrets, or other intellectual property; provided, however that this exclusion shall not apply to the portion
> of **Loss** directly resulting from:
>
> (a) a civil proceeding brought and maintained by a security holder(s) of an **Insured Entity**, in their capacity as
> such; or
>
> (b) a **Derivative Action** or a **Derivative Demand**; or
>
> (7) unfair trade practices or any violation of the Federal Trade Commission Act or any similar law

Twin City reserves its rights under these exclusions.

### *EPL Coverage Part*

Under the EPL part of the 2015 Policy, in the absence of the threshold coverage issues raised
above, the suit would be an **Employment Practices Claim** with respect to Madison Mechanical
OS Corp., Haslam, and Garofolo. Count 1 seeks a declaration from the court with respect to
these defendants that plaintiff was wrongfully terminated and must be reinstated. However,
there does not appear to be any coverage under this coverage part with respect to Madison
Mechanical Contracting LLC because there is no **Employment Practices Claim** alleged against
this entity.

### *Other Coverage Issues*

There are at least two additional coverage issues:

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford

Gary R. Jones, Esq.
April 19, 2017
Page 11

First, Counts 9 and 10 of the complaint seek recovery for unjust enrichment. Recovery for unjust enrichment—otherwise known as restitution and disgorgement—does not constitute covered **Loss** or **Damages**, and is generally uninsurable.

Second, in addition to the claim for unjust enrichment, the complaint also includes causes of action for breach of fiduciary duty and minority shareholder oppression. Although we understand that the plaintiff has provided no evidence of this alleged misconduct to date, the allegations implicate two additional exclusions under the D&O coverage part. Exclusions (IV)(L) and (IV)(M) in the D&O part provide that the Insurer shall not pay **Loss**:

(L)  of an **Insured**, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled if a judgment or other final adjudication establishes that such a gain did occur; or

(M)  of an **Insured**, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication establishes such an act, omission or violation, provided, however, that this exclusion shall only apply to **Insured Entities** under Insuring Agreement (C), if elected if a past or present chief executive officer, chief financial officer or general counsel of the **Named Entity** committed such an act, omission or willful violation.

Twin City reserves its rights on these two issues. Please note that Exclusions (IV)(L) and (IV)(M) both require a final adjudication.

## Conclusion

Based upon the additional information recently provided to Twin City in connection with the November 11, 2015 Demand Letter, this confirms that Twin City declines coverage under the 2016 Policy as the claim was first made during the 2015 Policy. This further confirms that Twin City denies coverage under the 2015 Policy based upon: (1) the Warranty Exclusion within question 3 (Prior Knowledge) of the Application; (2) the Warranty Exclusion within Question 9 (Loss History) of the Application; and (3) Late Notice. Twin City additionally reserves all rights including those described above. Our comments are based upon the facts received to date and Twin City reserves the right to further investigate and to request additional information and documents as may be indicated.

Please be advised that Twin City is reserving all of its rights and defenses under the Policy and applicable law, whether or not specifically identified in this letter. If you have any information or documents that you believe may affect the coverage position set forth herein, please forward it to my attention immediately.

Please let me know if you have any questions or comments. You can call me at (212) 277-0859, or you can reach me through e-mail at Michael.Knox@thehartford.com

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

Gary R. Jones, Esq.
April 19, 2017
Page 12

Sincerely,


Michael S. Knox, JD, RPLU
Claims Consultant

cc:     Danielle Vranian
        Baxter, Baker, Sidle, Conn & Jones, P.A.
        dmv@bbsclaw.com

Copyright © 2017 by The Hartford. Classification: Publicly Available for approved external distribution. All rights reserved.
No part of this document may be reproduced, published or posted without the permission of The Hartford.

