# EXHIBIT 29



Deposition of:

# Glenn A. Haslam

*August 22, 2019*

In the Matter of:

# Madison Mechanical, Inc. Vs. Twin City Fire Insurance Company

Veritext Legal Solutions

800.808.4958 | calendar-dmv@veritext.com |

Page 1

1        IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF MARYLAND

3    MADISON MECHANICAL, INC.,:

4    et al.                  :

5      Plaintiffs            :

6          Vs.               : Case No.:

7    TWIN CITY FIRE INSURANCE :  1:17-cv-01357-GLR

8    COMPANY, et al.         :

9      Defendants            :

10              --------------------

11

12           Deposition of GLENN HASLAM, was taken on

13    Thursday, August 22, 2019, commencing at 2:46 p.m.,

14    at Baxter, Baker, Sidle, Conn & Jones, 120 East

15    Baltimore Street, 21st Floor, Baltimore, Maryland,

16    before MICHELE D. LAMBIE, Notary Public.

17              --------------------

18

19

20    Reported By:

21           Michele D. Lambie, CSR-RPR

Page 2

1   APPEARANCES:

2            ON BEHALF OF THE PLAINTIFFS:

3      Baxter, Baker, Sidle, Conn & Jones.

4            DANIELLE M. VRANIAN, ESQUIRE.

5            dmv@bbsclaw.com.

6            CAROLINE PAYTON, ESQUIRE.

7            120 East Baltimore Street, 21st Floor.

8            Baltimore, Maryland  21202.

9            (410) 230-3800

10

11           ON BEHALF OF THE DEFENDANTS:

12      Wiley Rein LLP

13           CHARLES C. LEMLEY, ESQUIRE

14           clemley@wileyrein.com

15           ANNA J. SCHAFFNER, ESQUIRE

16           aschaffner@wileyrein.com

17           1776 K Street, N.W.

18           Washington, D.C.  20006

19           (202) 719-7000

20   ALSO PRESENT:  Edward J. Longosz, II, Esquire

21                  Gary Garofalo

1                    EXAMINATION INDEX

2

WITNESS:  GLENN HASLAM                        PAGE

3        BY MR. LEMLEY                              4

4

5                     EXHIBIT INDEX

6             (Attached to Transcript.)

7                                            MARKED

GLENN HASLAM

8   Exhibit 23 Email dated March 6, 2015 with      4
                attachments

9

   Exhibit 24 HFP Pronto Application            4

10

   Exhibit 25 Email dated March 6, 2015 with     12

11               attachments

12  Exhibit 26 Email dated April 8, 2016         14

13

14

15

16

17

18

19

20

21

1                    P R O C E E D I N G S

2              (Whereupon, Haslam Deposition Exhibit 23,

3    Email dated March 6, 2015 with attachments, marked

4    for identification.)

5              (Whereupon, Haslam Deposition Exhibit 24,

6    HFP Pronto Application, marked for identification.)

7                       GLENN HASLAM

8    the Deponent, called for examination by the

9    Defendants, being first duly sworn to tell the

10   truth, the whole truth, and nothing but the truth,

11   testified as follows:

12                       EXAMINATION

13            BY MR. LEMLEY:

14        Q.    Hey, how are you?

15        A.    I'm good.

16        Q.    Good.  Can you state your name for the

17   record, please?

18        A.    Yes.  Glenn Haslam.

19        Q.    And what do you for a living, Mr. Haslam?

20        A.    I'm the president of Madison Mechanical.

21        Q.    Do you also work for Harkins, or no?

1      A.    No.

2      Q.    How long have you been the president of

3  Madison Mechanical?

4      A.    Somewhere around '93.  Well, LLC.  Let me

5  re-answer that.

6      Q.    I was going to say.

7      A.    I'm the president of Madison Mechanical,

8  LLC.

9      Q.    Okay.

10     A.    And that was as of January 1st of '16.

11     Q.    Before that?

12     A.    I was president of Madison Mechanical,

13  Inc. since 1993.

14     Q.    Okay.  You were also part owner of

15  Madison Mechanical OS Corp.; is that right?

16     A.    That's correct.

17     Q.    And did you -- what role did you play

18  with respect to getting insurance for Madison

19  Mechanical?  We're talking specifically the

20  2015/2016 time frame particularly.

21     A.    I didn't play a direct role.

1      Q.   Okay.

2      A.   I just looked at the cost.  Bob

3  Buczkowski, with the help of Brant Geiman, handled

4  the -- the forms, the paperwork back and forth.

5  Bill Franey would bring it in, and I would sign a

6  piece of paper that I received the policies.  I

7  never read them.

8      Q.   Okay.

9      A.   He was my agent since 1993.  He handled

10  everything.

11      Q.   So, let me just ask you about one

12  application, --

13      A.   Okay.

14      Q.   -- and that's been marked as 24.

15          MR. LEMLEY:  Here you go.  I know we're

16  out of order.

17          MS. VRANIAN:  That's okay.

18  BY MR. LEMLEY:

19      Q.   So, this is an application that is -- if

20  you look back at page 10 of 11, you signed or it

21  has your signature --

1      A.   That's me.

2      Q.   -- December 29, 2015?

3      A.   (Nodding head yes.)

4      Q.   Did you fill out this application, do you

5  know, or was it filled out for you?

6      A.   No.  I'll have to tell you I didn't fill

7  it out.

8      Q.   If you look at page 7 of 11, and it's

9  true of many of other pages, too, there are boxes.

10  They are questions with answers checked, no, no,

11  no, no, no, no, no?

12     A.   Yeah.

13     Q.   Did you put those check marks in, or did

14  somebody else do that?

15     A.   Somebody else.

16     Q.   Do you know who did that?

17     A.   What is the date of this?

18     Q.   December 29th, 2015.

19     A.   That would have been Brant Geiman.

20     Q.   Do you know how he came to get the

21  information that's in here?

