# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MADISION MECHANICAL, INC., et al.,** | |
| **Plaintiffs,** | |
| **v.** | Civil Action No.: 1:17-cv-01357-SAG |
| **TWIN CITY FIRE INSURANCE CO., et al.,** | |
| **Defendant.** | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT TWIN CITY FIRE <u>INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF DISPUTED FACTS ...............................................................2

       A.  The Termination of Robert Buczkowski Triggered All Subsequent Events ...........3

       B.  Plaintiffs Reported the 2015 Demand Letter Timely.....................................4

       C.  The Twin City Policies .............................................................................6

                1. The EPL Coverage Part ...........................................................6

                2. The D&O Coverage Part..........................................................8

                3. The Percentage Shareholder Exclusion is Inapplicable ............................10

                4. Buczkowski's Ownership Interest was Diluted .......................................10

       D.  Twin City's Coverage Analysis ...............................................................11

III.   STANDARD OF REVIEW ..................................................................................12

IV.    ARGUMENT.......................................................................................................13

       A.  Twin City Relies Upon Strongly Disputed Material Facts and, Therefore,
           Summary Judgment is Inappropriate ..........................................................13

                1. Twin City Mischaracterized the Underlying Litigation............................13

                2. Buczkowski's Ownership Percentage in OS Corp. is Disputed ................14

                3. Twin City Misstated Key Components of the Timeline of Events...........15

                4. The Parties' Experts are in Conflict About a Material Fact......................17

       B.  The Underlying Litigation is a Covered Employment Practices Liability Claim..18

                1. EPL Coverage Trigger ...........................................................18

                     i.     The November 11, 2015 Demand Letter Satisfies the Definition of
                            an EPL Claim............................................................................18

                     ii.    Buczkowski's Complaint Alleged Wrongful Termination............19

                            a.    Construction of the Term "For" as Used in the 2015 Policy
                                  .........................................................................................20

                            b.    Buczkowski's At-Will Employment...................................21

                2. The Defenses Raised in Twin City's Motion with Respect to the D&O
                   Coverage Part are Inapplicable to the EPL Coverage Part ......................22

       C.  Plaintiffs are Entitled to Damages for Twin City's Failure to Defend and
           Indemnify with Respect to the Underlying Litigation ...........................................22

                1. The 2015 Policy ...................................................................22

                2. An Insurer's Duty to Defend Under Maryland Law ................................23

3. Maryland Law Entitles the Insured to Fees and Expenses Incurred in Pursuing Coverage .................................................................................24

D. Twin City's Position on the Prior Knowledge and Loss History Exclusion is Untenable Under Maryland Law and Based on a Disputed Material Fact ...........25

E. Directors, Officers and Entity Liability Coverage Part ........................................27

1. Twin City Relies on a Disputed Material Fact...........................................28

2. The Percentage Shareholder Exclusion Does Not Bar Coverage ..............28

3. The Insured vs. Insured Exclusion Does Not Bar Coverage ....................30

V.    CONCLUSION...........................................................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................... *passim*

*Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98 (1995)................................................................24

*Bankers & Shippers Ins. Co. of N.Y. v. Electro Enter.*, 287 Md. 641 (1980) ...............................25

*Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758 (1993).............................................21

*Bernstein v. Genesis Ins. Co.*, 90 F. Supp. 2d 932 (2011) ........................................................26

*Brohawn v. Transamerica Ins. Co.*, 276 Md. 396 (1975)..........................................................24

*Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63 (4th Cir. 1995).............20

*Clendenin Bros. v. U.S. Fire Ins. Co.*, 390 Md. 449 (2006) .....................................................21

*Continental Cas. v. Board of Educ.*, 302 Md. 516 (1985) ........................................................25

*Hooven-Lewis v. Caldera*, 249 F.3d 259 (4th Cir. 2001) ..............................................13, 15, 28

*In re Gabapentin Patent Litigation*, 503 F.3d 1254 (Fed. Cir. 2007)....................................18, 27

*JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459 (4th Cir. 2001) .........................13

*Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217 (1997)..........................................................24

*Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52 (1993).....................................................................25

*Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md. App. 455 (1999) ..............26

*Utica Mut. Ins. Co. v. Miller*, 130 Md.App. 373 (2000)............................................................24

*Ricci v. DeStefano*, 557 U.S. 557 (2009) ...................................................................................12

*Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1 (2004) .............................................................23, 24

*W.C. & A.N. Miller Development Co. v. Continental Cas. Co.*, 814 F.3d 171 (4th Cir 2016)......20

**Statutes**                                                                **Page(s)**

MD. CODE ANN., CORPS. & ASS'N, § 2-203 ........................................................................29, 30

MD. CODE ANN., CORPS. & ASS'N, § 2-206 ............................................................................30

**Court Rules**                                                             **Page(s)**

Fed. R. Civ. P. 56 ..................................................................................................................12, 15

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 105, Plaintiffs Madison Mechanical, Inc. ("MMI"), Madison Mechanical OS Corp. ("OS Corp."), Madison Mechanical Contracting, LLC ("MMCLLC" or "New Co.") (hereinafter collectively the "Madison Entities"), Glenn A. Haslam, Gary J. Garofalo, Richard Arnold, Lawrence P. Kraemer, and Richard Lombardo, by and through counsel, hereby submit this memorandum in opposition to the motion for summary judgment filed by Defendant, Twin City Fire Insurance Company ("Twin City").

## I.    INTRODUCTION

This matter arises out of Twin City's failure to honor its duty to defend Madison Mechanical OS Corp., its subsidiaries, and officers in an underlying lawsuit filed by a former employee and shareholder, Robert Buczkowski. On May 27, 2016, Mr. Buczkowski filed a claim against OS Corp., MMCLLC, Glenn Haslam, Gary Garofalo, Richard Lombardo, Lawrence Kraemer, and Richard Arnold (the "Underlying Claim" or the "Underlying Litigation").

In his Complaint, Mr. Buczkowski sought a declaratory judgment action in which he asked the court to reinstate him as an employee because he was wrongfully terminated as a longtime employee of MMI and OS Corp. Mr. Buczkowski also alleged breach of contract, shareholder oppression, breach of fiduciary duty, tortious interference with economic relations, unjust enrichment, unfair competition, and constructive trust. Plaintiffs, as defendants in the underlying lawsuit, ultimately settled and paid $725,000 to compensate Mr. Buczkowski for his wrongful termination of employment and for the value of his shares. Plaintiffs also incurred substantial defenses costs.

Despite indicating multiple times throughout the Underlying Litigation that it would, at the very least, defend Plaintiffs against Mr. Buczkowski's claims and agreed in writing to return Plaintiffs' law firm to defend the case, Twin City failed to do so. Twin City's failure to defend and

indemnify Plaintiffs in the Underlying Litigation is in direct violation of the Private Choice Encore!! Policy, Policy Number 42 KB 0256935-15 (the "2015 Policy") Twin City issued and for which Plaintiffs paid substantial premiums over many years. The 2015 Policy has both Employment Practices Liability ("EPL") coverage and Directors, Officers and Entity Liability ("D&O") coverage, both of which were clearly triggered by the Underlying Claim. The plain language of the 2015 Policy makes clear that the EPL coverage part is primary and any coverage under that part must first be exhausted before moving to any other coverage part, i.e., the D&O portion.

