# EXHIBIT 10

**HARTFORD FINANCIAL PRODUCTS**
Amendment to the Agency Agreement

THE HARTFORD

**THIS HARTFORD FINANCIAL PRODUCTS AMENDMENT** (referred to as "Amendment" herein) is intended to amend and supplement the basic commercial and personal lines agency agreements (collectively referred to herein as the "Agency Agreement") by and between the companies of The Hartford Financial Services Group, Inc. (referred to as "The Hartford" herein) and the Agent named in the Agency Agreement (referred to as "Agent" herein).

In consideration of the covenants and agreements described below, the parties mutually agree to amend the Agency Agreement as respects to the item(s) indicated below for designated HFP Sub Code(s) only with respect to the Financial Products and Professional Liability lines of business produced pursuant to this Addendum:

1. Item 6 of The Hartford Agency Agreement Declarations Page shall be amended as follows:

    6. Number of Days for Payment of Balances or Return of Audit Premium: 30 (Thirty)

2. Section I of the Agency Agreement, Definitions, paragraph 1.6 of the Agency Agreement, is deleted and replaced by the following:

    With respect to the Financial Products and Professional Liability lines of business only, "You" and "your" means the producer designated in the declarations page and its subsidiary producers unless any of those producers are under separate Agency Agreement with us.

3. Section II of the Agency Agreement, Authority of Agent, sub-paragraph (a) of 2.1 Scope, is deleted and replaced by the following:

    (a) With respect to the Financial Products and Professional Liability lines of business only, to submit applications and request quotes for insurance which we write in your territory. All such business produced pursuant to this Addendum shall be assigned to the HFP Sub Code(s) designated for such business. Your authority to quote on your own or bind policies and related coverage is suspended for all classes of business produced for Hartford Financial Products.

4. Section II of the Agency Agreement, Authority of Agent, sub-paragraph (d) of 2.1 Scope, is deleted and replaced by the following:

    (d) With respect to the Financial Products and Professional Liability lines of business only, to provide all usual and customary services of an insurance agent on all insurance policies you place with us, except for accepting notice of claim(s).

HFP Amendment (08/2010)

2980254_1

HART00002510

5. Section III of the Agency Agreement, Duties of Agent, sub-paragraph (b) of 3.1 Generally, is deleted and replaced by the following:

   (b) With respect to the Financial Products and Professional Liability lines of business only, to provide all usual and customary services of an insurance agent on all insurance policies you place with us, except for accepting notice of claim(s).

6. Section VI of the Agency Agreement, Agency Billed Business, 6.1 Billing and Collection, subparagraphs (d), (e) and (f), are deleted and replaced by the following:

   (d) Premium is due and payable to us on or before the date indicated on our invoice. This date is the later of thirty (30) days after the effective date of the policy or endorsement, or fifteen (15) days after the date the policy is entered into our system. If payment is not received within the stipulated time, the coverage will be cancelled.

This endorsement forms a part of the AGENCY AGREEMENT entered into between The Hartford Financial Services Group, Inc. or companies and the Agent named herein.


THE HARTFORD

## AMENDATORY ENDORSEMENT TO AGENCY AGREEMENT

1. Name and Address of Agent:
   Alliant Insurance Services Inc
   701 B Street 6th Floor
   San Diego CA 92101

2. Master Code Number: 72160200

3. Effective Date of Agency Agreement: April 1, 2001

4. Effective Date of this Endorsement: September 19, 2017

5. *This Agency Agreement is hereby amended as respects the item(s) indicated below:*

The following Sub Code(s) are added:
42640007 42630420 42640066 42630851 39320337 16162692 42641212PAC 00880713HFP 00887663HFP 00891545HFP 00891546HFP 42641508HFP 42631272HFP 42631270HFP 16163214HFP 42630295PHS 42630852PHS 42640388PHS 42630482PHS 42640496 (closed) 00884165HFP (closed) 00887575HFP (closed) 42630131 (closed) 42640594 (closed) 42641503HFP (closed) 42641534HFP (closed) 75450007 (closed)
Alliant Insurance Services Inc
701 B Street 6th Floor
San Diego Ca 92101

The following Sub Code(s) are closed:
42640496 (closed)
Alliant Insurance Services Inc
701 B Street 6th Floor
San Diego Ca 92101

The following Line of Business is closed:
Personal Lines (Applicable to codes 42640007, 42630420 only)

6. Other:

42640007, 42630420 42640066 42630851 39320337 is limited to Commercial Lines Only.

