# EXHIBIT 11

TWIN CITY FIRE INSURANCE CO.
INDIANAPOLIS, IN 46268-0930

a stock insurance company, herein
called the Insurer



# PRIVATE CHOICE ENCORE!! POLICY

## DECLARATIONS

**Policy Number:**  42 KB 0256935-15

NOTICE: THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN, COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND PAYMENT OF DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY. NOTICE OF A CLAIM MUST BE GIVEN TO THE INSURER AS SOON AS PRACTICABLE AFTER A NOTICE MANAGER BECOMES AWARE OF SUCH CLAIM, BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE TERMINATION OF THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

**ITEM 1:  Named Entity and Address:**

    MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.
    1539 FANNIE DORSEY ROAD
    SYKESVILLE, MD 21784



**ITEM 2:  Producer's Name and Address:**

    80713
    FRANEY MUHA ALLIANT INS SVCS I
    9901 BUSINESS PARKWAY SUITE B
    LANHAM, MD 20706

**ITEM 3:  Policy Period:**

    **(A)**   Inception Date:  5/01/15

    **(B)**   Expiration Date:  5/01/16
            12:01 a.m. local time at the address shown in ITEM 1

**ITEM 4:  Premium:**    $14,561



PE 00 H002 03 0507

© 2007, The Hartford

PL009592

**ITEM 5:    Liability Coverage Part Elections:**

Only those **Liability Coverage Parts** and Coverage Features that are designated with an "X" are included under this Policy

[X]  "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" $   2,000,000

[ ]  "Defense Outside the Limit of Liability (50%) for the following coverage parts:

    [ ]  Directors, Officers and Entity Liability Coverage Part

    [ ]  Employment Practices Liability Coverage Part

    [ ]  Fiduciary Liability Coverage Part
        [ ]  Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability

If both the :"Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" and the "Defense Outside the Limit of Liability (50%)" options are selected, the maximum aggregate defense outside the limits paid by the Insurer shall be equal to 50% of the "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**".

| COVERAGE PART | AGGREGATE LIMIT OF LIABILITY | RETENTION | PRIOR OR PENDING DATE | COVERAGE FEATURES |
|---|---|---|---|---|
| [X] Directors, Officers and Entity Liability | $   2,000,000 | Insured Person $ 0<br><br>Corporate Reimbursement $   10,000 | 05/01/09 | [X] **Entity Liability Coverage**<br>Retention:<br>$   10,000<br>Prior or Pending Date: 05/01/09 |
| [X] Employment Practices Liability | $   2,000,000 | $   15,000 | 05/01/09 | [X] **Third Party Liability Coverage**<br>Sublimit of Liability:<br>$   2,000,000<br>Retention:<br>$   15,000<br>Prior or Pending Date: 05/01/09 |
| [X] Fiduciary Liability | $   2,000,000 | $ 0 | 05/01/09 | [X] **Settlement Program Coverage**<br>Retention:<br>$ 0<br>Prior or Pending Date: 05/01/09<br><br>[X] HIPAA Sub-Limit of Liability:<br>$   25,000 |
| [ ] Miscellaneous Professional Liability | $ NOT COVERED | $ NOT COVERED | NOT COVERED | Per Claim Limit of Liability $ NOT COVERED<br>[ ] Retroactive Date:<br>NOT COVERED |

© 2007, The Hartford

PL009593

ITEM 6:   **Non-Liability Coverage Part Elections:**

Only those **Non-Liability Coverage Parts** that are designated with an "X" are included under this Policy

| COVERAGE PART | LIMIT(S) OF INSURANCE | RETENTION |
|---|---|---|
|  Crime | See Crime Coverage Part Dec. Page, Form No. PE00H11702 0507 | See Crime Coverage Part Dec. Page, Form No. PE00H11702 0507 |
| ☐ Kidnap and Ransom/Extortion | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No. NOT COVERED | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No. NOT COVERED |

ITEM 7:   **Extended Reporting Period:**

**(A)** Duration:    12 MONTHS

**(B)** Premium*:    100%

* Premium for the Extended Reporting Period elected shall be the indicated percentage of the sum of the annual premium specified for all **Liability Coverage Parts**, plus the annualized amounts of any additional premiums charged during the Policy Period. The Extended Reporting Period is not available for the **Non-Liability Coverage Parts.**

ITEM 8:   **Endorsements:**

This Policy includes the following endorsements at issuance:

   SEE FORM GU207 (SCHEDULE OF FORMS AND ENDORSEMENTS)

ITEM 9:   **Address For Notices to Insurer:**

**For Claims other than Kidnap and Ransom/Extortion:**      **For all notices other than Claims:**

The Hartford                                              The Hartford
Claims Department                                        Product Services
Hartford Financial Products                              Hartford Financial Products
277 Park Ave., 15ᵗʰ Floor                                277 Park Ave., 15ᵗʰ Floor
New York, New York  10172                                New York, New York  10172

For Kidnap and Ransom/Extortion Claims see Kidnap and Ransom/Extortion Coverage Part Declarations.

This Policy shall not be valid unless countersigned by the Insurer's duly authorized representative.

Date of Issue:    05/01/15                     Countersigned by: _Thomas C. Tucker_
                                                                    **Authorized Representative**

PE 00 H002 03 0507                © 2007, The Hartford                Page 3 of 3

PL009594



THE
HARTFORD



# PRIVATE CHOICE ENCORE®!! POLICY
## CRIME COVERAGE PART
## DECLARATIONS

In return for the payment of the premium, and subject to all the terms of this **Non-Liability Coverage Part**, we agree with you to provide the insurance stated in this **Non-Liability Coverage Part**.

**ITEM:**

1.  **Coverages, Limits of Insurance and Retentions:**
    Insuring Agreements, Limits of Insurance and Retention Amounts shown below are subject to all of the terms of this **Non-Liability Coverage Part** that apply.

| Insuring Agreements Forming Part of This Non-Liability Coverage Part | Limit(s) of Insurance | Retention Amount(s) |
|---|---|---|
| 1.  Employee Theft | $ 500,000 | $ 5,000 |
| 2.  Depositors Forgery or Alteration | $ 500,000 | $ 5,000 |
| 3.  Inside The Premises - *Money, Securities and Other Property* | $ 25,000 | $ 1,000 |
| 4.  Outside The Premises - *Money, Securities and Other Property* | $ 25,000 | $ 1,000 |
| 5.  Computer and Funds Transfer Fraud | $ 500,000 | $ 5,000 |
| 6.  Money Orders and Counterfeit Currency | $ 50,000 | $ 0 |

2.  **Cancellation of Prior Insurance:** By acceptance of this **Non-Liability Coverage Part** you give us notice canceling prior policies or bonds numbered _42 KB 0256935-14_____. The cancellation(s) is effective at the time this **Non-Liability Coverage** Part becomes effective.

3.  **Form Numbers of Endorsements Forming Part of This Non-Liability Coverage Part When Issued:**
    SEE FORM GU207 (SCHEDULE OF FORMS AND ENDORSEMENTS)



PL009595

**ENDORSEMENT**

GU 207
(6-78)

This endorsement, effective on   5/01/15   at 12:01 A.M. standard time, forms a part of

Policy No.   42 KB 0256935-15   of the   TWIN CITY FIRE INSURANCE CO.

Issued to   MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

André A. Napoli, President

SCHEDULE OF FORMS AND ENDORSEMENTS

|   | | | |
|---|---|---|---|
|   | RN00N02600 | 5/93 | IN WITNESS PAGE |
|   | PE00H55500 | 5/07 | PRIVATE CHOICE ENCORE!! POLICY |
|   | PE00H01302 | 5/07 | DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART |
|   | PE00H01401 | 5/07 | EMPLOYMENT PRACTICES LIABILITY COVERAGE PART |
|   | PE00H01503 | 6/08 | FIDUCIARY LIABILITY COVERAGE PART |
|   | PE00H11802 | 5/07 | CRIME COVERAGE PART |
| 1 | HG00H06801 | 2/12 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| 2 | PE00H01101 | 5/07 | PERCENTAGE SHAREHOLDER EXCLUSION (DIRECTORS, OFFICERS AND ENTITY LIABILITY) |
| 3 | PE00H07402 | 6/08 | ADD SUBSIDIARY ENDORSEMENT |
| 4 | PE00H18601 | 5/07 | AMENDED DECLARATIONS - SPLIT PRIOR OR PENDING DATE FOR EMPLOYMENT PRACTICES LIABILITY |
| 5 | PE00H18701 | 5/07 | AMENDED DECLARATIONS SPLIT PRIOR OR PENDING DATE FOR DIRECTORS,OFFICERS AND ENTITY |
| 6 | PE00H18801 | 5/07 | AMENDED DECLARATIONS - SPLIT PRIOR OR PENDING DATE FOR FIDUCIARY LIABILITY |
| 7 | PE00H27601 | 5/07 | STATE AMENDATORY INCONSISTENCY ENDORSEMENT |
| 8 | PE00H62900 | 7/09 | EMPLOYEE DATA PRIVACY LIABILITY ENDORSEMENT (EMPLOYMENT PRACTICES LIABILITY) |
| 9 | PE00H68500 | 1/11 | WORKPLACE BULLYING COVERAGE |
| 10 | PE19H00401 | 10/11 | MARYLAND AMENDATORY ENDORSEMENT |

Ed. Date (04/02)
GU 207 (6-78)

PL009596

**ENDORSEMENT**

GU 207
(6-78)

This endorsement, effective on     5/01/15                              at 12:01 A.M. standard time, forms a part of

Policy No.   42 KB 0256935-15          of the          TWIN CITY FIRE INSURANCE CO.

Issued to   MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

André A. Napoli, President

SCHEDULE OF FORMS AND ENDORSEMENTS

| 11 | PE00H70900 | 12/14 | DECEPTION FRAUD ENDORSEMENT     (CRIME COVERAGE PART) |
| 12 | PE00H71000 | 12/14 | INCLUDE COVERAGE FOR VIRTUAL   CURRENCY – SUBLIMITED (CRIME COVERAGE PART) |
| 13 | HG00H00901 | 7/08 | AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT |
| 14 | PE00H08801 | 5/07 | NUCLEAR LIABILITY EXCLUSION |
| 15 | HR19H00304 | 8/09 | MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT |
| | HG00H05602 | 2/12 | CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM |
| | HR00H09300 | 2/07 | PRODUCER COMPENSATION NOTICE |



Ed. Date (04/02)
GU 207 (6-78)

## PRIVATE CHOICE ENCORE®!! POLICY

**NOTICE: THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN, COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND PAYMENT OF DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY. NOTICE OF A CLAIM MUST BE GIVEN TO THE INSURER AS SOON AS PRACTICABLE AFTER A NOTICE MANAGER BECOMES AWARE OF SUCH CLAIM, BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE TERMINATION OF THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

### COMMON TERMS AND CONDITIONS

**I.     TERMS AND CONDITIONS**

    **(A)** All Coverage Parts included in this Policy are subject to the following Common Terms and Conditions. If any provision in these Common Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

    **(B)** Except as otherwise provided by specific reference to other Coverage Parts, the terms and conditions of each Coverage Part shall apply only to such Coverage Part.

**II.    COMMON DEFINITIONS**

    The following terms, whether used in the singular or plural, shall have the meanings specified below:



    **(A)** "**Affiliate**" means any insurance company controlling, controlled by or under common control with the Insurer.

    **(B)** "**Application**" means: the application for this Policy, including any materials or information submitted therewith or made available to the Insurer during the underwriting process, which application shall be on file with the Insurer; or the application for any policy in an uninterrupted series of policies issued by the Insurer or any insurance company controlling, controlled by or under common control with the Insurer of which this Policy is a renewal or replacement. Such **Application** shall be deemed a part of this Policy and attached hereto.

    **(C)** "**Claim**" shall have the meaning specified for such term in each Coverage Part.

    **(D)** "**Controlled Partnership**" means a limited partnership in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the limited partnership interest and an **Insured Entity** is the sole general partner.

    **(E)** "**Debtor in Possession**" means a "debtor in possession" as such term is defined in Chapter 11 of the United States Bankruptcy Code as well as any equivalent status under any similar law.

    **(F)** "**Defense Costs**" means reasonable and necessary legal fees and expenses incurred in the investigation, defense or appeal of a **Claim**. **Defense Costs** shall include the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds. **Defense Costs** shall not include salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds**.

    **(G)** "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

    **(H)** "**Employee**" means any natural person while such person was or is a(n):

PL009598



    (1)    employee of an **Insured Entity** including any part time, seasonal, temporary, leased, or loaned employee; or

    **(2)**    volunteer with an **Insured Entity**.

However, this definition of **Employee** shall hereby expressly not apply for purposes of the **Non-Liability Coverage Parts**.

**(I)**    "ERISA" means the Employee Retirement Income Security Act of 1974.

**(J)**    **"Financial Insolvency"** means the status of an **Insured Entity** as a result of:

    **(1)**    the appointment of any conservator, liquidator, receiver, rehabilitator, trustee, or similar official to control, supervise, manage or liquidate such **Insured Entity**; or

    **(2)**    such **Insured Entity** becoming a **Debtor in Possession**.

**(K)**    **"Insured Entity"** means:

    **(1)**    the **Named Entity**; or

    **(2)**    any **Subsidiary**.

**Insured Entity** shall include any such entity as a **Debtor in Possession**.

**Insured Entity** shall also include any such entity in its capacity as a general partner of a **Controlled Partnership**.

**(L)**    **"Insured Person"** shall have the meaning specified for such term in each Coverage Part.

**(M)**    **"Insureds"** shall have the meaning specified for such term in each Coverage Part.

**(N)**    "Interrelated Wrongful Acts" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

**(O)**    **"Liability Coverage Part"** means the Directors, Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Coverage Parts, if included in ITEM 5 of the Declarations.

**(P)**    **"Loss"** shall have the meaning specified for such term in each Coverage Part.

**(Q)**    **"Manager"** means any natural person while such person was or is a(n):

    **(1)**    duly elected or appointed director, officer, member of the board of managers or management committee member of an **Insured Entity;**

    **(2)**    **Employee** in his/her capacity as legal counsel to an **Insured Entity**; or

    **(3)**    executive of an **Insured Entity** created outside the United States of America to the extent that such executive holds a position equivalent to those described in (1) or (2).

However, this definition of **Manager** shall hereby expressly not apply for the purposes of the Kidnap and Ransom/Extortion Coverage Part.

**(R)**    **"Named Entity"** means the entity named in ITEM 1 of the Declarations.

PL009599

(S)   "Non-Liability Coverage Part" means the Crime and Kidnap and Ransom/Extortion Coverage Parts in ITEM 6 of the Declarations.

(T)   "Notice Managers" means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel or risk manager of an **Insured Entity**.

