# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MADISON MECHANICAL, INC, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-17-01357 |
| | * | |
| TWIN CITY FIRE INSURANCE CO., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Madison Mechanical, Inc. ("MM Inc."), Madison Mechanical OS Corp. ("MM OS Corp."), Madison Mechanical Contracting, LLC ("MM LLC"), Glenn A. Haslam, Gary J. Garofalo, Richard Arnold, Lawrence P. Kraemer, and Richard M. Lombardo (collectively "Plaintiffs") brought this action against Defendant Twin City Fire Insurance Company ("Twin City"), alleging breach of an insurance policy, and seeking a declaratory judgment relating to Twin City's liability under the policy. ECF 1. Twin City filed a Counterclaim, seeking a declaratory judgment in its favor. ECF 21 at 23-43. Discovery is now complete, and Twin City has filed a summary judgment as to its Counterclaim and "any remaining counts of the Complaint."[1] ECF 87 (and associated memorandum of law at ECF 87-1). I have reviewed that filing, and the associated opposition and reply. ECF 91, 92. Although Plaintiffs have requested a hearing, no hearing is necessary, *see* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Twin City's motion will be granted.

---

[1] On March 30, 2018, United States District Judge George L. Russell III granted Twin City's previous Cross-Motion for Summary Judgment, granting a declaration "that [Twin City] has no duty to defend or indemnify Plaintiffs in the Underlying Action under the 2016 Policy," one of two insurance policies mentioned in Plaintiffs' Complaint. ECF 44 at 21 n.17. Twin City argues that because Plaintiffs' Complaint sought relief only under the 2016 Policy, no remaining counts in Plaintiff's Complaint are at issue. However, Twin City's counterclaim, seeking a declaration that coverage is also unavailable under the 2015 Policy, remains viable.

I.  **FACTUAL BACKGROUND**

Robert Buczkowski was an officer and shareholder of MM OS Corp., the holding company of MM Inc. *See* ECF 87-8 at 7:14-19; 8:3-20.; 9:10-15. MM Inc. maintained two relevant insurance policies with Twin City. Policy Number 42 KB 0256935-15 ("the 2015 Policy"), was in effect from May 1, 2015 through May 1, 2016. ECF 87-5. Policy Number 42 KB 0256935-16 ("the 2016 Policy") was in effect from May 1, 2016 through May 1, 2017. ECF 34-7. The 2015 Policy and 2016 Policy each provided Directors, Officers, and Entity Liability (D&O Liability) coverage, and Employment Practices Liability ("EPL") coverage, pursuant to the policies' terms. ECF 87-5; ECF 34-7.

Beginning in around 2012 to 2013, MM OS Corp. experienced some financial difficulties, and the relationship amongst the partners deteriorated, with Buczkowski at odds with the other shareholders. ECF 87-8 at 24:11-21 to 25:3. In 2014 and 2015, the shareholders were asked to make capital contributions to the company. *See, e.g.,* ECF 87-8 at 61. In response, the other shareholders of MM Inc. made significant capital contributions to the company, in proportion to their percentage of ownership. ECF 87-16 at 5. However, Buczkowski contributed a disproportionately small amount of capital. *Id.* In 2015, the remaining shareholders, including Plaintiffs Haslam, Garofalo, Kraemer, and Lombardo, created a new LLC, MM LLC. *See* ECF 87-10 at 7:7-17. On November 11, 2015, Buczkowski's attorney sent a letter to MM LLC ("the November 11, 2015 Demand Letter"). ECF 87-6. The letter states that Buczkowski has a 13% interest in MM OS Corp., which continues to have assets and work in progress. ECF 87-6 at 2. The letter notes the creation of MM LLC and states, "it appears to [Buczkowski] that the purpose of [MM LLC] is to divert the business and client base of [MM OS Corp.] for the benefit of [MM LLC] and to the detriment of [MM OS Corp.]" It continued:

> If it is your plan to divert the contracts and corporate opportunity of [MM OS Corp.], please consider this letter putting you on notice of the potential litigation liability of such actions both on a corporate and personal level. Please cease and desist any such action to divert any corporate opportunity that [MM OS Corp.] has to either yourselves or [MM LLC] without the consent of my firm's client, Robert Buczkowski.