# EXHIBIT 14

# Baxter, Baker, Sidle, Conn & Jones, P.A.

Attorneys at Law
120 E. Baltimore Street, Suite 2100
Baltimore, Maryland 21202-1643

Daryl J. Sidle                                                                     Telephone (410) 230-3800
Direct Line (410) 385-8077                                                         Facsimile (410) 230-3801
e-mail: djs@bbsclaw.com

January 14, 2016

Robert B. Scarlett
Scarlett, Croll & Myers, P.A.
201 North Charles Street, Suite 600
Baltimore, MD  21201-4100

Re:   Robert J. Buczkowski

Dear Mr. Scarlett:

I write to you as counsel for Madison Mechanical OS Corp. ("Madison"). As you are aware, your client, Robert J. Buczkowski's employment with Madison terminated on November 24, 2015. Accordingly, pursuant to the Madison Stockholders Agreement, of which your client is a party, Mr. Buczkowski is now obligated to sell his stock in Madison.

I understand that your client has been furnished with the independently prepared financial statements for Madison's year ending December 31, 2014. The December 31, 2014, consolidated balance sheet for Madison reflects a negative book value of approximately $3 million. Pursuant to the Stockholders Agreement, that negative book value forms the foundation for the purchase price of your client's stock. The negative number will be increased by the taxes imposed on your client's distributable share of taxable income for the portion of calendar year 2015 in which he was employed. While that number is not yet available to us, it is our belief that Madison's taxable income for calendar year 2015 will be less than the negative book value as of the end of 2014.

Accordingly, pursuant to the Stockholders Agreement, the purchase price for your client's capital stock in Madison is currently calculated to be $0. If the independently prepared income statement for 2015 reveals income in excess of the negative December 31, 2014 book value, an appropriate portion of the excess will be remitted to your client as additional purchase price. Please have your client endorse his stock certificate in blank and forward it to me to consummate the stock purchase.

On a related note, it is our understanding that Madison is indebted to your client in the amount of approximately $150,000, plus accrued interest, pursuant to a promissory note from Madison payable to the order of your client, dated October 17, 2014. In addition, however, your client is indebted to Madison in the amount of approximately $140,609, which represents his

Robert B. Scarlett
Scarlett, Croll & Myers, P.A.
January 14, 2016
Page 2

delinquent capital contributions.  We propose to set-off the amount due from your client against the amount due to your client and pay the excess to him.

Finally, I want to address certain allegations contained in your letter dated November 11, 2015, concerning alleged diversion of Madison's business opportunities.  At the time of your letter, no business had been diverted from Madison to any affiliate.  In late December, 2015, Madison Mechanical, Inc., the wholly-owned subsidiary of Madison Mechanical OS Corp., entered into a voluntary dissolution.  At this point, Madison Mechanical (the operating subsidiary) exists solely for the purpose of winding up its existing business and consummating the orderly liquidation and distribution of its net assets (if any).  It is not accepting any new business.

Please do not hesitate to contact me if you should have any questions in connection with this matter.

Very truly yours,

Daryl J. Sidle

DJS:dar

cc:   Glenn Haslam

# EXHIBIT 15

## AFFIDAVIT OF ROBERT BUCZKOWSKI

I, Robert Buczkowski, hereby state and affirm as follows:

1. I am over the age of eighteen years and competent to testify.

2. The following is based upon my personal knowledge.

3. Beginning in the spring of 2014, a capital call was made by Glenn Haslam as President and CEO of Madison Mechanical OS Corp. ("OS Corp."), which is a holding company for Madison Mechanical, Inc. ("MMI").

4. Each shareholder of OS Corp. was asked to contribute his equitable share to the capital contribution. In March and December of 2014, and throughout the months of January through March of 2015, capital calls were made by Glenn Haslam in which my equitable percentage (13%) totaled $283,609. I contributed $143,609 in total. Specifically, I only made two capital contributions. The first was in the amount of $130,000 on March 1, 2014. The second was in the amount of $13,000 on December 16, 2014. While the remaining shareholders made additional contributions during the time period from January through March of 2015, I did not.

5. As of April 1, 2015, Mr. Haslam and OS Corp diluted my ownership interest from 13% to 7.774%.

6. The dilution occurred and was effective as of April 1, 2015.

I SOLEMNLY AFFIRM under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

_5/25/18_
Date

_Robert Buczkowski_
Robert Buczkowski