Page 8

1    A.   Normally, I don't -- I don't know

2    specifically, but normally, he -- him and Pat

3    Bierderman would go back and forth on these

4    applications.  If he had any questions, he would

5    call her.

6    Q.   And so, for example, looking back at page

7    7 of 11, there's questions about -- Question 9 A,

8    Have there been any actual or potential lawsuits or

9    claims that may fall within the scope of the

10   coverage requested?

11       9 C, Are there any pending claims or

12   demands against an applicant or any national person

13   for whom this insurance is intended?

14       Do you recall any discussion of those, or

15   did you just count on Pat Bierderman and Brant to

16   have put their answers down right?

17   A.   Yeah.  I don't recall any discussions at

18   this time with them.

19   Q.   All right.  I'm done with that.  So, look

20   at Exhibit 13.

21       MS. VRANIAN:  Thirteen.

Page 9

1   BY MR. LEMLEY:

2       Q.   So, you've heard discussions -- you heard

3   some of the discussions today about when

4   Mr. Buczkowski's ownership was diluted from 13

5   percent to 7 percent.  You heard us ask

6   Mr. Garofalo some questions about that?

7       A.   Um-hum.

8       Q.   Do you know when Mr. Buczkowski's

9   ownership was diluted?

10      A.   Well, Mr. -- I don't know the exact date,

11  but when he failed to put in his capital.

12      Q.   So, what is the basis for you saying that

13  his ownership was diluted when he failed to put in

14  the capital?

15      A.   It was my understanding, and I would

16  assume maybe through a conversation with one of our

17  attorneys, that even if the agreement does not

18  specify it, it's a matter of law.

19      Q.   Okay.

20      A.   And that's -- that's what we started

21  talking to Bob about, and this spreadsheet was

1   prepared by Bob.  And --

2       Q.   Okay.

3       A.   And the purpose of the spreadsheet,

4   because we -- we were telling Bob the 7 percent.

5   Bob put this spreadsheet together to show the loan

6   and that he had only been reduced to 9.71 percent.

7            So, this was Bob's rebuttal to us telling

8   him he was reduced to 7 percent or 7 point whatever

9   percent.  So, Bob Buczkowski, if you look at this

10  email, is the author of this spreadsheet.

11      Q.   So, other than that you had an

12  understanding from talking to your lawyers, is

13  there anything else, any other -- any provision of

14  the shareholder's agreement or of Maryland law or

15  anything else that you're aware of?

16      A.   No.

17      Q.   So, now look at Number 23.

18           MS. VRANIAN:  Do you have the marked one

19  of 23?

20           MR. LEMLEY:  Did I take it back?  Here

21  you go.  I'm sorry.  I thought I left it over

1   there.   My apologies.

2            MS. VRANIAN:   This is the one you need.

3            THE WITNESS:   Okay.

4   BY MS. VRANIAN:

5       Q.   So, the front page is Mr. Garofalo

6   saying, This makes no sense, loans to shareholders

7   and so forth, talking about how the capital calls

8   and loans are being treated.   We looked at that

9   earlier, but I realized that there were some pages

10  that had been with that that weren't attached.   So,

11  that's why this Exhibit 23 has those pages

12  attached --

13      A.   Okay.

14      Q.   -- in case you're wondering.   Then it

15  goes to Buczkowski's section.   So, it looks to me

16  like -- looking at Mr. Garofalo's description,

17  looking at the charts, it doesn't look to me like

18  anybody was saying at the time that the ownership

19  interest was diluted to anything at the time?

20      A.   Well, if you read Gary's email, I think

21  it speaks for itself, and it does not say that, I

Page 12

1   agree.  But if you go back to this email, it's the

2   same email that was in Exhibit 13, this -- this

3   shows that there was conversations with Bob that he

4   was diluted to 7 point something percent, and Bob's

5   argument was he was only diluted to 9.71 percent.

6          So, there was clearly discussions that

7   his inability or his unwillingness, because it was

8   not his inability, to put capital in was resulting

9   in his -- his stock being diluted.

10      Q.   I understand.  Do you know when was the

11  first time that you firmly understood that it had

12  actually been diluted?

13      A.   That was the first time he didn't put

14  money in.

15      Q.   So, at that point, you thought he's

16  diluted?

17      A.   Yeah.  Yeah.

18          MR. LEMLEY:  Can you mark that as

19  whatever is next?  I think it's 25.

20          (Whereupon, Haslam Deposition Exhibit 25,

21  Email dated March 6, 2015 with attachments, marked

1    for identification.)

2    BY MR. LEMLEY:

3        Q.   All right.  So, this is March 29th, 2016,

4    8:31 a.m.  It's from Brant Geiman to Gary Garofalo,

5    copy to you, additional promissory notes.  It says,

6    Please see attached promissory notes and related

7    interest spreadsheet.  These are the notes that

8    will even out equity based on Bob's contribution.

9    Please give Glenn a call later today to review.  Do

10   you know what they're talking about there?

11       A.   Yeah.  This is back -- this is in

12   response to Gary's email.  We were -- we were

13   having taxes done at the time.  I don't know

14   specifically how we got on this discussion as far

15   as re-doing the capital, but it was definitely

16   decided that we weren't going down that road, and

17   it was not done.

18            So, the 2015 tax returns that were done,

19   it was Bob's final K-1.  And that K-1, I don't know

20   exactly what it showed, but it showed a reduction,

21   whatever the number was that they came up with, and

1  I believe it was the 7 point something percent.

2      Q.   But I understand that you don't think

3  this was done, but do you understand what the

4  proposal was?  What were the promissory notes?

5      A.   It -- it was -- it was back to the

6  conversation that was somebody threw an idea around

7  of -- of instead of diluting Bob, recapitalize

8  loans.  In other words, decrease our capital, but

9  add it to our loan, but that was not done.