Plaintiffs filed this action to enforce their rights as policyholders. Twin City failed to fulfill its contractual obligation to defend and indemnify Plaintiffs in the Underlying Litigation pursuant to the terms of the 2015 Policy. Twin City has now filed a Motion for Summary Judgment seeking a declaration that the 2015 Policy does not cover the Underlying Litigation. In its Motion for Summary Judgment, Twin City attempts to rely on intensely disputed material facts and its Motion should be denied on this ground alone. Even assuming, *arguendo*, that there were no material facts in dispute, summary judgment should be denied because the facts establish that Plaintiffs were entitled to a defense and indemnification in the Underlying Action under the 2015 Policy.

## II.      STATEMENT OF DISPUTED FACTS

This is a case in which nearly all material facts are hotly in dispute. The parties dispute the nature of the Underlying Litigation. The circumstances leading to and the substance of the Underlying Litigation is disputed. The facts leading to a November 11, 2015 Demand Letter and whether that letter is considered a claim made under the EPL portion of the 2015 Policy is in dispute. The parties dispute not only whether Mr. Buczkowski was a greater than 10% shareholder of the Madison entities but also whether any endorsement concerning his ownership percentage is

applicable. The timeline of events concerning formal corporate action on Mr. Buczkowski's ownership percentage in the Madison entities is also in dispute and clearly is a question of fact requiring the factfinder to evaluate the evidence of when the dilution of Mr. Buczkowski's ownership interest occurred. Each of these factual disputes are material – indeed, these disputes of fact are at the heart of Twin City's Motion for Summary Judgment and are the ultimate deciding factors in this case for coverage.

### A. The Termination of Robert Buczkowski Triggered All Subsequent Events

In the summer of 2015, Robert Buczkowski ("Mr. Buczkowski"), the CFO of the Madison Entities and longtime employee of OS Corp., was informed that Mr. Haslam, Mr. Garofalo, Mr. Kraemer, and Mr. Lombardo were forming a new company with Mr. Arnold. Mr. Buczkowski was informed of three key facts at this late June 2015 meeting: 1) that a new company would be formed; 2) that he would not be a part of that new company; and 3) that his employment with the Madison entities would terminate upon the winding up of MMI in the fourth quarter of 2015. *See* June 23, 2015 E-mail from G. Garofalo to B. Franey, attached hereto as **Exhibit 1**.

Like any employee facing certain termination, Mr. Buczkowski began making preparations for his inevitable exit from the Madison entities. He contacted a lawyer and in September of 2015 sought advice about his employment situation. *See* Deposition Transcript of Robert Buczkowski with Exhibits, attached hereto as **Exhibit 2,** Deposition Exhibit 2 (September 25, 2015 E-mail from R. Buczkowski to C. Rogan); *id.* at 23:11–25:3. Mr. Buczkowski's email refers to his "departure" from his employment and whether he should negotiate "some type of settlement in regards to my exit either sometime in the near future or hanging around and closing up Madison." Ex. 2, Buczkowski Dep., Dep. Ex. 2 (Sept. 25, 2015 E-mail). On October 8, 2015, Mr. Buczkowski was again informed by Mr. Garofalo that he was being terminated for cause. *See* November 14,

3

2015 E-mail from G. Garofalo to M. Haslam (with attachment), attached hereto as **Exhibit 3**. At this meeting, Mr. Garofalo outlined a multitude of reasons for Mr. Buczkowski's for cause termination and provided Mr. Buczkowski with a closeout schedule which specified that his last date of employment would be November 25, 2015. *Id.* Ultimately, this date was accelerated to November 18, 2015.

Knowing his termination was drawing near, Mr. Buczkowski engaged Scarlett, Croll & Myers, P.A. to represent him. On November 11, 2015, Robert Scarlett, Mr. Buczkowski's attorney at that time, sent a letter to Mr. Haslam, Mr. Garofalo, Mr. Lombardo, Mr. Kraemer, and Mr. Arnold. *See* November 11, 2015 Letter ("2015 Demand Letter"), attached hereto as **Exhibit 4**. The letter demanded that Madison cease and desist certain activities that would compromise the value of Mr. Buczkowski's ownership in Madison Mechanical. *Id.* At the time the letter was sent, Mr. Buczkowski had been aware that his termination was imminent, and he would not be a partner or employee of the new company. *See* Ex. 2, Buczkowski Dep. 69:7–70:5, Dep. Ex. 2 (Sept. 25, 2015 E-mail); Ex. 3, Nov. 14, 2015 E-mail. This letter is plainly a written demand for civil relief being made by an employee, which triggers Madison's EPL Coverage.

### B.  Plaintiffs Reported the 2015 Demand Letter Timely

Upon receiving the 2015 Demand Letter, Mr. Garofalo promptly reported the claim to William Franey, Madison's insurance agent with the Alliant Insurance Services, Inc. ("Alliant"). *See* Affidavit of Gary Garofalo, attached hereto as **Exhibit 5**; *see also* November 23, 2015 E-mail from G. Garofalo to W. Franey, attached hereto as **Exhibit 6**. The Madison entities have a decades long history of reporting all claims through Alliant. Once Mr. Garofalo reported the claim, he assumed that Mr. Franey would handle it as he handled all other claims in the past. *See* Deposition Transcript of Gary Garofalo, attached hereto as **Exhibit 7**, at p. 19:10–21:3.

"Insurers recognize that there is a pervasive custom and practice of the insurance industry for commercial policyholders to provide notices of claims or similar notices to their agents or brokers with the expectation that the agent or broker would review the notice . . . and then promptly forward the claim or notice to the appropriate address for the insurer or insurers." *See* Rule 26 Expert Report of James Marshall, Jr. ("Marshall Report"), attached hereto as **Exhibit 8**, at ¶32. "Even if not specifically authorized, insurers routinely, and as a matter of course, receive notices from their agents without reproach." *Id.* at ¶34.

Mr. Franey's Agency Agreement with The Hartford Financial Services Group, Inc. provided that he was required to notify the insurer "as soon as practicable of any actual or threatened claims, suits or losses under our policies or in connection with our business with you to cooperate in our investigation, adjustment, settlement and payment of all such claims." *See* Hartford Agency Agreement, attached hereto as **Exhibit 9**, at Section III, ¶ 3.1(e). It appears this agreement was amended in 2017 to except out the accepting of claims. This is yet again another issue of disputed fact. *Compare* Ex. 8, Marshall Report *with* Rule 26 Expert Report of Larry Goanos ("Goanos Report"), attached hereto as **Exhibit 10**, at ¶¶ 54–57 (stating that the addendum/amendment was in force at all relevant times and that Mr. Franey's Agency Agreement did not permit Mr. Franey to accept notices of claims on behalf of Twin City). This amendment has no impact on the reporting of the claim at issue in this case, however, as it went into effect two years after the events at issue. Consequently, "when the screenshots of the November 11, 2015 Letter (i.e., the Notice of Circumstances) were sent by Garofalo to Franey, the Franey Agency would have had both the authority, and the duty, to accept the Notice of Circumstance. As a result, the 2015 Twin City Policy assumedly would have been triggered on November 20, 2015." Ex. 8, Marshall Report, ¶ 67.

### C. The Twin City Policies

There are two policies at issue in this case: Policy No. 42 KB 0256935-15, effective May 1, 2015 through May 1, 2016 (the "2015 Policy") and Policy No. 42 KB 0256935-16, effective May 1, 2016 through May 1, 2017 (the "2016 Policy"). The Court previously ruled that there is no coverage under the 2016 Policy. *See* Mem. Op., March 30, 2018, ECF No. 44. Therefore, the only policy at issue at this time is the 2015 Policy. *See* 2015 Policy, attached hereto as **Exhibit 11**.