16162692 is limited to Bond Only.

42630295PHS 42630852PHS 42640388PHS 42630482PHS is subject to the Select Customer Insurance Service and Sales Agreement.

HFP AMENDMENT 2980254_1

00880713HFP 00887663HFP 00891545HFP 00891546HFP 42641508HFP 42631272HFP 42631270HFP 16163214HFP subject to the terms and conditions of the Agency Agreement as amended by the Hartford Financial Products Amendment to the Agency Agreement and any amendments thereto.

Code 42640496 is closed with no renewal extension.

©2017 by The Hartford. Classification. Company Confidential. All rights reserved
No part of this document may be reproduced, published or used without the permission of The Hartford.

When you do not waive your contractual right to renewal under the Agency Agreement, we will begin to non-renew policies in your terminated agency book beginning twelve (12) months after the effective date of termination, as permitted by law and our agency termination procedures. When you waive your contractual right to renewal under the Agency Agreement, we will begin to non-renew policies in your terminated agency book beginning on the effective date of termination, as permitted by law and our agency termination procedures. Where state law or our agency termination procedures restrict our ability to non-renew policies based on the termination of an agency relationship, we will offer to renew those policies by sending a renewal proposal to the policyholder as early as 120 days prior to the policy renewal date. We will offer to renew the policy through you unless or until state law permits us to offer the policy directly or through another Hartford agent designated by the policyholder or engaged by us to service the policy on our behalf. We will pay commission for policies renewed through you unless or until state law permits us to cease commission payments. Please be advised that we may non-renew policies for underwriting and other reasons, as permitted by law. Under the terms of your Agency Agreement, you are required to use your best efforts to replace all policies written by us with policies written by other insurers immediately upon the termination of your Agency Agreement. Under some circumstances, policies that are not replaced may be written directly or through another Hartford agent with no further commission paid to you.

Refer to the Agency Agreement, including all amendments, to determine the "master" agency's responsibility for the acts and omissions of the Sub Code(s).

Upon the submission of business by an un-appointed agent, The Hartford will automatically submit an appointment to the applicable state department of insurance.

This Agreement is executed on behalf of the Company or Companies of HARTFORD FINANCIAL SERVICES GROUP, INC for which appointments were or will be filed.

By: _____
Keith P. Lawler – AVP Agency Compensation

Date: November 7, 2017

Accepted by:

Name of Agent:
Alliant Insurance Services Inc

By: _____   11/15/17
Signature                        Date

Printed Name: Kenneth A. Zak, Esq
Title: General Counsel & SVP

© 2017 by The Hartford Classification Company Confidential All rights reserved
No part of this document may be reproduced, published or used without the permission of The Hartford

PART 2 This Declarations Page, with AGENCY AGREEMENT (Form No AGTAGR00), and endorsements, schedules, and addenda if any, issued to form a part thereof, completes this Agency Agreement.

## 'E HARTFORD AGENCY AGREEMENT DECLARATIONS

| | | | |
|---|---|---|---|
| 1 | Hartford Fire Insurance Company | F | Hartford Insurance Company of Illinois |
| 5 | Hartford Accident and Indemnity Company | G | Hartford Insurance Company of the Midwest |
| 3 | Hartford Casualty Insurance Company | H | Trumbull Insurance Company |
| 6 | Hartford Underwriters Insurance Company | J | Hartford Insurance Company of the Southeast |
| 7 | Twin City Fire Insurance Company | P | Property and Casualty Insurance Company of Hartford |
| 8 | Pacific Insurance Company | B | Hartford Lloyd's Insurance Company |
| — | Omni Indemnity Company | — | Omni Insurance Company |