(U)   "Policy Period" means the period from the Inception Date to the Expiration Date set forth in ITEM 3 of the Declarations or any earlier cancellation date.

(V)   "Pollutants" means any solid, liquid, gaseous or thermal irritant, nuisance or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil product, radiation, asbestos or asbestos-containing product, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. **Pollutants** also means any substance located anywhere in the world identified on a list of hazardous substances issued by any federal agency (including, nonexclusively, the Environmental Protection Agency) or any state, county, municipality or locality or counterpart thereof, or any foreign equivalent thereof.

(W)   "Subsidiary" means any:

(1)   corporation in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

(2)   limited liability company in which and so long as the **Named Entity** owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managers;

(3)   a **Controlled Partnership**;

(4)   corporation operated as a joint venture in which and so long as the **Named Entity** owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Named Entity** solely controls the management and operation of such corporation; or

(5)   foundation, charitable trust or political action committee in which and so long as such entity or organization is controlled by the **Named Entity** or any **Subsidiary** as defined (1) through (4) above.

However, this definition of **Subsidiary** shall hereby expressly not apply for purposes of the Miscellaneous Professional Liability Coverage Part.

(X)   "Wrongful Act" shall have the meaning specified for such term in each Coverage Part.

## III.   COVERAGE EXTENSIONS

(A)   Spousal/Domestic Partner Liability Coverage

Coverage shall apply to the lawful spouse or **Domestic Partner** of an **Insured Person** for a **Claim** made against such spouse or **Domestic Partner**, provided that:

(1)   such **Claim** arises solely out of:

(a)   such person's status as the spouse or **Domestic Partner** of an **Insured Person**; or

(b)   such spouse or **Domestic Partner's** ownership of property sought as recovery for a **Wrongful Act**;

(2)   the **Insured Person** is named in such **Claim** together with the spouse or **Domestic Partner**; and

(3)   coverage of the spouse or **Domestic Partner** shall be on the same terms and conditions, including any applicable Retention, as apply to coverage of the **Insured Person** for such **Claim**.

PE 00 H555 00 0507                    © 2007, The Hartford                    Page 3 of 10
42 KB 0256935-15     5/01/15

PL009600

No coverage shall apply to any **Claim** for a **Wrongful Act** of such spouse or **Domestic Partner**.



**(B) Estates and Legal Representatives**

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** shall be deemed to be a **Claim** made against such **Insured Person**. No coverage shall apply to any **Claim** for a **Wrongful Act** of such estate, heirs, legal representatives or assigns.

## IV.  LIMIT OF LIABILITY

Solely with respect to all **Liability Coverage Parts**:

**(A)**  The Limit of Liability for each Coverage Part in ITEM 5 of the Declarations shall be the maximum aggregate amount that the Insurer shall pay under such Coverage Part for all **Loss** from all **Claims** covered under such Coverage Part.

**(B)**  Notwithstanding the above, if a Combined Aggregate Limit of Liability For All Coverage Parts is included in ITEM 5 of the Declarations, then:

    **(1)**  such single Limit of Liability shall be the maximum aggregate amount that the Insurer shall pay for all **Loss** from all **Claims** covered under all included Coverage Parts combined; and

    **(2)**  any amount specified as a Limit of Liability for any individual Coverage Part in ITEM 5 of the Declarations shall be subject to, part of, and not in addition to, the amount stated as the Combined Aggregate Limit of Liability For All Coverage Parts.

If any Limit of Liability is exhausted, the premium for this Policy shall be deemed fully earned.

## V.  DEFENSE COSTS

Solely with respect to all **Liability Coverage Parts**:

**(A)**  **Defense Costs** shall be part of, and not in addition to, each applicable Limit of Liability. Payment of **Defense Costs** by the Insurer shall reduce each Limit of Liability.

**(B)**  Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then payment of **Defense Costs** shall be in addition to any applicable Limit of Liability, provided that:

    **(1)**  if a Limit of Liability is specified for any individual Coverage Part in ITEM 5 of the Declarations, then the maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under such Coverage Part shall be 50% of such Limit of Liability; provided, however, that if the Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability option is selected, the amount the Insurer shall pay for all **Defense Costs** from all **Claims** covered under the Fiduciary Liability Coverage Part shall be 100% of such Limit of Liability;

    **(2)**  if a Combined Aggregate Limit of Liability For All Coverage Parts is included in ITEM 5 of the Declarations, then:

        **(a)**  the single maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under all included Coverage Parts combined shall be 50% of such Limit of Liability; and

        **(b)**  any amount of **Defense Costs** available for any individual Coverage Part shall be subject to, part of, and not in addition to, the single maximum amount of **Defense Costs** available for all included Coverage Parts combined specified in (a) above; and

PL009601

**(3)** if the amount available for **Defense Costs** in (1) or (2) above is exhausted by the payment of **Defense Costs**, then **Defense Costs** shall be paid by the Insurer out of any remaining applicable Limit of Liability until the exhaustion of the applicable Limit of Liability.

## VI. RETENTION

Solely with respect to all **Liability Coverage Parts:**

**(A)** The Insurer shall pay **Loss** in excess of the Retention applicable to each **Claim** as specified in ITEM 5 of the Declarations.

**(B)** All Retentions shall be borne by the **Insureds** at their own risk; they shall not be insured.

**(C)** Any **Defense Costs** incurred by the Insurer shall apply to the Retention. The **Insureds** shall reimburse the Insurer upon request for any amounts paid regarding a **Claim** that are within the applicable Retention for such **Claim.**

**(D)** If a **Claim** is covered under more than one Coverage Part, the applicable Retention for each Coverage Part shall be applied separately to such **Claim**, provided that the maximum Retention applied to such **Claim** shall not exceed the highest of such applicable Retentions.

**(E)** No Retention shall apply to **Loss** incurred by any **Insured Person** that an **Insured Entity** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Insolvency.**

**(F)** If an **Insured Entity** is permitted or required by common or statutory law to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, and does not do so other than because of **Financial Insolvency**, then such **Insured Entity** and the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the Retention that would have applied if such indemnification had been made.

**(G)** If a **Subsidiary** is unable to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, because of **Financial Insolvency**, then the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the applicable Retention that would have applied if such indemnification had been made.

## VII. DEFENSE AND SETTLEMENT

Solely with respect to those **Liability Coverage Parts** other than the Miscellaneous Professional Liability Coverage Part:

**(A)** The Insurer shall have the right and duty to defend any **Claim** for which the **Insureds** give notice to the Insurer, even if such **Claim** is groundless, false or fraudulent. The Insurer may make any investigation it deems appropriate.

**(B)** The Insurer's duty to defend any **Claim** shall cease upon exhaustion of any applicable Limit of Liability.

Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer's duty to defend any **Claim** shall cease upon exhaustion of the maximum aggregate amount of **Defense Costs** available under Section V. DEFENSE COSTS, and any applicable Limit of Liability.

**(C)** The **Insureds** shall not admit nor assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** regarding any **Claim** without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, settlement, stipulation, or **Defense Costs** to which it has not consented.



(D) The Insurer may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the Insurer deems reasonable.

(E) Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer may settle any **Claim** for a monetary amount that the Insurer deems reasonable and the consent of the **Insureds** shall not be required to settle a **Claim**.

(F) The **Insureds** shall give to the Insurer all information and cooperation as the Insurer may reasonably request.

## VIII. NOTICE OF CLAIM

Solely with respect to all **Liability Coverage Parts**:

(A) As a condition precedent to coverage under this Policy, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than sixty (60) calendar days after the termination of the **Policy Period**, or any Extended Reporting Period as described in Section IX. Such notice shall specify the Coverage Part under which notice is being given.

(B) If, during the **Policy Period**, the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period** on the date that the Insurer receives the above notice.

## IX. EXTENDED REPORTING PERIOD

Solely with respect to all **Liability Coverage Parts**:

(A) If any **Liability Coverage Part** is cancelled or non-renewed for any reason other than non-payment of premium, the **Insureds** shall have the right to elect an extension of time to report **Claims** under such **Liability Coverage Part** (the "Extended Reporting Period").

(B) To elect the Extended Reporting Period, the **Insureds** shall send a written notice of election of the Extended Reporting Period to the Insurer together with the premium therefor. The right to elect the Extended Reporting Period shall end unless the Insurer receives such notice and premium within sixty (60) days of cancellation or non-renewal. There shall be no right to elect the Extended Reporting Period after such time.

(C) The premium for the Extended Reporting Period shall be that percentage specified in ITEM 7 of the Declarations of the sum of the original annual premium plus the annualized amount of any additional premium charged by the Insurer during the **Policy Period**. Such premium shall be deemed fully earned at the inception of the Extended Reporting Period.

(D) The Extended Reporting Period shall be for the duration specified in ITEM 7 of the Declarations following the end of the **Policy Period**.

(E) Coverage during the Extended Reporting Period shall apply to **Claims** made for **Wrongful Acts** occurring prior to the earlier of the end of the **Policy Period** or the time of any transaction described in Section XIV. CHANGES IN EXPOSURE, (B) Takeover of Named Entity. No coverage shall apply for any **Wrongful Act** occurring after such time.

(F) There is no separate or additional Limit of Liability for any Extended Reporting Period.

## X. INTERRELATIONSHIP OF CLAIMS

Solely with respect to all **Liability Coverage Parts**:

PL009603

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act or Interrelated Wrongful Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

**(A)** any of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period;**

**(B)** notice of any **Wrongful Act** described above was given to the Insurer under this Policy pursuant to Section VIII. NOTICE OF CLAIM (B); or

**(C)** notice of any **Wrongful Act** described above was given under any prior insurance policy.

## XI. ALLOCATION

Solely with respect to all **Liability Coverage Parts** other than the Miscellaneous Professional Liability Coverage Part:

Where **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

**(A)** 100% of **Defense Costs** shall be allocated to covered **Loss**; and

**(B)** **Loss** other than **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based upon the relative legal exposure of all parties to such matters.

## XII. OTHER INSURANCE

If **Loss** arising from any **Claim** is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## XIII. CANCELLATION

**(A)** The Insurer may cancel this Policy for non-payment of premium by sending not less than 10 days notice to the **Named Entity**. This Policy may not otherwise be cancelled by the Insurer.

**(B)** Except as provided in Section XIV. CHANGES IN EXPOSURE, (B) Takeover of Named Entity, the **Insureds** may cancel this Policy by sending written notice of cancellation to the Insurer. Such notice shall be effective upon receipt by the Insurer unless a later cancellation time is specified therein.

**(C)** If the Insurer cancels this Policy, unearned premium shall be calculated on a pro rata basis. If the **Insureds** cancel this Policy, unearned premium shall be calculated at the Insurer's customary short rates. Payment of any unearned premium shall not be a condition precedent to the effectiveness of a cancellation. The Insurer shall make payment of any unearned premium as soon as practicable.

## XIV. CHANGES IN EXPOSURE

Solely with respect to all **Liability Coverage Parts:**

**(A) Mergers and New Subsidiaries**

If, before or during the **Policy Period**, any **Insured Entity**:

**(1)** merges with another entity such that the **Insured Entity** is the surviving entity; or

**(2)** acquires or creates a **Subsidiary**,

PL009604



then such merged, acquired or created entity and its subsidiaries, managers, directors, officers, and employees shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for a **Wrongful Act** occurring after such merger, acquisition or creation. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before such merger, acquisition or creation, or for any **Interrelated Wrongful Acts** thereto.

If the fair value of the assets of any newly merged, acquired or created entity exceed 25% of the total assets of the **Named Entity** as reflected in its most recent consolidated audited financial statements prior to such merger, acquisition or creation, the **Insureds** shall give the Insurer full details of the transaction in writing as soon as practicable and the Insurer shall be entitled to impose such additional terms, conditions, and premium as the Insurer, in its absolute discretion, chooses. There shall be no coverage under the **Liability Coverage Parts** for any newly merged, acquired or created entity or any of its subsidiaries, managers, directors, officers, or employees unless the **Insureds** comply with the terms of this provision.

**(B) Takeover of Named Entity**

If, during the **Policy Period**:

**(1)** the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

**(2)** more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

then coverage shall continue under the **Liability Coverage Parts**, but only for a **Wrongful Act** occurring before any such transaction. No coverage shall be available for any **Wrongful Act** occurring after such transaction. Upon such transaction, this Policy shall not be cancelled and the entire premium for this Policy shall be deemed fully earned.



The **Insureds** shall give the Insurer written notice of such transaction as soon as practicable, but not later than ninety (90) days after the effective date of such transaction.

**(C) Loss of Subsidiary Status**

If, before or during the **Policy Period**, any entity ceases to be a **Subsidiary**, then coverage shall be available under the **Liability Coverage Parts** for such **Subsidiary** and its Insured Persons, but only for a **Wrongful Act** of such **Insureds** occurring before such transaction. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after such transaction.

## XV. SUBROGATION

The Insurer shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** by the Insurer under this Policy. The **Insureds** shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable the Insurer to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the Insurer's position or any potential or actual rights of recovery.

## XVI. APPLICATION

**(A)** The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

**(B)** If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:



PL009605

**(1)** For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any **Insureds** who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

    **(a)** knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

    **(b)** knowledge possessed by any chief executive officer, general counsel, or chief financial officer of the **Named Entity**, or anyone signing the **Application**, shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

**(2)** For the purpose of determining coverage under the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for:

    **(a)** any **Insured Persons,** under Insuring Agreement (A), who knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**, provided, however, that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person.** This shall be the Insurer's sole remedy under this Insuring Agreement (A). Under no circumstances shall the Insurer be entitled to rescind this Insuring Agreement (A).

    **(b)** an **Insured Entity**, under Insuring Agreement (B), to the extent it indemnifies any **Insured Person** referenced in subparagraph (2)(a), above, and

    **(c)** an **Insured Entity**, under Insuring Agreements (C) and (D), if any chief executive officer, general counsel, or chief financial officer of the **Named Entity**, or anyone signing the **Application**, knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**.

## XVII.   ACTION AGAINST THE INSURER

Solely with respect to all **Liability Coverage Parts**:

**(A)** No action shall be taken against the Insurer unless there shall have been full compliance with all the terms and conditions of this Policy.

**(B)** No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** nor shall the Insurer be impleaded by the **Insureds** in any such **Claim**.

Solely with respect to the **Crime Coverage Part**:

**(A)** No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and

**(B)** No legal action shall be taken against the Insurer involving loss until ninety (90) days after the **Insured** has filed proof of loss with us; and

**(C)** No legal action shall be taken against the Insurer involving loss unless such action is brought within two (2) years from the date that the **Insured** discovers such loss.

Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:

No suit, action or proceeding for recovery of any claim under this Policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within twenty-four (24) months after a claim for actual loss or expenses has been reported to the Insurer by the **Insured**.