ECF 87-6. The letter states, specifically, that Buczkowski "would prefer to sit down and try to work out any potential differences while at the same time preserving his thirteen percent (13%) interest in [MM OS Corp.]" ECF 87-6 at 4.

Upon receiving the November 11, 2015 letter from Buczkowski's attorney, Plaintiff Garofalo forwarded the letter, by email, to MM OS Corp.'s insurance agent, Bill Franey at Franey Parr & Muha, Inc./Alliant Insurance Services, Inc. ECF 87-9 ¶¶ 12, 15. Garofalo also called Franey to ask whether MM OS Corp's officer's liability insurance would provide a defense to Buczkowski's claim. ECF 91-8 ¶ 12.

One week later, on November 18, 2015, MM Inc. sent a letter to Buczkowski, terminating his employment "for cause, effective immediately." ECF 87-7. The letter does not reference Buczkowski's status as a shareholder. *Id.* The parties agree that Buczkowski's termination had been discussed previously, *see e.g.,* ECF 91-4, but Buczkowski contends that he had not been told that he would be terminated "for cause." ECF 87-8 at 35:7-14 (Buczkowski Dep.)

On December 29, 2015, Plaintiff Haslam signed an application to Twin City for a new insurance policy to cover MM LLC. ECF 87-18. The application represented that "any Applicant or any natural person for whom insurance is intended" had no prior knowledge of any potential claim. ECF 87-18 at 3. Instead of issuing a new policy, Twin City issued an endorsement effective January 1, 2016, adding MM LLC to the 2016 Policy that was already in effect for the remaining Plaintiffs. ECF 87-5 at 73. MM LLC began operations on January 1, 2016. *See id.*; ECF 91-20 at 60:5-14.

On January 14, 2016, counsel for MM OS Corp. wrote to counsel for Buczkowski, stating that Mr. Buczkowski was now "obligated to sell his shares in Madison." ECF 87-3 at 21. The letter continued, "Please have your client endorse the stock certificate in blank and forward it to [MM OS Corp.'s counsel] to consummate the stock purchase." *Id.*

On May 11, 2016, counsel to MM OS Corp. wrote to Buczkowski, stating, "your employment with the corporation terminated on November 24, 2015. Pursuant to the terms of the Corporation's Stockholders agreement of which you are a party [] upon the termination of your employment you were obligated to sell your stock pursuant to the Agreement. . . . <u>Your failure to cooperate with that request in no way changes the fact that you have ceased to be a stockholder in the Corporation</u>." ECF 87-33 at 2.

On May 27, 2016, Buczkowski filed a fourteen-count Complaint against MM OS Corp., MM LLC, and the five individual Defendants, in the Circuit Court for Baltimore County ("the Underlying Litigation"). ECF 87-3. The counts included Declaratory Judgment, Breach of Contract (specifically the stockholders' agreement), Oppression of Minority Shareholder (in a personal capacity and as a derivative action on behalf of MM OS Corp.), Breach of Fiduciary Duty (in a personal capacity and as a derivative action on behalf of MM OS Corp.), Tortious Interference with Economic Relations (in a personal capacity and as a derivative action on behalf of MM OS Corp.), Unjust Enrichment (in a personal capacity and as a derivative action on behalf of MM OS Corp.), Unfair Competition – Misappropriation of Trade Secrets (in a personal capacity and as a derivative action on behalf of MM OS Corp.), and Constructive Trust (in a personal capacity and as a derivative action on behalf of MM OS Corp.). *Id.* Shortly after the Complaint in the Underlying Litigation was served, Plaintiffs put Twin City on notice of the claims and sent Twin City a copy of the Complaint, but without attaching or referencing the November 11, 2015 letter.

ECF 87-19. In response, Twin City initially agreed to provide a defense, but "subject to its reservation of rights." ECF 87-21 at 1. Pertinent here, Twin City specifically reserved its rights with respect to the percentage shareholder exclusion and prior knowledge exclusion in the 2015 and 2016 policies. *Id.* at 8 (stating "Twin City reserves its rights with respect to the applications, including its rights to disclaim coverage for any prior claims … arising from … error, misstatement, misleading statement…"); ECF 91-22. Ultimately, Twin City took the position that it would deny coverage under the 2016 policy, because the November 11, 2015 letter constituted the claim made during the 2015 policy period, and because of the prior knowledge clause, late notice, percentage shareholder exclusion, and other coverage issues. ECF 87-23.