10     Q.   Okay.  So, as of this chart, March 29th,

11  it still refers to his capital call percent paid

12  was being lowered, but it also says his percent

13  ownership at the top is still 13 percent, right?

14     A.   That's it.  That was the starting number

15  before the dilution.

16          MR. LEMLEY:  And then let's mark that

17  one.

18          (Whereupon, Haslam Deposition Exhibit 26,

19  Email dated April 8, 2016, marked for

20  identification.)

21  BY MR. LEMLEY:

Page 15

1      Q.   So, this is an April 8, 2016 email from

2   Brant to Mr. Garofalo, a copy to you, regarding

3   Madison equity loans?

4      A.   Yes.  This is that same spreadsheet

5   without handwriting on it.

6      Q.   This is the spreadsheet where they're

7   talking about converting parts of your capital

8   calls to loans and leaving everybody at their

9   existing percent ownership, correct?

10      A.   Correct.

11      Q.   It still shows Buczkowski at 13 percent,

12   right?

13      A.   Yes, but 13 was the starting point, and

14   this was not done.

15      Q.   And then Exhibit 22 is one of the last

16   ones I -- the ones that I talked to Mr. Garofalo

17   about.

18      A.   That's 21.  Sorry.

19           MS. VRANIAN:  Yes.

20           THE WITNESS:  Okay.

21   BY MR. LEMLEY:

1    Q.   This is the next day after the exhibit we

2    just looked at, April 9th, 2016.  It attaches the

3    same chart?

4    A.   The same chart.

5    Q.   Yes.  And it says, We have

6    recharacterized a portion of the capital we put in

7    to loans to MM.  Accordingly, the capital

8    contributions for each of your 10 percent

9    ownerships were reduced to $110,000.  Both of you

10   had $180,160 recharacterized from capital to loans.

11   So, this is saying that it's done it seems to me.

12   A.   That's what it says, but it was not done.

13   And the K-1s that Reznick prepared will support

14   that.

15   Q.   All of this -- why were you going through

16   all of this if you thought that his dilution had

17   been automatic?  You would have had to reverse the

18   dilution, wouldn't you?

19   A.   You would have had to.  That's exactly

20   right, which is, hence, why it didn't happen.

21         MR. LEMLEY:  Go to Exhibit 9.

Page 17

1    BY MR. LEMLEY:

2         Q.    Exhibit 9 is the consent of sole director

3    that -- that you signed on September 15th, 2016; do

4    you recall that?

5         A.    I do.

6         Q.    This document says if you look at the

7    bottom, The following resolutions shall be and

8    hereby are taken by the director of the corporation

9    as of the date first hereinabove written, which is

10   September 15th, 2016, and that says that effective

11   April 1st, 2015, you reissued stock to dilute

12   Mr. Buczkowski's ownership, correct?

13        A.    Correct.

14        Q.    Why did you do this if it was

15   automatically done -- if you thought it was

16   automatically done in March of 2015?

17        A.    This was just housecleaning, that we had

18   a company that we had a lot going on, and when we

19   got settled down and could clean up, we cleaned it

20   up.

21        Q.    Wasn't this done because just a couple of

1   weeks before this Twin City had issued a coverage

2   position saying there was no coverage because of

3   the 13-percent ownership?

4        A.   No.

5             MS. VRANIAN:   Objection.

6   BY MR. LEMLEY:

7        Q.   Are you aware of anything that happened

8   between -- well, anything that happened before

9   September 15th, other than your understanding of

10  the March 2015 email?  Anything that would give us

11  any evidence that would show us anything that would

12  show that Mr. Buczkowski's ownership was diluted

13  before September 15th, 2016?

14       A.   There were spreadsheets that showed it.

15       Q.   Those spreadsheets that we just showed

16  that said we're not diluting him?

17       A.   No, no, no.  Those spreadsheets showed

18  that we are diluting him, and Bob was coming back

19  and saying that you can only dilute me down to

20  this.

21       Q.   If that's what you want to -- they were

Page 19

1   showing you a different plan --

2        A.   That's not what I want to call them.

3   That's what they are.

4        Q.   No.  Well, the spreadsheets that we just

5   talked about that said instead of diluting him,

6   let's change --

7        A.   No, no, no.  I'm talking about the

8   spreadsheets that Bob Buczkowski did --

9        Q.   And I'm saying other than that.

10       A.   Why other than that?

11       Q.   Other than that.  Other than your

12  understanding of the --

13       A.   Okay.  It's not my understanding.  It's

14  black and white.  It is what it is.

15       Q.   Okay.  You are right.  They are what they

16  are.

17       A.   Okay.

18       Q.   Other than those, are you aware of any

19  evidence whatsoever that his ownership was diluted

20  before September 15th, 2016?

21       A.   There's a lot of papers around here.  I

1   don't know of any that I can point to at the

2   moment.

3           MR. LEMLEY:  I don't remember which one

4   this was.  Do you remember this one, what this is?

5   Is that 12?  I thought it would be easier than

6   remarking them all.

7           MS. VRANIAN:  It's 12.

8   BY MR. LEMLEY:

9       Q.   Let's look at 12, if you would.  So, this

10  was an email from back in 2011 that you may have

11  seen me talk to Mr. Garofalo about.

12      A.   Um-hum.

13      Q.   It's from him to you and Mr. Buczkowski,

14  Mr. Lombardo, Mr. Kraemer, and in the message, it

15  says, At our September 1st meeting in Madison's

16  office, we discussed that since the current

17  stockholder's agreement, SA, was silent on what

18  would happen if a shareholder did not make their

19  requested cash-call obligation, that I would look

20  into some alternatives from which we could generate

21  a policy that we would use to amend the SA.  Do you

Page 21

1    see that?

2        A.    I do.

3        Q.    On the attachment, there are several

4    alternatives, two of which, number 3 and number 4,

5    would have involved diluting the shareholder's

6    stock based on the unpaid contributions; is that

7    right?