The 2015 Policy included four (4) separate coverage parts: Directors, Officers and Entity Liability ("D&O"), Employment Practices Liability ("EPL"), Fiduciary Liability and Crime. *Id.* Particularly at issue in this case are the EPL and D&O coverage parts. The EPL and D&O coverage parts each provided separate $2 million limits of insurance, while the overall 2015 Policy was then subject to a $2 million aggregate limit of insurance.[1] *Id.*

#### 1. *The EPL Coverage Part*

EPL coverage provides coverage for employment practices liability:

> The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the insureds.

Ex. 11, 2015 Policy, EPL Coverage Part, Section I(A). As used in the paragraph above, "**Loss** means the amount that the Insureds are legally liable to pay solely as a result of a Claim covered by this Liability Coverage Part, including *Defense Costs*, compensatory damages, including from

---

[1] Aside from the Underlying Litigation, there is no evidence of any other claims filed against the 2015 Policy. Accordingly, the limits of insurance have not been eroded by any other claim and the full $2 million aggregate limit of insurance is available to cover the Underlying Litigation, including the $725,000 settlement and the attorney's fees and expert fees in the Underlying Litigation. The total claim in the Underlying Litigation that should have been covered by Twin City exceeds $1.5 million.

pay and back pay, *settlement amounts*, pre- and post-judgment interest, and costs awarded

pursuant to judgments." *Id.* at Section II(I) (emphasis added; original emphasis removed).

The Policy further defines an "Employment Practices Claim" as any:

(1) written demand for monetary damages or other civil relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

(2) a civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

(3) formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an **Employee**, an applicant for employment with an **Insured Entity**, or an **Independent Contractor.**

*Id.* The Policy defines an "Employment Practices Wrongful Act" as a Wrongful Act[2] involving

any:

(1) wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

(2) sexual or other workplace harassment, including quid pro quo and hostile work environment;

(3) employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

(4) Retaliation;

---

[2] "Wrongful Act" is defined as "any actual or alleged: (1) error, misstatement, misleading statement, act, omission, neglect or breach of duty; or (2) matter claimed against an **Insured Person** solely by reason of their serving in such capacity." *Id.* at Section II(O).

(5) breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

(6) violation of the Family and Medical Leave Act.

Employment Practices Wrongful Act shall also mean the following, but only when alleged in addition to or as part of any Employment Practices Wrongful Act described above:

(i)      employment-related wrongful infliction of emotional distress;

(ii)     failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

(iii)    negligent retention, supervision, hiring or training; or

(iv)     employment-related:   invasion   of   privacy,   defamation,   or misrepresentation.

*Id.* at Section II(D).

Coverage under the EPL coverage part is primary to coverage under any other part, including the D&O coverage part. *Id.* at Section VIII. Moreover, it is undisputed that there are no endorsements which would preclude coverage under the EPL coverage part. The Percentage Shareholder Exclusion, discussed in Section II.C.3 *infra*, has no applicability to the EPL coverage under the 2015 Policy.

### 2.   *The D&O Coverage Part*

The D&O Coverage Part provides coverage for any (1) Insured Person Claim, (2) Entity Claim, or (3) Derivative Demand. Ex. 11, 2015 Policy, D&O Coverage Part, Section I. The 2015 Policy defines each of these claims as follows:

"**Insured Person Claim**" means any:

(1) written demand for monetary damages or other civil relief commenced by the receipt of such demand;

(2) civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

(3) criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Person**.[3]

**"Insured Person Claim"** also means a formal civil, criminal, administrative, or regulatory investigation commenced by the service upon or other receipt by an Insured Person of a written notice form an investigating authority specifically identifying such **Insured Person** as a target individual against whom formal charges may be commenced.

**"Insured Person Claim"** also means a written request to an Insured Person to toll or waive a statute of limitations regarding a potential Insured Person Claim as described above. Such **Claim** shall be commenced by the receipt of such request.

*Id.* at D&O Coverage Part, Section II(F).

**"Entity Claim"** means any:

(1) written demand for monetary damages or other civil relief commenced by the receipt of such demand;

(2) civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

(3) criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Entity.**

**"Entity Claim"** also means a written request to an Insured Entity to toll or waive a statute of limitations regarding a potential Entity Claim as described above. Such Claim shall be commenced by the receipt of such request.

*Id.* at D&O Coverage Part, Section II(D).

---

[3] An "Insured Person" means any (1) Manager or (2) Employee. Ex. 11, 2015 Policy, D&O Coverage Part, Section II(E).

**"Derivative Demand"** means any written demand by any security holders of an **Insured Entity**, in their capacity as such, upon the board of directors or managers of such **Insured Entity** to bring a civil proceeding against a **Manager** for a **Wrongful Act** of such manager if such demand is made without the assistance or participation or solicitation of any **Manager**. A **Derivative Demand** shall be deemed commenced by the receipt of such demand.

*Id.* at D&O Coverage Part, Section II(C).

### 3. *The Percentage Shareholder Exclusion Is Inapplicable*

Endorsement Number 2 of the 2015 Policy provides that any D&O claim brought or maintained by an owner of 10% or more of the stock is excluded. Ex. 11, 2015 Policy, Endorsement No. 2, Percentage Shareholder Exclusion. This endorsement applies solely to the D&O Coverage Part and does *not* preclude coverage under the EPL Coverage Part. *See id.*

### 4. *Buczkowski's Ownership Interest Was Diluted*

Even assuming, *arguendo*, that the Percentage Shareholder Exclusion was applicable under the D&O Coverage Part, it no longer applied to Mr. Buczkowski at the time the 2015 Demand Letter was sent because his ownership interest had already been diluted. Between March 1, 2014 and March 31, 2015 OS Corp. had three (3) capital calls. Each shareholder was asked to contribute his pro rata percentage ownership in capital. There is no dispute that, as was his right, Mr. Buczkowski chose not to contribute his pro rata share of capital. Below is a chart of the various contributions made by the shareholders:

|  | March 2014 | | December 2014 | | January 2015 | |
|---|---|---|---|---|---|---|
|  | Due | Actual | Due | Actual | Due | Actual |
| Haslam | $540,000 | $540,000 | $270,000 | $270,000 | $270,000 | $270,000 |
| **Buczkowski** | **$130,000** | **$130,000** | **$65,000** | **$13,000** | **$65,000** | **$0** |
| Garofalo | $130,000 | $130,000 | $65,000 | $65,000 | $65,000 | $65,000 |

| Kraemer | $100,000 | $100,000 | $50,000 | $50,000 | $50,000 | $50,000 |
| Lombardo | $100,000 | $100,000 | $50,000 | $50,000 | $50,000 | $50,000 |
| TOTAL | $1,000,000 | $1,000,000 | $500,000 | $448,000 | $500,000 | $435,000 |

*See* Affidavit of Glenn Haslam, attached hereto as **Exhibit 12,** at ¶ 9.

Mr. Buczkowski is the only shareholder who chose not to contribute his equitable percentage or pro rata contribution. *Id.* at ¶ 9 & 10. Based on his original 13% ownership stake, Mr. Buczkowski was due to contribute $260,000. Instead, he contributed $143,000. *Id.* Mr. Buczkowski does not dispute this. *See* Affidavit of Robert Buczkowski, attached hereto as **Exhibit 13,** at ¶ 4; Ex. 2, Buczkowski Dep., 71:12–72:7. Accordingly, Mr. Buczkowski's ownership interest was diluted to 7.774%. Ex. 13, Buczkowski Aff., ¶ 5.