Co. Code(s)

---

### DECLARATIONS

1. FRANEY PARR & MUHA INC-VA   42640007
   13921 PARK CENTER I, SUITE 160
   HERNDON, VA  20171

2. Effective Date of this Agreement – March 1, 2001

3. Types of Business Applicable to this Agreement:

   A. Personal Lines (the Personal Lines Agency Agreement):

   __ All Personal Lines;  __ All Personal Lines, excluding the Omni Auto Plan;  __ the Omni Auto Plan only

   __ Other (as specified) _____

   B. Commercial Lines (the Commercial Lines Agency Agreement):

   __ All Commercial Lines

   __ Other (as specified) _____

4. Agency Code(s) Subject to this Agreement:

5. Applicable endorsements, schedules and addenda
   Form Numbers

6. Number of Days for Payment of Balances or Return of Audit Premiums

7. Additional Provisions **"The information and content of the Declarations Page previously executed by the Company and the Agent, Form AG1140, as it may have been amended, are incorporated herein by reference and continue to apply to new agency agreement, Form AGTAGR00."**

---

This Agreement is executed on behalf of the Company
or Companies of HARTFORD FINANCIAL SERVICES GROUP, INC
designated above by Company Code(s).

Accepted by:

By: *[signature]*
Authorized Co. Representative
Title: Director Sales Administration

Name of Agent: FRANEY PARR & MUHA INC-VA

By: *[signature]*    Pres & CEO
    Signature          Title

Form No. AGCDEC00 Printed in U.S.A.



## THE HARTFORD AGENCY AGREEMENT

You and we mutually agree to the following:

### I. DEFINITIONS

1.1 "**Agreement**" means this document, the declarations page(s), and any and all schedules, addenda and amendments hereto.

1.2 "**Direct-billed**" business means business which we accept only on a direct-billed basis, or which we accept on a direct-billed basis at your option.

1.3 "**Policy**" means a policy of insurance or bond or other contract of suretyship and includes any binder, endorsement or rider related thereto.

1.4 "**Territory**" means the states or jurisdictions for which we have authorized and appointed you to solicit insurance on our behalf.

1.5 "**We**", "**us**", and "**our**" or the "**Company**" mean the companies of The Hartford Financial Services Group, Inc. signing this Agreement or designated in the declarations page and for which your agency has been appointed.

1.6 "**You**" and "**your**" or the "**Agent**" means the agency designated in the declarations page and its subsidiary agencies and agents unless any of those agencies and agents are under separate Agency Agreements with us.

### II. AUTHORITY OF AGENT

2.1 **Scope.** Subject to any requirements imposed by law, you are authorized on our behalf:

(a) To solicit, quote and bind insurance in your territory for those lines of insurance and classes of business shown on the Declarations page or otherwise in writing. We may amend such authority with respect to such lines of insurance, classes of business, products, coverages or limits immediately upon written notice to you. In quoting and binding coverage you agree to comply with any underwriting guidelines, rates and rules as we may publish and distribute to you.

(b) To deliver such policies as we may issue. We reserve the right to cancel at any time any policy you place with us. We shall give you notice of all such cancellations.

(c) To collect, receive and receipt for premiums on such policies, except as otherwise provided herein with respect to direct-billed business. All premiums collected on our behalf shall be held by you as our fiduciary.

(d) To provide all usual and customary services of an insurance agent on all insurance policies you place with us.

2.2 **Limitations.** You have the authority and power to act as our agent only to the extent expressly granted in this Agreement and no further authority or power is implied. You are an independent contractor and not an employee of ours for any purpose, and your right to represent other companies is not restricted by this Agreement. Any authority granted hereunder to solicit, quote or bind insurance products on our behalf is non-exclusive, unless we agree otherwise in writing.

## III. DUTIES OF AGENT

3.1. **Generally.** You agree:

(a) To comply with all laws affecting your operations, including, but not limited to, maintaining valid insurance licenses, resident, non-resident and surplus lines, as applicable, as well as complying with any countersigning and commission sharing requirements when writing risks outside of your resident state

(b) To provide all usual and customary services of an insurance agent on all insurance policies you place with us, except as otherwise mutually agreed to.