## XVIII.   ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer without its consent as specified in a written endorsement issued by the Insurer to form a part of this Policy.

PL009606

## XIX. BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any **Insureds** shall not relieve the Insurer of any of its obligations under this Policy.

## XX. AUTHORIZATION OF NAMED ENTITY

The **Named Entity** shall act on behalf of all **Insureds** with respect to all matters under this Policy, including, without limitation, giving and receiving of notices regarding **Claims**, cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Policy.

## XXI. CHANGES

This Policy shall not be changed or modified except in a written endorsement issued by the Insurer to form a part of this Policy.

## XXII.    ENTIRE AGREEMENT

This Policy, including the Declarations, Common Terms and Conditions, included Coverage Part(s), **Application** and any written endorsements attached hereto, constitute the entire agreement between the **Insureds** and the Insurer relating to this insurance.

## XXIII.    NOTICES

**(A)** All notices to the **Insureds** shall be sent to the **Named Entity** at the address specified in ITEM 1 of the Declarations.

**(B)** All notices to the Insurer shall be sent to the address specified in ITEM 9 of the Declarations. Any such notice shall be effective upon receipt by the Insurer at such address.

## XXIV.    HEADINGS

The headings of the various sections of this Policy are intended for reference only and shall not be part of the terms and conditions of coverage.

## XXV.    REFERENCES TO LAWS

**(A)** Wherever this Policy mentions any law, including, without limitation, any statute, Act or Code of the United States of America, such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

**(B)** Wherever this Policy mentions any law or laws, including, without limitation, any statute, Act or Code of the United States of America, and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes as well as common law.

## XXVI.    COVERAGE TERRITORY

Coverage under this Policy applies worldwide.



PL009607



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

### TWIN CITY FIRE INSURANCE COMPANY
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Lisa Levin, Secretary

Douglas Elliot, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN

42 KB 0256935-15    5/01/15

PL009608

## DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART



I. INSURING AGREEMENTS

**(A) Insured Person Liability**

The Insurer shall pay **Loss** on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** that an **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

**(B) Corporate Reimbursement**

The Insurer shall pay **Loss** on behalf of an **Insured Entity** that such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**.

**(C) Entity Liability (Elective)**

If Entity Liability Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from an **Entity Claim** first made against such **Insured Entity** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Entity**.

This Insuring Agreement shall be subject to the Entity Liability Coverage Retention and Prior or Pending Date in Item 5 of the Declarations.

**(D) Derivative Demands**



The Insurer shall pay **Investigation Costs** on behalf of an **Insured Entity** that such **Insured Entity** incurs resulting from a **Derivative Demand** first made during the **Policy Period** or Extended Reporting Period, if applicable.

This Insuring Agreement shall be subject to a Sublimit of Liability of $250,000. Such Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**. No Retention shall apply to this Insuring Agreement.

II. **DEFINITIONS**

The following terms, whether used in the singular or plural, shall have the meanings specified below:

**(A) "Claim"** means any:

**(1) Insured Person Claim;**

**(2) Entity Claim;** or

**(3) Derivative Demand.**

**(B) "Derivative Action"** means any civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** made on behalf of, or in the name or the right of, an **Insured Entity** by any security holders of such **Insured Entity**, in their capacity as such, if such proceeding is made without the assistance, participation or solicitation of any **Manager.**

PE 00 H013 02 0507                          © 2007, The Hartford                          Page 1 of 8
      42 KB 0256935-15      5/01/15

PL009609

(C) **"Derivative Demand"** means any written demand by any security holders of an **Insured Entity**, in their capacity as such, upon the board of directors or managers of such **Insured Entity** to bring a civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** if such demand is made without the assistance, participation or solicitation of any **Manager**. A **Derivative Demand** shall be deemed commenced by the receipt of such demand.

(D) **"Entity Claim"** means any:

    (1)  written demand for monetary damages or other civil relief commenced by the receipt of such demand;

    (2)  civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

    (3)  criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Entity**.

**"Entity Claim"** also means a written request to an **Insured Entity** to toll or waive a statute of limitations regarding a potential **Entity Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

(E) **"Insured Person"** means any:

    (1)  **Manager**; or

    (2)  **Employee**.

(F) **"Insured Person Claim"** means any:

    (1)  written demand for monetary damages or other civil relief commenced by the receipt of such demand;

    (2)  civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

    (3)  criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

against an **Insured Person**.

**"Insured Person Claim"** also means a formal civil, criminal, administrative, or regulatory investigation commenced by the service upon or other receipt by an **Insured Person** of a written notice from an investigating authority specifically identifying such **Insured Person** as a target individual against whom formal charges may be commenced.

**"Insured Person Claim"** also means a written request to an **Insured Person** to toll or waive a statute of limitations regarding a potential **Insured Person Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

(G) **"Insured(s)"** means any:

    (1)  **Insured Entity**; or

    (2)  **Insured Person**.

(H) **"Investigation Costs"** means reasonable and necessary expenses incurred in the investigation and evaluation of a **Derivative Demand** by an **Insured Entity**, including its board of directors, board of managers, or any

PL009610

committee thereof, provided that **Investigation Costs** shall not include salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds.**

(I)   **"Loss"** means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part,** including **Defense Costs,** compensatory damages, settlement amounts, pre- and post-judgment interest, costs awarded pursuant to judgments, and, regarding Insuring Agreement (D), **Investigation Costs.**

**Loss** also includes punitive and exemplary damages, and the multiple portion of any multiplied damage award.

However, **Loss** shall not include:

(1)   taxes, fines or penalties imposed by law;

(2)   non-monetary relief;

(3)   any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

(J)   **"Outside Capacity"** means service by an **Insured Person** as a director, officer, trustee, regent, governor or equivalent executive of an **Outside Entity** with the knowledge and consent of or at the request of an **Insured Entity.**

(K)   **"Outside Entity"** means any:

(1)   not-for-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986,

(2)   entity organized for a religious or charitable purpose under any not-for-profit statute, or

(3)   entity listed as an **Outside Entity** in a written endorsement issued by the Insurer to form a part of this Policy,

that is not an **Insured Entity.**

(L)   **"Sarbanes-Oxley Whistle-blowing"** means the lawful act of a **Manager,** in which such **Manager** provides information, causes information to be provided, or otherwise assists in an investigation regarding any conduct which the **Manager** reasonably believes constitutes a violation:

(1)   of any rule or regulation of the Securities and Exchange Commission, or

(2)   any provision of Federal, state or foreign law relating to fraud against shareholders,

when the information or assistance is provided to, or the investigation is conducted by:

(a)   a Federal, state or foreign regulatory or law enforcement agency;

(b)   any Member of Congress or any committee of Congress; or

(c)   a person with supervisory authority over the **Manager** (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

(M)   **"Wrongful Act"** means any actual or alleged:

(1)   error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by an **Insured Person** in their capacity as such or in their **Outside Capacity,** or, with regard to Insuring Agreement (C) an **Insured Entity;** or

PL009611

    **(2)** matter claimed against an **Insured Person,** solely by reason of their serving in such capacity, including service in an **Outside Capacity.**

 **COVERAGE EXTENSION FOR OUTSIDE DIRECTORSHIP LIABILITY**

Subject to the terms and conditions of this Policy and **Liability Coverage Part,** coverage is afforded for **Loss** resulting from any **Insured Person Claim** against an **Insured Person** for a **Wrongful Act** in an **Outside Capacity.** Such coverage shall be specifically excess of any indemnity and insurance available from or provided by the **Outside Entity.** Payment by the Insurer or any **Affiliate** under any other insurance policy as a result of such **Claim** shall reduce, by the amount of such payment, the Insurer's Limit of Liability available under this Policy for such **Claim.**

## IV.  EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The Insurer shall not pay **Loss:**

**(A)** for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

**(B)** in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in Item 5 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(C)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, situation or **Wrongful Act** that, before the Inception Date in Item 3 of the Declarations, was the subject of any notice given under any other directors and officers, management liability, or similar insurance policy;

**(D)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(1)** actual or alleged discharge, dispersal, release, or escape of **Pollutants,** or any threat of such discharge, dispersal, release or escape; or

    **(2)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants;**

**(E)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(1)** claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, improper payroll deductions, improper employee classification, failure to maintain accurate time records, claims to grant meal and rest periods, or social security benefits; or

    **(2)** actual or alleged violation of the Fair Labor Standards Act, Equal Pay Act, Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, or any similar law;

**(F)** in connection with any **Claim** based upon, arising from, or in any way related to the rendering of, or failure to render, any professional services for others, including, without limitation, services performed by the **Insureds** for or on behalf of a customer or client;

Exclusions (D), (E) and (F) above shall not apply to the portion of **Loss** directly resulting from: (i) a civil proceeding brought by a security holder of an **Insured Entity,** in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager;** or (ii) a **Derivative Action** or a **Derivative Demand.**

**(G)** in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged violation of **ERISA** or any similar law;

PL009612

(H) in connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:



(1) a civil proceeding by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**;

(2) a Derivative Action or a Derivative Demand;

(**Sarbanes-Oxley Whistle-blowing** alone shall not be deemed solicitation, assistance or participation for purposes of paragraphs (1) and (2) above.)

(3) an **Insured Person Claim** by or on behalf of an **Employee** who is not a past or present **Manager** if such **Claim** is made without the assistance, participation or solicitation of any **Manager**;

(4) an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**;

(5) a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least three years prior to such **Claim** being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the three years prior to such **Claim** being made;

(6) a civil proceeding by or on behalf of an **Insured Person** for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

(7) an **Insured Person Claim** brought and maintained in a jurisdiction outside the United States of America, Canada, Australia or any other common law country (including territories thereof) by a **Manager** due to a pleading requirement of such jurisdiction; or



(8) a civil proceeding by any bankruptcy trustee, examiner, receiver, liquidator or rehabilitator (or any assignee thereof).

(I) of an **Insured Person** based upon, arising from, or in any way related to such **Insured Person's** service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of any entity other than an **Insured Entity** even if such service is at the direction or request of such **Insured Entity**, provided that this exclusion shall not apply to coverage afforded under Section III. of this **Liability Coverage Part** for a **Claim** for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity**;

(J) in connection with any **Claim** by or on behalf of any **Outside Entity** upon which an **Insured Person** is serving or has served in an **Outside Capacity**, or any past or present director, officer, trustee, regent, governor or equivalent executive of such **Outside Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:

(1) a derivative action made on behalf of an **Outside Entity** by any persons who are not:

(a) **Insured Persons**; or

(b) directors, officers, trustees, regents, governors or equivalent executives of the **Outside Entity**,

and who make such **Claim** without the solicitation, assistance or participation of any such persons; or

(2) a civil proceeding brought and maintained by any:

(a) **Insured Persons**; or



(b) directors, officers, trustees, regents, governors or equivalent executives of an **Outside Entity**,

PL009613

for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

(K) in connection with any **Claim** based upon, arising from, or in any way related to any public listing or offering of securities of an **Insured Entity** or the purchase or sale of such securities subsequent to such public listing or offering; provided that this exclusion shall not apply to that portion of **Loss** directly resulting from:

    (1) a **Wrongful Act** in any private placement of an **Insured Entity's** securities exempted from the registration requirements of the Securities Act of 1933; or

    (2) a civil proceeding brought and maintained by any security holders of an **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of such **Insured Entity**;

(L) of an **Insured**, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled if a judgment or other final adjudication establishes that such a gain did occur; or

(M) of an **Insured**, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** under Insuring Agreement (C), if elected, if a past or present chief executive officer, chief financial officer or general counsel of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (L) and (M) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

## V.   EXCLUSIONS APPLICABLE TO INSURING AGREEMENT (C)

(A) The Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

    (1) liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

    (2) employment-related **Wrongful Act**;

    (3) discrimination or sexual harassment;

    (4) false arrest or imprisonment, abuse of process, malicious prosecution, defamation (including libel and slander), invasion of privacy, trespass, nuisance or wrongful entry or eviction, assault, battery or loss of consortium;

    (5) price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities;  provided, however, this exclusion shall not apply to **Defense Costs** incurred to defend such allegations up to a maximum of the lesser of (i) the remaining amount of the applicable limit of liability listed on the Declarations or (ii) $1,000,000;

    In the event that the Defense Outside the Limit of Liability option in Item 5 of the Declarations is selected, **Defense Costs** for all such **Claims** shall be limited to the lesser of (i) the remaining **Defense Costs** available pursuant to Section V.(B) of the COMMON TERMS AND CONDITIONS of this Policy or (ii) $1,000,000.

    (6) infringement, dilution or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark, trade secrets, or other intellectual property; provided, however that this exclusion shall not apply to the portion of **Loss** directly resulting from:



PL009614



**(a)** a civil proceeding brought and maintained by a security holder(s) of an **Insured Entity**, in their capacity as such;

**(b)** a **Derivative Action** or a **Derivative Demand**; or

**(B)** The Insurer shall not pay Loss under Insuring Agreement (C) for any **Claim** based upon, arising from, or in any way related to the actual or alleged payment by an **Insured Entity** of inadequate consideration in connection with an **Insured Entity's** purchase of securities issued by any **Insured Entity**; provided, however, that this exclusion shall not apply to the portion of **Loss** representing **Defense Costs** incurred to defend such allegations.

## VI. ADDITIONAL LIMIT OF LIABILITY FOR CLAIMS AGAINST MANAGERS

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, an additional Limit of Liability of $500,000 shall be available for **Loss** resulting from **Insured Person Claims** against **Managers**, provided that:

**(A)** such **Claims** are covered under Insuring Agreement (A);

**(B)** such additional Limit of Liability shall be excess of all other insurance available to pay **Loss** for such **Claims**, including, without limitation, this Policy and insurance written specifically as excess over this Policy, which such insurance must be exhausted prior to this additional Limit of Liability becoming available to pay **Loss**; and

**(C)** such additional Limit of Liability shall be available for the second covered **Claim** made during the **Policy Period** and all subsequent **Claims**. This Limit of Liability shall not be provided for the first **Claim** made for which coverage is provided under this Policy. The first **Claim** made for which coverage is provided under this Policy shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer for such **Claim**.

The additional Limit of Liability described above shall be the maximum aggregate amount that the Insurer shall pay  for all **Loss** from all **Claims** covered under this provision.

## VII. SECURITIES OFFERINGS

If any public offering of an **Insured Entity's** securities occurs during the **Policy Period** that is not exempt from registration under the Securities Act of 1933, the Insurer shall furnish the **Insureds** with a quote for insurance coverage of such offering, provided that:

**(A)** at least 30 days prior to the effective date of such offering, the **Insureds** shall give the Insurer written notice of such offering together with all information requested by the Insurer;

**(B)** such quote shall be on such terms and conditions, including any additional premium, as the Insurer, in its absolute discretion, chooses;

**(C)** any coverage provided shall be on such forms as are in use by the Insurer for public companies at the time of such offering; and

**(D)** if the **Insureds** choose to cancel this Policy to accept a coverage form offered in such quote, unearned premium for this Policy shall be calculated on a pro rata basis.