On September 15, 2016, Plaintiff Haslam, as the sole director of MM OS Corp., signed a resolution issuing shares of stock to dilute Buczkowski's ownership share in the company to 7.006%. ECF 87-25. The resolution provided that the issuance was "effective April 1, 2015." *Id.* In connection with his settlement of the Underlying Litigation, on May 24, 2018, Buczkowski signed a declaration stating, "As of April 1, 2015, Mr. Haslam and OS Corp. diluted my ownership interest from 13 percent to 7.774 percent." ECF 91-16 ¶¶ 5-6 (Buczkowski Aff.) At deposition, Buczkowski testified that he made that statement "based on the documents… that [he] was given." ECF 87-8 at 72:13-17. The parties' agreed settlement amount of $725,000 for the Underlying Litigation was premised on compromise of a valuation report assessing Buczkowski's MM OS Corp. stock, which had put the stock value at about $1.2 million. ECF 87-8 at 57:16-20, *Id.* at 58:1-10; ECF 87-10 at 36:18-38:4.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348–49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. ANALYSIS

Now that Judge Russell has ruled that no coverage exists under the 2016 Policy, the parties agree that Buczkowski's claim was first made on November 11, 2015, during the term of the 2015 Policy. *See* ECF 87-1 at 18 ("Twin City is not so opportunistic – it stands by its longstanding position that the Claim was first made on November 11, 2015."); ECF 91-1 at 31 ("In this case, the claim was made on November 11, 2015 and reported on November 20, 2015."). The parties dispute when notice of the November 11, 2015 claim was provided to Twin City, but the timing of that notice is not relevant to the rulings about the scope of coverage, which are dispositive for the reasons described below. *See, e.g.,* ECF 92 at 2 ("The Underlying Action is a claim first made against Plaintiffs on November 11, 2015, but not reported to Twin City until July 29, 2016."). Ultimately, the issues Plaintiffs characterize as "disputed issues of fact," *see* ECF 91-1 at 5, 6, such as whether the November 11, 2015 Demand Letter included an EPL claim and whether the Percentage Shareholder Exclusion applies, are not factual issues, but legal disputes susceptible to resolution at summary judgment. *See OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 939 (4th Cir. 2007) ("Because the facts are undisputed and we are presented with a purely legal question of insurance coverage, the case is ripe for summary judgment.").

### A. Employment Practices Liability Coverage

Plaintiffs contend that a genuine issue of material fact exists as to whether coverage is available under the EPL provision of the 2015 Policy.[2] ECF 91-1 at 18-22. The EPL provision

---

[2] Plaintiff's Complaint in the instant case does not state a claim for coverage under the EPL provision. ECF 1. The discussion herein relates to whether summary judgment is appropriate on Twin City's Counterclaim, which generally seeks a declaration that coverage is unavailable under the 2015 Policy. ECF 21 at 23 ¶ 1.

requires a claim "for an Employment Practices Wrongful Act by the Insureds." ECF 87-5 at 28. The 2015 Policy defines an "Employment Practices Wrongful Act" as:

> a Wrongful Act involving any
>
> (1) Wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;
>
> (2) Sexual or other workplace harassment, including quid pro quo and hostile work environment;
>
> (3) Employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;
>
> (4) Retaliation;
>
> (5) Breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or
>
> (6) Violation of the Family and Medical Leave Act.

*Id.* at 29.

As noted above, the parties now agree that the claim in this case began with Buczkowski's November 11, 2015 Demand Letter. That letter does not mention employment, termination, or any employment-related relief. ECF 87-6. Instead, the letter (1) protested the anticipated diversion of corporate opportunities from MM OS Corp. to MM LLC, (2) demanded that Defendants cease and desist the conduct leading to the diversion, (3) offered to meet to "work out any potential differences while at the same time preserving [Buczkowski's] thirteen percent interest in Madison Mechanical," and (4) threatened litigation if a settlement could not be reached. *Id.* In fact,

8

Defendants did not terminate Buczkowski until one week after the November 11, 2015 Demand Letter, and therefore, his claim did not include any allegations of an Employment Practices Wrongful Act. Plaintiffs' suggestion that the EPL coverage could be triggered by a mere "written demand for civil relief being made by an employee," ECF 91-1 at 8, is contrary to the express language of the 2015 Policy. Buczkowski's suit did not include a claim "for" wrongful dismissal, discharge, deprivation of career opportunity, or any other items listed in subsection (1) of the policy's definition for "Employment Practices Wrongful Act." The 2015 Policy is unambiguous, and Courts will "enforce the terms of unambiguous written contracts." *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999).