8        A.    That's correct.

9        Q.    And none of these were ever adopted,

10   right?

11       A.    They were never formalized, no.

12       Q.    Okay.

13            MR. LEMLEY:  Mark this one, please --

14   wait.  She said it's Exhibit 6.

15            MS. VRANIAN:  Which one is it?

16            MR. LEMLEY:  This one?

17            MS. VRANIAN:  Okay.  Got it.

18            MR. LEMLEY:  He can have that one, too.

19   That's fine.

20   BY MR. LEMLEY:

21       Q.    So, this letter dated January 14th, 2016

Page 22

1   is from Mr. Scarlett, as counsel for Madison

2   Mechanical, to Mr. Buczkowski's counsel, and at the

3   end of the first paragraph it says, Accordingly,

4   pursuant to the Madison's stockholder's agreement,

5   of which your client is a party, Mr. Buczkowski is

6   now obligated to sell his stock in Madison.  Do you

7   see that?

8        A.   I do.  I just want to correct.  It's from

9   Baxter, Baker, Daryl Sidle, to Mr. Scarlett.

10       Q.   My apologies.

11       A.   Yeah, I'm with you.  But yes.  The answer

12  is yes.

13       Q.   Okay.  And then the third paragraph

14  explains that they calculated the purchase price

15  for the stock at zero dollars, correct?

16       A.   Correct.

17       Q.   Do you know how much stock they

18  were -- they were buying back?

19       A.   I don't know.

20       Q.   So, this was January 14th, 2016.  Would

21  they have been buying back 7 percent, 9 percent, or

Page 23

1    13 percent, do you know?

2         A.    I believe it would have been the 7 point

3    whatever.

4         Q.    The last paragraph on the first page, it

5    says, On a related note, it is our understanding

6    that Madison is indebted to your client in the

7    amount of approximately $150,000, plus accrued

8    interest pursuant to a promissory note from Madison

9    payable to the order of your client dated October

10   17, 2014.

11             In addition, however, your client is

12   indebted to Madison in the amount of approximately

13   $140,609, which represents his delinquent capital

14   contributions.  Do you see that?

15        A.    Where is that?

16        Q.    Right at the bottom of the first page.

17        A.    Oh, right here.  Yeah.  Yeah.  Right.

18   Sure.

19        Q.    So, if his shares had been diluted, how

20   could he still have delinquent capital

21   contributions?

Page 24

1      A.    I don't have an answer for that.

2      Q.    Okay.

3            MR. LEMLEY:  I don't have anything else.

4            MS. VRANIAN:  I don't have anything for

5   you, Glenn.

6            THE WITNESS:  Oh, come on.

7            MR. LEMLEY:  Oh, man.

8            MS. VRANIAN:  We're going to read and

9   sign.

10            (Whereupon, the deposition of Glenn

11   Haslam was concluded at 3:08 p.m., and the reading

12   and signing of the transcript was not waived.)

13

14

15

16

17

18

19

20

21

Page 25

1          Madison Mechanical, Inc., et al. v.

                    Twin City Fire Ins., et al.

2                   Glenn Haslam

3              INSTRUCTIONS TO THE WITNESS

4          Please read your deposition over

5    carefully and make any necessary corrections.  You

6    should state the reason in the appropriate space on

7    the errata sheet for any corrections that are made.

8          After doing so, please sign the errata

9    sheet and date it.

10         You are signing same subject to the

11   changes you have noted on the errata sheet, what

12   will be attached to the deposition.

13         It is imperative that you return the

14   original errata sheet to the deposing attorney

15   thirty (30) days of receipt of the deposition

16   transcript by you.  If you fail to do so, the

17   deposition transcript may be deemed to be accurate

18   and may be used in court.

19

20

21   Job #3489183

Page 26

1          Madison Mechanical, Inc., et al. v.

                Twin City Fire, Ins., et al.

2                    Glenn Haslam

3                       ERRATA

4        PAGE   LINE   CHANGE

5        ---    ---    --------------------------

6        Reason:_____

7        ---    ---    --------------------------

8        Reason:_____

9        ---    ---    --------------------------

10       Reason:_____

11       ---    ---    --------------------------

12       Reason:_____

13       ---    ---    --------------------------

14       Reason:_____

15       ---    ---    --------------------------

16       Reason:_____

17       ---    ---    --------------------------

18       Reason:_____

19       ---    ---    --------------------------

20       Reason:_____

21    Job #3489183

Page 27

1        Madison Mechanical, Inc., et al. v.

           Twin City Fire Ins., et al.

2          Glenn Haslam

3      ACKNOWLEDGMENT OF DEPONENT

4     I, GLENN HASLAM, do hereby certify that I

5  have read the foregoing pages and that the same is

6  a correct transcription of the answers given by me

7  to the questions therein propounded, except for the

8  corrections or changes in form or substance, if

9  any, noted in the attached errata sheet.

10

11

12

13

14  _____         _____

15     Date             Signature

16

17

18

19

20

21  Job #3489183

Page 28

1  State of Maryland

2  County of Baltimore, to wit:

3          I, Michele D. Lambie, a Notary Public of

4  the State of Maryland, County of Baltimore, do

5  hereby certify that the within-named witness

6  personally appeared before me at the time and place

7  herein set out, and after having been duly sworn by

8  me, according to law, was examined by counsel.

9          I further certify that the examination

10  was recorded stenographically by me and this

11  transcript is a true record of the proceedings.

12          I further certify that I am not of

13  counsel to any of the parties, nor related to any

14  of the parties, nor in any way interested in the

15  outcome of this action.