### D. Twin City's Coverage Analysis

On October 18, 2016, Michael Knox, the claims consultant for Twin City assigned to this matter, wrote to counsel for Plaintiffs advising that "Twin City will provide a defense of the lawsuit for the covered entities and persons, as described below, subject to its reservation of rights." *See* Deposition Transcript of Michael Knox with Exhibits, attached hereto as **Exhibit 14,** at Deposition Exhibit 5 ("October 18, 2016 Letter"), 1. Mr. Knox went on to state that "[u]nder the EPL part, the [Underlying Litigation] suit is an **Employment Practices Claim** with respect to Madison Mechanical OS Corp., Haslam, Garofolo [sic]. Count 1 seeks a declaratory judgment with respect to these defendants that plaintiff was wrongfully terminated and must be reinstated. Twin City will provide a defense for this **Claim** as well with respect to these defendants." *Id.* at 12. Additionally, Mr. Knox stated that "[b]ecause both the EPL part and the D&O part are, in part, triggered, please note that the Section VIII ('Coordination of Coverage') in the EPL part provides that Loss shall be first covered and paid under the EPL part." *Id.*

11

On April 19, 2017, Mr. Knox again wrote to counsel for Plaintiffs. In this letter, rather than reserving its rights, Twin City outright denied the claims. *See* Ex. 14, Dep. Ex. 4 ("April 19, 2017 Letter"). Twin City based its decision to deny coverage primarily on the prior knowledge exclusion, late notice and Madison's failure to report the November 11, 2015 Demand Letter at the time it was received and reported to Madison's insurance agent, Mr. Franey of Alliant. *Id.*

Nothing about Mr. Buczkowski's claims in the Underlying Litigation fundamentally changed between October 18, 2016 and April 19, 2017. Indeed, the Underlying Litigation remained an employment practices claim. As Mr. Knox reiterated in his April 19, 2017 letter, "in the absence of the threshold coverage issues raised above, the suit would be an Employment Practices Claim with respect to Madison Mechanical OS Corp., Haslam and Garofalo." *Id.* at 10. In fact, the only thing that changed between October 18, 2016 and April 19, 2017, was that Twin City received the November 11, 2015 letter from Buczkowski's counsel. Ex. 14, Knox Dep., 39:3–43:18.

## III.   STANDARD OF REVIEW

In reviewing a motion for summary judgment, under Fed. R. Civ. P. 56, this Court must view the facts in a light most favorable to Plaintiffs, as the nonmovants, drawing all justifiable inferences in their favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment may only be granted where the movant demonstrates that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S.

at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001)

(citing *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001)). A dispute of material facts

"will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-*

*Lewis*, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence

is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*,

477 U.S. at 248.

## IV.   ARGUMENT

### A.  Twin City Relies Upon Strongly Disputed Material Facts and, Therefore, Summary Judgment is Inappropriate

This Court must deny Twin City's Motion for Summary Judgment because many of the

material "facts" that Twin City relies upon are either flat-out wrong or are strongly disputed by

Plaintiffs, their experts, and the fact witnesses. *Anderson*, 477 U.S. at 248; *Hooven-Lewis*, 249

F.3d at 265.

#### 1.   *Twin City Mischaracterized the Underlying Litigation*

Twin City asserts that the Underlying Litigation filed by Buczkowski sought "(i) a

declaratory judgment that Plaintiffs' attempt to oust him from the company failed, and (ii) various

relief for their efforts to usurp its business." Def.'s Mot. Summ. J. Mem. 1, ECF No. 87-1. This is

a fundamental mischaracterization of the Underlying Litigation made in an effort to recast

Buczkowski's claim as anything but an EPL claim. What Twin City omitted from its Motion is the

fact that the very first means of relief Buczkowski requested in his Complaint (the "Underlying

Complaint" or the "Buczkowski Complaint") were: (1) "That the Court issue a declaratory

judgment that Plaintiff *remains an employee* and shareholder of Madison Mechanical OS Corp.;"

and (2) "That the Court issue injunctive relief ordering the Defendants to take any and all

appropriate action to *recognize Plaintiff's continued employment* and ownership of shares in Madison Mechanical OS[.]" *See* Underlying Complaint, attached hereto as **Exhibit 15**, at 30, 33 (emphasis added).

Further, Twin City asserts that to settle the Underlying Action, the defendants (now Plaintiffs in this action) "paid $725,000 to compensate Buczkowski for the value of the shares that they took for him." Def.'s Mot. Summ. J. Mem. 1, ECF No. 87-1. Even the most cursory review of the Settlement Agreement entered into in the Underlying Action reveals the falsity of Twin City's statement. *See* Settlement Agreement, attached hereto as **Exhibit 16**. The $725,000 was paid to Buczkowski "in consideration for the dismissal of the [Underlying] Action." *Id.* at ¶ 4. The "Action," as defined by the Settlement Agreement was the suit filed by Buczkowski "against Madison Mechanical OS Corp., Madison Mechanical Contracting LLC, Glenn A. Haslam, Gary J. Garofalo, Richard Arnold, Lawrence P. Kraemer, and Richard M. Lombardo in the Circuit Court for Baltimore County, Case No. 03-C-16-005782, *requesting a declaratory judgment for wrongful termination of Buczkowski's employment* and his stock in Madison Mechanical OS Corp., and alleging, both directly and derivatively, claims of breach of contract, oppression of minority shareholder, breach of fiduciary duty, tortious interference with economic relations, unjust enrichment, unfair competition, misappropriation of trade secrets, and constructive trust[.]" *Id.* at 1 (emphasis added).

### 2. *Buczkowski's Ownership Percentage in OS Corp. is Disputed*

Despite Twin City's assertion that "[t]he undisputed evidence proves that Buczkowski remained a 13% shareholder at all times relevant to this litigation," (Def.'s Mot. Summ. J. Mem. 2, ECF No. 87-1) Buczkowski's ownership percentage in OS Corp. could not be more fervently contested. To argue that Buczkowski remained a 13% shareholder, Twin City relies on (1) an April

6, 2015 renewal application which identified Buczkowski as a 13% shareholder, (2) Buczkowski's claims in the Underlying Litigation and (3) select statements from Buczkowski's deposition in this matter. *Id.* at 2–4.

The renewal application was completed *by Buczkowski himself. See* Ex. 2, Buczkowski Dep., 11:17–12:15. Buczkowski, who disputed the dilution of his ownership shares when it suited him to do so, had every incentive to misrepresent his percentage of ownership on the 2015 renewal application and in the Underlying Complaint. Moreover, the evidence presented by Twin City is contradicted by Buczkowski himself who signed an Affidavit admitting that his ownership was diluted to 7.774% as of April 1, 2015 and testified to the dilution of his ownership in deposition. *See* Ex. 13, Buczkowski Aff., ¶¶ 5-6;[4] Ex. 2, Buczkowski Dep., 72:8-11.

Twin City's description of the evidence surrounding Buczkowski's ownership percentage as "undisputed" is a blatant mischaracterization. Moreover, the mischaracterization pertains to a material fact at the heart of Twin City's argument that the 10% endorsement bars coverage under the D&O part of the 2015 Policy. On this ground alone, summary judgment on this issue is inappropriate. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248; *Hooven-Lewis*, 249 F.3d at 265.