(c) You shall supervise and be responsible for the acts and omissions of all of your subproducers, including, but not limited to, any premiums or others monies due us from them.

(d) To submit to us all applications, and report to us all policies and coverages bound no later than five (5) business days after receipt or execution thereof or the effective date of coverage, whichever is sooner, or by such other time period as is required by law or by our rules and procedures. For Omni Auto Plan business the required time period is three (3) days.

(e) To notify us as soon as practicable of any actual or threatened claims, suits or losses under our policies or in connection with our business with you and to cooperate in our investigation, adjustment, settlement and payment of all such claims.

(f) Not to exceed the scope of your authority set forth herein, not to change or waive any provision of any policy we issue, not to extend the time of any premium due us, and not to compromise, adjust or settle any claim against us, other than as specifically authorized by us in writing.

(g) To maintain complete and accurate records and accounts relating to all of your business with us and to permit us or our representatives to audit your records and accounts upon reasonable advance notice and during reasonable business hours.

(h) To comply with all of our rules, procedures and policies, as communicated to you.

3.2. **Survival.** The Duties of the Agent hereunder shall survive any termination of this Agreement.

## IV. BROKER OF RECORD DESIGNATION BY POLICYHOLDER

4.1 **Designation.** If a conflict exists as to whether you or another licensed agent of ours is authorized to represent an existing or prospective policyholder, that policyholder's

latest written instructions as to the designation of which agent is so authorized, shall control, subject to our broker-of-record rules dealing with premiums, commissions and mid-term changes.

## V. COMPENSATION

5.1 **Commissions.** We will pay you commissions at the rates specified in the schedule(s) attached to this Agreement and/or in separate schedules or written documents we provide to you. We may change commission rates by providing you with at least ninety (90) days written notice. We may change commission rates on Omni Auto Plan business immediately upon written notice.

5.2 **Expenses.** The commissions and other compensation payable under this Agreement shall be considered the full compensation on business you place with us. Except as may be specifically provided by separate written agreements between us, we shall not be responsible for expenses you incur as an agent, including, but not limited to, rent, transportation, solicitors' fees, postage, telephone, advertising, underwriting and consumer reports ordered, license fees, or the electronic equipment, software or other costs of interfacing or communicating with us electronically.

5.3 **Return Commissions.** You agree to return promptly to us commissions previously paid to you or retained by you on premiums refunded under any policy for any reason, whether the refund is made during the term of this Agreement or thereafter.

## VI.   AGENCY- BILLED BUSINESS

6.1 **Billing and Collection.**

(a) You are responsible for the collection and accounting of all premiums on business placed with us, except direct-billed business. No commissions are payable on premiums which you may request us to collect. We will cancel agency-billed policies for non-payment of premium at your request, when permitted by law.

(b) You may retain out of premiums you collect, except on direct billed business, the commissions due and payable to you on such business in accordance with this Agreement.

(c) In the event of your breach of this Agreement we reserve the right to convert any or all agency-billed policies to a direct-billed basis.

(d) You will submit to us by the tenth day of each month an account of all premiums on all business, except direct-billed business, placed with us during the previous month or not previously reported, unless we agree to render such accounts to you.

(e) Regardless of whether you or we render the accounting, any balances shown as due to us shall be paid within the number of days specified in the Declarations after the end of the month for which the account was submitted or should have been timely submitted by you, whichever is earlier.

(f) If you fail to pay us any premiums or other amount properly owed to us, within the time period specified by us, we may impose a late fee not to exceed one per-cent (1%) per month on such amount.

## VII. DIRECT-BILLED BUSINESS

### 7.1 Billing and Collection.

(a) We are responsible for the billing and collection of premiums on all direct-billed business. We will pay you commissions only on premiums collected. If you should collect any premiums on direct-billed business, you will promptly account for them and pay the amounts due to us, without deducting commissions, when and as we direct.