## VIII. ORDER OF LOSS PAYMENTS

**(A)** If **Loss** is incurred that is acknowledged by the Insurer to be covered under this **Liability Coverage Part** except that such **Loss** exceeds the remaining available Limit of Liability for this **Liability Coverage Part**, the Insurer shall first pay **Loss** covered under Insuring Agreement (A) prior to paying **Loss** under any other Insuring Agreements.



**(B)** If **Loss** is incurred that is acknowledged by the Insurer to be covered under any Insuring Agreement other than (A), the **Named Entity** shall have the right to direct the Insurer to delay payment of such **Loss** until such time as the **Named Entity** specifies. Any such direction by the **Named Entity** to delay or make payment of **Loss** shall be by written notice to the Insurer. Any such delayed payment of **Loss** shall be available to the Insurer to pay **Loss** covered under Insuring Agreement (A). Any payment of **Loss** under Insuring Agreement (A) out of funds withheld by the Insurer pursuant to this provision shall terminate the Insurer's liability to make a delayed payment of **Loss** under any Insuring Agreement other than (A) by the amount of the payment under Insuring Agreement (A). No interest shall be due regarding any delayed payment of **Loss**. Nothing in this provision shall increase the Insurer's Limit of Liability applicable to this **Liability Coverage Part**.

## IX. RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)** final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)** complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

I.  **INSURING AGREEMENTS**



   **(A)  Employment Practices Liability**

      The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the **Insureds**.

   **(B)  Third Party Liability (Elective)**

      If Third Party Liability Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Third Party Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Third Party Wrongful Act** by the **Insureds**.

      This Insuring Agreement shall be subject to the Third Party Liability Coverage Sublimit of Liability, Retention, and Prior or Pending Date in Item 5 of the Declarations. Such Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**.

II.  **DEFINITIONS**

   The following terms, whether used in the singular or plural, shall have the meanings specified below:

   **(A)  "Benefits"** means perquisites, fringe benefits, deferred compensation and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award).



   **(B)  "Claim"** means any:

      **(1)  Employment Practices Claim**; or

      **(2)  Third Party Claim.**

   **(C)  "Employment Practices Claim"** means any:

      **(1)**  written demand for monetary damages or other civil relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

      **(2)**  civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

      **(3)**  formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

      by or on behalf of an **Employee**, an applicant for employment with an **Insured Entity**, or an **Independent Contractor**.

      **"Employment Practices Claim"** also means an audit conducted by the United States of America Office of Federal Contract Compliance Programs commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief.

      **"Employment Practices Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Employment Practices Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.



PL009617

However, **"Employment Practices Claim"** shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

(D)   **"Employment Practices Wrongful Act"** means a **Wrongful Act** involving any:



(1)   wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

(2)   sexual or other workplace harassment, including quid pro quo and hostile work environment;

(3)   employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

(4)   **Retaliation**;

(5)   breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

(6)   violation of the Family and Medical Leave Act.

**Employment Practices Wrongful Act** shall also mean the following, but only when alleged in addition to or as part of any **Employment Practices Wrongful Act** described above:

(i)   employment-related wrongful infliction of emotional distress;

(ii)   failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

(iii)   negligent retention, supervision, hiring or training; or

(iv)   employment-related: invasion of privacy, defamation, or misrepresentation.

(E)   **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to an **Independent Contractor Agreement.**

(F)   **"Independent Contractor Agreement"** means any express contract or agreement between an **Independent Contractor** and an **Insured Entity** specifying the terms of the **Insured Entity's** engagement of such **Independent Contractor.**

(G)   **"Insured Person"** means any:

(1)   **Employee**;

(2)   **Manager**; or

(3)   regarding Insuring Agreement (A), an **Independent Contractor** provided that within 30 days of an **Employment Practices Claim** having been made against such **Independent Contractor** that the **Insured Entity** agrees in writing to indemnify such **Independent Contractor** for any **Loss** arising out of such **Claim**.

(H)   **"Insureds"** means any:

(1)   **Insured Entity**; or

(2)   **Insured Person.**

PL009618



(I)  "**Loss**" means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including **Defense Costs**, compensatory damages, including front pay and back pay, settlement amounts, pre- and post-judgment interest, and costs awarded pursuant to judgments.

**Loss** also includes punitive and exemplary damages, the multiple portion of any multiplied damage award, and liquidated damages under the Age Discrimination in Employment Act.

However, **Loss** shall not include:

(1)  taxes, fines or penalties imposed by law;

(2)  non-monetary relief;

(3)  **Benefits;**

(4)  future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim;**

(5)  **Stock Benefits;**

(6)  costs associated with providing any accommodations required by the Americans with Disabilities Act or any similar law;

(7)  any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

(J)  "**Retaliation**" means adverse treatment of an **Employee** or **Independent Contractor** based upon such person:

(1)  exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, **ERISA**, or the Americans with Disabilities Act;

(2)  refusing to violate any law;

(3)  assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any **Insured;**

(4)  disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency; or

(5)  filing any "whistle blower" claim against any **Insured** under the federal False Claims Act, the Sarbanes-Oxley Act of 2002, or any similar law.

(K)  "**Stock Benefits**" means any offering, plan or agreement between an **Insured Entity** and any **Employee** that grants stock, stock options or stock appreciation rights in the **Insured Entity** to such person, including, without limitation, restricted stock or any other stock grant. **Stock Benefits** shall not include employee stock ownership plans or employee stock purchase plans.

(L)  "**Third Party**" means any natural person who is a customer, vendor, service provider or other business invitee of an **Insured Entity**. **Third Party** shall not include **Employees**.

(M)  "**Third Party Claim**" means any:

(1)  written demand for monetary damages or other civil relief commenced by the receipt of such demand;

(2)  civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

PL009619

(3)   formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;



by or on behalf of a **Third Party**.

"**Third Party Claim**" also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Third Party Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

(N)   "**Third Party Wrongful Act**" means a **Wrongful Act** involving any:

(1)   discrimination against a **Third Party** based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state or local law; or

(2)   sexual harassment against a **Third Party**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature.

(O)   "**Wrongful Act**" means any actual or alleged:

(1)   error, misstatement, misleading statement, act, omission, neglect or breach of duty; or

(2)   matter claimed against an **Insured Person** solely by reason of their serving in such capacity.

## III.   EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

(A)   The Insurer shall not pay **Loss**:



(1)   for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for injury to or destruction of any tangible property including loss of use or diminution of value thereof;

(2)   for any actual or alleged **Wrongful Act** by **Insured Persons** of any **Subsidiary** in their capacities as such, or by any **Subsidiary**, if such **Wrongful Act** actually or allegedly occurred when such entity was not a **Subsidiary**;

(3)   in connection with any **Claim** based upon, arising from, or in any way related to any:

(a)   prior or pending demand, suit, or proceeding against any **Insured** as of; or

(b)   audit initiated by the Office of Federal Contract Compliance Programs before

the applicable Prior or Pending Date in Item 5 of the Declarations, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit;

(4)   in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, or situation that, before the inception date in Item 3 of the Declarations, was the subject of any notice given under any other employment practices liability policy, management liability policy or other insurance policy which insures **Wrongful Acts** covered under this Policy;

(5)   in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed by an **Insured** under any contract or agreement; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract or agreement;

(6)   for breach of any **Independent Contractor Agreement**; or



(7)   for a lockout, strike, picket line, hiring of replacement workers or similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

PL009620

**(B)** The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to:



   **(1)** any claims for actual or alleged unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, improper payroll deductions, improper employee classification, failure to maintain accurate time records, failure to grant meal and rest periods, or social security benefits; or

   **(2)** any actual or alleged violation of the Fair Labor Standards Act (except for Equal Pay Act), Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, **ERISA**, or any similar law;

   Provided that this exclusion (B) shall not apply to that portion of **Loss** that represents a specific amount the **Insureds** become legally obligated to pay solely for a **Wrongful Act of Retaliation.**

**(C)** The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract; provided, however, that this exclusion shall not apply to the portion of **Loss** representing **Defense Costs** incurred to defend against such liability.

## IV.   EXCLUSIONS APPLICABLE TO INSURING AGREEMENT (B)

Solely with respect to Insuring Agreement (B), the Insurer shall not pay **Loss** in connection with any **Third Party Claim** based upon, arising from or in any way related to any price discrimination or violation of any anti-trust law or any similar law designed to protect competition or prevent unfair trade practices.

## V.   OTHER INSURANCE



**(A)** The coverage provided under this Policy for any **Employment Practices Claim** shall be primary.

**(B)** Notwithstanding the above, the coverage provided under this Policy for any **Employment Practices Claim** made against a temporary, leased or loaned **Employee** or an **Independent Contractor** shall be excess of the amount of any deductible, retention and limits of liability under any other policy or policies applicable to such **Claim**, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## VI.   CHANGES IN EXPOSURE

**(A)** This section shall supplement, and not replace, Common Terms and Conditions Section XIV. Changes in Exposure.

**(B)** In addition to the asset percentage size limit for automatic coverage of any newly merged or acquired entity specified in Common Terms and Conditions Section XIV. Changes in Exposure (A), if the number of employees of a newly merged or acquired entity exceeds 25% of the number of employees of all **Insured Entities** combined prior to such merger or acquisition, the **Insureds** shall give the Insurer full details of the transaction in writing as soon as practicable and the Insurer shall be entitled to impose such additional terms, conditions, and premium as the Insurer, in its absolute discretion, chooses. There shall be no coverage for any newly merged or acquired entity or any of its subsidiaries, managers, directors, officers, or employees unless the **Insureds** comply with the terms of this provision.

## VII.   RETENTION WAIVER

Regarding a **Claim** that is a class action civil proceeding, no Retention shall apply to **Defense Costs** incurred in connection with such **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

PL009621

**(A)**   final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)**   complete and final settlement with prejudice;



establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

**VIII.   COORDINATION OF COVERAGE**

If this **Liability Coverage Part** and either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part are included under this Policy, and a **Claim** is covered under this **Liability Coverage Part** and any such other **Liability Coverage Part**, **Loss** shall be first covered and paid under this **Liability Coverage Part**.

If notice of a **Claim** has been given under either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part and a determination is made by the Insurer that such **Claim** would be covered under this **Liability Coverage Part** if notice had been given under this **Liability Coverage Part**, then the **Insureds** shall be deemed to have given notice of such **Claim** under this **Liability Coverage Part** at the same time that notice was given under such other **Liability Coverage Part**.



PL009622

# FIDUCIARY LIABILITY COVERAGE PART

I.   **INSURING AGREEMENTS**

**(A)   Fiduciary Liability**

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Fiduciary Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds** or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible.

**(B)   Settlement Programs (Elective)**

If Settlement Program Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Settlement Fees** on behalf of the **Insureds** resulting from a **Settlement Program** for which a **Settlement Program Notice** is received by the Insurer during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds**.

This Insuring Agreement shall be subject to a Sublimit of Liability of $100,000. Such a Sublimit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sublimit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**. This Insuring Agreement shall also be subject to the Settlement Program Coverage Retention and Prior or Pending Date in Item 5 of the Declarations.

II.   **DEFINITIONS**

The following terms, whether used in the singular or plural, shall have the meanings specified below:

**(A)   "Claim"** means any:

**(1)   Fiduciary Claim**; or

**(2)   Settlement Program Notice**.

**(B)   "Employee Stock Ownership Plan"** means any **Insured Plan** that invests more than 10% of its assets in securities of **Insured Entities**.

**(C)   "Fiduciary Claim"** means any:

**(1)**   written demand for monetary damages or other civil relief commenced by the receipt of such demand;

**(2)**   civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

**(3)**   criminal proceeding commenced by the return of an indictment; or

**(4)**   formal administrative or regulatory proceeding commenced by the filing or service of a notice of charges, formal investigative order or similar document, including an investigation by the Department of Labor or Pension Benefit Guaranty Corporation.

**"Fiduciary Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Fiduciary Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

**(D)   "Insured Person"** means any:

**(1)   Manager**;

PL009623

(2) **Employee**; or

(3) past or present natural person trustee of an **Insured Plan** while in such person's capacity as a trustee, which shall also include the functional equivalent of a trustee while serving in such a position outside of the United States of America.

(E) **"Insured Plan"** means any past, present, or future:

(1) employee welfare benefit plan or employee pension benefit plan, as defined in **ERISA**, sponsored solely by an **Insured Entity**, or jointly by an **Insured Entity** and a labor organization, for the benefit of **Employees** only;

(2) employee benefit plan, including an excess benefit plan, not subject to Title 1 of **ERISA**, sponsored solely by an **Insured Entity** for the benefit of **Employees** only;

(3) government-mandated insurance program for unemployment, social security or disability benefits for **Employees** other than workers compensation; or

(4) any other plan, fund, or program specifically included as an **Insured Plan** in a written endorsement issued by the Insurer to form a part of this Policy.

Notwithstanding the above, an **Insured Plan** shall not include any:

i.   **Employee Stock Ownership Plan**; or

ii.  any multi-employer plan.

(F) **"Insured(s)"** means any:

(1) **Insured Entity**;

(2) **Insured Person**; or

(3) **Insured Plan.**

(G) **"Loss"** means the amount that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including **Defense Costs**, compensatory damages, settlement amounts, pre- and post-judgment interest, and costs awarded pursuant to judgments.

**Loss** also includes punitive and exemplary damages and the multiple portion of any multiplied damage award where insurable by law.

However, **Loss** shall not include:

(1) taxes, fines or penalties imposed by law; provided, however, the foregoing shall not apply to:

(a) **Settlement Fees,** provided that Settlement Program Coverage is elected;

(b) civil penalties of up to 5% imposed upon the **Insureds** pursuant to **ERISA** Section 502(i) or up to 20% imposed pursuant to **ERISA** Section 502(l); or

(c) civil penalties imposed upon the **Insureds** under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Coverage for such civil penalties referred to in this subparagraph (G)(1)(c) is conditioned upon the following: (i) payment of such **Loss** shall be subject to the sub-limit of liability specified in Item 5 of the Declarations and (ii) such sub-limit of liability shall be part of, and not in addition to, the Aggregate Limit of Liability for this **Liability Coverage Part** shown on the Declarations;

PL009624

**(2)** non-monetary relief; and

**(3)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive, exemplary, multiple or liquidated damages, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

**(H)** **"Settlement Fees"** mean any fees, penalties or sanctions imposed by law under a **Settlement Program** that any **Insureds** become legally obligated to pay as a result of a **Wrongful Act**. **Settlement Fees** shall not include costs of corrections, other than fees or penalties.