Plaintiffs further contend that not just the November 11, 2015 Demand Letter, but Buczkowski's complaint in the Underlying Litigation, are part of the claim to be evaluated for coverage under the 2015 Policy. *See* ECF 91-1 at 19–20. The complaint in the Underlying Litigation was filed in the time period governed by the 2016 Policy, and Judge Russell has already ruled that coverage is unavailable under that policy. *See generally* ECF 44.

But even if the complaint in the Underlying Litigation were to be considered as a part of the claim first filed on November 11, 2015, it too fails to allege a claim for wrongful termination. The EPL coverage is expressly available for "Loss on behalf of the Insureds resulting from an Employment Practices Claim first made against the Insureds during the Policy period or Extended Reporting Period, if applicable, <u>for an Employment Practices Wrongful Act by the Insureds</u>." ECF 87-5 at 28. The various counts in the complaint in the Underlying Litigation are not Employment Practices Claims, and do not assert any Employment Practices Wrongful Acts as defined by the 2015 Policy. Buczkowski's complaint in the Underlying Litigation does request, as part of its relief, a declaratory judgment that he "remains an employee and a shareholder of Madison

9

Mechanical OS Corp." ECF 87-3 at 33. However, that request for relief seeks to remedy the corporate ownership-related counts, and does not transform his complaint into a claim "for wrongful termination." He did not seek — or receive in settlement — lost wages or other standard "wrongful termination" relief. *See, e.g.*, *Molesworth v. Brandon*, 672 A.2d 608, 611 (Md. 1996) (claiming damages for lost wages in wrongful discharge lawsuit). Plaintiffs acknowledge as much in their own Complaint in this case, where they allege that Buczkowski's complaint in the Underlying Litigation was filed "requesting a declaratory judgment and alleging breach of contract, oppression of a minority stockholder, breach of fiduciary duty, tortious interference with economic relations, unjust enrichment, unfair competition, misappropriation of trade secrets, and constructive trust." ECF 1 ¶ 1. Because there is no ambiguity in the plain language of the 2015 Policy's definition of Employment Practices Claims and no claim for wrongful termination, even when considering the complaint in the Underlying Litigation filed in 2016, no coverage is available under the EPL provision of the 2015 Policy.

   **B. D&O Coverage**

Under the 2015 Policy, the Percentage Shareholder Exclusion bars coverage under the D&O provision. That Exclusion is contained in Endorsement No. 2 to the 2015 Policy, and states that Twin City will not pay "in connection with any Claim brought or maintained by or on behalf of any owner of 10% or more of the outstanding securities of an Insured Entity, either directly or beneficially." *See* ECF 87-5 at 53. The Claim, as noted above, was made in the November 11, 2015 Demand Letter, so the operative question is whether the percentage of outstanding securities owned by Buczkowski on that date exceeded 10%. *See Cristal USA Inc. v. XL Specialty Ins. Co.*, 2017 WL 727795, at *15 (Md. Ct. Spec. App. Feb. 24, 2017) ("Claims-made policies, like the Policies here, premise coverage on the insured's status at the time a claim is made.").

Plaintiffs contend that Buczkowski's percentage of ownership is a disputed issue of fact. The parties have each cited to documents in which Buczkowski asserted different percentages of ownership at different times. *Compare* ECF 91-16 (Buczkowski Affidavit) *with* ECF 91-7 (November 11, 2015 Demand Letter). However, the determinative fact is not Buczkowski's subjective understanding of his percentage of ownership on any given date, but rather the percentage he actually owned according to corporate records and governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Maryland law provides, "Before the issuance of stock or convertible securities, the board of directors shall adopt a resolution that: (1) Authorizes the issuance; (2) Sets the minimum consideration for the stock or convertible securities or a formula for its determination; and (3) Fairly describes any consideration other than money." Md. Code. Ann., Corps. & Ass'n § 2-203(a) (2002). The law continues, "In the absence of actual fraud in the transaction, the minimum consideration stated in the charter or determined by the board of directors in its resolution is conclusive for all purposes." *Id.* § 2-203(b). Here, the sole director signed the resolution on September 15, 2016, noting that the Corporation "wishes to issue additional shares of its Common Stock to reflect the aggregate capital contributions made by the stockholders" between March 1, 2014 and March 31, 2015. ECF 87-25. And the resolution purports to date the new stock certificates "as of April 1, 2015." *Id.* While Maryland law certainly permits the board of directors to determine the minimum consideration to be paid for stock, and to issue new stock diluting other shareholders, it does not permit "backdating" of the issuance, as it specifically requires the board's resolution to occur "before the issuance of stock or convertible securities." Md. Code. Ann.,