16          As witness my hand this 27th day of

17  August, 2019.

18

19          *Michele D Lambie* (signature)

20          Michele D. Lambie

21  My Commission Expires:  April 29, 2020

**[& - baltimore]**                                    Page 1

| & |
| --- |
| **&**   1:14 2:3 |

| 0 |
| --- |
| **01357**   1:7 |

| 1 |
| --- |
| **1**   13:19,19 |
| **10**   6:20 16:8 |
| **11**   6:20 7:8 8:7 |
| **110,000**   16:9 |
| **12**   3:10 20:5,7,9 |
| **120**   1:14 2:7 |
| **13**   8:20 9:4 12:2 |
|    14:13 15:11,13 |
|    18:3 23:1 |
| **14**   3:12 |
| **140,609**   23:13 |
| **14th**   21:21 22:20 |
| **150,000**   23:7 |
| **15th**   17:3,10 18:9 |
|    18:13 19:20 |
| **16**   5:10 |
| **16532**   28:19 |
| **17**   23:10 |
| **1776**   2:17 |
| **180,160**   16:10 |
| **1993**   5:13 6:9 |
| **1:17**   1:7 |
| **1s**   16:13 |
| **1st**   5:10 17:11 |
|    20:15 |

| 2 |
| --- |
| **20006**   2:18 |
| **2011**   20:10 |
| **2014**   23:10 |
| **2015**   3:8,10 4:3 |
|    7:2,18 12:21 |
|    13:18 17:11,16 |
|    18:10 |
| **2015/2016**   5:20 |

| 2016 |
| --- |
| **2016**   3:12 13:3 |
|    14:19 15:1 16:2 |
|    17:3,10 18:13 |
|    19:20 21:21 22:20 |
| **2019**   1:13 28:17 |
| **202**   2:19 |
| **2020**   28:21 |
| **21**   15:18 |
| **21202**   2:8 |
| **21st**   1:15 2:7 |
| **22**   1:13 15:15 |
| **23**   3:8 4:2 10:17 |
|    10:19 11:11 |
| **230-3800**   2:9 |
| **24**   3:9 4:5 6:14 |
| **25**   3:10 12:19,20 |
| **26**   3:12 14:18 |
| **27th**   28:16 |
| **29**   7:2 28:21 |
| **29th**   7:18 13:3 |
|    14:10 |
| **2:46**   1:13 |

| 3 |
| --- |
| **3**   21:4 |
| **30**   25:15 |
| **3489183**   25:21 |
|    26:21 27:21 |
| **3:08**   24:11 |

| 4 |
| --- |
| **4**   3:3,8,9 21:4 |
| **410**   2:9 |

| 6 |
| --- |
| **6**   3:8,10 4:3 12:21 |
|    21:14 |

| 7 |
| --- |
| **7**   7:8 8:7 9:5 10:4 |
|    10:8,8 12:4 14:1 |
|    22:21 23:2 |

| 719-7000 |
| --- |
| **719-7000**   2:19 |

| 8 |
| --- |
| **8**   3:12 14:19 15:1 |
| **8:31**   13:4 |

| 9 |
| --- |
| **9**   8:7,11 16:21 |
|    17:2 22:21 |
| **9.71**   10:6 12:5 |
| **93**   5:4 |
| **9th**   16:2 |

| a |
| --- |
| **a.m.**   13:4 |
| **accrued**   23:7 |
| **accurate**   25:17 |
| **acknowledgment** |
|    27:3 |
| **action**   28:15 |
| **actual**   8:8 |
| **add**   14:9 |
| **addition**   23:11 |
| **additional**   13:5 |
| **adopted**   21:9 |
| **agent**   6:9 |
| **agree**   12:1 |
| **agreement**   9:17 |
|    10:14 20:17 22:4 |
| **al**   1:4,8 25:1,1 |
|    26:1,1 27:1,1 |
| **alternatives**   20:20 |
|    21:4 |
| **amend**   20:21 |
| **amount**   23:7,12 |
| **anna**   2:15 |
| **answer**   5:5 22:11 |
|    24:1 |
| **answers**   7:10 8:16 |
|    27:6 |
| **anybody**   11:18 |
| **apologies**   11:1 |
|    22:10 |

| appearances |
| --- |
| **appearances**   2:1 |
| **appeared**   28:6 |
| **applicant**   8:12 |
| **application**   3:9 |
|    4:6 6:12,19 7:4 |
| **applications**   8:4 |
| **appropriate**   25:6 |
| **approximately** |
|    23:7,12 |
| **april**   3:12 14:19 |
|    15:1 16:2 17:11 |
|    28:21 |
| **argument**   12:5 |
| **aschaffner**   2:16 |
| **assume**   9:16 |
| **attached**   3:6 11:10 |
|    11:12 13:6 25:12 |
|    27:9 |
| **attaches**   16:2 |
| **attachment**   21:3 |
| **attachments**   3:8 |
|    3:11 4:3 12:21 |
| **attorney**   25:14 |
| **attorneys**   9:17 |
| **august**   1:13 28:17 |
| **author**   10:10 |
| **automatic**   16:17 |
| **automatically** |
|    17:15,16 |
| **aware**   10:15 18:7 |
|    19:18 |

| b |
| --- |
| **back**   6:4,20 8:3,6 |
|    10:20 12:1 13:11 |
|    14:5 18:18 20:10 |
|    22:18,21 |
| **baker**   1:14 2:3 |
|    22:9 |
| **baltimore**   1:15,15 |
|    2:7,8 28:2,4 |

**based**  13:8 21:6
**basis**  9:12
**baxter**  1:14 2:3
  22:9
**bbsclaw.com.**  2:5
**behalf**  2:2,11
**believe**  14:1 23:2
**bierderman**  8:3
  8:15
**bill**  6:5
**black**  19:14
**bob**  6:2 9:21 10:1
  10:4,5,9 12:3 14:7
  18:18 19:8
**bob's**  10:7 12:4
  13:8,19
**bottom**  17:7 23:16
**boxes**  7:9
**brant**  6:3 7:19
  8:15 13:4 15:2
**bring**  6:5
**buczkowski**  6:3
  10:9 15:11 19:8
  20:13 22:5
**buczkowski's**  9:4
  9:8 11:15 17:12
  18:12 22:2
**buying**  22:18,21