### 3. *Twin City Misstated Key Components of the Timeline of Events*

First, Section II.C of Twin City's Motion for Summary Judgment is premised on an incorrect timeline that falsely casts Plaintiffs in a negative light. Twin City asserts that *after* receiving Buczkowski's demand, Plaintiffs sought to obtain additional insurance from Twin City that would shield MMCLLC. *See* Def.'s Mot. Summ. J. Mem. 5–7, ECF No. 87-1. This is untrue. When MMCLLC was formed, on August 20, 2015, Plaintiffs informed Bill Franey, their insurance

---

[4] Buczkowski was represented and advised by counsel prior to signing the Affidavit. Ex. 2, Buczkowski Dep., 72:21–73:9.

agent, about the creation of the new entity and that insurance for the new entity would need to be in effect by the time the company began operating on January 1, 2016. *See* Deposition Transcript of William Franey[5], attached hereto as **Exhibit 17**, at 19:11-20, 59:19–60:18; *see also* Ex. 12, Haslam Aff., ¶¶ 10–11. Plaintiffs requested insurance for MMCLLC months before receiving Buczkowski's November 11, 2015 Demand Letter. The fact that Franey/Alliant ultimately submitted the Application to procure insurance for MMCLLC to Twin City on December 29, 2015 is a red herring, wholly irrelevant to Plaintiffs' receipt of Buczkowski's November 2015 Demand Letter.

Second, Twin City argues that the November 11, 2015 Demand Letter did not trigger coverage under the EPL Coverage Part, because Buczkowski was not terminated until November 18, 2015. What Twin City omits is that Buczkowski knew months prior to November 2015 that his employment at MMI would end once MMCLLC began operating. *See* Ex. 12, Haslam Aff., ¶ 9; Ex. 2 Buczkowski Dep. at Dep. Ex. 2, Sept. 25, 2019 E-mail from R. Buczkowski. When Buczkowski's counsel sent the November 11, 2015 Demand Letter, Buczkowski was well aware of what his future as an employee of MMI would be. *See* Ex. 2, Buczkowski Dep., 69:7–71:7. Further, Twin City's October 18, 2016 coverage letter clearly states that a defense was being provided under the EPL Coverage Part, subject to a reservation of rights. Ex. 14, Knox Dep. at Dep. Ex. 5, Oct. 18, 2016 Letter from M. Knox, 1.

Third, Twin City asserts that OS Corp. passed the Consent of Sole Director and Resolutions "[s]hortly after Twin City raised the Percentage Shareholder Exclusion as a coverage defense." Def.'s Mot. Summ. J. Mem. 22, ECF No. 87-1. This statement is untrue and can only assume to

---

[5] This deposition was taken in a related action currently pending in the Circuit Court for Prince George's County, captioned *Madison Mechanical OS Corp., et al. v. Twin City Fire Insurance Co., et al.*, case number CAL-18-27076. Twin City is not a party to that action.

have been made to wrongly cast Plaintiffs in a bad light before this Court. The Consent of Sole Director and Resolutions was passed on September 15, 2016. *See* Consent of Sole Director and Resolutions, attached hereto as **Exhibit 18**. Twin City first issued a coverage letter raising the Percentage Shareholder Exclusion as a coverage defense on October 18, 2016 – weeks after the Consent of Sole Director and Resolutions was passed.[6] *See* Ex. 14, Knox Dep., Dep. Ex. 5, October 18, 2016 Letter.

### 4. *The Parties' Experts are in Conflict About a Material Fact*

The parties' experts staunchly disagree on whether Twin City was timely notified of the Underlying Claim. Upon receiving the November 11, 2015 Demand Letter, Mr. Garofalo promptly reported the claim to Madison's insurance agent, Mr. Franey. *See* Ex. 5, Garofalo Aff. ¶¶ 11–15. The Madison Entities have a long history of submitting claims to Twin City through Mr. Franey. *See* Ex. 2, Buczkowski Dep. 17:14–19:18; Ex. 17, Franey Dep. 27:13–30:9. Plaintiffs' expert, Mr. Marshall, states that given custom and practice in the industry and this decades-long course of dealing in particular, when Mr. Garofalo reported the Demand Letter to Mr. Franey, Alliant and Mr. Franey had the authority and duty to accept the Demand Letter, thus triggering Twin City's obligations under the 2015 Policy. Ex. 8, Marshall Report, ¶ 32, 34, 67. Nevertheless, Twin City's

---

[6] In its Motion, Twin City suggests that it first raised the Percentage Shareholder Exclusion as a coverage defense in an August 11, 2016 e-mail to counsel for Plaintiffs. *See* August 11, 2016 E-mail from M. Knox to G. Jones, attached hereto as **Exhibit 19**. Quite simply, that is not the case. In his August 11, 2016 E-mail, Michael Knox, the claims representative for Twin City, was confirming receipt of a July 28, 2016 letter from counsel for Plaintiffs notifying Twin City of the filing of Buczkowski's Complaint. *See* July 28, 2016 Letter from G. Jones, attached hereto as **Exhibit 20**. As part of that confirmation, Mr. Knox reiterated the information initially set forth in counsel's July 28, 2016 letter to Twin City (i.e., that the D&O Coverage Part contained a Percentage Shareholder Exclusion and that Buczkowski alleged in the Underlying Litigation that he was a 13% shareholder). *Compare* Ex. 20, July 28, 2016 Letter from G. Jones *with* Ex. 19, Aug. 11, 2016 E-mail from M. Knox. As stated in counsel's letter, the Percentage Shareholder Exclusion did not apply because Buczkowski's ownership shares were diluted below 10%. Ex. 19, July 28, 2016 Letter from G. Jones. Mr. Knox's August 11, 2016 e-mail in no way took a coverage position on the Percentage Shareholder Exclusion. *See* Ex. 19, Aug. 11, 2016 Email from M. Knox ("We will issue our coverage determination as soon as practicable.").

expert maintains that the way the Madison Entities first provided notice of the November 11, 2015

Demand Letter was improper. *See* Ex. 10, Goanos Report, ¶¶ 54–57.

The timeliness of the notice the Madison Entities provided to Twin City is material as it is

central to the parties' claims and defenses on the Prior Knowledge and Loss History Exclusions,

discussed in Section IV.D *infra*. The parties' experts are in direct conflict on this issue. Where the

parties have proffered conflicting expert opinions on a material issue in the litigation, summary

judgment is inappropriate. *See, e.g., In re Gabapentin Patent Litigation*, 503 F.3d 1254, 1259–61

(Fed. Cir. 2007) (overturning federal district court's grant of summary judgment where experts

proffered conflicting opinions).

### B.  The Underlying Ligation is a Covered Employment Practices Liability Claim

In an effort to avoid its obligation to provide a defense and indemnity for the Underlying

Litigation, Twin City is attempting to recharacterize the nature of the claim and back away from

its initial position that the claim is covered under the EPL Coverage Part of the 2015 Policy.

#### 1.  *EPL Coverage Trigger*

Twin City advanced two primary arguments in its Motion for Summary Judgment: (1) the

November 11, 2015 Demand Letter was written before Buczkowski was terminated and, therefore,

because it does not allege wrongful termination on its face, cannot trigger the EPL Coverage Part

and (2) Buczkowski's Complaint did not allege a claim "for" wrongful termination. Each argument

is addressed below.

i.  <u>The November 11, 2015 Demand Letter Satisfies the Definition of<br>an EPL Claim</u>

The fact that Buczkowski had not been formally terminated as of November 11, 2015 is

immaterial. ***Buczkowski knew, prior to November 11, 2015, that his employment at Madison was***

***coming to an end***. *See* Ex. 2, Buczkowski Dep., 69:7–71:7, Dep. Ex. 2 (Sept. 25, 2015 E-mail)

(the "decision has officially been made and I am not going to be part of the new company that is being set up"). Buczkowski stated in the September 25, 2015 email to his attorney that he was seeking guidance on "[n]egotiating some type of settlement in regards to my exit in the near future[.]" *Id.* Several weeks later Buczkowski's attorney sent the November 11, 2015 Demand Letter. It is apparent that the November 11, 2015 Demand Letter arose directly from Buczkowski's pending termination. Indeed, Buczkowski's termination animates the entire claim; it is the trigger that led to all subsequent events.