(b) Unless otherwise mutually agreed upon, we will display your name on property and casualty policies, renewals, bills and other communications regarding continuation, non-renewal or termination of your insureds' policies.

(c) If upon termination of this Agreement you are entitled to the use and control of expirations under the terms of this Agreement, we will promptly provide to you at your request with a list of direct-billed policies in force, their expiration dates, and details of coverage.

## VIII. INDEMNIFICATION

8.1 **Company Responsibility.** We will defend and indemnify you against civil and administrative liability imposed on you by law, including the reasonable costs of defense and settlement, caused by our acts or omissions, including, but not limited to, that imposed on you under any Federal or state Fair Credit Reporting Act or state Privacy Act arising out of your use of our insurance scoring system, provided you have not breached this Agreement or otherwise caused or contributed to such liability by your own acts or omissions. You agree, as a condition to such indemnification, to notify us promptly of any claim or suit against you and to allow us to make such investigation, settlement or defense thereof as we deem prudent.

## IX. OWNERSHIP OF EXPIRATIONS

9.1 **Prior to Termination.** Unless we become entitled to the use and control of expirations hereunder, we will not, without your prior approval, use our records of the business we obtain through you to solicit insureds for other lines of insurance.

9.2 **On Termination.** If upon termination of this Agreement you have promptly accounted for and paid to us all premiums and other amounts that may be due us or for which you may be liable, or have given us a bond satisfactory to us guaranteeing the payment thereof, your records and the use and control of expirations, including expirations on direct-billed business, shall remain your property and be left in your undisturbed possession; otherwise the right and title to the records and the use, control and ownership of expirations shall be vested in us.

9.3 **Dispute.** For purposes of this section, you will not be considered in breach of your obligation to account for and pay to us premiums or other amounts due us, while the amount thereof is being reasonably disputed in writing and in good faith, provided you have promptly accounted for and paid to us all items about which there is no such dispute.

## X. SUBROGATION AND SALVAGE

10.1 **Reporting.** Our agency experience exhibits will reflect recoveries through subrogation or salvage.

## XI. SUSPENSION

**11.1 Grounds.** We may immediately suspend all or any part of the authority granted to you under this Agreement:

(a) With respect to any line of insurance, class of business, product, coverage, limits or special business relationship we may have with you, which we propose to suspend or cease writing in your area, or

(b) For any period during which you are in breach of your obligations under this Agreement.

## XII. TERMINATION

12.1 **Grounds.** This Agreement may be terminated, in whole or in designated part:

(a) At any time by mutual agreement,

(b) Immediately by either party upon written notice to the other party based upon such breach of this Agreement,

(c) Immediately without notice upon (i) the bankruptcy, insolvency, or dissolution of a party hereto, or the institution of a similar proceeding by or against a party, (ii) any suspension or revocation of your insurance license in any jurisdiction, as to all jurisdictions (iii) your failure to renew a necessary insurance license in a jurisdiction, as to that jurisdiction, or (iv) your commission of a felony, fraud, willful misconduct, or the misappropriation of funds,

(d) By either party upon ninety (90) days written notice to the other.

## XIII. AFTER TERMINATION

13.1 **Return of Property.** Upon any termination of this Agreement, any equipment, electronic materials or software, unused policy forms, drafts, stamps, powers of attorney and any other supplies or property furnished to you by us remain our property and shall be accounted for and returned to us upon demand.

13.2 **Renewal Election.** If upon termination of this Agreement you are entitled to the ownership, use and control of expirations under the terms of this Agreement, then based upon your written election that you must deliver to us no later than five (5) business days after the effective date of termination, we will, subject to any applicable legal restrictions, continue outstanding in-force policies until their normal expirations and will renew policies expiring during a period of one year following the termination of this Agreement, subject to the following conditions:

(a) You must use your best efforts to replace all policies issued pursuant to this Agreement with policies of other insurers.

(b) We reserve all of our rights to cancel in-force policies and policies renewed under this section for non-payment of premium, underwriting reasons or other reasons permitted by law.