**(I)** **"Settlement Program"** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States of America Internal Revenue Service or any other governmental body that is entered into by an **Insured Entity**.

**(J)** **"Settlement Program Notice"** means a prior written notice to the Insurer by any **Insured Entity** of its intent to enter into a **Settlement Program** that includes a detailed description of the **Wrongful Act** for which notice will be given under the **Settlement Program**.

**(K)** **"Wrongful Act"** means any actual or alleged:

**(1)** error, misstatement, misleading statement, act, omission, neglect or breach of duty constituting a violation of any responsibilities, obligations or duties imposed upon fiduciaries of an **Insured Plan** by ERISA or any similar law;

**(2)** breach of the responsibilities, obligations or duties imposed upon an **Insured** by HIPAA in connection with an **Insured Plan**;

**(3)** error, misstatement, misleading statement, act, omission, neglect or breach of duty in counseling, providing interpretations, handling records, or effecting enrollment, termination or cancellation of **Employees**, participants, or beneficiaries under an **Insured Plan**; or

**(4)** matter claimed against an **Insured** solely due to such **Insured** acting in the capacity of a fiduciary of an **Insured Plan**.

## III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss**:

**(1)** for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

**(2)** in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in Item 5 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(3)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance or situation that, before the Inception Date in Item 3 of the Declarations, was the subject of any notice given under any other insurance policy;

**(4)** in connection with any **Claim** based upon, arising from, or in any way related to any:

**(a)** discharge, dispersal, release, or escape of **Pollutants**, or any threat of such discharge, dispersal, release or escape; or

**(b)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

42 KB 0256935-15     5/01/15

PL009625

(5) in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed under any contract or agreement, provided that this exclusion shall not apply to liability:

    (a) that would have been incurred in the absence of such contract or agreement; or

    (b) assumed under any agreement or declaration of trust under which any **Insured Plan** was established;

(6) in connection with any **Claim** based upon, arising from, or in any way related to any:

    (a) claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or failure to grant meal and rest periods; or

    (b) actual or alleged violation of the Fair Labor Standards Act, Equal Pay Act, Worker Adjustment and Retraining Notification Act, or any rule or regulation promulgated thereunder, or similar federal, state, local or common laws, rules or regulations;

(7) of an **Insured** based upon, arising from, or in any way related to the gaining, in fact, of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled; or

(8) of an **Insured** based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** if a past or present chief executive officer, chief financial officer or general counsel of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (7) and (8) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

(B) Other than that portion of **Loss** that represents **Defense Costs** incurred to defend the following allegations or demands, the Insurer shall not pay **Loss** for any **Claim**:

(1) for the actual or alleged failure to pay benefits pursuant to any **Insured Plan**, provided that this exclusion shall not apply to the extent that recovery of such benefits is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**;

(2) based upon, arising from, or in any way related to the actual or alleged failure to fund, or collect contributions owed to, an **Insured Plan**; or

(3) for return or reversion of any contributions or assets to an **Insured Entity** from an **Insured Plan**.

## IV. WAIVER OF RECOURSE

The Insurer shall have no right of recourse against any **Insureds** for any payment of **Loss** made by the Insurer under this **Liability Coverage Part** because of a **Wrongful Act** by such **Insureds** if the premium for this Policy was paid for by other than an **Insured Plan**.

## V. CHANGES IN EXPOSURE

(A) This Section shall supplement, and not replace, Common Terms and Conditions Section XIV. Changes in Exposure.

(B) The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (A) Mergers and New Subsidiaries shall also apply to any employee benefit plan of any newly merged or acquired entity and to any trustee of such plan to the extent that such plan and trustee would otherwise qualify as **Insureds** under this Policy. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before the merger or acquisition of the entity or for any **Interrelated Wrongful Acts** thereto.

PL009626

(C)  The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (C) Loss of Subsidiary Status shall also apply to any **Insured Plan** of a former **Subsidiary** and any trustee of such plan. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after an entity ceases to be a **Subsidiary**.

## TERMINATED PLAN COVERAGE

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, coverage shall be afforded for **Loss** resulting from any **Claim** against the **Insureds** for a **Wrongful Act** involving any **Insured Plan** terminated by an **Insured Entity**, including post-termination **Wrongful Acts**.

## VII.  RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)**  final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)**  complete and final settlement with prejudice,

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.



PE 00 H015 03 0608                              © 2008, The Hartford                              Page 5 of 5

   42 KB 0256935-15      5/01/15

PL009627

## CRIME COVERAGE PART

### I.   INSURING AGREEMENTS

Coverage for the **Insureds'** loss is provided under the following Insuring Agreements for which there is a Limit of Insurance shown in the Declarations.

#### (A)  INSURING AGREEMENT 1. - EMPLOYEE THEFT

The Insurer will pay for loss of or damage to **Money**, **Securities** and **Other Property** that results directly from **Theft** by an **Employee**, whether or not identifiable, while acting alone or in collusion with other persons.

#### (B)  INSURING AGREEMENT 2. - DEPOSITORS FORGERY OR ALTERATION

**(1)** The Insurer will pay for loss resulting directly from **Forgery** or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **Money** that are:

    **(a)** made or drawn upon an **Insured**; or

    **(b)** made or drawn by one acting as an **Insured's** agent and drawn on an **Insured's** account or that are purported to have been so made or drawn.

**(2)** The Insurer will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**(3)** If an **Insured** is sued for refusing to pay any instrument in B.1. above, on the basis that it has been forged or altered and the **Insured** has the Insurer's written consent to defend against that suit, the Insurer will pay for any reasonable legal expenses that **Insured** incurs and pays in such defense. The amount that the Insurer will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement. If a Retention Amount applies to this Insuring Agreement, the Insurer will also apply it to the amount of legal expenses incurred in this Insuring Agreement.

**(4)** The **Insured** must include with its proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss and describing both sides of said instrument.

#### (C)  INSURING AGREEMENT 3. – INSIDE THE PREMISES - *Money, Securities and Other Property*

**(1)** The Insurer will pay for loss of **Money** and **Securities** inside the **Premises** or **Banking Premises** resulting directly from **Theft**, disappearance or destruction.

**(2)** The Insurer will pay for loss of or damage to **Other Property**:

    **(a)** inside the **Premises** resulting directly from an actual or attempted **Robbery** of a **Custodian**; or

    **(b)** inside the **Premises** in a safe or vault resulting directly from an actual or attempted **Safe Burglary**.

**(3)** The Insurer will pay for loss from damage to the **Premises** or its exterior resulting from an actual or attempted:

    **(a)** **Theft of Money or Securities**; or

    **(b)** **Robbery or Safe Burglary of Other Property**;

if an **Insured** is the owner of the **Premises** or is liable for damage to it.



42 KB 0256935-15    5/01/15

PL009628

**(4)** The Insurer will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft** or unlawful entry into those containers.

**(D)** **INSURING AGREEMENT 4. – OUTSIDE THE PREMISES** - *Money, Securities and Other Property*

**(1)** The Insurer will pay for loss of **Money** and **Securities** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from **Theft**, disappearance or destruction.

**(2)** The Insurer will pay for loss of or damage to **Other Property** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from an actual or attempted **Robbery**.

**(E)** **INSURING AGREEMENT 5. – COMPUTER AND FUNDS TRANSFER FRAUD**

The Insurer will pay for loss of and loss from damage to **Money**, **Securities** and **Other Property** following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises:**

**(1)** to a person (other than a **Messenger**) outside those **Premises**; or

**(2)** to a place outside those **Premises**.

And, the Insurer will pay for loss of **Money** or **Securities** through **Funds Transfer Fraud** resulting directly from **Fraudulent Transfer Instructions** communicated to a **Financial Institution** and instructing such institution to pay, deliver, or transfer **Money** or **Securities** from an **Insured's Transfer Account**.

**(F)** **INSURING AGREEMENT 6. – MONEY ORDERS AND COUNTERFEIT CURRENCY**



The Insurer will pay for loss resulting directly from an **Insured's** having accepted in good faith and in the regular course of business, in exchange for merchandise, **Money** or services;

**(1)** money orders issued by any post office, express company or bank in the United States of America or Canada that are not paid upon presentation; and

**(2)** **Counterfeit** currency of the United States of America, Canada, or any other country in which an **Insured** maintains physical premises.

Unless otherwise shown in the Declarations for this **Non-Liability Coverage Part**, the Limit of Insurance under this insuring agreement is $50,000. There is no retention applying to loss covered under this agreement unless otherwise shown in the Declarations for this **Non-Liability Coverage Part**.

## II.   LIMIT OF INSURANCE

The most that the Insurer will pay for loss in any one **Occurrence** is the applicable Limit of Insurance shown in the Declarations.

## III.   RETENTION

The Insurer will not pay for loss in any one **Occurrence** unless the amount of the loss exceeds the Retention Amount shown in the Declarations. The Insurer will then pay the amount of loss in excess of the Retention Amount, up to the Limit of Insurance. In the event that more than one Retention Amount could apply to the same loss, only the highest Retention Amount will be applied.

## IV.   DEFINITIONS

**(A)** **"Banking Premises"** means the interior portion of that part of any building occupied by a banking institution or similar safe depository.

PE 00 H118 02 0507                          © 2007, The Hartford                          Page 2 of 13

42 KB 0256935-15    5/01/15

PL009629

(B) **"Counterfeit"** means an imitation of an actual valid original that is intended to deceive and to be taken as an original.

(C) **"Custodian"** means an **Insured**, or any of the **Insureds'** partners, or members or any **Employee** while having the care and custody of property inside the **Premises**, excluding any person while acting as a **Watchperson** or janitor.

(D) **"Employee"** means:

    (1) a natural person:

        (a) while in any **Insured's** service or for 60 days after termination of such service; and

        (b) whom the **Insured** compensates directly by salary, wages, commissions; and

        (c) whom the **Insured** has the right to direct and control while performing services for it;

    (2) a natural person who is:

        (a) a trustee, officer, employee, administrator or manager of any **Employee Benefit Plan(s)** insured under this **Non-Liability Coverage Part**; or

        (b) an **Insured's** director or trustee while that person is handling **Money** or **Securities** or **Other Property** of **Employee Benefit Plan(s)** insured under this **Non-Liability Coverage Part**;

    (3) a natural person who is a director or trustee of an **Insured** while performing acts coming within the scope of the usual duties of an **Employee** or while acting as a member of any of an **Insured's** elected or appointed committees to perform on an **Insured's** behalf, as distinguished from general directorial acts;

    (4) a natural person who is furnished temporarily to an **Insured** by a temporary employment service firm to substitute for a permanent **Employee** as defined in sub-paragraph (1) above, who is on leave, or to meet seasonal or short-term work load conditions and who such **Insured** has the right to direct and control while performing services for such **Insured**; provided, however, such persons are excluded while having care and custody of property outside the **Premises**.

    (5) a natural person who is leased to an **Insured** under a written agreement between such **Insured** and a labor leasing firm, to perform duties related to the conduct of such **Insured's** business;

    (6) a natural person who is a former **Employee** while retained as a consultant for an **Insured**;

    (7) a natural person who is a non-compensated officer of an **Insured**;

    (8) a natural person who is a volunteer of an **Insured** who is not compensated, other than one who is a fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee**;

    (9) a natural person who is a former employee, director, partner, member or trustee of an **Insured** retained as a consultant while performing services for the **Insured**;

    (10) a natural person who is a guest student or intern of an **Insured** while pursuing studies or duties with the guidance or direction of such **Insured**; or

    (11) a natural person who is an **Insured's** partner or limited liability member, but the Insurer will not pay for loss caused by any partner or limited liability member, unless the amount of the loss exceeds the sum of:

        (a) any amounts an **Insured** owes that partner or limited liability member; and

        (b) the value of that partner's partnership interest, or that limited liability member's ownership interest determined by the closing of the **Insured's** organization's books on the date of discovery of the loss by the **Insured's** organization by anyone not in collusion with the person causing the loss, and

PE 00 H118 02 0507             © 2007, The Hartford             Page 3 of 13

42 KB 0256935-15     5/01/15

(c) any applicable Retention Amount; then the Insurer will pay the amount of loss excess of that sum, up to the Limit of Insurance applicable to Insuring Agreement 1.



However, **Employee** does not mean any agent, broker, factor, commission merchant, consignee, or representative of the same general character, nor any independent contractor (other than those specified in (6) and (9) above).

(E) **"Employee Benefit Plan(s)"** means any welfare or pension plan(s) as defined in **ERISA** and which is sponsored by one or more of the **Insureds**.

(F) **"Financial Institution"** means a bank, savings bank, savings and loan association or similar thrift institution, a stockbroker, mutual fund, liquid assets fund, or similar investment institution in which an **Insured** maintains a **Transfer Account**.

(G) **"Forgery"** means the signing of the name of another person or organization with intent to deceive; provided, however, that it does not mean a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity, for any reason.

(H) "**Fraudulent Transfer Instructions**" means:

(1) fraudulent electronic, telegraphic, facsimile, cable, teletype or telephone instructions to a **Financial Institution** to debit a **Transfer Account** and to pay, transfer or deliver **Money** or **Securities** from such account and which instructions purport to have been authorized by an **Insured** but which have been fraudulently transmitted by another; or

(2) fraudulent written instructions to a **Financial Institution** to debit a **Transfer Account** and to pay, transfer or deliver **Money** or **Securities** from such account through an electronic funds transfer system at specified times or under specified conditions and which instructions purport to have been duly authorized by an **Insured** but which have been fraudulently issued, forged or altered by another.

(I) **"Funds Transfer Fraud"** means **Theft** of **Money** or **Securities** from any of the **Insureds' Transfer Accounts** at a **Financial Institution** and occurring through **Fraudulent Transfer Instructions** communicated to such **Financial Institution**.



(J) "**Insured(s)**" shall mean any **Insured Entity**.

(K) **"Investigative Expenses"** means reasonable expenses incurred and paid by an **Insured** in establishing the existence and amount of any direct loss covered under an Insuring Agreement within this **Non-Liability Coverage Part**. The reasonableness of such expenses shall be determined by the Insurer and shall not include any **Insured's** internal corporate obligations such as **Employee** wages or any other internal costs.

(L) "**Messenger**" means an **Insured**, any of the **Insured's** partners or members or any **Employee** while having care and custody of property outside the **Premises**.

(M) **"Money"** means currency, coins and bank notes in current use and having a face value; and travelers checks, register checks and money orders held for sale to the general public.