Corps. & Ass'n § 2-203(a). Plaintiffs do not cite any statutory or other authority permitting such backdating, and thus, their attempt to retroactively dilute Buczkowski's ownership percentage, as of April 1, 2015, must fail.

Plaintiffs' alternative contention is that "automatic dilution" of Buczkowski's shares occurred when he failed to pay his capital calls. Some of the documents Plaintiffs cite reflect that Buczkowski's percentage of capital had fallen below 10% as a natural result of his failure to pay, but do not indicate that his ownership percentage had been formally diluted. *See, e.g.,* ECF 87-16 at 5 (showing Buczkowski at 13% in terms of "equity balances" but 9.7% in terms of "Percentage of Capital Funded."); ECF 92-1 at 3 (showing Buczkowski had a "Madison Equity Balance" of 13% but "Capital Call % Paid" of just 7.01%). In fact, the evidence clearly reflects that the owners had reached no determination as to the effects of a shareholder's failure to comply with a capital call. The Stockholder's Agreement is silent on what would happen if a shareholder failed to meet his requested capital contribution obligations, and the shareholders' discussions of the issue in 2011 did not lead to any amendment to the Stockholder's Agreement. *See, e.g.,* ECF 87-10 at 44:2-45:12 (Garofalo Dep.) (explaining that stockholder's agreement "was silent on what would happen if a shareholder did not make their requested cash-call obligation"); ECF 87-30 (2011 email exchange reviewing five possible options for a situation in which a shareholder failed to respond to a cash call). Thus, Plaintiffs identify no contractual provision that evidences an agreement to dilute the shares automatically upon nonpayment.

Further, Plaintiffs' own actions, after April 1, 2015, undermine their contention that Buczkowski's shares had been automatically diluted. For instance, the Consent of the Sole Director was signed on September 15, 2016. This resolution would have been legally unnecessary had Buczkowski's shares already been diluted. Additionally, Plaintiffs took several other actions

12

that demonstrate that Buczkowski's ownership stake had not been diluted. *See, e.g.,* ECF 87-31 at 23:19-24:1 (Haslam Dep.) (reflecting an inability to explain why MM OS Corp. tried to collect delinquent capital contributions from Buczkowski in January, 2016 if his shares had been diluted); *Id.* at 13:3-14:9 (explaining that as of March 29, 2016, the Plaintiffs were discussing "instead of diluting Buczkowski, recapitalize[ing] loans."); ECF 92-2 at 2 (email from Garofalo on April 9, 2016 referring to Buczkowski's 13% ownership). The uncontested facts show that, as a matter of law, Buczkowski's shares were not automatically diluted.

It is unnecessary to consider whether Buczkowski's termination for cause effectively nullified his ownership interest in the company, since his termination occurred one week after his claim on November 11, 2015. As noted above, his ownership status on November 11, 2015, the date of the claim, controls.

Because this Court concludes, for the reasons discussed above, that Plaintiffs cannot recover under the 2015 Policy's EPL coverage or D&O coverage (due to the Percentage Shareholder Exclusion), it need not address Twin City's remaining contentions, including the applicability of the Insured v. Insured Provision and the Prior Knowledge and Loss History Exclusions. Because Plaintiffs lack coverage under the 2015 Policy, neither the amount of the settlement in the Underlying Litigation, nor Plaintiffs' attorneys' fees and expenses, are recoverable.

## **CONCLUSION**

For the reasons set forth above, Twin City's motion for summary judgment will be GRANTED, and a declaratory judgment will enter declaring that the 2015 Policy does not provide coverage for the Underlying Litigation. A separate Order follows.

Dated: November 14, 2019
                                                    /s/
                                         Stephanie A. Gallagher
                                         United States District Judge