**c**

**c**  2:13 4:1 8:11
**calculated**  22:14
**call**  8:5 13:9 14:11
  19:2 20:19
**called**  4:8
**calls**  11:7 15:8
**capital**  9:11,14
  11:7 12:8 13:15
  14:8,11 15:7 16:6
  16:7,10 23:13,20
**carefully**  25:5

**caroline**  2:6
**case**  1:6 11:14
**cash**  20:19
**certify**  27:4 28:5,9
  28:12
**change**  19:6 26:4
**changes**  25:11
  27:8
**charles**  2:13
**chart**  14:10 16:3,4
**charts**  11:17
**check**  7:13
**checked**  7:10
**city**  1:7 18:1 25:1
  26:1 27:1
**claims**  8:9,11
**clean**  17:19
**cleaned**  17:19
**clearly**  12:6
**clemley**  2:14
**client**  22:5 23:6,9
  23:11
**come**  24:6
**coming**  18:18
**commencing**  1:13
**commission**  28:21
**company**  1:8
  17:18
**concluded**  24:11
**conn**  1:14 2:3
**consent**  17:2
**contribution**  13:8
**contributions**  16:8
  21:6 23:14,21
**conversation**  9:16
  14:6
**conversations**
  12:3
**converting**  15:7
**copy**  13:5 15:2

**corp**  5:15
**corporation**  17:8
**correct**  5:16 15:9
  15:10 17:12,13
  21:8 22:8,15,16
  27:6
**corrections**  25:5,7
  27:8
**cost**  6:2
**counsel**  22:1,2
  28:8,13
**count**  8:15
**county**  28:2,4
**couple**  17:21
**court**  1:1 25:18
**coverage**  8:10
  18:1,2
**csr**  1:21
**current**  20:16
**cv**  1:7

**d**

**d**  1:16,21 4:1 28:3
  28:20
**d.c.**  2:18
**danielle**  2:4
**daryl**  22:9
**date**  7:17 9:10
  17:9 25:9 27:15
**dated**  3:8,10,12
  4:3 12:21 14:19
  21:21 23:9
**day**  16:1 28:16
**days**  25:15
**december**  7:2,18
**decided**  13:16
**decrease**  14:8
**deemed**  25:17
**defendants**  1:9
  2:11 4:9
**definitely**  13:15

**delinquent**  23:13
  23:20
**demands**  8:12
**deponent**  4:8 27:3
**deposing**  25:14
**deposition**  1:12
  4:2,5 12:20 14:18
  24:10 25:4,12,15
  25:17
**description**  11:16
**different**  19:1
**dilute**  17:11 18:19
**diluted**  9:4,9,13
  11:19 12:4,5,9,12
  12:16 18:12 19:19
  23:19
**diluting**  14:7
  18:16,18 19:5
  21:5
**dilution**  14:15
  16:16,18
**direct**  5:21
**director**  17:2,8
**discussed**  20:16
**discussion**  8:14
  13:14
**discussions**  8:17
  9:2,3 12:6
**district**  1:1,2
**dmv**  2:5
**document**  17:6
**doing**  13:15 25:8
**dollars**  22:15
**duly**  4:9 28:7

**e**

**e**  4:1,1
**earlier**  11:9
**easier**  20:5
**east**  1:14 2:7
**edward**  2:20

**effective** 17:10
**email** 3:8,10,12
  4:3 10:10 11:20
  12:1,2,21 13:12
  14:19 15:1 18:10
  20:10
**equity** 13:8 15:3
**errata** 25:7,8,11
  25:14 26:3 27:9
**esquire** 2:4,6,13
  2:15,20
**et** 1:4,8 25:1,1
  26:1,1 27:1,1
**everybody** 15:8
**evidence** 18:11
  19:19
**exact** 9:10
**exactly** 13:20
  16:19
**examination** 3:1
  4:8,12 28:9
**examined** 28:8
**example** 8:6
**exhibit** 3:5,8,9,10
  3:12 4:2,5 8:20
  11:11 12:2,20
  14:18 15:15 16:1
  16:21 17:2 21:14
**existing** 15:9
**expires** 28:21
**explains** 22:14

**f**

**fail** 25:16
**failed** 9:11,13
**fall** 8:9
**far** 13:14
**fill** 7:4,6
**filled** 7:5
**final** 13:19
**fine** 21:19

**fire** 1:7 25:1 26:1
  27:1
**firmly** 12:11
**first** 4:9 12:11,13
  17:9 22:3 23:4,16
**floor** 1:15 2:7
**following** 17:7
**follows** 4:11
**foregoing** 27:5
**form** 27:8
**formalized** 21:11
**forms** 6:4
**forth** 6:4 8:3 11:7
**frame** 5:20
**franey** 6:5
**front** 11:5
**further** 28:9,12

**g**

**g** 4:1
**garofalo** 2:21 9:6
  11:5 13:4 15:2,16
  20:11
**garofalo's** 11:16
**gary** 2:21 13:4
**gary's** 11:20 13:12
**geiman** 6:3 7:19
  13:4
**generate** 20:20
**getting** 5:18
**give** 13:9 18:10
**given** 27:6
**glenn** 1:12 3:2,7
  4:7,18 13:9 24:5
  24:10 25:2 26:2
  27:2,4
**glr** 1:7
**go** 6:15 8:3 10:21
  12:1 16:21
**goes** 11:15
**going** 5:6 13:16
  16:15 17:18 24:8

**good** 4:15,16

**h**

**hand** 28:16
**handled** 6:3,9
**handwriting** 15:5
**happen** 16:20
  20:18
**happened** 18:7,8
**harkins** 4:21
**haslam** 1:12 3:2,7
  4:2,5,7,18,19
  12:20 14:18 24:11
  25:2 26:2 27:2,4
**head** 7:3
**heard** 9:2,2,5
**help** 6:3
**hereinabove** 17:9
**hey** 4:14
**hfp** 3:9 4:6
**housecleaning**
  17:17
**hum** 9:7 20:12