The plain language of the policy provides that the EPL Coverage Part is triggered by a "written demand for monetary damages or other civil relief . . . by or on behalf of an Employee" for "wrongful dismissal, discharge, or termination of employment . . . or wrongful deprivation of career opportunity." Ex. 11, 2015 Policy, EPL Coverage Part, Section II(M). The November 11, 2015 Demand Letter satisfies the 2015 Policy's definition of an EPL claim. While the November 11, 2015 Demand Letter does not explicitly reference "wrongful termination" it did not need to do so because Buczkowski's role as an employee and as a shareholder were inextricably linked. The winding up of MMI and alleged diversion of business away from MMI/OS Corp. to MMCLLC necessarily meant the end of Buczkowski's employment and, in his opinion, the compromising of his financial position as a shareholder. With the November 11, 2015 Demand Letter, Buczkowski demanded that Madison cease and desist its alleged diversion of business away from MMI/OS Corp., which necessarily impacted him as a shareholder and as an employee.

## ii.  Buczkowski's Complaint Alleged Wrongful Termination

The November 11, 2015 Demand Letter alone was sufficient to trigger coverage under the EPL Coverage Part. Nevertheless, the EPL Coverage Part still applies to the allegations raised in Buczkowski's Complaint. In his Complaint, Mr. Buczkowski sought a declaratory judgment in

which he asked the court to reinstate him as an employee. When the Underlying Action was settled, the settlement was paid, in part, to resolve claims for "wrongful termination of Buczkowski's employment." Ex. 16, Settlement Agreement, 1.

Twin City attacks the application of the EPL Coverage Part to the Buczkowski Complaint on two grounds, both of which misapply the law. First, Twin City argues that the term "for," as used in the EPL Coverage Part[7] is narrower than the phrase "arising out of" and that because the Buczkowski Complaint did not state a claim "for" wrongful termination, there is no coverage under the EPL Coverage Part. Second, Twin City argues that Buczkowski was employed at-will and, therefore, his termination could be with or without cause.

a. *Construction of the Term "For" as Used in the 2015 Policy*

The cases Twin City relies on to establish a distinction between claims "for" and claims "arising out of" an Employment Practices Wrongful Act do not apply Maryland law, and therefore, should be given no weight when considering the construction of a Maryland insurance policy. *See W.C. and A.N. Miller Development Co. v. Continental Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016) (citations omitted) ("Maryland applies the doctrine of *lex loci contractus*. . . 'The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid. . . Here, the policy was delivered to [the insured] in Maryland. Maryland's law of contracts governs the interpretation of the policy.").

Moreover, the 2015 Policy itself does not draw a distinction between claims "for" and claims "arising out of" an Employment Practices Wrongful Act. "Clear and unambiguous language . . . must be enforced as written and may not yield to what the parties later say they meant." *Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995) (citing

---

[7] The 2015 Policy provides that Twin City "shall pay **Loss** . . . resulting from an Employment Practices Claim . . . for an Employment Practices Wrongful Act by the insureds." Ex. 11, 2015 Policy, EPL Coverage Part, Section I(A).

*Board of Trs. Of State Collis v. Sherman*, 280 Md. 373, 373 A.2d 626, 629 (1977)). "[T]he words in a policy should be accorded their 'usual, ordinary, and accepted meaning[,]'" which "is tested by what meaning a reasonably prudent layperson would attach to the term." *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021, 1031 (1993) (citations omitted).

A "reasonably prudent layperson" would attach broad meaning to the term "for." *See Definition of For*, MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/for (defining "for" as a preposition "used as a function word to indicate purpose," "used as a function word to indicate an intended goal," "used as a function word to indicate the object or recipient of a perception, desire, or activity," "as being or constituting," "used as a function word to indicate an actual or implied enumeration or selection," "because of[.])" Even if the use of the term "for" in the 2015 Policy were in some way ambiguous, where an insurance contract is ambiguous, "any doubt as to whether there is a potentiality of coverage under [the] insurance policy is to be resolved in favor of the insured." *Clendenin Bros. v. U.S. Fire Ins. Co.*, 390 Md. 449, 889 A.2d 387, 394 (2006) (citation and internal quotations omitted).

### b. *Buczkowski's At-Will Employment*

Twin City then cites to several cases to suggest that Buczkowski did not have a viable wrongful termination claim under Maryland law by virtue of the fact that he was an at-will employee. *See* Def.'s Mot. Summ. J. Memo. 25–27, ECF No. 87-1. This analysis is nonsensical. While the nature of Buczkowski's employment (i.e., whether it was at will or not) may bear on the validity of Buczkowski's claims in the Underlying Litigation, it has no bearing on the EPL trigger. There is no exclusion in the EPL Coverage Part for at-will employees. *See generally* Ex. 11, 2015 Policy, EPL Coverage Part. None of the cases cited to by Twin City suggest that EPL coverage is unavailable where an employee's wrongful termination claim is legally unfounded. To the

contrary, the 2015 Policy provides that Twin City has a duty to defend even if a "Claim is groundless, false or fraudulent." Ex. 11, 2015 Policy, Common Terms and Conditions, Section VII(A).

### 2. *The Defenses Raised in Twin City's Motion with Respect to the D&O Coverage Part are Inapplicable to the EPL Coverage Part*

There are no exclusions or endorsements that prevent the application of coverage under the EPL Coverage Part. With respect to coverage under the D&O Coverage Part, Twin City argues that the Percentage Shareholder Exclusion and the Insured vs. Insured Exclusion bar coverage for the Underlying Action. *See* Def.'s Mot. Summ, J. Mem. 20–24, ECF No. 87-1. The Percentage Shareholder Exclusion is an endorsement that relates solely to the D&O Coverage Part. *See* Ex. 11, 2015 Policy, Endorsement No. 2, Percentage Shareholder Exclusion. The Insured vs. Insured Exclusion is set forth within the D&O Coverage Part itself and relates solely to claims under the D&O Coverage Part. *See* Ex. 11, D&O Coverage Part, Section IV(H). Therefore, should this Court determine that the Underlying Claim triggered the 2015 Policy's EPL Coverage Part, there are no applicable exclusions or endorsements that bar coverage for the Claim.

### C. Plaintiffs Are Entitled to Damages for Twin City's Failure to Defend and Indemnify with Respect to the Underlying Litigation

### 1. *The 2015 Policy*

The 2015 Policy obligated Twin City to provide a defense for Plaintiffs in the Underlying Litigation. The 2015 Policy's Duty to Defend provision is included in the Common Terms and Conditions form, Section VII (Defense and Settlement):

> Settlement: (A) The insurer shall have the right and duty to defend any Claim for which the Insureds give notice to the Insurer, even if such Claim is groundless, false or fraudulent.

Ex. 11, 2015 Policy, Common Terms and Conditions, Section VII(A).

The duty to defend extends to the overall costs of defending a Claim, even if portions of the Claim are outside the scope of the Policy's coverage. This broad duty to defend is clarified in Section XI (Allocation):

> Where Insureds who are afforded coverage for a Claim incur an amount consisting of both Loss that is covered by this Policy and also loss that is not covered by this Policy because such Claim includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:
>
>> (A) 100% of Defense Costs shall be allocated to covered Loss; and
>>
>> (B) Loss other than Defense Costs shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters.