(c) We shall not be obliged under this section to renew policies for a class of business, line of insurance, product, coverage or limit which we propose to cease writing in your territory.

(d) With respect only to the servicing of policies continued in force or renewed after termination of this Agreement, you shall continue to be our duly authorized representative, subject to all of the provisions of this Agreement, except that you shall not, without our prior written approval, bind any new risk, renew any policy for more than one additional annual period, or increase our exposure under any in-force policy; provided, however, you shall remain authorized to make routine additions and changes to in-force policies in the normal course of business unless and until we advise you to the contrary

(e) For any policy with a policy period greater than one year, we will extend the term of that policy for only one annual period following the renewal date.

(f) We will pay, with respect to policies renewed under this section, commissions at the applicable rates specified as per this Agreement at the time or the general rate prevailing among our agents at the time of renewal, whichever is the lesser. We shall not be obligated to pay any commission on any policies we may, in accordance with law, renew or extend after such one additional annual period.

## XIV. AMENDMENT

**14.1 Notice.** We may amend this Agreement at anytime by providing you with at least ninety (90) days written notice, except where this Agreement may provide for a shorter period.

## XV. GENERAL CONDITIONS

**15.1 Involuntary Business.** The provisions of this Agreement shall not apply to any business that is assigned to and written by us on an involuntary basis through any assigned risk plan, underwriting association, syndicate or pool.

**15.2 Accounting.** All premium, loss, compensation and other computations required under this Agreement, including the coding and classifying of all business written, shall be in accordance with our usual accounting, claims and statistical methods and procedures, as may be changed from time to time. The omission of any item from an accounting statement shall not affect the responsibility of either party to account for and pay all amounts due to the other, nor shall it prejudice the rights of either party to collect all such amounts due from the other.

**15.3 Offset.** We may offset against any sums owed to you or your subproducers under this Agreement or any other agreement or special relationship we may have with you or your subproducers any sums owed to us by you or your subproducers or for which either of you may be liable to us in damages.

**15.4 Intellectual Property.** Except as set forth below, you must obtain our prior written consent for any use of our name, logo, domain names, copyrighted materials, trademarks, servicemarks, software or other Intellectual property (herein collectively "Intellectual Property"). You are permitted to use our name, logo, copyrighted materials distributed for use in advertising, and our product trademarks and servicemarks, in advertising and promoting Company products in the normal course

of business, provided you send us a copy of any such advertisements before publication. You shall use our Intellectual Property only in accordance with our written or published standards, rules and requirements. You shall not register any of our Intellectual Property, or use or register any derivatives of our Intellectual Property. You shall not acquire any rights or interests in our Intellectual Property and your permission to use it may be withdrawn by us at anytime.

**15.5 Confidentiality/Privacy.** As used herein, "Confidential Information" means all of our confidential, proprietary or trade secret information, including, but not limited to, underwriting criteria and guidelines, procedures and processes, studies, reports, compensation arrangements, and any other data or information developed by us and provided to you or which is subject to protection under any Federal or state privacy law. Notwithstanding the foregoing, the following shall not constitute "Confidential Information" for purposes of this Agreement: information which is obtained or was previously obtained by you from a third person who was not prohibited from transmitting the information by a contractual, legal or fiduciary obligation to us, or information which is or becomes generally available to the public other than as a result of a breach of this Agreement by you or a disclosure by you to another person.

(a) You shall maintain the confidentiality of the Confidential Information, shall use it only for purposes of this Agreement, and shall not disclose it to any other person except to employees, agents and other persons who need to know such Confidential Information to further the objectives of this Agreement and who agree in writing to maintain the confidentiality of the information as provided herein. In the event you are requested or required by law to disclose any Confidential Information, you shall provide us with prompt notice thereof and cooperate with any of our efforts to seek a protective court order.

(b) If the Gramm-Leach-Bliley Act, including the regulations promulgated thereunder, or other applicable law, now or hereafter in effect, imposes a higher standard of confidentiality with respect to the Confidential Information, such standard shall prevail over the provisions of this Agreement.