(N) "**Occurrence**" means

(1) as respects the Employee Theft Insuring Agreement, all loss caused by, or involving, one or more **Employees**, whether the result of a single act or a series of acts.

(2) as respects the Forgery or Alteration Insuring Agreement, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

(3) as respects all other Insuring Agreements, an act or series of related acts involving one or more persons; or an act or event or a series of related acts or events not involving any person.



42 KB 0256935-15     5/01/15

PL009631

(O) **"Other Property"** or property means any tangible property other than **Money** or **Securities** that has intrinsic value but does not include any property excluded under this **Non-Liability Coverage Part**. **Other Property** does not include trade secrets, proprietary information, confidential information or any copyrights, patents, trademarks, proprietary manufacturing or processing procedures, or secret or confidential information, including but not limited to credit card numbers, bank account numbers or any similar information.

(P) **"Premises"** means the interior of that portion of any building that an **Insured** occupies in conducting its business.

(Q) **"Robbery"** means the unlawful taking of property from the care and custody of a person, by one who has caused or threatened to cause that person bodily harm or committed an obviously unlawful act witnessed by that person, to the deprivation of an **Insured**.

(R) **"Safe Burglary"** means the unlawful taking of property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior, or, the taking of a safe or vault from inside the **Premises**.

(S) **"Securities"** means negotiable or non-negotiable instruments or contracts representing either **Money** or property and includes tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use and evidences of debt issued in connection with credit or charge cards, which cards are not issued by an **Insured**. However, **securities** do not include **Money**.

(T) **"Theft"** means the unlawful taking of **Money**, **Securities** or **Other Property** to the deprivation of an **Insured**.

(U) **"Transfer Account"** means an account maintained by an **Insured** at a **Financial Institution** from which the **Insured** or its authorized representative may cause the payment, transfer or delivery of **Money** or **Securities** by any means described in the **Fraudulent Transfer Instructions** definition.

(V) **"Watchperson"** means any person whom an **Insured** retains specifically to have the care and custody of property inside the **Premises** and who has no other duties.

**EXCLUSIONS** *(Applying To All Insuring Agreements Unless Otherwise Specified)*

**This Coverage Part Does Not Apply To And The Insurer Will Not Pay For:**

(A) **Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

(B) **Acts Committed By The Insured's Partners**

Loss resulting from **Theft**, or **Forgery** committed by any partner of an **Insured** whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would otherwise be covered under INSURING AGREEMENTS 1 or 2, this exclusion shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Insured**, on the day immediately preceding the date of discovery, multiplied by such **Insured's** total assets as reflected in such **Insured's** most recent audited financial statements;

(C) **Acts of Employees, Managers, Directors or Trustees**

Loss resulting from **Theft** or any other dishonest or criminal act committed by any of the **Insureds' Employees**, managers, directors or trustees whether acting alone or in collusion with other persons or while performing services for any **Insured** or otherwise, except when covered under Insuring Agreement 1.

(D) **Employee Cancelled Under Prior Insurance**

Loss caused by any of any **Insured's Employees** or by any **Employee** of any **Insured's** predecessor in interest, for whom similar prior insurance has been cancelled and not reinstated since the last cancellation.

PL009632

**(E)  Exchanges or Purchases**

Loss resulting from the giving or surrendering of **Money**, **Securities** or **Other Property** in any exchange or purchase.

**(F)  Fire**

Loss from damage to the premises resulting from fire, however caused, except for loss of or damage to **Money** or **Securities** and loss from damage to a safe or vault under Insuring Agreement 3.

**(G)  Governmental Action**

Loss resulting from seizure or destruction of **Money**, **Securities** or **Other Property** by order of governmental authority.

**(H)  Indirect Loss**

Loss that is an indirect result of any act or **Occurrence** covered by this **Non-Liability Coverage Part** including but not limited to loss resulting from:

**(1)**  any **Insured's** inability to realize income that it would have realized had there been no loss of or damage to **Money, Securities** or **Other Property**.

**(2)**  payment of damages of any type for which any **Insured** is legally liable; provided, however, that the Insurer will pay compensatory damages arising directly from a loss covered under this **Non-Liability Coverage Part**.

**(3)**  payment of costs, fees or other expenses any **Insured** incurs in establishing either the existence of or the amount of loss under this **Non-Liability Coverage Part**, provided, however, that:

  **(a)**  the Insurer will reimburse the **Insured** for **Investigative Expenses** up to $5,000 (Five Thousand Dollars) it incurs per **Occurrence** subject to the Insurer's determination that such **Investigative Expenses** were reasonable and incurred in establishing either the existence or amount of such loss covered under this **Non-Liability Coverage Part**; and

**(b)**  the amount of direct covered loss exceeds the Retention Amount for the applicable Insuring Agreement.

Such reimbursement is part of, and not in addition to, the Limit of Insurance for the applicable Insuring Agreement.

**(I)  Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon

**(1)**  an inventory computation; or

**(2)**  a profit and loss computation.

However, where the **Insured** establishes wholly apart from such inventory computations that it has sustained a loss covered under this **Non-Liability Coverage Part**, then the **Insured** may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed.

**J)  Legal Expenses**

Expenses related to any legal action; provided however that this shall not apply to expenses covered under Insuring Agreement 2 that meet the following conditions precedent: The **Insured** shall immediately notify the Insurer of any claim or suit generating such expenses and shall not settle such claim or suit, or incur any related costs or expenses, without the Insurer's prior written authorization, nor shall the **Insured** admit liability in any

PL009633



such claim or suit. The Insurer shall have no duty to defend any such claim or suit, but shall have the right to investigate, negotiate or settle any such claim or suit or to take over the conduct of the defense thereof. Moreover, if, in the Insurer's discretion, the Insurer advances payments for such suit, the Insurer may require a written undertaking, on its terms and conditions, guaranteeing the repayment of any expenses it pays that are determined to be not covered hereunder.

**(K)  Money Operated Devices**

Loss of **Money** contained in any money operated device unless a continuous recording instrument in the device records the amount of any **Money** deposited in it.

**(L)  Motor Vehicles or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers, or semi-trailers or equipment or accessories attached to them. This exclusion shall apply only to Insuring Agreement 4.

**(M)  Nuclear**

Loss resulting directly or indirectly from:

**(1)**  discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

**(2)**  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation

**(N)  Risks Inherent in Insurance Operations**

Loss resulting directly or indirectly from contractual or extra contractual liability sustained by any **Insured** in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

**(O)  Trading Losses**

Loss resulting directly or indirectly from any authorized or unauthorized trading of **Money, Securities** or **Other Property**, whether in any **Insured's** name or in a genuine or fictitious account.

**(P)  Transfer or Surrender of Property**

Loss of or damage to **Money, Securities** or **Other Property** after it has been transferred or surrendered to a person or place outside the **Premises** or **Banking Premises**

**(1)**  on the basis of unauthorized instructions, unless covered under Insuring Agreement 5.; or

**(2)**  as a result of a threat to do bodily harm to any person; or

**(3)**  as a result of a threat to do damage to any property.

But this Exclusion does not apply under Insuring Agreement 4. to loss of **Money, Securities** and **Other Property** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** if the **Insured**:

**(a)**  had no knowledge of any threat at the time that the conveyance began; or

**(b)**  had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**(Q)  Vandalism**

Loss from damages to the **Premises** or to the exterior of any safe, vault, cash box, cash drawer or cash register by vandalism or mischief.

42  KB  0256935-15      5/01/15

PL009634

**(R) Voluntary Parting of Title To or Possession of Property**

Loss resulting from any **Insured**, or anyone acting on its express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property. This exclusion shall apply only to Insuring Agreements 3. and 4.



**(S) War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion, or revolution, or any related act or incident.

**(T) Warehouse Receipts Losses**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

## VI. GENERAL CONDITIONS

**(A) ARMORED MOTOR VEHICLE COMPANIES**

Under Insuring Agreement 4. the Insurer will pay only for the amount of loss the **Insured** cannot recover:

**(1)** under its contract with the armored motor vehicle company; and

**(2)** from any insurance or indemnity carried by or for the benefit of customers of the armored motor vehicle company, or from the armored motor vehicle company.

**(B) CANCELLATION AS TO ANY EMPLOYEE**

Insuring Agreement 1. is cancelled as to any **Employee**:



**(1)** immediately upon discovery by a member of the Risk Management Department or any officer, manager, or supervisor of an **Insured's** not in collusion with the **Employee** of **Theft** or any dishonest act in excess of $1,000 committed by the **Employee** whether before or after becoming employed by the **Insured**; or

**(2)** on the date specified in a notice mailed to an **Insured**. The date will be at least 30 days after the date of the mailing. The mailing of notice to the **Insured** at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**(C) CONCEALMENT, MISREPRESENTATION OR FRAUD**

This **Non-Liability Coverage Part** is void in any case of fraud by any **Insured** as it relates to this **Non-Liability Coverage Part** at any time. It is also void if any **Insured** at any time intentionally conceals or misrepresents a material fact, whether in the **Application** or otherwise, concerning:

**(1)** this **Non-Liability Coverage Part**;

**(2)** the property covered under this **Non-Liability Coverage Part**;

**(3)** any **Insured's** interest in the property covered under this **Non-Liability Coverage Part**; or

**(4)** a loss under this **Non-Liability Coverage Part**.

**(D) CONSOLIDATION OR MERGER**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become **Employees** or an **Insured** acquires the use and control of any additional **Premises**:

42 KB 0256935-15      5/01/15

PL009635

(1) an **Insured** must give us written notice within 90 days after the effective date of such consolidation or merger, or purchase or acquisition of assets or liabilities, and obtain the Insurer's written consent to extend this insurance to such additional **Employees** or **Premises**. The Insurer may condition its consent upon payment of an additional premium; but there shall only be a premium charge if such merger or acquisition results in a 15%, or greater, increase in the number of **Employees**, assets or revenues acquired through the merger or acquisition.

(2) For the first 90 days after the effective date of such consolidation or merger, or purchase or acquisition of assets or liabilities, any insurance afforded for **Employees** or **Premises** also applies to these additional **Employees** or **Premises** for acts committed within this 90-day period.

(E) **DISCOVERY**

(1) The Insurer will pay for loss which an **Insured** sustains through acts or events committed or occurring at any time and which are discovered by the **Insured** during the **Policy Period** or during the period provided in General Condition G. DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS.

(2) Discovery of loss occurs when a member of the Risk Management Department or any officer, manager, or supervisor of an **Insured's** first becomes aware of facts which would cause a reasonable person to assume that a loss covered by this **Non-Liability Coverage Part** has been, or may be incurred even though the exact amount or details of the loss may not then be known.

(3) Discovery also occurs when an **Insured** receives notice of an actual or potential claim against it alleging facts, which if true, would constitute a covered loss under this policy.

(4) No coverage will be available under this **Non-Liability Coverage Part** for any loss of which an **Insured** was aware prior to the inception date of this **Non-Liability Coverage Part**.

(F) **DISCOVERY SUPERSEDING LOSS SUSTAINED COVERAGE – LIABILITY FOR PRIOR LOSSES**

(1) If this **Non-Liability Coverage Part** has replaced similar prior insurance written by a company other than the Insurer, and such other insurance provided a period of time to discover loss occurring prior to the termination or cancellation of that coverage, and a loss is discovered within the period provided by prior insurance to discover losses, the Insurer will not pay for such loss unless the amount exceeds the Limit of Insurance under said prior Policy. The Insurer will then only pay the **Insured** for any excess loss subject to the Insuring Agreements, Exclusions and General Conditions of this **Non-Liability Coverage Part**.

(2) Any payment that the Insurer makes to an **Insured** under this insurance shall not exceed the difference between the amount of insurance under the **Insured's** prior Policy and the Limit of Insurance shown in the Declarations and the Insurer will not apply its Retention Amount to any excess loss payment.

(G) **DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS**

The Insurer will pay for loss that an **Insured** sustained prior to the effective date of termination or cancellation of this **Non-Liability Coverage Part**, which is discovered by the **Insured**:

(1) no later than 60 days from the date of the termination, cancellation or non-renewal; and

(2) as respects any **Employee Benefit Plan(s)**, no later than 1 year from the date of that termination, cancellation or non-renewal.

However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by the **Insured** to replace, in whole or in part, the insurance afforded by this **Non-Liability Coverage Part**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(H) **DUTIES IN THE EVENT OF LOSS**



PE 00 H118 02 0507 · · · · · · · · · · · · · © 2007, The Hartford · · · · · · · · · · · · · Page 9 of 13

42  KB  0256935-15 · · · · 5/01/15

PL009636

After a member of the Risk Management Department or an officer, manager or supervisor of an **Insured's** discovers a loss or a situation which may result in a loss of or damage to **Money, Securities** or **Other Property**, the Risk Management Department member or officer, manager or supervisor must:



**(1)**  notify the Insurer as soon as possible but no later than 90 days after discovery of loss;

**(2)**  submit to an examination under oath at the Insurer's request and give it a signed statement;

**(3)**  give the Insurer a detailed, sworn proof of loss within 120 days;

**(4)**  cooperate with the Insurer in the investigation and settlement of any claim; and

**(5)**  with respect to Insuring Agreements 3. and 4., notify the police if an **Insured** has reason to believe that its loss involves a violation of the law.

**(I)  EMPLOYEE BENEFIT PLANS PROVISION**

**(1)**  The Insurer will pay for loss of or damage to **Money, Securities** or **Other Property** of any **Employee Benefit Plan(s)** sponsored exclusively by any **Insured** resulting directly from **Theft** by an **Employee**. The Limit of Insurance applicable to any **Employee Benefit Plan** shall equal the lesser of ten percent (10%) of the **Employee Benefit Plan** assets as of the beginning of such **Employee Benefit Plan** fiscal year or five hundred thousand dollars ($500,000). Such Limit shall be part of and not in addition to the Limit of Insurance for Employee Theft stated on the Declarations.

**(2)**  Any payments the Insurer makes to an **Insured** for loss sustained by any **Employee Benefit Plan** will be held by that **Insured** for the use and benefit of the **Employee Benefit Plan** sustaining the loss.

**(3)**  If two or more **Employee Benefit Plans** are insured under this **Non-Liability Coverage Part**, any payment which the Insurer makes for loss sustained by two or more **Employee Benefit Plans**, or of commingled funds or **Other Property** of two or more **Employee Benefit Plans**, which arises out of one **Occurrence**, is to be shared by each **Employee Benefit Plan** sustaining loss in the proportion that the Limit of Insurance required for each **Employee Benefit Plan** bears to the total of those limits.

**(4)**  The Retention Amount which applies to the Employee Theft Insuring Agreement shall not apply to loss sustained by any **Employee Benefit Plans** subject to **ERISA** and which plan is covered under this insurance.