**i**

**idea** 14:6
**identification** 4:4
  4:6 13:1 14:20
**ii** 2:20
**imperative** 25:13
**inability** 12:7,8
**indebted** 23:6,12
**index** 3:1,5
**information** 7:21
**ins** 25:1 26:1 27:1
**instructions** 25:3
**insurance** 1:7 5:18
  8:13
**intended** 8:13
**interest** 11:19 13:7
  23:8

**interested** 28:14
**involved** 21:5
**issued** 18:1

**j**

**j** 2:15,20
**january** 5:10
  21:21 22:20
**job** 25:21 26:21
  27:21
**jones** 1:14 2:3

**k**

**k** 2:17 13:19,19
  16:13
**know** 6:15 7:5,16
  7:20 8:1 9:8,10
  12:10 13:10,13,19
  20:1 22:17,19
  23:1
**kraemer** 20:14

**l**

**lambie** 1:16,21
  28:3,20
**law** 9:18 10:14
  28:8
**lawsuits** 8:8
**lawyers** 10:12
**leaving** 15:8
**left** 10:21
**lemley** 2:13 3:3
  4:13 6:15,18 9:1
  10:20 12:18 13:2
  14:16,21 15:21
  16:21 17:1 18:6
  20:3,8 21:13,16,18
  21:20 24:3,7
**letter** 21:21
**line** 26:4
**living** 4:19
**llc** 5:4,8

**llp** 2:12
**loan** 10:5 14:9
**loans** 11:6,8 14:8
  15:3,8 16:7,10
**lombardo** 20:14
**long** 5:2
**longosz** 2:20
**look** 6:20 7:8 8:19
  10:9,17 11:17
  17:6 20:9,19
**looked** 6:2 11:8
  16:2
**looking** 8:6 11:16
  11:17
**looks** 11:15
**lot** 17:18 19:21
**lowered** 14:12

**m**

**m** 2:4
**madison** 1:3 4:20
  5:3,7,12,15,18
  15:3 22:1,6 23:6,8
  23:12 25:1 26:1
  27:1
**madison's** 20:15
  22:4
**man** 24:7
**march** 3:8,10 4:3
  12:21 13:3 14:10
  17:16 18:10
**mark** 12:18 14:16
  21:13
**marked** 3:7 4:3,6
  6:14 10:18 12:21
  14:19
**marks** 7:13
**maryland** 1:2,15
  2:8 10:14 28:1,4
**matter** 9:18
**mechanical** 1:3
  4:20 5:3,7,12,15

5:19 22:2 25:1
  26:1 27:1
**meeting** 20:15
**message** 20:14
**michele** 1:16,21
  28:3,20
**mm** 16:7
**moment** 20:2
**money** 12:14

**n**

**n** 4:1
**n.w.** 2:17
**name** 4:16
**named** 28:5
**national** 8:12
**necessary** 25:5
**need** 11:2
**never** 6:7 21:11
**nodding** 7:3
**normally** 8:1,2
**notary** 1:16 28:3
**note** 23:5,8
**noted** 25:11 27:9
**notes** 13:5,6,7 14:4
**number** 10:17
  13:21 14:14 21:4
  21:4

**o**

**o** 4:1
**objection** 18:5
**obligated** 22:6
**obligation** 20:19
**october** 23:9
**office** 20:16
**oh** 23:17 24:6,7
**okay** 5:9,14 6:1,8
  6:13,17 9:19 10:2
  11:3,13 14:10
  15:20 19:13,15,17
  21:12,17 22:13

24:2
**ones** 15:16,16
**order** 6:16 23:9
**original** 25:14
**os** 5:15
**outcome** 28:15
**owner** 5:14
**ownership** 9:4,9
  9:13 11:18 14:13
  15:9 17:12 18:3
  18:12 19:19
**ownerships** 16:9

**p**

**p** 4:1
**p.m.** 1:13 24:11
**page** 3:2 6:20 7:8
  8:6 11:5 23:4,16
  26:4
**pages** 7:9 11:9,11
  27:5
**paid** 14:11
**paper** 6:6
**papers** 19:21
**paperwork** 6:4
**paragraph** 22:3
  22:13 23:4
**part** 5:14
**particularly** 5:20
**parties** 28:13,14
**parts** 15:7
**party** 22:5
**pat** 8:2,15
**payable** 23:9
**payton** 2:6
**pending** 8:11
**percent** 9:5,5 10:4
  10:6,8,9 12:4,5
  14:1,11,12,13 15:9
  15:11 16:8 18:3
  22:21,21 23:1

**person** 8:12
**personally** 28:6
**piece** 6:6
**place** 28:6
**plaintiffs** 1:5 2:2
**plan** 19:1
**play** 5:17,21
**please** 4:17 13:6,9
  21:13 25:4,8
**plus** 23:7
**point** 10:8 12:4,15
  14:1 15:13 20:1
  23:2
**policies** 6:6
**policy** 20:21
**portion** 16:6
**position** 18:2
**potential** 8:8
**prepared** 10:1
  16:13
**present** 2:20
**president** 4:20 5:2
  5:7,12
**price** 22:14
**proceedings** 28:11
**promissory** 13:5,6
  14:4 23:8
**pronto** 3:9 4:6
**proposal** 14:4
**propounded** 27:7
**provision** 10:13
**public** 1:16 28:3
**purchase** 22:14
**purpose** 10:3
**pursuant** 22:4
  23:8
**put** 7:13 8:16 9:11
  9:13 10:5 12:8,13
  16:6