*Id.* at Section XI(A) – (B). According to the plain language of the 2015 Policy, even if there was an unresolved question as to whether a portion of the Underlying Claim was covered, Twin City was still obligated to pay 100% of the defense costs because, as Mr. Knox recognized, the Underlying Claim involved a covered EPL claim. *See* Ex. 14, Knox Dep., Dep. Ex. 5, p. 12.

Further, the EPL Coverage Part of the 2015 Policy covers Loss, which is defined to include "amounts the Insureds are legally liable to pay," i.e., judgments and settlements. Ex. 11, 2015 Policy, EPL Coverage Part, Section II(I). The Confidential Settlement Agreement and Release entered into between Buczkowski and Plaintiffs in the Underlying Claim called for a total payment of $725,000. Ex. 16, Settlement Agreement. The Settlement Agreement does not specifically allocate the payment between various components of the Underlying Claim but does specifically state that the settlement arises from Buczkowski's suit for wrongful termination of employment. *Id.* at 1.

### 2. *An Insurer's Duty to Defend Under Maryland Law*

Under Maryland law, "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1,

15, 852 A.2d 98, 106 (2004). Even if a complaint "does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842, 850 (1975). The *Brohawn* holding is commonly referred to as the "Potentiality Rule."

The evidentiary threshold that triggers a duty to defend, and thus establishes a potentiality of coverage, is extremely low. For example, "[i]f there is a possibility, even a remote one, that the plaintiff's claims could be covered by the policy, there is a duty to defend." *Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217, 231, 695 A.2d 566, 572 (1997); *accord Utica Mut. Ins. Co. v. Miller*, 130 Md.App. 373, 385, 749 A.2d 935, 941 (2000).

Maryland Courts apply the Potentiality Rule so expansively that "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured." *Walk*, 382 Md. at 16; *accord Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107, 651 A.2d 859, 863 – 64 (1995) (articulating the same standard); *see also* Andrew Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U. BALT. L. REV. 1, 2 (1998) (describing the expansive scope of the Potentiality Rule as follows, "In recent years, Maryland courts have expanded the insurer's defense obligation to a point where the insurer has a near-absolute duty to defend whenever its insured is sued.") (emphasis added).

### 3. *Maryland Law Entitles the Insured to Fees and Expenses Incurred in Pursuing Coverage*

In addition to the $725,000 settlement paid to Mr. Buczkowski in the Underlying Litigation and the fees and expenses incurred in defending the Underlying Litigation, Plaintiffs are entitled to recovery of their attorneys' fees and costs incurred in litigating this action. Maryland joins the majority of states in permitting a policyholder to recover its attorneys' fees from its insurer in a declaratory judgment action. As stated by the Court of Appeals:

> The rule in this state is firmly established that when an insured must resort to litigation to enforce its liability insurer's contractual duty to provide coverage for its potential liability to injured third persons, the insured is entitled to a recovery of the attorneys' fees and expenses incurred in that litigation.

*Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 66, 617 A.2d 578, 584 (1993).

Indeed, this rule was well-established prior to the *Nolt* decision, having been set forth in several reported decisions. *See Bankers and Shippers Insurance Co. of New York v. Electro Enterprises*, 287 Md. 641, 415 A.2d 278, 282 (1980) ("[A]n insurer is liable for the damages, including attorneys' fees incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend."); *Continental Casualty v. Board of Educ.*, 302 Md. 516, 537, 489 A.2d 536, 547 (1985) ("[T]his Court has sustained the award of counsel fees incurred by an insured in litigation with an insurer where the issue was whether the insurer was obligated to defend the insured against a claim asserted by a third party and where the insurer unsuccessfully maintained that it was not so obligated.").

### D. Twin City's Position on the Prior Knowledge and Loss History Exclusions is Untenable Under Maryland Law and Based on a Disputed Material Fact

Twin City implies that MMCLLC's failure to answer "yes" to the Prior Knowledge/Loss History questions in its December 29, 2015 Application triggered the Application's Exclusion, and that this Exclusion relieves Twin City of the obligation to provide OS Corp, MMI, Glenn Haslam, and Gary Garofalo a defense under the already existing 2015 Policy. Twin City's argument is misplaced and fails to cite any case law or Policy language to support its retrospective position. Moreover, Twin City's argument is premised on disputed material fact.

OS Corp., MMI, Glenn Haslam (as an Officer covered by the corporate entities), and Gary Garofalo (as a Manager covered by the corporate entities) were insureds as that term is defined under the 2015 Policy. The 2015 Policy, as written, defines their rights and Twin City's obligations. The Prior Knowledge and Loss History questions, as well as the accompanying Exclusions, employed by Twin City to avoid it duty to defend do not appear in the 2015 Policy. Instead they are contained in the Application to add MMCLLC to the existing 2015 Policy. Twin City, however, has neither offered any evidence in the form of Policy language nor cited any case law to support its argument that the Exclusion solely contained in the December 29, 2105 Application, which applied only to MMCLLC and was an application for a stand-alone policy, altered the contractual rights of OS Corp, MMI, Glenn Haslam, and Gary Garofalo as defined in the already existing 2015 Policy.

Twin City's argument would effectively strip coverage for any insured entity for any claim arising during the 2015 Policy period (May 1, 2015 – May 1, 2016) simply because the claim existed at the time the December 29, 2015 Renewal Application was submitted to add MMCLLC to the Policy. The Madison Entities paid, and Twin City collected, insurance premiums during this entire time period. Twin City's argument is an untenable interpretation of Maryland law.

To be clear, the 2015 Policy is a claims-made policy. The rights and obligations of the parties are cemented on the date a claim is first made under a claims-made policy. *See Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md. App. 455, 459, n.2 (1999) (citing Eric Mills Holmes, *Holmes's Appleman on Insurance, 2d* § 16.4, at 315 (1998)); *Bernstein v. Genesis Ins. Co.*, 90 F. Supp. 2d 932, 937 (N.D. Ill. 2000), *supplemented*, No. 98 C 5446, 2001 WL 812200 (N.D. Ill. July 17, 2001), and *aff'd and remanded*, 28 F. App'x 560 (7th Cir. 2002), and *aff'd and remanded*, 28 F. App'x 560 (7th Cir. 2002) (citations omitted) ("[T]he policy is a 'claims made'

policy. Thus, coverage is determined based on when the claim was filed[.]"); *see also* Def.'s Mot. Summ. J. Mem. 21, ECF No. 87-1 (arguing that the application of the 2015 Policy's coverage exclusions should be evaluated based on the facts existing "at the time the Claim was made"). In this case, the claim was made on November 11, 2015 and reported on November 20, 2015. The application for insurance for MMCLLC on December 29, 2015 and the 2016 renewal application were subsequent to the date the claim was first made and are, therefore, irrelevant.

Finally, Twin City bases its arguments about the application of the Prior Knowledge and Loss History Exclusions on the factual premise that "Plaintiffs did not disclose to Twin City that their revised corporate structure already had given rise to a dispute with Buczkowski just a few weeks earlier." *See* Def.'s Mot. Summ. J. Mem. 17, ECF No. 87-1. This assumes, as proffered by Twin City's expert, Mr. Goanos, that by providing notice of the November 11, 2015 Demand Letter to their agent, Mr. Franey, on November 20, 2015, Plaintiffs had not provided notice of Buczkowski's claim to Twin City. This is staunchly disputed by Plaintiffs' expert. *See* Ex. 8, Marshall Report. If, as Plaintiffs maintain, the notice they provided to Mr. Franey, on November 20, 2015 was imputed to Twin City, Plaintiffs' responses to Question 3 and Question 9 on the December 29, 2015 Application are irrelevant because Twin City already had notice of the November 11, 2015 Demand Letter. Given that there is a dispute of material fact between the parties' expert witnesses at the heart of this issue, summary judgment is inappropriate. *Gabapentin*, 503 F.3d at 1259–61.