(c) You shall at all times comply with our published Privacy Policies, as may be amended from time-to-time, concerning financial, medical and other personal or personally identifiable information.

**15.6 Errors and Omissions Insurance.** You agree to maintain in force professional errors and omissions liability insurance.

**15.7 Pledge of Assets.** In the event you are in breach of any of your obligations under this Agreement, you shall not pledge, encumber, lien, grant any security interest in, or otherwise assign your use, control or ownership of any expirations of policies written by us without first securing our written consent. You shall provide us with prior written notice of any such intended action, regardless of the absence of any such breach.

**15.8 Waiver/Amendment.** The delay or failure of either party to enforce compliance with any term or condition of this Agreement shall not constitute a waiver of such term or condition. No waiver of any term, condition or breach hereunder shall be deemed valid unless in a writing signed by the party giving such waiver, and no waiver in one instance shall be deemed a waiver of any subsequent event of the same nature. No amendment to this Agreement shall be valid unless in a writing signed by us.

**15.9 Assignment.** This Agreement may not be assigned by you, in whole or in part, without our prior written consent and any such attempted assignment shall be void

15.10 **Force Majeure.** Neither party shall be liable to the other in monetary damages for delay or failure in performance, other than the obligation to pay monies hereunder, caused by acts of God, war, riot, strikes, fire, lightning, flood or other natural disaster, or power, communications or computer failures that are beyond the reasonable control of the party.

15.11 **Entire Agreement.** This Agreement constitutes the entire agreement of the parties as to the subject matter hereof and supersedes all previous agreements, oral or written, between the parties except as stated in the following sentence. If you are an existing agent of ours, any written amendment or written addendum to your prior base Agency Agreement and any special written side-agreement shall continue in-force but in the event of any conflict between such other document and this document, the provisions of this document shall control.

15.11 **Construction.** This Agreement is not intended to confer upon any third party any rights or remedies. This Agreement shall be construed under and in accordance with the laws of the State of Connecticut without giving effect to the conflicts of law rules. Any provision of this Agreement that conflicts with any applicable law or regulation shall be deemed amended to the minimum extent necessary to comply with such law or regulation The captions in this Agreement are included for convenience only and shall not be used to interpret any of the provisions of this Agreement.



**THE HARTFORD**

November 7, 2017

42640007
Francy Muha Alliant Insurance Svcs Inc
4530 Walney Road Suite 200
Chantilly VA 20151

Termination of Agency Agreement: Sale of Agency to Alliant Insurance Services, Inc.

We are in receipt of a purchase agreement between Francy Muha Alliant Insurance Svcs, Inc. and Alliant Insurance Services, Inc. As a result, we will be terminating your agency agreement with The Hartford effective 09/19/2017. Please contact us immediately at the phone number below if any of this information is incorrect.

Hartford Financial Services Group, Inc. and its affiliated property and casualty insurance companies, hereby serve notice of termination of your Agency Agreement dated 03/01/2001. This Termination will be processed on 11/27/2017 unless signed and returned sooner by faxing to 860-757-5749 or emailing to Contract.Team@thehartford.com.

**Termination is based on your Agency being sold to Alliant Insurance Services, Inc.**

According to Section 13.1 of The Hartford Agency Agreement, upon any termination of the Agreement you are required to return all company property upon demand. This notice constitutes The Hartford's demand to return all company property to The Hartford, 5285 Shawnee Rd, Ste 600, Alexandria, VA 22312 within 90 days of the date of this notice. Where required by state law and as otherwise appropriate, failure to respond to this notice within the designated period of time will result in notice to the Insurance Commissioner.

The Hartford
1-888-203-3823
Option 2

By: _____
Keith P. Lawler – AVP Sales Programs

Accepted by:

Name of Agent:
Francy Muha Alliant Insurance Svcs Inc

By: _____    11-29-17
    Signature                    Date

    John R Muha                  Exec. V.P.
    Printed Name                 Title

© 2017 by The Hartford. Classification: Company Confidential. All rights reserved.
No part of this document may be reproduced, published or used without the permission of The Hartford.

HART00002523