**(J)  JOINT INSURED**

**(1)**  The **Named Entity** will act for itself and for every other **Insured** for all purposes of this **Non-Liability Coverage Part**.

**(2)**  If any **Insured**, partner, member or officer of an **Insured** has knowledge of any information relevant to this **Non-Liability Coverage Part**, that knowledge is considered to be knowledge of every **Insured**.

**(3)**  An **Employee** of any **Insured** is considered to be an **Employee** of every **Insured**.

**(4)**  If this **Non-Liability Coverage Part** or any of its Insuring Agreements is cancelled, terminated or non-renewed as to any **Insured**, loss sustained by that **Insured** is covered only if discovered by the **Insured** during the period of time provided in General Condition G. DISCOVERY – EXTENDED PERIOD TO DISCOVER LOSS. This extended period to discover loss also terminates in accordance with paragraph 2 of that condition.

**(5)**  The Insurer will not pay a greater amount for loss sustained by more than one **Insured** than the Insurer would pay if all of the loss had been sustained by one **Insured**.

**(K)  OWNERSHIP OF PROPERTY; INTERESTS COVERED**



42 KB 0256935-15    5/01/15

PL009637

**(1)** The property covered under this **Non-Liability Coverage Part** is limited to **Money, Securities** or **Other Property:**

    **(a)** that an **Insured** owns or leases; or

    **(b)** owned by an **Insured's** client and which the **Insured** holds on its **Premises** or which is in the custody of one acting as the **Insured's Messenger** and while such **Money, Securities** or **Other Property** is in transit; or

    **(c)** for which an **Insured** is legally liable excepting loss of client **Money, Securities** or **Other Property** occurring on such client's premises.

**(2)** However, this **Non-Liability Coverage Part** is for the **Insureds'** benefit alone and no other person or organization has any rights or benefits. Any claim for a loss of client **Money, Securities** or **Other Property** occurring on an **Insured's Premises** or while in transit in the custody of a **Messenger** may only be made by an **Insured** in its proof of loss.

## (L) VALUATION

**(1)** Subject to the applicable Limit of Insurance, the Insurer will pay for:

    **(a)** loss of **Money** but only up to and including its face value. The Insurer may, at its option, pay for a loss of **Money** issued by any country other than the United States of America in either the face value in the **Money** issued in that country, or, in the United States of America dollar equivalent determined by the rate of exchange as stated in the *Wall Street Journal* on the day that the loss occurred.

    **(b)** loss of **Securities** but only up to and including their value as stated in the *Wall Street Journal* at the close of business on the day that the loss was discovered. However, the Insurer may, at its option, 1) pay the value of such **Securities**, 2) replace them in kind in which event an **Insured** must assign to the Insurer all its rights, title and interest in and to those **Securities** or 3) pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities**. However, the Insurer will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of

       **i.** the value of the **Securities** as stated in the *Wall Street Journal* at the close of the business on the day the loss was discovered; or

       **ii.** the Limit of Insurance.

    **(c)** loss of or damage to **Other Property** or loss from damage to the **Premises** or its exterior for the replacement cost of the property without deduction for depreciation, subject to 2. below. However, the Insurer will not pay for more than the lesser of:

       **i.** the Limit of Insurance applicable to the lost or damaged property; or

       **ii.** the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

       **iii.** the amount that any **Insured** actually spends that is necessary to repair or replace the lost or damaged property.

**(2)** The Insurer will not pay on a replacement cost basis for any loss or damage:

    **(a)** until the lost or damaged property is actually repaired or replaced; and

    **(b)** unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, the Insurer will pay based on actual cash value.

42 KB 0256935-15     5/01/15

PL009638

(3) The Insurer may, at its option, pay for loss of or damage to property other than **Money** in the **Money** of the country in which the loss occurred; or in the United States of America dollar equivalent of the **Money** of the country where the loss occurred determined by the rate of exchange on the day the loss was discovered. Any property that the Insurer pays for or replaces becomes its property.



(4) Loss of or loss from damage to any books or records of account or other records, tapes, disks, or electronic media used by an **Insured** in the business but only if such books, records, tapes or disks are actually reproduced and then only for not more than the blank books, pages, tapes and disks or other materials plus the cost of labor for the actual transcription or copying of data which an **Insured** shall furnish to reproduce such books, records, tapes or disks.

**(M) RECORDS**

The **Insured** must keep records of all property covered under this **Non-Liability Coverage Part** so that the Insurer can verify the amount of any loss.

**(N) RECOVERIES**

(1) Any recoveries made before the resolution of all or any part of a claim under this policy shall be distributed/applied in the following order of priority:

    (a) to the party (either the **Insured** or Insurer) to reimburse it for the reasonable and necessary costs of obtaining the recovery; and then

    (b) to the **Insured** to reduce the amount of covered loss.

(2) Any recoveries made after the resolution of all or any part of a claim under this policy shall be distributed/applied in the following order of priority:

    (a) to reimburse the party (either the **Insured** or Insurer) for the reasonable and necessary costs of obtaining the recovery; and then

    (b) to the **Insured**, until reimbursed for any excess covered loss sustained that exceeds the Limit of Insurance and the Retention Amount, if any; and then

    (c) to the Insurer, until reimbursed for the amount paid; and then

    (d) to the **Insured**, until reimbursed for that part of the loss equal to the Retention Amount, if any; and then

    (e) to the **Insured** for any loss not covered.

(3) Recoveries do not include any recovery:

    (a) from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    (b) of original securities after duplicates of them have been issued.

**(O) Takeover of Named Entity**

(1) the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

(2) all, or substantially all of the assets of the **Named Entity** are acquired by another person or entity, group of persons or entities, or persons and entities acting in concert such that the **Named Entity** is not the surviving entity; or

PL009639

(3)  more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

then coverage under this **Non-Liability Coverage Part** shall immediately terminate as of the date of such transaction and any incident occurring upon or after such date shall not be covered hereunder.

ENDORSEMENT NO:   1

This endorsement, effective 12:01 am,     5/01/15                              forms part
of policy number     42 KB 0256935-15

issued to:       MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:              TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under all lines of insurance in this policy subject to the Terrorism Risk Insurance Act.

**A. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to "certified acts of terrorism" that exceed the applicable insurer deductible. However, if aggregate insured losses under the Terrorism Risk Insurance Act, as amended (TRIA), exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of such losses that exceeds $100 billion.  The United States government has not charged any premium for their participation in covering terrorism losses.

**B. Cap On Certified Terrorism Losses**

A "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under TRIA. The criteria contained in TRIA, for a "certified act of terrorism" include the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA, exceeds $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses  may be reduced on a pro rata  basis in accordance with procedures established by the Treasury., based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible.  In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omissions of a terrorism exclusion, or inclusion of coverage for terrorism, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion or the War And Military Action Exclusion.

All other terms and conditions remain unchanged.

G-3435-0                        © 2012, The Hartford                        Page 1 of 1
00 H068 01 0212
     **(Includes** copyrighted material of the Insurance Services Office, Inc., with its permission.)

PL009641

ENDORSEMENT NO:    2

This endorsement, effective 12:01 am,    5/01/15                                   forms part
of policy number    42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:               TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERCENTAGE SHAREHOLDER EXCLUSION

## (DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

**DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART,** section **IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS** is amended to add:

- in connection with any **Claim** brought or maintained by or on behalf of any owner of .10......% or more of the outstanding securities of an **Insured Entity**, either directly or beneficially.



All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H011 01 0507                    (c) 2007, The Hartford                    Page 1 of 1

PL009642

ENDORSEMENT NO:    3

This endorsement, effective 12:01 am,          5/01/15                                    forms part
of policy number       42 KB 0256935-15

issued to:         MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:                TWIN CITY FIRE INSURANCE CO.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADD SUBSIDIARY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

**COMMON TERMS AND CONDITIONS**, section II. **COMMON DEFINITIONS, (W) "Subsidiary"**, is amended by the addition of the following:

**Subsidiary** also means:

MADISON CONTRACTING, LLC

All other terms and conditions remain unchanged.



David Zwiener, President

PE 00 H074 02 0608                          © 2008, The Hartford                          Page 1 of 1

PL009643

ENDORSEMENT NO:    4

forms part

This endorsement, effective 12:01 am,     5/01/15
of policy number    42 KB 0256935-15

issued to:    MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE

## FOR EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!I POLICY**

**Declarations, Item 5: Liability Coverage Part Elections, is amended as follows:**

I.    **PRIOR OR PENDING DATE** for the **COVERAGE PART** Employment Practices Liability, is deleted and replaced with the following:

    **PRIOR OR PENDING DATES**

    **Employment Practices Liability**

    Prior or Pending Date shall be: _____5/01/09_____, solely with respect to the first $ 1,000,000 _____ of the Aggregate Limit of Liability under this **Liability Coverage Part**.

    Prior or Pending Date shall be: _____5/01/11_____, solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $ 1,000,000 _____ in excess of the first $1,000,000 _____.

    Prior or Pending Date shall be: _____0/00/00_____, solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____.

II.    The Prior or Pending Date stated in **COVERAGE FEATURES** for the Third Party Liability Coverage of the **Employment Practices Liability Coverage Part**, is hereby deleted and replaced with the following:

    Third Party Liability Coverage

    Prior or Pending Date shall be: _____5/01/09_____, solely with respect to the first $ 1,000,000 _____ of the Sublimit of Liability under this elected Coverage Feature.

    Prior or Pending Date shall be: _____5/01/11_____, solely with respect to the portion of the Sublimit of Liability of this elected Coverage Feature that is $1,000,000 _____ in excess of the first $1,000,000 _____.

    Prior or Pending Date shall be: _____0/00/00_____, solely with respect to the portion of the Sublimit of Liability of this elected Coverage Feature that is $_____ in excess of the first $_____.

All other terms and conditions remain unchanged.

David Zwiener, President

PL009644

ENDORSEMENT NO:   5

**This endorsement, effective 12:01 am,**   5/01/15                    forms part
**of policy number**   42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE

### FOR DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®!! POLICY**

Declarations, **Item 5: Liability Coverage Part Elections**, is amended as follows:

I.    **PRIOR OR PENDING DATE** for the **COVERAGE PART Directors, Officers and Entity Liability**, is deleted and replaced with the following:

**PRIOR OR PENDING DATES**

**Directors, Officers and Entity Liability**

Prior or Pending Date shall be:    5/01/09   , solely with respect to the first $ 1,000,000   of the Aggregate Limit of Liability under this **Liability Coverage Part**.

Prior or Pending Date shall be:    5/01/11   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $ 1,000,000   in excess of the first $ 1,000,000   .

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____

II.    The Prior or Pending Date stated in **COVERAGE FEATURES** for the Entity Liability Coverage (if elected) of the **Directors, Officers and Entity Liability Coverage Part**, is hereby deleted and replaced with the following:

Entity Liability Coverage

Prior or Pending Date shall be:    5/01/09   , solely with respect to the first $ 1,000,000   of the Aggregate Limit of Liability of this **Liability Coverage Part**.

Prior or Pending Date shall be:    5/01/11   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $ 1,000,000   in excess of the first $ 1,000,000   .

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____

All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H187 01 0507                    © 2007, The Hartford                    Page 1 of 1

PL009645

ENDORSEMENT NO:    6

forms part

This endorsement, effective 12:01 am,     5/01/15
of policy number     42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDED DECLARATIONS- SPLIT PRIOR OR PENDING DATE

## FOR FIDUCIARY LIABILITY COVERAGE PART

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE<sup>®</sup>!! POLICY**

**DECLARATIONS, ITEM 5: Liability Coverage Part Elections**, is amended as follows:

I.     **PRIOR OR PENDING DATE** for the Fiduciary Liability Coverage Part is deleted and replaced with the following:

**PRIOR OR PENDING DATES**

**Fiduciary Liability**

Prior or Pending Date shall be:    5/01/09   , solely with respect to the first $ 1,000,000 _____ of the Aggregate Limit of Liability under this **Liability Coverage Part**.

Prior or Pending Date shall be:    5/01/11   , solely with respect to the  portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $ 1,000,000 _____ in excess of the first $ 1,000,000 _____.
Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____.

The Prior or Pending Date stated in **COVERAGE FEATURES** for the Settlement Program Coverage (if elected) of the **Fiduciary Liability Coverage Part** is hereby deleted and replaced with the following:

Settlement Program Coverage Prior or Pending Dates:

Prior or Pending Date shall be:    5/01/09   , solely with respect to the first $ 100,000 _____ of the Aggregate Limit of Liability of this **Liability Coverage Part**.

Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____.
Prior or Pending Date shall be:    0/00/00   , solely with respect to the portion of the Aggregate Limit of Liability of this **Liability Coverage Part** that is $_____ in excess of the first $_____.

All other terms and conditions remain unchanged.

David Zwiener, President

PE 00 H188 01 0507                    © 2007, The Hartford                    Page 1 of 1

PL009646

ENDORSEMENT NO:    7

This endorsement, effective 12:01 am,        5/01/15                                 forms part
of policy number     42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:               TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### STATE AMENDATORY INCONSISTENCY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

**COMMON TERMS AND CONDITIONS** are amended by the addition of the following:

- **STATE AMENDATORY INCONSISTENCY**

  In the event that there is an inconsistency between (i) the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Policy) and (ii) any other term or condition of this Policy, it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of (i) or (ii) that are more favorable to the **Insured**.



All other terms and conditions remain unchanged.



David Zwiener, President

PE 00 H276 01 0507                         © 2007, The Hartford                         Page 1 of 1

ENDORSEMENT NO:    8

forms part

This endorsement, effective 12:01 am,        5/01/15
of policy number        42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EMPLOYEE DATA PRIVACY LIABILITY ENDORSEMENT
## (EMPLOYMENT PRACTICES LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE!! POLICY**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** section **II. DEFINITIONS**, is amended as follows:

I        Definition **(D)** "**Employment Practices Wrongful Act,**" sub-paragraph **(iv)** is deleted and replaced with the following:

    **(iv)** employment-related: defamation, misrepresentation or invasion privacy including any **Employee Data Privacy Wrongful Act.**

II.        The following definitions are added:

- "**Employee Data Privacy Wrongful Act**" means either:

    **(1)** The failure to prevent any unauthorized access to or use of, data containing **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity**.



    **(2)** The failure to notify any **Employee** or applicant for employment with the **Insured Entity**, of any actual or potential unauthorized access to or use of **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity**, if such notice was required by state or federal regulation or statute.

- "**Private Employment Information**" means any information regarding an **Employee** or applicant for employment with the **Insured Entity**, which is collected or stored by an **Insured** for the purposes of establishing, maintaining or terminating an employment relationship.

All other terms and conditions remain unchanged.