[question - transcript]                                                    Page 5

| **q** |
| --- |
| **question** 8:7 |
| **questions** 7:10 8:4 |
| 8:7 9:6 27:7 |

| **r** |
| --- |
| **r** 4:1 |
| **read** 6:7 11:20 |
| 24:8 25:4 27:5 |
| **reading** 24:11 |
| **realized** 11:9 |
| **reason** 25:6 26:6,8 |
| 26:10,12,14,16,18 |
| 26:20 |
| **rebuttal** 10:7 |
| **recall** 8:14,17 17:4 |
| **recapitalize** 14:7 |
| **receipt** 25:15 |
| **received** 6:6 |
| **recharacterized** |
| 16:6,10 |
| **record** 4:17 28:11 |
| **recorded** 28:10 |
| **reduced** 10:6,8 |
| 16:9 |
| **reduction** 13:20 |
| **refers** 14:11 |
| **regarding** 15:2 |
| **rein** 2:12 |
| **reissued** 17:11 |
| **related** 13:6 23:5 |
| 28:13 |
| **remarking** 20:6 |
| **remember** 20:3,4 |
| **reported** 1:20 |
| **represents** 23:13 |
| **requested** 8:10 |
| 20:19 |
| **resolutions** 17:7 |
| **respect** 5:18 |

**response** 13:12
**resulting** 12:8
**return** 25:13
**returns** 13:18
**reverse** 16:17
**review** 13:9
**reznick** 16:13
**right** 5:15 8:16,19
13:3 14:13 15:12
16:20 19:15 21:7
21:10 23:16,17,17
**road** 13:16
**role** 5:17,21
**rpr** 1:21

| **s** |
| --- |
| **s** 4:1 |
| **sa** 20:17,21 |
| **saying** 9:12 11:6 |
| 11:18 16:11 18:2 |
| 18:19 19:9 |
| **says** 13:5 14:12 |
| 16:5,12 17:6,10 |
| 20:15 22:3 23:5 |
| **scarlett** 22:1,9 |
| **schaffner** 2:15 |
| **scope** 8:9 |
| **section** 11:15 |
| **see** 13:6 21:1 22:7 |
| 23:14 |
| **seen** 20:11 |
| **sell** 22:6 |
| **sense** 11:6 |
| **september** 17:3,10 |
| 18:9,13 19:20 |
| 20:15 |
| **set** 28:7 |
| **settled** 17:19 |
| **shareholder** 20:18 |
| **shareholder's** |
| 10:14 21:5 |

**shareholders** 11:6
**shares** 23:19
**sheet** 25:7,9,11,14
27:9
**show** 10:5 18:11
18:12
**showed** 13:20,20
18:14,15,17
**showing** 19:1
**shows** 12:3 15:11
**sidle** 1:14 2:3 22:9
**sign** 6:5 24:9 25:8
**signature** 6:21
27:15 28:19
**signed** 6:20 17:3
**signing** 24:12
25:10
**silent** 20:17
**sole** 17:2
**somebody** 7:14,15
14:6
**sorry** 10:21 15:18
**space** 25:6
**speaks** 11:21
**specifically** 5:19
8:2 13:14
**specify** 9:18
**spreadsheet** 9:21
10:3,5,10 13:7
15:4,6
**spreadsheets**
18:14,15,17 19:4,8
**started** 9:20
**starting** 14:14
15:13
**state** 4:16 25:6
28:1,4
**states** 1:1
**stenographically**
28:10

**stock** 12:9 17:11
21:6 22:6,15,17
**stockholder's**
20:17 22:4
**street** 1:15 2:7,17
**subject** 25:10
**substance** 27:8
**support** 16:13
**sure** 23:18
**sworn** 4:9 28:7

| **t** |
| --- |
| **take** 10:20 |
| **taken** 1:12 17:8 |
| **talk** 20:11 |
| **talked** 15:16 19:5 |
| **talking** 5:19 9:21 |
| 10:12 11:7 13:10 |
| 15:7 19:7 |
| **tax** 13:18 |
| **taxes** 13:13 |
| **tell** 4:9 7:6 |
| **telling** 10:4,7 |
| **testified** 4:11 |
| **think** 11:20 12:19 |
| 14:2 |
| **third** 22:13 |
| **thirteen** 8:21 |
| **thirty** 25:15 |
| **thought** 10:21 |
| 12:15 16:16 17:15 |
| 20:5 |
| **threw** 14:6 |
| **thursday** 1:13 |
| **time** 5:20 8:18 |
| 11:18,19 12:11,13 |
| 13:13 28:6 |
| **today** 9:3 13:9 |
| **top** 14:13 |
| **transcript** 3:6 |
| 24:12 25:16,17 |
| 28:11 |

**transcription**   27:6
**treated**   11:8
**true**   7:9 28:11
**truth**   4:10,10,10
**twin**   1:7 18:1 25:1
   26:1 27:1
**two**   21:4

**u**

**um**   9:7 20:12
**understand**   12:10
   14:2,3
**understanding**
   9:15 10:12 18:9
   19:12,13 23:5
**understood**   12:11
**united**   1:1
**unpaid**   21:6
**unwillingness**
   12:7
**use**   20:21

**v**

**v**   25:1 26:1 27:1
**vranian**   2:4 6:17
   8:21 10:18 11:2,4
   15:19 18:5 20:7
   21:15,17 24:4,8
**vs**   1:6

**w**

**wait**   21:14
**waived**   24:12
**want**   18:21 19:2
   22:8
**washington**   2:18
**way**   28:14
**weeks**   18:1
**whatsoever**   19:19
**white**   19:14
**wiley**   2:12
**wileyrein.com**
   2:14,16

**wit**   28:2
**witness**   3:2 11:3
   15:20 24:6 25:3
   28:5,16
**wondering**   11:14
**words**   14:8
**work**   4:21
**written**   17:9

**y**

**yeah**   7:12 8:17
   12:17,17 13:11
   22:11 23:17,17

**z**

**zero**   22:15

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.