### E.   Directors, Officers and Entity Liability Coverage Part

Summary judgment on the D&O Coverage Part is inappropriate. Twin City primarily relies on a disputed material fact – Buczkowski's percentage of ownership at the time the Underlying Claim was made – to argue that the Underlying Claim was excluded under the Percentage

Shareholder Exclusion. In a footnote, Twin City argues that even if Buczkowski's ownership was diluted (precluding operation of the Percentage Shareholder Exclusion) his Claim was excluded under the Insured vs. Insured Exclusion. This argument is premised on a rudimentary misreading of the Insured vs. Insured Exclusion which, on its face, does not apply to Buczkowski's claim.

### 1. *Twin City Relies on a Disputed Material Fact*

Twin City misleads this Court when it states that "Buczkowski indisputably was a 13% shareholder at the time the Claim was made." Def.'s Mot. Summ. J. 21, ECF No. 87-1. At best, Twin City is relying on a disputed material fact to argue that the Percentage Shareholder Exclusion bars coverage for the Underlying Litigation under the D&O Coverage Part. *See* Section IV.A.2, *supra*. Accordingly, summary judgment on the issue of coverage under the D&O Coverage Part is inappropriate. *Anderson*, 477 U.S. at 248; *Hooven-Lewis*, 249 F.3d at 265.

### 2. *The Percentage Shareholder Exclusion Does Not Bar Coverage*

The Percentage Shareholder Exclusion does not bar coverage because Buczkowski's ownership had been diluted below 10% as of April 1, 2015 – prior to the November 11, 2015 Demand Letter being sent and prior to the filing of the Underlying Complaint in June of 2016. As discussed, *supra*, when MMI began experiencing financial problems, Glenn Haslam, the sole director of OS Corp, issued a call for capital contributions in the form of equity. It is undisputed that Mr. Buczkowski did not make capital contributions in December of 2014 and January of 2015 proportionate to his stock ownership percentage. Ex. 12, Haslam Aff., ¶ 9; Ex. 13, Buczkowski Aff., ¶ 4. It is also undisputed that the other shareholders (Haslam, Garofalo, Kraemer, and Lombardo) infused equity into the corporation in a manner proportionate to their ownership percentages. Ex. 12, Haslam Aff., ¶¶ 9-10; Ex. 13, Buczkowski Aff., ¶ 4.

Under Maryland law, OS Corp had several options regarding how it would treat Mr. Buczkowski's failure to contribute his proportionate share of required capital. On September 16, 2016, the board of directors of OS Corp formally documented that Mr. Buczkowski's non-proportional capital contribution resulted in his shares in OS Corp decreasing from 13% to approximately 7%. *See* Ex. 18, Consent of Sole Director and Resolutions. The Resolution is unambiguous and provides that Mr. Buczkowski was diluted as of April 1, 2015. *Id.*

Twin City's argument that Mr. Buczkowski remained a 13% shareholder at all relevant times is inconsistent with Maryland Corporate law and with Mr. Buczkowski's own testimony. Twin City presumes that a shareholder is only diluted, i.e., the percentage of ownership decreased, when a corporation like OS Corp formally drafts a Consent Resolution memorializing the decrease. The Maryland Corporate Code, however, provides that the "Board of Directors has plenary power to issue stock and determine the terms under which it may issue that stock." MD. CODE ANN., CORPS. & ASS'N § 2-203 (2002). Additionally, "In the absence of actual fraud in the transaction, the minimum consideration . . . determined by the board of directors in the resolution is conclusive *for all purposes*." MD. CODE ANN., CORPS. & ASS'N § 2-203(b) (emphasis added).

The OS Corp Board reasonably concluded that Mr. Buczkowski's non-proportional capital contributions should result in the corporation issuing stock in a non-proportional manner among the stockholders, thereby resulting in Mr. Buczkowski's ownership interest decreasing to approximately 7%. Pursuant to section 2-203 and the Consent Resolution, April 1, 2015 is the date of dilution, that is, the date that Mr. Buczkowski's ownership interest fell below 10%, and that date is "conclusive for all purposes." Therefore, because the Resolution establishes that Mr. Buczkowski's ownership interest fell below 10% on April 1, 2015, and that this date is "conclusive

for all purposes," as section 2-203 requires, this legally binding fact must also apply to this case and the applicability, or lack thereof, of Twin City's 13% Exclusion.

OS Corp's codifying the date of dilution as of April 1, 2015 is consistent with section 2-203, although OS Corp could have chosen an earlier date.[8] Pursuant to section 2-206, "When the corporation receives the consideration for which stock or convertible securities are to be issued, the stock or convertible securities are fully paid and nonassessable." MD. CODE ANN., CORPS. & ASS'N § 2-206 (c).  This section confirms that when Mr. Haslam, Mr. Garofalo, Mr. Kraemer, and Mr. Lombardo paid their proportional shares of the capital contribution, Mr. Buczkowski's percentage of shares in OS Corp decreased due to his failure to make his proportional contribution, at the time of the failure to contribute.

### 3.   *The Insured vs. Insured Exclusion Does Not Bar Coverage*

Twin City briefly argues that the Underlying Litigation is not covered because of the "'Insured v. Insured Exclusion,' Exclusion IV (H)." Def.'s Mot. Summ. J. Mem. 24, n. 6, ECF No. 87-1. This Exclusion, however, does not apply to Derivative Actions because the 2015 Policy expressly exempts "a Derivative Action or a Derivative Demand." *See* Ex. 11, 2015 Policy, D&O Coverage Part, Section IV(H). In the Buczkowski Complaint, Counts 4, 6, 8, 10, 12, and 14 are captioned, in part, "Derivative Action on Behalf of Madison Mechanical OS Corp." *See* Ex. 15, Buczkowski Compl., ¶¶ 37, 44, 51, 58, 66, & 73.  Therefore, Exclusion IV (H) is inapplicable.

---

[8] Glenn Haslam was deposed as the corporate representative of the Madison entities. Counsel for Plaintiffs indicated to counsel for Twin City that Mr. Garofalo could testify to certain limited topics of inquiry listed in Twin City's Corporate Representative Deposition Notice. The dilution of Buczkowski's shares was not one of those areas. Twin City's comment that Plaintiffs' corporate representative "could not explain numerous internal documents reflecting that Buczkowski maintained his 13% ownership" is yet another example of Twin City's incorrect representation of the facts in its Motion for Summary Judgment.

## V.    CONCLUSION

Accordingly, due to the myriad of disputed material facts and for all the foregoing

reasons, the Court must deny Twin City's motion for summary judgment and allow the matter to

proceed toward trial.

Dated: October 10, 2019                  Respectfully submitted,

                                         *Danielle M. Vranian*
                                         Gary R. Jones (Fed. Bar No. 06402)
                                         grj@bbsclaw.com
                                         Danielle M. Vranian (Fed. Bar No. 29734)
                                         dmv@bbsclaw.com
                                         Baxter, Baker, Sidle, Conn & Jones, P.A.
                                         120 E. Baltimore Street, Suite 2100
                                         Baltimore, Maryland 21202
                                         Telephone: (410) 230-3800
                                         Fax: (410) 230-3801

                                         *Attorneys for Plaintiffs*

31