*Neal Wolin*

Neal S. Wolin, President & COO

PE 00 H629 00 0709                        © 2009, The Hartford                        Page 1 of 1

PL009648

ENDORSEMENT NO:     9

forms part

This endorsement, effective 12:01 am,        5/01/15
of policy number        42 KB 0256935-15

Issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WORKPLACE BULLYING COVERAGE

## (EMPLOYMENT PRACTICES LIABILITY COVERAGE PART)

This endorsement modifies insurance provided under:

**PRIVATE CHOICE ENCORE®II POLICY**

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART** section II., DEFINITIONS, (D) "Employment Practices Wrongful Act," is amended to include any actual or alleged bullying in the workplace.

All other terms and conditions remain unchanged.

Juan Andrade, President & COO



PL009649

ENDORSEMENT NO:    10

This endorsement, effective 12:01 am,    5/01/15               forms part of policy number    42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:            TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MARYLAND AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

I.    **DECLARATIONS, ITEM 7. EXTENDED REPORTING PERIOD**, is deleted and replaced by the following:

    **ITEM 7:  Extended Reporting Period:**

        **Option 1**

        **(A)** Duration: Unlimited

        **(B)** Premium*: 750%
        or

        **Option 2**

        **(A)** Duration:  12 months

        **(B)** Premium*: 100%

        *    Premium for the Extended Reporting Period elected shall be the indicated percentage of the sum of the annual premium specified for all **Liability Coverage Parts** plus the annualized amounts of any additional premiums charged during the Policy Period. The Extended Reporting Period is not available for the **Non-Liability Coverage Parts**.

II.    **COMMON TERMS AND CONDITIONS**, Section IX. **EXTENDED REPORTING PERIOD**, paragraph **(A)**, is amended to include the following:

    The **Insured** will have multiple Extended Reporting Period options. One option will be for an unlimited Extended Reporting Period.

III.    **COMMON TERMS AND CONDITIONS**, section **XVII. ACTION AGAINST THE INSURER** , solely with respect to the **Crime Coverage Part** and the **Kidnap And Ransom/Extortion Coverage Part** is deleted and replaced by the following:

    **XVII.**    **ACTION AGAINST THE INSURER**

        Solely with respect to the **Crime Coverage Part**:

        © 2011, The Hartford        

PL009650

ENDORSEMENT NO:   10

**(A)** No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and

**(B)** No legal action shall be taken against the Insurer involving loss until 90 days after the **Insured** has filed proof of loss with us; and

**(C)** No legal action shall be taken against the Insurer involving loss unless such action is brought within 3 years from the date of the accrual thereof.

Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:

No suit, action or proceeding for recovery of any claim under this policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within 3 years from the date of the accrual thereof.

All other terms and conditions remain unchanged.

André A. Napoli, President



F   9 H004 01 1011                  © 2011, The Hartford                  Page 2 of 2

PL009651

ENDORSEMENT NO:   11

**This endorsement, effective 12:01 am,**     5/01/15     forms part
**of policy number**     42 KB 0256935-15



**issued to:**     MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**     TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## DECEPTION FRAUD ENDORSEMENT
## (CRIME COVERAGE PART)

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

The **Crime Coverage Part** is amended as follows:

I.   Section I. **INSURING AGREEMENTS**, is amended by the addition of the following:

   **DECEPTION FRAUD**

   The Insurer will pay for loss of **Money** or **Securities** resulting from **Deception Fraud**, subject to the Limit of Insurance and Retention stated in the SCHEDULE below.

   **Deception Fraud SCHEDULE**

   **Limit of Insurance     $15,000     Retention     $5,000**

   The above Limit of Insurance and Retention apply per **Occurrence**.

II.   Section IV. **DEFINITIONS**, is amended by the addition of the following:

   - **Deception Fraud** means the intentional misleading of a person to induce the **Insured** to part with **Money** or **Securities** by someone pretending to be an **Employee,** owner of the **Insured** or one of the following business relations:

      **(1)** A **Vendor**;

      **(2)** A **Customer**;

      **(3)** A **Custodian**; or

      **(4)** A **Messenger.**

   - **Customer** means a natural person or entity for whom the **Insured** provides goods or services.

   - **Vendor** means a business entity that sells goods or services to the **Insured**.

III.   Section V. **EXCLUSIONS**, is amended in the following manner:

   **(1)** Exclusion **(B)** is deleted and replaced with the following:

      Loss resulting from **Theft, Deception Fraud** or **Forgery** committed by any partner of an **Insured** whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would otherwise be covered under INSURING AGREEMENTS 1 or 2, this exclusion shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage

 H709 00 1014                © 2014, The Hartford                Page 1 of 3

PL009652



ownership of such **Insured**, on the day immediately preceding the date of discovery, multiplied by such **Insured's** total assets as reflected in such **Insured's** most recent audited financial statements.

**(2)** Exclusion **(C)** is deleted and replaced with the following:

Loss resulting from **Theft, Deception Fraud** or any other dishonest or criminal act committed by any of the **Insureds' Employees**, managers, directors or trustees whether acting alone or in collusion with other persons or while performing services for any **Insured** or otherwise, except when covered under Insuring Agreement 1.

**(3)** Exclusion **(E)** is amended to include the following:

This exclusion shall not apply to the Deception Fraud Insuring Agreement

**(4)** The following exclusions are added:

- Loss or damage resulting directly or indirectly from **Deception Fraud.** This exclusion shall not apply to the Deception Fraud Insuring Agreement.

- Loss or damage:

  **(1)** resulting from **Theft** by an **Employee;**

  **(2)** resulting from **Forgery** or alteration of:

    **(a)** checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **Money;** or

    **(b)** written instruments required in conjunction with any credit, debit or charge card;

**(3)** directly related to the use of any computer to fraudulently cause a transfer of **Money** or **Securities** from inside the **Premises** or **Banking Premises;**

**(4)** resulting from **Funds Transfer Fraud;**

**(5)** resulting from the **Insureds** having accepted in good faith and in the regular course of business, in exchange for merchandise, **Money** or services:

  **(a)** money orders issued by any post office, express company or bank in any country that are not paid upon presentation; or

  **(b)** **Counterfeit** paper currency of any country;

**(6)** resulting from any investments in **Securities** or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

**(7)** resulting from the failure, malfunction, inadequacy or illegitimacy of any product or service, including in the advertisement or labeling thereof;

**(8)** resulting from the failure of any party to perform, in whole or in part, under a contract;

**(9)** resulting from gambling, game of chance, lottery or similar game; and

**(10)** resulting from any party's use or acceptance of any credit card, debit or similar instrument, whether or not genuine.

This exclusion shall apply only to the Deception Fraud Insuring Agreement.

- Loss of or damage to **Other Property.** This exclusion shall apply only to the Deception Fraud Insuring Agreement.

- Loss of **Money** or **Securities:**

  **(1)** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company; or

  **(2)** inside the **Premises** or **Banking Premises** resulting directly from disappearance or destruction.

This exclusion shall apply only to the Deception Fraud Insuring Agreement.



PL009653

ENDORSEMENT NO:     11

All other terms and conditions remain unchanged.

André A. Napoli, President

PL009654

ENDORSEMENT NO:   12

**This endorsement, effective 12:01 am,**        5/01/15                                              forms part
**of policy number**      42 KB 0256935-15

**issued to:**        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INCLUDE COVERAGE FOR VIRTUAL CURRENCY - SUBLIMITED

## (CRIME COVERAGE PART)

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE!! POLICY**

The **Crime Coverage Part** is amended as follows:

I.   Section II. **LIMIT OF INSURANCE,** is amended by the addition of the following:

Any coverage for loss of **Virtual Currency** under this Policy is subject to a sublimit of $15,000 per **Occurrence**, which sublimit is part of and not in addition to any other applicable Limit of Insurance under this Policy.

II.   Section III. **RETENTION,** is amended by the addition of the following:

The foregoing notwithstanding, any coverage for loss of **Virtual Currency** under this Policy is subject to a Retention Amount of $5,000 per **Occurrence**.

III.   Section IV. **DEFINITIONS, (M) Money** is amended by the addition of the following:

**Money** shall also include **Virtual Currency**.

IV.   Section IV. **DEFINITIONS,** is amended by the addition of the following:

- "**Virtual Currency**" means a virtual or digital representation of value that is not issued by a central bank or a public authority, but may be accepted as a means of payment and can be transferred, stored or traded electronically, whether or not it is recognized as, or exchangeable for, legal tender.

V.   Section VI., **GENERAL CONDITIONS, (L), VALUATION,** is amended by the addition of the following:

- The foregoing notwithstanding, in the event of loss of **Virtual Currency** covered under this Policy, the Insurer may, at its option:

(1)  tender the value of the **Virtual Currency** in actual currency of the country in which the loss was sustained, or in the United States of America dollar equivalent, by taking the weighted average of the values of **Virtual Currency** in such actual currency as posted on the three largest relevant **Virtual Currency** exchanges, based on the volume of **Virtual Currency** exchanged, as of 12:00 PM EST on the day the loss is discovered; or



PE 00 H710 00 1014                          © 2014, The Hartford                          Page 1 of 2

ENDORSEMENT NO:    12

**(2)**   replace the quantity of **Virtual Currency** of such loss.

All other terms and conditions remain unchanged.

André A. Napoli, President


PL009656

ENDORSEMENT NO:   13

forms part

**This endorsement, effective 12:01 am,**      5/01/15
**of policy number**      42 KB 0256935-15

**issued to:**      MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**      TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT

**I.**   **Notice of Claim or Wrongful Act**

    A.   A notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

       *Via mail:*          The Hartford

                         Claims Department

                         Hartford Financial Products

                         277 Park Avenue, 15th Floor

                         New York, New York 10172

                         or

       *Via email:*          HFPClaims@thehartford.com

                         or

       *Via Facsimile:*          (917) 464-6000



    B.   Where it is stated in the policy or declarations page that a notice of any **Claim** or **Wrongful Act** shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115, it shall be deleted and replaced with the following:

    Notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

       *Via mail:*          The Hartford

                         Claims Department

                         Hartford Financial Products

                         277 Park Avenue, 15th Floor

                         New York, New York 10172

                         or

       *Via email:*          HFPClaims@thehartford.com

                         or

    *Via Facsimile: (917) 464-6000*

**II.**   **All Other Notices**

    A.   All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

                         The Hartford

                         Product Services

                         Hartford Financial Products

                         277 Park Avenue, 15th Floor

                         New York, New York 10172

PL009657

**ENDORSEMENT NO:**   13

B.   With the exception of notice of a **Claim** or **Wrongful Act**, where it is stated in the policy or declarations page that a notice shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted and replaced with the following:

All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

The Hartford

Product Services

Hartford Financial Products

277  Park Avenue, 15th Floor

New York, New York 10172

All other terms and conditions remain unchanged.

Juan Andrade, President & COO



PL009658

ENDORSEMENT NO:   14

This endorsement, effective 12:01 am,        5/01/15                                    forms part
of policy number       42 KB 0256935-15

issued to:        MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

by:        TWIN CITY FIRE INSURANCE CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE ENCORE®!! POLICY**

If purchased:

I.   **DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART**, section **IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS**, is amended to add:

- in connection with any **Claim** based upon, arising from, or in any way related to any:

  1. discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or



  2. direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;

  provided that this exclusion shall not apply to any **Derivative Action** otherwise covered under Insuring Agreement (A).

II.   **FIDUCIARY LIABILITY COVERAGE PART**, section **III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS, (A)**, and **MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE PART**, section **IV. EXCLUSIONS**, are amended to add:

- in connection with any **Claim** based upon, arising from, or in any way related to any:

  1. discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

  2. direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;

All other terms and conditions remain unchanged.

David Zwiener, President

PL009659

ENDORSEMENT NO:    15

**This endorsement, effective 12:01 am,**   5/01/15   forms part
**of policy number**   42 KB 0256935-15

**issued to:**   MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP.

**by:**   TWIN CITY FIRE INSURANCE CO.


# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

I.    The Cancellation provision of this Policy is deleted and replaced by the following:

### NOTICE OF CANCELLATION

A.   The **Insured** shown in the Declarations may cancel this Policy by mailing advance written Notice of Cancellation to the **Insurer** stating when thereafter such cancellation shall be effective.

B.   The **Insurer** may only cancel this policy for nonpayment of premium. The **Insurer** may cancel this policy by mailing to the **Insured** written Notice of Cancellation at least ten (10) days before the effective date of cancellation.

C.   The **Insurer** will mail its notice to the **Insured's** last mailing address known to the **Insurer**. Notice of Cancellation will state the specific reasons for cancellation.

D.   Notice of Cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

E.   If this Policy shall be cancelled by the **Insured**, the **Insurer** shall retain the customary short rate proportion, which is ninety (90) percent of the pro-rata premium hereon, except as otherwise provided in this Policy. If the **Insurer** cancels this Policy, the **Insurer** shall retain the pro rata proportion of the premium hereon. However, if this Policy is financed by a premium finance company and the **Insurer** or the premium finance company or the **Insured** cancels the Policy, the refund of any gross unearned premiums will be computed pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner. The cancellation will be effective even if we have not made or offered a refund.

F.   A certificate of mailing will be proof of mailing and sufficient proof of notice.

II.   The following provision is added:

### NOTICE OF NONRENEWAL

A.   If the **Insurer** decides not to renew this Policy, it will mail or deliver to the **Insured** shown in the Declarations written Notice of the Nonrenewal not less than forty-five (45) days before the expiration date or anniversary date of this Policy.

B.   A certificate of mailing will be proof of mailing and sufficient proof of notice.

PL009660

ENDORSEMENT NO:   15

All other terms and conditions remain unchanged.

Juan Andrade, President & COO


PL009661

| | |
|---|---|
| Named Insured: | MADISON MECHANICAL, INC. MADISON MECHANICAL OS CORP. |
| Policy Number: | 42 KB 0256935-15 |
| Effective Date: | 5/01/15 |
| Insurer: | TWIN CITY FIRE INSURANCE CO. |

## TERRORISM RISK INSURANCE ACT

### CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM

We previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make "certified acts of terrorism" coverage available in the policies we offer.

The terrorism coverage as defined by the Act does not apply to Crime or Miscellaneous Professional Liability coverage parts, if any or all of those coverage parts are elected under this policy.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism. The criteria contained in TRIA for "certified act of terrorism" include the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to certified acts of terrorism that exceeds the applicable insurer deductible. However, if aggregate insured losses under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

At that time we advised you that you will not be required to pay a premium for "certified acts of terrorism" coverage at this time. As a result of our notification, you have accepted "certified acts of terrorism" coverage. If, upon renewal of your policy, a premium is going to be charged for "certified acts of terrorism" coverage, we will provide you with notification of what that premium will be.


PL009662

**Producer Compensation Notice**



You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

PL009663